## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC., | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | |
| DAVID W. KENT, JR., SINGLE INTEGRATED OPERATIONS PORTAL, INC. D/B/A OILPRO AND OILPRO.COM, ESTEVAN DUFRIN, MATTHEW KENT, BRYAN ROBINS, JEREMY ANTONINI, AND JOHN DOE NOS. 1-10, | § § § § § § § § | C.A. NO. 4:16-cv-01670 |
| Defendants. | § § | |

### PLAINTIFFS DHI GROUP, INC.'S AND RIGZONE.COM, INC.'S MOTION TO DISMISS DEFENDANT OILPRO'S COUNTERCLAIMS

BAKER BOTTS L.L.P.

Kevin T. Jacobs
State Bar No. 24012893
Federal ID No. 26665
Justin Lipe
State Bar No. 24083401
Federal ID No. 2053646
Christine Ng
State Bar No. 24087678
Federal ID No. 2210307
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
Telephone: (713) 229-1234
Facsimile: (713) 229-7847
kevin.jacobs@bakerbotts.com
justin.lipe@bakerbotts.com
christine.ng@bakerbotts.com

OF COUNSEL:

Richard B. Harper
Douglas W. Henkin
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 408-2500
Facsimile: (212) 408-2501
richard.harper@bakerbotts.com
douglas.henkin@bakerbotts.com

ATTORNEYS FOR PLAINTIFFS DHI GROUP, INC. f/k/a DICE HOLDINGS, INC.
AND RIGZONE.COM, INC.

# TABLE OF CONTENTS

**Page**

I. SUMMARY OF ARGUMENT AND STAGE OF PROCEEDING ................................. 1

II. STANDARD OF REVIEW .................................................................................. 3

III. ARGUMENT AND STATEMENT OF ISSUES ...................................................... 4

  A. Breach of Contract ................................................................................ 4

    1. Because Oilpro has not alleged facts sufficient to show that Plaintiffs assented to the Terms and Conditions, the Counterclaim does not state a claim for breach of contract................................. 5

    2. The Terms and Conditions cited in and attached to Oilpro's Counterclaim were not even in effect at the time of the alleged wrongdoing. ...................................................................... 8

  B. Trespass to Chattels ............................................................................. 9

  C. Copyright Infringement ...................................................................... 10

    1. Oilpro does not allege a copyrighted work. ............................... 10

    2. Oilpro failed to plead sufficient facts to identify the allegedly infringing or infringed works....................................... 12

    3. Oilpro fails to allege facts to support a plausible claim of actual copying.................................................................... 13

  D. Digital Millennium Copyright Act Claim ............................................ 14

    1. Oilpro fails to allege the existence of any "effective access control measures" at the time of the alleged access. ............................ 15

    2. Oilpro fails to allege any plausible facts to show that Plaintiffs actually circumvented any technological measure. ................... 17

IV. CONCLUSION.......................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................4

*Be In, Inc. v. Google Inc.*,
   No. 12-CV-03373-LHK, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013)....................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................4, 16, 17

*Bradley v. Phillips Petrol. Co.*,
   527 F. Supp. 2d 625 (S.D. Tex. 2007) .................................................................................4

*Bridgmon v. Array Sys. Corp.*,
   325 F.3d 572 (5th Cir. 2003) .............................................................................................13

*Brown v. Ames*,
   201 F.3d 654 (5th Cir. 2000) .............................................................................................12

*Chambers v. Apple Inc.*,
   Civ. A. No. 3:14–cv–00972–MG, 2014 WL 7044167 (D.S.C. Dec. 12, 2014)......................13

*Cvent, Inc. v. Eventbrite, Inc.*,
   739 F. Supp. 2d 927 (E.D. Va. 2010) ..............................................................................7, 8

*Darden v. Peters*,
   488 F.3d 277 (4th Cir. 2007) .........................................................................................11, 12

*Devon Wilmington v. Bay Area Utils., LLC*,
   No. CV H-15-3031, 2015 WL 7779332 (S.D. Tex. Dec. 2, 2015)..........................................2

*DirecTV, Inc. v. Chin*,
   No. SA-03-CA-0660-RF, 2003 WL 22102144 (W.D. Tex. Aug. 26, 2003) ...........................9

*Donald v. Zack Meyer's T.V. Sales & Service*,
   426 F.2d 1027 (5th Cir. 1970) ...........................................................................................11

*Dorsey v. Portfolio Equities, Inc.*,
   540 F.3d 333 (5th Cir. 2008) ...............................................................................................4

*Eng'g Dynamics, Inc. v. Structural Software, Inc.*,
   26 F.3d 1335 (5th Cir. 1994) ............................................................................................13

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)...............................................................................10, 11

*Flava Works, Inc. v. Clavio*,
    No. 11-C-05100, 2012 WL 2459146 (N.D. Ill. June 27, 2012)................................13

*Guajardo v. Freddie Records, Inc.*,
    Civ. A. No. H–10–2024, 2012 WL 4674489 (S.D. Tex. Aug. 29, 2012)...............12

*Hines v. Overstock.com, Inc.*,
    380 F. App'x 22 (2d Cir. 2010) ...........................................................................7

*Home Design Servs., Inc. v. J.F. Schoch Bldg. Corp.*,
    Civ. A. No. 2:11CV574, 2012 WL 442008 (E.D. Va. Feb. 10, 2012) ....................13

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*,
    307 F. Supp. 2d 521 (S.D.N.Y. 2004)..................................................................17

*In re Online Travel Co.*,
    953 F. Supp. 2d 713 (N.D. Tex. 2013) ..................................................................8

*IT Strategies Grp., Inc. v. Allday Consulting Grp., L.L.C.*,
    975 F. Supp. 2d 1267 (S.D. Fla. 2013) ..................................................................8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    387 F.3d 522 (6th Cir. 2004) ................................................................................16

*Marshall v. McConnell*,
    No. Civ.A. 3:05-CV-10621, 2006 WL 740081 (N.D. Tex. Mar. 23, 2006) ...........14

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2010) ................................................................................17

*MGE UPS Sys., Inc. v. GE Consumer & Indus.*,
    622 F.3d 361 (5th Cir. 2010) .....................................................................14, 15, 18

*Nguyen v. Barnes & Noble, Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ...............................................................................7

*Norris v. Hearst Trust*,
    500 F.3d 454 (5th Cir. 2007) .................................................................................1

*Omnibus Int'l, Inc. v. AT & T, Inc.*,
    111 S.W.3d 818 (Tex. App.—Dallas 2003, pet. granted, judgm't vacated
    w.r.m.) ...............................................................................................................9

*Peel & Co. v. Rug Mkt.*,
    238 F.3d 391 (5th Cir. 2001) ................................................................................13

*Pollstar v. Gigmania, Ltd.*,
170 F. Supp. 2d 974 (E.D. Cal. 2000)...................................................................8

*Recursion Software, Inc. v. Interactive Intelligence, Inc.*,
425 F. Supp. 2d 756 (N.D. Tex. 2006) ..................................................................6

*Salt Optics, Inc. v. Jand, Inc.*,
No. SACV-10-0828 DOC, 2010 WL 4961702 (C.D. Cal. Nov. 19, 2010)..........13

*Smith Int'l, Inc. v. Egle Grp., LLC*,
490 F.3d 380 (5th Cir. 2007) ...............................................................................4

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002)................................................................................6, 7

*Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*,
553 F. Supp. 2d 680 (N.D. Tex. 2008) ...............................................................11

*Sw. Airlines Co. v. BoardFirst, L.L.C.*,
No. 3: 06-CV-0891-B, 2007 WL 4823761 (N.D. Tex. 2007) .................................6

*Synopsys, Inc. v. ATopTech, Inc.*,
Case No. C 13–cv–02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) .......13

*Taylor v. IBM*,
No. 02-10391, 54 F. App'x 794 (5th Cir. Dec. 10, 2002) ..............................12, 14

*Ticketmaster Corp. v. Tickets.Com, Inc.*,
No. CV997654HLHVBKX, 2003 WL 21406289 (C.D. Cal. Mar. 7, 2003)..........10

*United States ex rel. Grubbs v. Kanneganti*,
565 F.3d 180 (5th Cir. 2009) ...............................................................................4

*United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
336 F.3d 375 (5th Cir. 2003) ...............................................................................1

*United States v. Reichert*,
747 F.3d 445 (6th Cir. 2014) .............................................................................15

*Universal City Studios, Inc. v. Corley*,
273 F.3d 429 (2d Cir. 2001).............................................................................15

*Visitor Indus. Publ'ns, Inc. v. NOPG, L.L.C.*,
91 F. Supp. 2d 910 (E.D. La. 2000)...................................................................11

**STATUTES**

17 U.S.C. § 102(b) (2008) ......................................................................................12

17 U.S.C. § 1201(a)(3)(B) (2008)................................................................................................15

**OTHER AUTHORITIES**

37 C.F.R. § 202.1 (2015) ............................................................................................................12

FED. R. CIV. P 12(b)(6)..................................................................................................................3

Plaintiffs DHI Group, Inc. and Rigzone.com, Inc. (collectively, "Plaintiffs") move to dismiss the counterclaims asserted by Single Integrated Operations Portal, Inc. d/b/a Oilpro and Oilpro.com ("Oilpro") for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated below, Oilpro's counterclaims should be dismissed.

## I.      SUMMARY OF ARGUMENT AND STAGE OF PROCEEDING

Starting in 2013, Oilpro, its President/CEO/Owner David Kent, and certain Oilpro employees surreptitiously accessed and stole proprietary and protected information located on Plaintiffs' private and secured computer systems to further Oilpro's business.  (*See* Dkt. 1, Compl. ¶¶ 2, 33–93.)  Specifically, they accessed and stole Plaintiffs' confidential database of member resumes, profiles, and other confidential information (including information from over 450,000 unique resumes) and valuable data concerning Plaintiffs' online search traffic strategies. (*Id.*)  Although all of this information was secured by technological safeguards—including password-protection, paywalls, and other log-in requirements—Defendants were able to unlawfully bypass these protections using "backdoor" access points that were installed on Plaintiffs' computer systems by or at the direction of David Kent.  (*Id.* ¶¶ 3, 36–39.)

In March 2016, the FBI raided David Kent's home and Oilpro's offices, confiscating computers and servers containing the stolen information of hundreds of thousands of Rigzone members.  David Kent was arrested and charged with wire fraud and conspiracy to commit wire fraud and violations of the federal Computer Fraud and Abuse Act.  (*See id.* ¶ 117; *see also* Ex. 1, Crim. Compl.[1])  The U.S. Attorney's Office of the Southern District of New York

---

[1]      Plaintiffs request that the Court take judicial notice of the Criminal Complaint as a matter of public record, since doing so will not convert the motion to dismiss into a motion for summary judgment.  *See United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) ("In deciding a motion to dismiss the court may consider . . . matters of which judicial notice may be taken."); *Norris v. Hearst Trust*, 500 F.3d 454, 461

then filed a two-count information against David Kent for conspiracy and wire fraud. (*See* Dkt. 1, Compl. ¶ 117; *see also* Ex. 2, Crim. Info.[2])  David Kent waived indictment of these charges and now awaits his February 2017 criminal trial. (*See* Dkt. 1, Compl. ¶ 117.)

Plaintiffs then filed this lawsuit against Oilpro, David Kent, and others seeking to recover for their unlawful theft, misappropriation, and use of Plaintiffs' proprietary information. In response, and in apparent retaliation, Oilpro has now amended its answer to include unsupported contract, trespass, and copyright claims, alleging that Plaintiffs impermissibly accessed and downloaded information from Oilpro's website.

Oilpro's counterclaims, however, do not withstand scrutiny and cannot proceed. Although Oilpro alleges a breach of contract claim based on certain Terms and Conditions posted on the Oilpro website, Oilpro does not allege how, when, or whether Plaintiffs ever assented to those Terms and Conditions.  Nor were the Terms and Conditions relied upon by Oilpro even in effect at the time of the alleged wrongdoing.  Indeed, Oilpro alleges that Plaintiffs accessed the Oilpro website "*on or before June 16, 2015*" (Dkt. No. 34, Countercl. ¶ 20 (emphasis added)), yet the Terms and Conditions attached to Oilpro's Counterclaim were not published to its website until September of that year.  Oilpro's attempt to retroactively apply these Terms and Conditions is nothing more than Oilpro's latest effort to injure Plaintiffs.

Oilpro's purported "allegations" fare no better on the remaining claims.  For example, Oilpro does not (i) identify any copyrighted or copyrightable work that was allegedly copied, (ii) identify any effective technological measure *in place at the time of the alleged*

---

n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."); *Devon Wilmington v. Bay Area Utils., LLC*, No. CV H-15-3031, 2015 WL 7779332, at *1 n.2 (S.D. Tex. Dec. 2, 2015) ("Exhibits A through E are prior court filings. Nationstar requests the court take judicial notice of these matters of public record. The court will do so, as they may be considered in a motion to dismiss without converting it to a motion for summary judgment.").

[2]      Plaintiffs request that the Court take judicial notice of the Information filed by the U.S. Attorney's Office as a matter of public record.  *See supra* note 1.

*misconduct*, (iii) allege any facts to suggest that Plaintiffs ever circumvented a technological measure in order to access the allegedly copied materials, or (iv) identify any other act performed by Plaintiffs that allegedly infringed Oilpro's copyrights or otherwise constituted wrongful interference with Oilpro's personal property.  In summary:

1.  **Failure to state a breach of contract claim (Count 2).**  Oilpro fails to state a claim for breach of its website's Terms and Conditions because (i) the Terms and Conditions as alleged are not enforceable as a matter of law, and (ii) the Terms and Conditions referenced and appended to the Counterclaim were not in effect at the time of Plaintiffs' alleged access to the Oilpro website.

2.  **Failure to state a claim for trespass to chattels (Count 1).**  Oilpro fails to state a trespass to chattels claim because (i) Oilpro has not alleged facts sufficient to show that Plaintiffs' alleged access was wrongful, and (ii) Oilpro's own allegations demonstrate that the information allegedly accessed by Plaintiffs was available to the public, including search engines, crawlers, and Plaintiffs.

3.  **Failure to state a claim for copyright infringement (Count 4).**  Oilpro fails to state a claim for copyright infringement because: (i) the broad categories of materials that Oilpro asserts as the basis of its infringement claims, including the Oilpro website as a whole, are not entitled to copyright protection as a matter of law; (ii) Oilpro has failed to provide fair notice of the portions of its works that were allegedly infringed and how; and (iii) even if Oilpro's unidentified works are somehow protected by copyright, Oilpro has not pleaded facts supporting the copying element of its copyright claim.

4.  **Failure to state a claim under the DMCA (Count 3).**  Oilpro fails to state a claim under the DMCA because Oilpro has not alleged facts sufficient to support the elements of its DMCA claims, such as:  (i) the existence of copyrighted works, (ii) that Oilpro effectively controlled access to the works that it claims were copied a the time of the alleged copying, and (iii) that Plaintiffs circumvented any technological measure in order to access those materials.

Accordingly, Oilpro's counterclaims should be dismissed.

## II.    STANDARD OF REVIEW

Rule 12(b)(6) mandates dismissal of a complaint when its allegations "fail[] to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To avoid dismissal, a

plaintiff must have provided both fair notice of the nature of the claim and plausible factual allegations to support the claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The plaintiff's claims "must make relief plausible, not merely conceivable, when taken as true," *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), and the Court should "not strain to find inferences favorable to the plaintiff." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal quotation marks omitted). "[A] plaintiff is obligated to provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Bradley v. Phillips Petrol. Co.*, 527 F. Supp. 2d 625, 636 (S.D. Tex. 2007) (quoting *Twombly*, 550 U.S. at 555), *aff'd*, 337 F. App'x 397 (5th Cir. 2009). Where, as here, Oilpro has "not nudged [its] claims across the line from conceivable to plausible, [its] [counterclaims] must be dismissed." *Twombly*, 550 U.S. at 570.

## III.     ARGUMENT AND STATEMENT OF ISSUES

Oilpro asserts counterclaims for (i) breach of contract (Dkt. No. 34, Countercl. ¶¶ 33–39); (ii) trespass to chattels (*id.* ¶¶ 28–32); (iii) copyright infringement (*id.* ¶¶ 44–47); and (iv) violations of the DMCA (*id.* ¶¶ 40–43). As discussed below—and as is apparent from even a cursory review of Oilpro's allegations—each of these claims is deficient and should be dismissed.

### A.     Breach of Contract

Oilpro fails to state a breach of contract claim because it never alleges the existence of a binding contract. Under Texas law, to state a claim for breach of contract, a plaintiff must allege "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d

380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).   Tellingly, Oilpro never alleges that Plaintiffs became Oilpro members or did anything to affirmatively accept Oilpro's Terms and Conditions.   Nor does Oilpro allege that the Terms and Conditions were conspicuously posted on its website such that Plaintiffs were required to review them before accessing and downloading information from Oilpro's website.

Instead, Oilpro claims that the mere "use" of the Oilpro website equates to acceptance of its Terms and Conditions.  (Dkt. No. 34, Countercl. ¶ 12.)  But, that does not make its Terms and Conditions binding and enforceable under the law.  As explained below, federal courts routinely hold that merely posting terms and conditions somewhere on a website does not constitute an agreement.   Instead, courts refer to these as unenforceable "browsewrap" agreements.  Even if Oilpro had sufficiently alleged that Plaintiffs assented to the Terms and Conditions (which they did not), such allegations still would not state a claim for breach of contract given that the Terms and Conditions cited in and appended to Oilpro's Counterclaim were not even posted on Oilpro's website at the time of the alleged wrongful conduct—indeed, they were not added until months *later*.  (*Compare* Dkt. No. 34, Countercl. ¶ 20 (alleging that Plaintiffs accessed Oilpro website "on or before June 16, 2015") *with* Dkt. No. 34, Countercl., Ex. A, Terms and Conditions dated September 2, 2015.)

1.    **Because Oilpro has not alleged facts sufficient to show that Plaintiffs assented to the Terms and Conditions, the Counterclaim does not state a claim for breach of contract.**

Oilpro's Counterclaim does not state a viable breach of contract claim because the Terms and Conditions constitute an unenforceable "browsewrap" agreement.  That is because Oilpro has not alleged—and indeed, cannot allege—that either Plaintiff ever created an Oilpro member account or affirmatively accepted Oilpro's Terms and Conditions.  Moreover, there are

no factual allegations in Oilpro's Counterclaim to suggest that Plaintiffs ever viewed, accepted, or became bound by Oilpro's browsewrap provisions.

To adequately plead a breach of contract claim, Oilpro must allege facts sufficient to show that Plaintiffs assented to the contractual terms that it seeks to enforce. *Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 3: 06-CV-0891-B, 2007 WL 4823761, at *4 (N.D. Tex. 2007). In contrast to other types of online agreements, a browsewrap agreement is not automatically binding on a user and, in fact, a user may even "download software under a browsewrap license prior to manifesting assent to its terms." *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 781 n.14 (N.D. Tex. 2006). This is because a browsewrap agreement (or license) does not require acceptance before a user accesses or uses a website but, instead, is simply posted as "part of a web site—its terms may be posted on the site's home page or may otherwise be accessible via a hyperlink." *Id.*

In order to bind a user to the terms of a browsewrap agreement like that at issue here, a claimant must prove either (i) "express unambiguous assent" to the terms of the agreement or (ii) that the user "view[ed] the . . . terms or bec[a]me aware of their existence before proceeding" with the alleged breach. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 23 (2d Cir. 2002). In *Specht*, for example, the website at issue did not display the terms of use or require a visitor to agree to such terms before accessing the site. *Id.* at 28–30. Instead, the terms were only available through a link at the bottom of a home page that required a visitor to take affirmative acts, such as scrolling all the way down to the bottom of the page. *Id.* at 24. The *Specht* court found these terms and conditions of use unenforceable, explaining:

> Reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility. We hold that a reasonably prudent offeree in plaintiffs' position would not have known or learned, prior to acting on the invitation to download, of the reference to . . . [the] license terms hidden below the "Download" button on the next screen.

*Id.* at 35.

Similarly, in *Cvent, Inc. v. Eventbrite, Inc.*, the court granted a motion to dismiss a breach of contract claim where a company alleged that a competitor had scraped information off of its website and made it available on its own website. 739 F. Supp. 2d 927, 937–38 (E.D. Va. 2010). To support its breach of contract claim, the plaintiff submitted photographic evidence showing a link to the terms of use on the plaintiff's homepage and also "ma[de] bare assertions that its Terms of Use were prominently displayed on its website, that defendants had an 'opportunity to review' the Terms of Use . . . , and that defendants manifested assent to those terms merely by accessing" plaintiff's website. *Id.* The court granted the motion to dismiss the plaintiff's claims, concluding that the plaintiff's allegations were "plainly insufficient under the *Iqbal* and *Twombly* standard" and did not allow the court to draw a reasonable inference that there was "a meeting of the minds and a manifestation of mutual assent." *Id.*[3]

As these cases demonstrate, Oilpro's conclusory allegations that "Defendants accessed the Oilpro website with knowledge of the Oilpro Terms and Conditions," (Dkt. No. 34,

---

[3]      *See also Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 25 (2d Cir. 2010) (affirming denial of motion to dismiss or stay in favor of arbitration where the website owner "did not allege any facts tending to show that a user would have had actual or constructive knowledge of the Terms and Conditions"); *Be In, Inc. v. Google Inc.*, No. 12-CV-03373-LHK, 2013 WL 5568706, at *9 (N.D. Cal. Oct. 9, 2013) (granting motion to dismiss breach of contract claim because plaintiff provided "no grounds, beyond the mere existence of a link, for the Court to find that Defendants were put *on notice* that mere use of the website would be interpreted as agreement to the Terms of Service"); *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014) (affirming denial of motion to compel arbitration and concluding "that where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice").

Countercl. ¶ 36), and "accepted and agreed to the Oilpro Terms and Conditions," (*id.* ¶ 35), are not sufficient to allow this Court to draw a reasonable inference that Plaintiffs assented to the Terms and Conditions.[4]   *See, e.g.*, *Cvent*, 739 F. Supp. 2d at 937–38.   Accordingly, Oilpro's breach of contract claim must be dismissed.

> **2.**   **The Terms and Conditions cited in and attached to Oilpro's Counterclaim were not even in effect at the time of the alleged wrongdoing.**

Oilpro claims that Plaintiffs accessed its website and violated its Terms and Conditions "[o]n or before June 16, 2015."   (Dkt. No. 34, Countercl. ¶ 20.)   But, the only Terms and Conditions identified in Oilpro's Counterclaim are dated September 2, 2015—three months after Plaintiffs' alleged access and breach.   (*Id.*, Ex. 1.)   Claims for this type of retroactive enforcement have been repeatedly rejected by federal courts.   *See, e.g.*, *In re Online Travel Co.*, 953 F. Supp. 2d 713, 718 (N.D. Tex. 2013) (noting that different versions of the same online User Agreement were only enforceable against plaintiffs that accessed the website during the time periods that the agreements were in force); *IT Strategies Grp., Inc. v. Allday Consulting Grp., L.L.C.*, 975 F. Supp. 2d 1267, 1280–81 (S.D. Fla. 2013) (denying injunctive relief based on an alleged breach of a browsewrap agreement because the date of the user agreement postdated when the plaintiff accessed the website).   Accordingly, Oilpro's breach of contract claim fails as a matter of law and must be dismissed.

---

[4]      Even today, the homepage of Oilpro's website includes no mention of any Terms and Conditions, or other restrictions on visitors use of the website.  Instead, the Terms and Conditions that Oilpro seeks to enforce are only displayed to visitors who elect to create an account on the Oilpro website.  In order to become aware of the terms, a visitor must leave the website's homepage by selecting a "Create a Profile" link located in the homepage's upper right-hand corner, which will direct the visitor to a profile creation page.  The visitor then must highlight and select a small, optional link titled "Terms and Conditions," which reroutes the visitor yet again to the purported agreement that Oilpro now seeks to enforce.  Plaintiffs ask that the Court take judicial notice of this publicly available website that is referenced and relied upon in Oilpro's Counterclaim, the relevant portions of which are attached hereto as Exhibit 4.  *See, e.g.*, *Cvent*, 39 F. Supp. 2d at 937–38 (taking judicial notice of location of terms of use on party's website when considering motion to dismiss claims for breach of the terms of use and copyright infringement); *Pollstar v. Gigmania, Ltd.*, 170 F. Supp. 2d 974, 978 (E.D. Cal. 2000) ("In the present case, some of the contents of the pollstar.com web site were alleged in the complaint. In particular, the license agreement and its notice is mentioned in the Complaint. Moreover, neither party disputes the web site's authenticity. Therefore, the court can and does consider the pollstar.com web site in determining Gigmania's Rule 12(b)(6) motion.").

B.     **Trespass to Chattels**

Paralleling its contract claim, Oilpro attempts to transform Plaintiffs' alleged access to publicly-available information on Oilpro's website into a trespass claim.  To properly allege a claim for trespass to chattels, Oilpro must allege (1) wrongful interference with the use or possession of property and (2) actual damage or deprivation of use for a substantial period. *DirecTV, Inc. v. Chin*, No. SA-03-CA-0660-RF, 2003 WL 22102144, at *2 (W.D. Tex. Aug. 26, 2003); *Omnibus Int'l, Inc. v. AT & T, Inc.,* 111 S.W.3d 818, 826 (Tex. App.—Dallas 2003, pet. granted, judgm't vacated w.r.m.).  Because Oilpro fails to state a claim under these elements, its trespass to chattels claim should be dismissed.

In an effort to satisfy the first element, Oilpro attempts to elevate its deficient breach of contract claim into an allegation of wrongful interference.  Oilpro contends that Plaintiffs' alleged access "violat[ed] the Oilpro Terms and Conditions" and, therefore, constitutes a wrongful interference with Oilpro's website.  (Dkt. No. 34, Countercl. ¶ 30.)  As explained above, however, Oilpro's allegations do not support a plausible claim that Plaintiffs were aware of the Terms and Conditions, let alone that they were bound by them.  Accordingly, for the same reasons that Oilpro's Counterclaim fails to state a breach of contract claim, Oilpro's unsupported allegations regarding its Terms and Conditions do not plausibly support a finding of wrongful interference.

Next, Oilpro baldly asserts that Plaintiffs "unlawfully gained access to and interfered and intermeddled with the Oilpro website and Oilpro's computer systems and servers," (*id.* ¶ 30), yet the Counterclaim does not identify any law, regulation, code, or other legal requirement that would render Plaintiffs' alleged access or download of information unlawful. Nor does it allege any other facts to show that Plaintiffs' actions were otherwise improper.  To

the contrary, Oilpro concedes that the information on its website was available for access, retrieval by search engines, and download on publicly-accessible pages of its website.  (*Id*. ¶ 17.)

The explanation for these pleading defects is simple:  all of the information that Plaintiffs allegedly accessed or copied was publicly available, unsecured, and not subject to any restriction at the time of the alleged interference.  Viewing information published on a publicly available website is not a trespass to any recognizable property interest.  *See, e.g.*, *Ticketmaster Corp. v. Tickets.Com, Inc.*, No. CV997654HLHVBKX, 2003 WL 21406289, at *3 (C.D. Cal. Mar. 7, 2003) (rejecting notion that "mere use of a spider to enter a publically available web site to gather information, without more, is sufficient to fulfill the harm requirement for trespass to chattels").  Simply put, there has been no wrongful conduct—and certainly no allegations to support such a claim.  Accordingly, Oilpro's allegations do not support a claim for trespass to chattels.

## C.      Copyright Infringement

To state a claim for copyright infringement, Oilpro must allege facts (i) to support the existence of a valid copyright, and (ii) that the Plaintiffs, without authorization, copied the protected work.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

Here, Oilpro fails to state a claim for copyright infringement because: (1) Oilpro's "website" is not entitled to copyright protection; (2) Oilpro has failed to provide fair notice of the portions of its works that were allegedly infringed and how; and (3) even if Oilpro's unidentified works are somehow protected by copyright, "substantial similarity" has not been pleaded.

### 1.      Oilpro does not allege a copyrighted work.

To survive a motion to dismiss, Oilpro must plead facts sufficient to identify the copyrighted work that Plaintiffs allegedly infringed.  Yet, rather than identify any particular copyrighted work on its website, Oilpro broadly claims that the "Oilpro Website [as a whole] is

an original work." (Dkt. No. 34, Countercl. ¶ 13.)  This sweeping reference to seemingly every aspect of the website, including "the page layout, design, graphical elements, and organization of member profile pages, as well as the Oilpro homepage and news feed" (*id*.), does not state a valid claim for copyright infringement.  The United States Copyright Office has expressly acknowledged as much.  (*See* Ex. 3, United States Copyright Office Circular 66.)  Specifically, Circular 66 describes certain types of online work that are not afforded copyright protection, including "website," "layout," "design," and "format."  (*Id*.)  Thus, even though "a website may well contain copyrightable elements, . . . [the website itself] is not registrable."  *Darden v. Peters*, 488 F.3d 277, 288 (4th Cir. 2007); *Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, 553 F. Supp. 2d 680, 700 (N.D. Tex. 2008) ("[T]he whole of the copyrighted work is the apparel webpage, not the entire website.").

Furthermore, the only material that Oilpro alleges was downloaded is unspecified "data and information" from Oilpro's website, which are not the type of "works" that give rise to a copyright claim.  (Dkt. No. 34, Countercl. ¶ 46 (describing Plaintiffs' alleged infringement as "cop[ying] the Oilpro Website and publish[ing] *that data and information* on the DHI Open Web commercial service") (emphasis added).)  In *Feist*, for example, the Supreme Court held that an alphabetically arranged phone book lacks the creativity and originality necessary to sustain a copyright, and the names and information contained in the book were not themselves subject to copyright.  *See Feist*, 499 U.S. at 349, 362–63.  Similarly, in *Donald v. Zack Meyer's T.V. Sales & Service*, 426 F.2d 1027, 1031 (5th Cir. 1970), the Fifth Circuit held that boilerplate contractual language printed on a blank form was insufficiently original.

Courts have adopted this approach because the U.S. Copyright Act protects only "original works of authorship fixed in any tangible medium of expression."  *Visitor Indus.*

*Publ'ns, Inc. v. NOPG, L.L.C.*, 91 F. Supp. 2d 910, 913 (E.D. La. 2000) (citing 17 U.S.C. § 102

(1999)).  Mere ideas, concepts, facts, and information—like the allegedly infringed works at

issue here—are not copyrightable.  *See* 17 U.S.C. § 102(b) (2008); *Taylor v. IBM*, No. 02-10391,

54 F. App'x 794, at *1 (5th Cir. Dec. 10, 2002) (per curiam) ("[W]here all that has been copied

is plaintiffs' idea, there is no copyright infringement."); 37 C.F.R. § 202.1 (2015) ("Words and

short phrases such as names" are not copyrightable); *Darden*, 488 F.3d at 286 (stating same);

*Brown v. Ames*, 201 F.3d 654, 658 (5th Cir. 2000) ("[A] name or likeness is not copyrightable.").

Thus, because Oilpro has failed to allege any infringement of an original work of

authorship, Oilpro does not state a copyright claim as a matter of law.

### 2.     Oilpro failed to plead sufficient facts to identify the allegedly infringing or infringed works.

Even assuming that some aspect of Oilpro's website was in fact copyright-

protected, Oilpro's allegations would remain insufficient.  As this Court has previously decided,

"each defendant is entitled to know how they are alleged to have infringed on [a claimant's]

copyrights and what actions or conduct, as to each copyrighted work, constitutes infringement."

*Guajardo v. Freddie Records, Inc.*, Civ. A. No. H–10–2024, 2012 WL 4674489, at *4 (S.D. Tex.

Aug. 29, 2012).  Oilpro, however, makes no attempt to identify the allegedly infringed or

infringing "data or information" or to attribute the alleged infringing acts to any particular

"Counter-Defendant."

Oilpro does not include any photographs of the alleged copyright-protected

information or specifically describe the works that it alleges Plaintiffs have acquired, nor does it

provide the url or name of the infringed or infringing works.  Even construing Oilpro's

allegations in its most favorable light, and accepting all well-pleaded factual allegations as true,

it remains impossible to identify even one of the works that serve as the basis for Oilpro's

copyright claims.  These types of threadbare factual allegations of copyright infringement do not satisfy the threshold pleading requirement under the Federal Rules that the allegations be sufficient to establish a plausible right to relief.  *See, e.g.*, *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1345 (5th Cir. 1994); *see also Salt Optics, Inc. v. Jand, Inc.*, No. SACV-10-0828 DOC, 2010 WL 4961702, at *6 (C.D. Cal. Nov. 19, 2010) (dismissing copyright claims that purportedly encompassed all "text(s), photograph(s), selection, arrangement and compilation" of plaintiff's websites and catalogs because complaint did not "identify which portions of the website or catalog" Defendants allegedly infringed); *Flava Works, Inc. v. Clavio*, No. 11-C-05100, 2012 WL 2459146, at *2 (N.D. Ill. June 27, 2012) (granting motion to dismiss where plaintiff's "broad and conclusory allegations" did not "point to a specific copyrighted work that was infringed").[5]

### 3.    Oilpro fails to allege facts to support a plausible claim of actual copying.

Finally, to establish copyright infringement, Oilpro must also demonstrate that Plaintiffs actually copied Oilpro's protected work.  *See Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 575 (5th Cir. 2003).  "As direct evidence of copying is rarely available, factual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity."  *Peel & Co. v. Rug Mkt.*, 238 F.3d 391, 394 (5th Cir. 2001).

---

[5]      *See also Synopsys, Inc. v. ATopTech, Inc.*, Case No. C 13–cv–02965 SC, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013) (rejecting claim that defendant had access to and copied copyrighted materials without specific allegations of the acts or works that infringed plaintiff's copyright); *Home Design Servs., Inc. v. J.F. Schoch Bldg. Corp.*, Civ. A. No. 2:11CV574, 2012 WL 442008, at *4 (E.D. Va. Feb. 10, 2012) ("[T]he Court cannot even begin to assess the sufficiency of Plaintiff's Complaint with respect to the similarity of Defendant's homes to Plaintiff's copyrighted models because Plaintiff has provided no information whatsoever about the allegedly infringing works. Plaintiff's threadbare and factually devoid assertions that the homes built by Defendants were 'copied largely or were exact duplicates' of Plaintiff's copyrighted designs, fall far short of satisfying the pleading requirements of Rule 8(a)."); *Chambers v. Apple Inc.*, Civ. A. No. 3:14–cv–00972–MG, 2014 WL 7044167, at *5 (D.S.C. Dec. 12, 2014) (holding that "Complaint's reference to twelve unidentified pieces of work falls short of satisfying the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure").

Here, the first element (access) is not in dispute—Oilpro allowed the public, including search engines and Plaintiffs, unrestricted access to virtually all areas of its website. Oilpro nevertheless fails to sufficiently allege actual copying because it makes no attempt to establish the second factor: a probative similarity between any aspect of Oilpro's website and the data and information on the DHI Open Web commercial service.   Indeed, other than a conclusory allegation that Plaintiffs incorporated some unidentified information into the Open Web website, Oilpro makes no attempt to demonstrate any similarity between Oilpro's website and the Open Web website.  Nor does it identify any copied or reproduced materials.

By failing to allege how or when either Plaintiff infringed Oilpro's copyrighted works or what the allegedly infringed or infringing works even are, Oilpro fails to state a claim for copyright infringement and its copyright claim should be dismissed.  *See, e.g.*, *Marshall v. McConnell*, No. Civ.A. 3:05-CV-10621, 2006 WL 740081, at *4 (N.D. Tex. Mar. 23, 2006) (dismissing copyright infringement claim based on broad references to "copying, using and/or incorporating" "certain legal treatises and forms" for failure to state a claim); *Taylor v. IBM*, 54 F. App'x 794 at *1 (affirming dismissal of copyright infringement claims under Rule 12(b)(6) where appellants "failed to allege specific acts of infringement by each defendant, thereby failing to adhere to the requirements of Fed. R. Civ. P. 8(a)") (emphasis added).

## D.      Digital Millennium Copyright Act Claim

Oilpro also fails to state a claim under the DMCA.   "The DMCA's anti-circumvention provision states, 'No person shall circumvent a technological measure that effectively controls access to a work protected under this title.'" *MGE UPS Sys., Inc. v. GE Consumer & Indus.*, 622 F.3d 361, 365 (5th Cir. 2010) (quoting 17 U.S.C. § 1201(a)(1)(A)).

As a threshold matter, and as explained above, the information that Oilpro contends that Plaintiffs accessed is not even subject to copyright.  Accordingly, there can be no

violation of the DMCA.  *See United States v. Reichert*, 747 F.3d 445, 448 (6th Cir. 2014) ("[T]he DMCA 'targets the *circumvention* of digital walls *guarding copyrighted material* (and trafficking in circumvention tools) . . . .'") (second emphasis added); *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 435 (2d Cir. 2001) (same); *see also MGE UPS Sys.*, 622 F.3d at 366.

Even if that were not the case, however, Oilpro still does not allege facts that would plausibly satisfy either of the two key elements of its DMCA claim—namely, (1) that, at the time of the alleged copying, Oilpro effectively controlled access to the information that it claims was copied, and (2) that Plaintiffs circumvented any access control measure to access that information.  The allegedly infringed works were all available for access and download on publicly-accessible pages of Oilpro's website.  (*See* Dkt. No. 34, Countercl. ¶ 17.)  Thus, as pleaded, Oilpro's Counterclaim contains no plausible allegations that, at the time of the alleged access, Oilpro utilized measures to control access to the information that was allegedly copied or that Plaintiffs ever circumvented any effective access controls.

1.      **Oilpro fails to allege the existence of any "effective access control measures" at the time of the alleged access.**

To "effectively control[] access to a work," a technological measure must, "in the ordinary course of its operation, require[] the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work."  17 U.S.C. § 1201(a)(3)(B) (2008); *MGE UPS Sys.*, 622 F.3d at 365–66.  Because the statute refers to "control[ling] access to a work protected under this title," it does not naturally apply when the "work protected under this title" is otherwise accessible.  *Id.*

The Sixth Circuit, for example, recently dismissed a claim under Section 1201(a) of the DMCA for failure to state a claim where the allegations did not sufficiently demonstrate that the purported safeguard (an authentication sequence) actually controlled access to the

copyrighted computer program.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 547 (6th Cir. 2004).  In *Lexmark*, the copyrighted program could be accessed by merely purchasing one of the plaintiff's printers and reading the program code directly from the printer memory.  *Id*. at 546–47.  Thus, although the authentication sequence blocked access to the program through actual use of the printer, it did not prevent access to and use of the computer program's literal code, which the Sixth Circuit considered insufficient to allege the existence of an effective access control measure:

> Just as one would not say that a lock on the back door of a house "controls access" to a house whose front door does not contain a lock and just as one would not say that a lock on any door of a house "controls access" to the house after its purchaser receives the key to the lock, it does not make sense to say that this provision of the DMCA applies to otherwise-readily-accessible copyrighted works. Add to this the fact that the DMCA not only requires the technological measure to "control[] access" but also requires the measure to control that access "effectively," and it seems clear that this provision does not naturally extend to a technological measure that restricts one form of access but leaves another route wide open.

*Id*. at 547 (citation omitted) (alteration in original).

Unlike the computer program in *Lexmark*, the "data and information" that Plaintiffs are alleged to have downloaded from Oilpro's website was not even partially protected by an access control measure at the time of the alleged access.  Indeed, at the time of the alleged access by Plaintiffs, Oilpro left the ability to access that information through search engines, crawlers, and other means entirely open to the general public, including Plaintiffs.  (*See, e.g.*, Dkt. No. 34, Countercl. ¶ 17 (conceding that, even today, Oilpro's website can be accessed by the public through search engines and by "some webcrawlers").)

Because Oilpro has failed to allege any plausible facts that would support its claim that a technological control measure was in place at the time of the alleged copying, as required by the DMCA, its DMCA claim must be dismissed.  *Twombly*, 550 U.S. at 570.

**2.      Oilpro fails to allege any plausible facts to show that Plaintiffs actually circumvented any technological measure.**

To "'circumvent a technological control measure'" means 'to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner.'" *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 945 (9th Cir. 2010) (quoting 17 U.S.C. § 1201(a)(3)(A)).

For the same reasons stated above, Plaintiffs would have had no need to circumvent any technological measure in order to access any allegedly infringed works—the Oilpro website was open to the public and could be accessed through search engines.  (*See* Dkt. No. 34, Countercl. ¶ 17.)  Although Oilpro's Counterclaim alleges that Oilpro *currently* employs certain technological measures to protect its computers and servers, (*see id.* ¶ 41), it does not allege that any such measures were in place at the time of Plaintiffs' alleged access.  Nor does it contain any *factual allegation* indicating that Plaintiffs actually did alter or circumvent a control measure in order to access Oilpro's purported copyrights.  Instead, Oilpro rests its entire DMCA claim on its own unsupported conclusion that "Counter-Defendants circumvented the Technological Safeguards."  (*Id.* ¶ 42.)

Because Oilpro has failed to allege any plausible facts that would support its claim that Plaintiffs circumvented a technological measure that was in place at the time of Plaintiffs' alleged access, its DMCA claim must be dismissed.  *See Twombly*, 550 U.S. at 570; *see also I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 532–33 (S.D.N.Y. 2004) ("Defendant is alleged to have accessed plaintiff's protected website without plaintiff's authorization.  Defendant did not surmount or puncture or evade any technological measure to do so; instead, it used a password intentionally issued by plaintiff to another

entity. . . . Whatever the impropriety of defendant's conduct, the DMCA and the anti-circumvention provision at issue do not target this sort of activity."); *MGE UPS Sys.*, 622 F.3d at 366 ("MGE did not present any evidence showing that a GE/PMI representative altered the Pacret and Muguet software such that a dongle was not required to use the software; rather, employees simply used the software after the alteration was made.  As such, the actions by GE/PMI employees did not amount to circumvention. Without proving GE/PMI actually circumvented the technology, MGE does not present a valid DMCA claim.").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court dismiss Defendant Oilpro's counterclaims.

DATED:  September 2, 2016

Respectfully submitted,

BAKER BOTTS L.L.P.


By: _/s/ Kevin T. Jacobs_
    Kevin T. Jacobs
    State Bar No. 24012893
    Federal ID No. 26665
    Justin Lipe
    State Bar No. 24083401
    Federal ID No. 2053646
    Christine Ng
    State Bar No. 24087678
    Federal ID No. 2210307
    One Shell Plaza
    910 Louisiana Street
    Houston, Texas 77002-4995
    Telephone:  (713) 229-1234
    Facsimile:  (713) 229-7847
    kevin.jacobs@bakerbotts.com
    justin.lipe@bakerbotts.com
    christine.ng@bakerbotts.com


ATTORNEYS FOR PLAINTIFFS
DHI GROUP, INC. f/k/a DICE
HOLDINGS, INC. AND
RIGZONE.COM, INC.

OF COUNSEL:
Richard B. Harper
Douglas W. Henkin
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 408-2500
Facsimile:  (212) 408-2501
richard.harper@bakerbotts.com
douglas.henkin@bakerbotts.com

**Certificate of Service**

I certify that a true and correct copy of the foregoing document has been served by ECF on all counsel of record on this 2nd day of September, 2016.

/s/ Kevin T. Jacobs
Kevin T. Jacobs

27630658

20