# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC., | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | |
| DAVID W. KENT, JR., SINGLE INTEGRATED OPERATIONS PORTAL, INC. D/B/A OILPRO AND OILPRO.COM, ESTEVAN DUFRIN, MATTHEW KENT, BRYAN ROBINS, JEREMY ANTONINI, AND JOHN DOE NOS. 1-10, | § § § § § § § § | C.A. NO.: 4:16-cv-01670 |
| Defendants. | § | |

## PLAINTIFFS DHI GROUP, INC.'S AND RIGZONE.COM, INC.'S MOTION TO COMPEL

**TABLE OF CONTENTS**

I. Introduction .................................................................................................................. 1

II. Factual Background ..................................................................................................... 2

    A. Defendants' Unauthorized Access to Plaintiffs' Confidential and Proprietary Information ........................................................................................................... 2

    B. Kent's Criminal Case ........................................................................................... 2

    C. The Claims in this Lawsuit ................................................................................. 4

III. Legal Standard ............................................................................................................. 4

IV. Argument ..................................................................................................................... 5

    A. Defendants should be ordered to produce information and materials exchanged with the federal government. ............................................................................... 5

    B. Kent should be ordered to produce documents and information relating to his finances and net worth. ........................................................................................ 7

V. Prayer ......................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Al Parker Buick Co. v. Touchy*,
    788 S.W.2d 129 (Tex. App.—Houston [1st Dist.] 1990, no writ) ............................................ 9

*Ellison v. Patterson–UTI Drilling Co.*,
    Civ. A. No. V-08-67, 2009 WL 3247193 (S.D. Tex. Sept. 23, 2009) ....................................... 9

*Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*,
    258 F.R.D. 149 (S.D. Tex. 2009) ............................................................................................. 1

*Ferko v. NASCAR*,
    218 F.R.D. 125 (E.D. Tex. 2003) ............................................................................................. 8

*Gruss v. Zwirn*,
    No. 09 Civ. 6441 PGG MHD, 2013 WL 3481350 (S.D.N.Y. July 10, 2013) .......................... 6

*In re Caremark Int'l, Inc. Sec. Litig.*,
    No. 94-C-4751, 1995 WL 557496 (N.D. Ill. Sept. 14, 1995) .................................................. 6

*In re Garth*,
    214 S.W.3d 190 (Tex. App.—Beaumont 2007, orig. proceeding [mand.
    dism'd]) ................................................................................................................................... 9

*In re Jacobs*,
    300 S.W.3d 35 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding
    [mand. dism'd]) ........................................................................................................................ 9

*In re Pac. Pictures Corp.*,
    679 F.3d 1121 (9th Cir. 2012) ................................................................................................. 6

*LeBlanc v. Bryan Imports, Inc.*,
    No. Civ. A. 99-3769, 2000 WL 628740 (E.D. La. May 15, 2000) .......................................... 9

*Lunsford v. Morris*,
    746 S.W.2d 471 (Tex. 1988) ................................................................................................ 8, 9

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,
    894 F.2d 1482 (5th Cir. 1990) ................................................................................................. 5

*Merrill v. Waffle House, Inc.*,
    227 F.R.D. 467 (N.D. Tex. 2005) ............................................................................................ 1

*Wright v. Weaver*,
    No. 4:07-cv-369, 2009 WL 5170218 (E.D. Tex. Dec 18, 2009) .............................................. 9

**STATUTES**

Computer Fraud and Abuse Act § 1030(a)(2)(C) .............................................................................4

**OTHER AUTHORITIES**

FED. R. CIV. P. 26(b)(1) ...............................................................................................1, 4, 8, 9, 10

Plaintiffs DHI Group, Inc. f/k/a Dice Holdings, Inc. ("DHI Group") and Rigzone.com, Inc. ("Rigzone.com" and collectively, "Plaintiffs") respectfully file this Motion to Compel Defendants David W. Kent, Jr. ("Kent") and Single Integrated Operations Portal, Inc. d/b/a Oilpro and Oilpro.com ("Oilpro," and together with Kent, "Defendants") to respond fully to Plaintiffs' discovery requests and produce certain responsive documents.

## I.   INTRODUCTION

Plaintiffs are entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). For discovery purposes, "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim or defense of any party." *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009) (emphasis added) (citations omitted). Stated differently, "[u]nless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005).

Notwithstanding this very broad threshold for seeking discovery, Defendants seek to withhold critical documents and information exchanged with the federal government in connection with the prosecution of Kent's unlawful access and theft of proprietary and protected information located on Plaintiffs' private and secured computer systems. Indeed, asserting unfounded, boilerplate objections of privilege, irrelevance, and undue burden, Defendants refuse to provide *any* such materials, despite their undeniable relevance to key issues in this parallel civil proceeding. Additionally, Kent has refused to produce

documents related to his finances and net worth that are relevant to Plaintiffs' allegations and the elements of their claims.

## II. FACTUAL BACKGROUND

### A. Defendants' Unauthorized Access to Plaintiffs' Confidential and Proprietary Information

Starting in 2013, Oilpro, its President/CEO/Owner Kent, and certain Oilpro employees surreptitiously accessed and stole proprietary and protected information located on Plaintiffs' private and secured computer systems to further Oilpro's business. (*See* Dkt. 1, Compl. ¶¶ 2, 33–93.) Specifically, they accessed and stole Plaintiffs' confidential database of member resumes, profiles, and other confidential information (including information from over 450,000 unique resumes) and valuable data concerning Plaintiffs' online search traffic strategies. (*Id.*) Although all of this information was secured by technological safeguards—including passwords, paywalls, and other log-in requirements—Defendants unlawfully bypassed these protections using "backdoor" access points that were installed on Plaintiffs' computer systems by or at the direction of Kent. (*Id.* ¶¶ 3, 36–39.)

### B. Kent's Criminal Case

In March 2016, the FBI raided Kent's home and Oilpro's offices, confiscating computers and servers containing the stolen information of hundreds of thousands of Rigzone members. Kent was arrested and charged in a Criminal Complaint with (1) wire fraud and (2) conspiracy to commit computer hacking and wire fraud. (Ex. 1, Crim. Compl. ¶¶ 1–7.) The Criminal Complaint also outlined a scheme to defraud Plaintiffs through a pattern of computer hacking and other illegal activities by Kent, at least one other Oilpro employee, and others, known and unknown, between 2013 and 2016, including the following:

- **The First Round of Hacks**: "[O]n or about October 17, 2013 and on or about April 15, 2014, approximately 100,000 suspicious" HTTP requests bombarded

Rigzone.com with a computer command that was "crafted to exploit a piece of source code unique to [Rigzone.com] known only to a few individuals, including DAVID W. KENT, the defendant," and caused "the unauthorized access of information from *approximately 96,000 resumes*." (*Id.* ¶ 23 (emphasis added).)

- **The Second Round of Hacks**: "[O]n or about June 17, 2015 and on or about August 2, 2015, approximately 750,000 suspicious HTTP requests" bombarded Rigzone.com with a different computer command that "exploited" a certain file called "resume_writer.asp" that "[o]nly a person with intimate knowledge of how resume_writer.asp works and how [Rigzone.com] catalogued each resume . . . would be able to submit the appropriate commands to extract such a large quantity of resumes in such a short period of time," and caused "the unauthorized access of information from *approximately 700,000 resumes*." (*Id.* ¶ 24 (emphasis added).)

- **The Google Analytics Hacks**: Emails between Kent and Estevan Dufrin ("Dufrin") show that Plaintiffs' "password-protected Google Analytics account" was hacked to actively monitor "user engagement" with Rigzone.com in at least January and June of 2015. (*Id.* ¶ 26.)

- **The Attempted Third Hack**: "[O]n or about December 11, 2015, at least five suspicious HTTP requests" attempted to collect any resumes that had been added to Plaintiffs' website since the second round of hacks, but "the Attempted Third Hack did not result in the extraction of any real resumes" because Plaintiffs had modified the resume_writer.asp file to prevent more unauthorized access. (*Id.* ¶ 27.)

- **The Attempt to Defraud DHI Group**: During this time, Kent and his team were attempting to defraud DHI Group by "sen[ding] emails and phone calls to [DHI Group] to persuade [DHI Group] to invest in or acquire [Oilpro.com], the membership of which was increased after KENT illegally accessed client information from the database of [Rigzone.com]." (*Id.* ¶¶ 5, 21, 27.)

On June 3, 2016, the U.S. Attorney's Office for the Southern District of New York filed a two-count criminal information against Kent, charging him with two counts: (1) conspiracy to commit computer fraud and (2) wire fraud. (Ex. 2, Crim. Info., ¶¶ 1, 5.) On December 19, 2016, the U.S. Attorney's Office for the Southern District of New York filed a superseding information against Kent, charging him with one count of computer fraud. (Ex. 3, Superseding Info., ¶ 1.) As stated in a December 19, 2016 press release issued by the United States Attorney's Office for the Southern District of New York, "[t]he charge stemmed from KENT's role in repeatedly

hacking into [Rigzone.com's] database to steal customer information and attempting to sell Oilpro to the same company whose database KENT had hacked." (Ex. 4, Dec. 19, 2016 Press Release.) On the same day, December 19, 2016, Kent waived indictment in open court and entered a guilty plea for fraud and related activity in connection with computers. (*See* Ex. 6, Waiver of Indictment, and Ex. 10, Dec. 19, 2016 Hr'g Tr., 19:9-24.) Two days later, on December 21, 2016, Kent "consent[ed] to the entry of a money judgment in the amount of $2,932,800." (Ex. 5, Consent Prelim. Order of Forfeiture/Money Judgment.)

### C. The Claims in this Lawsuit

Following Kent's federal indictment, Plaintiffs filed this lawsuit against Oilpro, Kent, and others seeking to recover for the very same unlawful hacks, fraudulent activities, and misappropriation of information at issue in Kent's criminal proceeding. And although Plaintiffs seek recovery under a variety of statutory and common law theories not presented in the criminal proceeding, the factual allegations underlying this civil action and Kent's criminal case are so intertwined that liability in this case has been effectively confirmed as to Kent and Oilpro by virtue of Kent's guilty plea and his admissions in open court in his criminal case. (*See, e.g.*, Ex. 10, Dec. 19, 2016 Hr'g Tr., 13:2–9, 14:11–12.) Indeed, Kent was charged with, pleaded guilty to, and was convicted of "fraud and related activity in connection with computers," a violation of § 1030(a)(2)(C) of the Computer Fraud and Abuse Act ("CFAA")—the precise statute cited, here, as the basis for one of Plaintiffs' CFAA claims. (*See id.*, 19:9-24.)

### III. LEGAL STANDARD

Plaintiffs are entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). As the parties refusing to comply with Plaintiffs' discovery requests, Kent and Oilpro bear the burden of showing specifically how each discovery request is not relevant or otherwise

objectionable.  *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).  Neither Defendant can satisfy this burden.

IV. **ARGUMENT**

Plaintiffs seek to compel two discrete categories of documents and discovery responses from Defendants: (1) documents, communications, and materials exchanged between Defendants and either the Federal Bureau of Investigation ("FBI") or the U.S. Attorney's Office; and (2) net worth information for Kent.  The relevance of this information is readily apparent and proportional to the needs of this case.  Defendants' objections are insufficient to warrant protection from complying with these requests.

A. **Defendants should be ordered to produce information and materials exchanged with the federal government.**

Defendants have provided no legitimate basis for refusing to produce *any* of the documents, communications, and electronic devices that they have exchanged with the FBI or the U.S. Attorneys' Office, including documents concerning "the Defendants, Rigzone, the Federal Complaint [against Kent], the Federal Information [against Kent], th[is] lawsuit," or even documents and communications concerning the "alleged wire fraud" and "illegal action[s]" that serve as the very basis of Plaintiffs' lawsuit.  (*See* Ex. 7, D. Kent's RFP Resp. Nos. 5, 16-18, and Ex. 8, Oilpro's RFP Resp. Nos. 5, 16-18.)

Defendants similarly refuse to provide any of the materials identified in Plaintiffs' other discrete requests concerning the federal government's investigation, including:

- Recordings of Kent's FBI interview on the date of his arrest (*see* Ex. 7, D. Kent's RFP Resp. No. 6, and Ex. 8, Oilpro's RFP Resp. No. 6);

- Transcripts of Kent's interview on the date of his arrest (*see* Ex. 7, D. Kent's RFP Resp. No. 7, and Ex. 8, Oilpro's RFP Resp. No. 7);

- Specific hard drives produced by the U.S. Attorney's Office (*see* Ex. 7, D. Kent's RFP Resp. No. 9, and Ex. 8, Oilpro's RFP Resp. No. 9); or

- Even the mere identity of the documents, files, equipment, and tangible items provided to the federal government (*see* Ex. 9, D. Kent's Interrog. Resp. Nos. 11, 12).

This evidence goes to the heart of Plaintiffs' case—documents and information concerning the federal government's investigation into the very practices and unlawful acts that form the basis of Kent's criminal case, his guilty plea, and Plaintiffs' claims and damages in this lawsuit. Moreover, among these materials are the electronic devices that Defendants used to perpetuate their criminal activities, misappropriate Plaintiffs' proprietary information, and store and convert Plaintiffs' member information, as well as, presumably, the documents and materials used to quantify the number of members misappropriated from Plaintiffs' proprietary databases. It is hard to even fathom a more directly relevant set of materials than these or how the production of this discrete set of materials is not proportional to the needs of this case.

There is simply no basis for Defendants to avoid production of these relevant, non-privileged materials, given that they were voluntarily exchanged between adversaries in Kent's criminal proceeding. Such documents are not protected by law enforcement, attorney-client, or work-product privilege. Nor can Defendants hide them behind a manufactured shield of confidentiality, as Kent contends. *See In re Caremark Int'l, Inc. Sec. Litig.*, No. 94-C-4751, 1995 WL 557496, at *2-3 (N.D. Ill. Sept. 14, 1995) (granting motion to compel defendant to produce certain documents relating to investigation of defendant by Department of Justice and other governmental entities); *Gruss v. Zwirn*, No. 09 Civ. 6441 PGG MHD, 2013 WL 3481350, at *13 (S.D.N.Y. July 10, 2013) (recognizing that "the Courts of Appeal have uniformly rejected the argument that a producing party can preserve the attorney-client privilege and work product protection as to documents produced to an adverse government agency through use of a confidentiality agreement" and compelling production of documents relating to statements disclosed to SEC despite the existence of a confidentiality agreement); *In re Pac. Pictures Corp.*,

679 F.3d 1121, 1128–29 (9th Cir. 2012) (rejecting argument that confidentiality agreement with U.S. Attorney's Office protected documents provided to that entity in connection with criminal investigation and compelling production of such documents).

Accordingly, Plaintiffs seek an order compelling Defendants to respond fully to the discovery requests identified above and remove their evasive and unfounded objections.

> **B.   Kent should be ordered to produce documents and information relating to his finances and net worth.**

To probe certain categories of their damages, as well as any alleged damages that Defendants seek to recover, Plaintiffs propounded the following discovery requests seeking information relating to Kent's finances and net worth, including:

> **Interrogatory No. 2:**  Please identify all of your sources of income from January 1, 2012 to present.
>
> **Interrogatory No. 3:**  Please identify the total amount of income or payments that you received from each source identified in your answer to Interrogatory No. [2].
>
> **Interrogatory No. 4:**  Please identify all of your current assets.
>
> **Interrogatory No. 5:**  Please identify all of your current debts.
>
> **Request for Production No. 155:**  Please produce any and all books, records, documents, and instruments relating to money earned or received by you from any source, including but not limited to salary, bonuses, overtime compensation, commissions, dividends, interest, proceeds from sale of property, and gifts, within the last four (4) years, including, without limitation, payroll stubs, federal income tax returns, W-2 earnings statements, and 1099 forms.
>
> **Request for Production No. 160:**  Please produce all records, correspondence, or documents pertaining to any and all securities and investments in which you own or claim, or have owned or claimed, any interest within the last four (4) years, whether held by you or in your spouse's name, or in your name jointly with any other person or entity, or in your name as trustee or for the benefit of any other person, or otherwise, including, but not limited to, the brokerage account and trading account records and statements.

In response, Kent asserted a host of improper objections, arguing that (i) the requests "seek[] personal, private, privileged and confidential information that is not relevant or material to any claims or defenses asserted in this case," and (ii) the requests are impermissible until the post-judgment discovery phase of trial. (*See* Ex. 7, D. Kent's RFP Resp. to Nos. 155–65, 167–71; Ex. 9, Kent's Interrog. Resp. Nos. 2–6.)

Plaintiffs, however, are entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Kent contends that each of these requests is overbroad and unduly burdensome. But he has not demonstrated how producing his own financial records could unduly burden him. Similarly, there is no basis for Kent's various overbreadth objections. Here, damages are an element of all of Plaintiffs' claims against Kent, and Plaintiffs' damages model will likely include as one category of damages a calculation of the benefits and profits received by Defendants as a result of Defendant's illegal and tortious conduct. Furthermore, the requested financial and net worth information is relevant to Defendant's punitive damages claims against Kent. So are the other categories of information requested by Plaintiffs—tax returns, brokerage and bank statements, and income records—as each may provide admissible evidence regarding Kent's financial assets. *See Ferko v. NASCAR*, 218 F.R.D. 125, 137 (E.D. Tex. 2003) ("Courts have consistently found that evidence of a defendant's financial worth is relevant, discoverable, and admissible at trial to evaluate a plaintiff's punitive damages claim.").

Indeed, the Texas Supreme Court has unambiguously held that a defendant's net worth is relevant in suits involving exemplary damages. *Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex. 1988), *overruled on other grounds*, *Walker v. Packer*, 827 S.W.2d 833, 842 (Tex. 1992). "Therefore, in cases where punitive or exemplary damages may be awarded, parties

may discover and offer evidence of a defendant's net worth." *In re Jacobs*, 300 S.W.3d 35, 40 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding [mand. dism'd]) (citing *Lunsford*, 746 S.W.2d at 473)). Likewise, district courts in this Circuit have found that "evidence of net worth is relevant, discoverable, and admissible at trial to evaluate a plaintiff's punitive damage claim." *Wright v. Weaver*, No. 4:07-cv-369, 2009 WL 5170218, at *4 (E.D. Tex. Dec 18, 2009); *see also Ellison v. Patterson–UTI Drilling Co.*, Civ. A. No. V-08-67, 2009 WL 3247193, at *2 (S.D. Tex. Sept. 23, 2009) (compelling net worth discovery in employment discrimination case); *LeBlanc v. Bryan Imports, Inc.*, No. Civ. A. 99-3769, 2000 WL 628740, at *4 (E.D. La. May 15, 2000) (under federal law, evidence of financial worth and ability to pay is admissible to evaluate the amount of punitive damages).

To obtain net worth information, courts have made clear that a party "need not satisfy any evidentiary prerequisite, such as making a prima facie showing of entitlement to punitive damages, before discovery of net worth is permitted." *In re Jacobs*, 300 S.W.3d at 40; *see also In re Garth*, 214 S.W.3d 190, 192 (Tex. App.—Beaumont 2007, orig. proceeding [mand. dism'd]); *see also Lunsford*, 746 S.W.2d at 473 (rejecting requirement of prima facie showing because "[o]ur rules of civil procedure and evidence do not require similar practices before net worth may be discovered"); *Al Parker Buick Co. v. Touchy*, 788 S.W.2d 129, 131 (Tex. App.—Houston [1st Dist.] 1990, no writ).

Thus, contrary to Kent's unfounded objections, the requested documents are, in fact, relevant to the damages issues in this case. And in order to properly prepare and present their damages figures, Plaintiffs must be allowed discovery regarding the requested financial and net worth information. Accordingly, Plaintiffs' motion to compel should be granted, and Kent

should be ordered to fully respond to the foregoing requests. FED. R. CIV. P. 26(b)(1) (discovery is proper and should be permitted on any issue that is "relevant to any party's claim or defense").

## V. PRAYER

For the reasons stated above, Plaintiffs' motion to compel should be granted, and Defendants should be ordered to fully respond to the foregoing requests and remove their unfounded objections.

DATED: April 27, 2017

                                        Respectfully submitted,

                                        BAKER BOTTS L.L.P.

                                        By: */s/ Kevin T. Jacobs*
                                               Kevin T. Jacobs
                                               State Bar No. 24012893
                                               Federal ID No. 26665
                                               Justin G. Lipe
                                               State Bar No. 24083401
                                               Federal ID No. 2053646
                                               Christine Ng
                                               State Bar No. 24087678
                                               Federal ID No. 2210307
                                               One Shell Plaza
                                               910 Louisiana Street
                                               Houston, Texas 77002-4995
                                               Telephone:  (713) 229-1234
                                               Facsimile:  (713) 229-7847
                                               kevin.jacobs@bakerbotts.com
                                               justin.lipe@bakerbotts.com
                                               christine.ng@bakerbotts.com

                                        ATTORNEYS FOR PLAINTIFFS
                                        DHI GROUP, INC. f/k/a DICE
                                        HOLDINGS, INC. AND
                                        RIGZONE.COM, INC.

OF COUNSEL:
Richard B. Harper
Douglas W. Henkin
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 408-2500
Facsimile:  (212) 408-2501
richard.harper@bakerbotts.com
douglas.henkin@bakerbotts.com

Active 35233760                                            11

## CERTIFICATE OF CONFERENCE

I certify that Plaintiffs' counsel has conferred with counsel for Defendants David W. Kent, Jr. and Single Integrated Operations Portal, Inc. d/b/a Oilpro and Oilpro.com on the 26th day of April, 2017, and that this motion is opposed.

*/s/ Justin G. Lipe*
Justin G. Lipe

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served by ECF on all counsel of record on this 27th day of April, 2017.

*/s/ Justin G. Lipe*
Justin G. Lipe