**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DHI GROUP, INC. f/k/a DICE HOLDINGS, INC. and RIGZONE.COM, INC., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION H-16-1670 |
| DAVID W. KENT, JR., SINGLE INTEGRATED OPERATIONS PORTAL, INC. d/b/a OILPRO and OILPRO.COM, *et al.*, | § § § § | |
| *Defendants*. | § § | |

## ORDER

Pending before the court is a Memorandum and Recommendation ("M&R") in which the Magistrate Judge recommends that plaintiffs/counterdefendants DHI Group, Inc., f/k/a Dice Holdings, Inc. and Rigzone.com, Inc.'s (collectively, "DHI") motion to dismiss (Dkt. 64) the counterclaims asserted by defendants/counterplaintiffs Single Integrated Operations Portal, Inc. d/b/a Oilpro and Oilpro.com (collectively, "Oilpro") be granted in part and denied in part. Dkt. 102. DHI filed objections to the M&R, and Oilpro responded to the objections. Dkts. 107, 114. After considering the M&R and related documents, the objections, the response, and applicable law, the court is of the opinion that the M&R should be ADOPTED IN FULL.

### I. BACKGROUND

The factual background of this case is fully set forth in the M&R (Dkt. 102 at 2–6), and the court hereby ADOPTS the background section of the M&R in full.

In sum, DHI and Oilpro both have websites for oil and gas professionals that include job postings. Dkt. 102. On June 10, 2016, DHI filed a lawsuit against Oilpro and others asserting that

the defendants hacked into their system and accessed and used various information in violation of the Computer Fraud and Abuse Act, the Stored Wire and Electronic Communications and Transactional Records Access Act, the Racketeer Influenced and Corrupt Organizations Act, the Texas Harmful Access by Computer Act, the Texas Theft Liability Act, and the Texas Uniform Trade Secrets Act. Dkt. 1. DHI also asserts common law claims of misappropriation of confidential information, conversion, trespass to chattels, fraud, breach of fiduciary duty, unfair competition, tortious interference with present and prospective business relationships, civil conspiracy, and aiding and abetting. *Id.*

Oilpro filed an answer to the complaint on July 15, 2016, and it filed an amended answer in which is also asserted counterclaims on August 5, 2016. Dkts. 16, 34. On November 15, 2016, Oilpro filed its second amended answer and counterclaims. Dkt. 63. Oilpro asserts the following counterclaims: (1) computer fraud and abuse in violation of 18 U.S.C. § 1080; (2) trespass to chattels; (3) breach of contract; (4) violations of the Digital Millennium Copyright Act; (5) copyright infringement; (6) misappropriation; (7) trademark infringement in violation of 15 U.S.C. § 1051; (8) common-law trademark infringement; (9) harmful access by computer in violation of § 33.02 of the Texas Penal Code; (10) unjust enrichment; and (11) interference with prospective business relations.

On December 5, 2016, DHI filed a motion to dismiss the Oilpro's counterclaims. Dkt. 64. It asserted that Oilpro's counterclaims should be dismissed because Oilpro does not provide sufficient allegations to support any of its counterclaims. Dkt. 64. Oilpro filed a response arguing that the second amended answer and counterclaims sets forth enough facts to support each counterclaim Oilpro alleges. Dkt. 72. DHI filed a reply. Dkt. 82. On April 21, 2017, the Magistrate Judge issued an M&R in which she recommended that the court grant the motion to dismiss Oilpro's

trespass to chattels and unjust enrichment claims but deny the motion to dismiss the remaining claims. Dkt. 102. DHI objects to the Magistrate Judge's recommendation to deny its motion to dismiss the remaining counterclaims. Dkt. 107. Oilpro requests that the court overrule DHI's objections and enter an order adopting the Magistrate Judge's recommendations. Dkt. 114.

## II. LEGAL STANDARDS

### A. Review of an M&R

A party may file objections to an M&R on a dispositive motion within fourteen days of being served with a copy of a written order. Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1)(C). The district court judge then "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The judge may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

### B. Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007). In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings, and attachments thereto, in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

## III. ANALYSIS

### A. Breach of Contract

The Magistrate Judge recommended that DHI's motion to dismiss Oilpro's breach of contract claim be denied. Dkt. 102. The breach of contract claim is based on the terms and conditions of Oilpro's website. Dkt. 63. These terms and conditions were contained in what is known as a browsewrap agreement. "'[A] browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly'"; rather, a party provides his or her assent "'simply by using the website.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (quoting *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 366–67 (E.D.N.Y. 2009)). Because there is no affirmative step to acknowledge assent to the agreement, it is necessary to show the user had actual or constructive knowledge of the terms and conditions to prove a valid contract exists between the user and the owner of the website. *Id.*

The Magistrate Judge noted in the M&R that "Oilpro alleges that Plaintiffs had knowledge of the terms and conditions on Oilpro's website, agreed to them through the use of Oilpro's website, and violated them by scraping, crawling, or using other automated means to download date from the website." Dkt. 102 at 12. She held that these allegations of breach of contract were sufficient to survive a motion to dismiss. *Id.*

DHI objects to the Magistrate Judge's recommendation to deny its motion to dismiss Oilpro's claim for breach of contract, asserting that the M&R does not identify any facts alleged in the

second amended answer and counterclaims that support a plausible claim that DHI assented to, or was even aware of, the terms and conditions of Oilpro's site. Dkt. 107. DHI further argues that the allegations that DHI accessed Oilpro's site with knowledge of OilPro's terms and conditions are conclusory and such threadbare allegations are insufficient to avoid a motion to dismiss. *Id.*

Oilpro asserts, in response, that the second amended answer and counterclaims contains allegations that DHI knew the terms and conditions on Oilpro's website existed and prohibited use of automated means to download data. Dkt. 114 (citing Dkt. 63 at 27, 30). Oilpro argues that it does not need to allege that DHI was a member of the website or affirmatively viewed the terms and conditions or even that the terms and conditions were prominent on the website. *Id.* It contends that a "browsewrap contract is binding when a website user has 'actual or constructive knowledge of a site's terms and conditions prior to using the site.'" *Id.* (quoting *Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 3:06-CV-0891-B, 2007 WL 4823761, at *5 (N.D. Tex. Sept. 12, 2007)).

The court has conducted a *de novo* review of the cases provided and arguments asserted and concludes that the Magistrate Judge correctly held that Oilpro states a claim for breach of contract. In the first case DHI cites to support dismissal of the breach of contract counterclaim, a federal district court in the Eastern District of Virginia determined that conclusory allegations relating to breach of a browsewrap agreement were insufficient to raise a plausible claim. *Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927, 937 (E.D. Va. 2010). The court noted that "[m]ost courts . . . have held that in order to state a plausible claim for relief based upon a browsewrap agreement, the website user must have had actual or constructive knowledge of the site's terms and conditions, and have manifested assent to them." *Id.* In *Cvent*, the plaintiff alleged that the terms of use were "'readily available for review.'" *Id.* Merely stating that the terms and conditions were available is much different than the allegations in the second amended answer and counterclaim here,

which alleges that when DHI "used automated means to scrape the Oilpro Website, [it] knew or should have known that Oilpro's Terms and Conditions prohibited this conduct because [DHI's] terms of use for [its] own website prohibit this same sort of conduct." Dkt. 63 at 30.

In the second case cited by DHI to support its argument, the Ninth Circuit held, when considering the actual or constructive notice issue, that "where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176–79 (9th Cir. 2014). Here, Oilpro is not relying only on the fact that the agreement was on the pages and available. Oilpro alleges constructive notice because DHI has a similar site with a similar browsewrap agreement. Thus, even if there are no allegations that DHI took affirmative action to acknowledge assent, the court finds that the allegations relating to DHI's constructive knowledge provide more than that the agreement was available and raise the claim to plausible. This conclusion is confined, of course, to instances where both parties are sophisticated businesses that use browsewrap agreements on their websites.

The cases cited by Oilpro, *Reis, Inc. v. Spring11 LLC* and *AvePoint, Inc. v. Power Tools, Inc.*, support this conclusion. In *Reis*, a federal district court in the Southern District of New York noted that a motion to dismiss a breach of contract claim based on a browsewrap agreement may be denied if the defendant's conduct demonstrates that it was aware it was violating service terms. No. 15 Civ. 2836 (PGG), 2016 WL 5390896, at *13 (S.D.N.Y. Sept. 26, 2016). The amended complaint in *Reis* asserted that the defendant, among other things, used a masked IP address when it accessed the database. *Id.* The court denied the motion to dismiss. *Id.*

In *AvePoint*, the court noted that the plaintiff pointed to facts supporting a finding that the defendant had actual or constructive knowledge of the terms and conditions because the defendant allegedly created a fake profile and email account in order to download the software. 981 F. Supp. 2d 496, 511 (W.D. Va. 2013). Here, while there are no allegations of a fake profile, the allegations that DHI knew or should have known about the browsewrap agreement because it uses a similar agreement on its own site are sufficient to state a plausible claim for relief. DHI's objections to the Magistrate Judge's recommendation to deny its motion to dismiss the breach of contract counterclaim are OVERRULED.

## B. Copyright Infringement

With regard to Oilpro's copyright infringement claim, the Magistrate Judge found that (1) Oilpro met its *prima facie* burden of showing that it owned a valid copyright by providing the United States copyright registration of its website; and (2) Oilpro's allegations that its website is an original work and that DHI infringed on the copyright by copyOctober 25, 2017ing data, including member profiles, and publishing them on Dice Open Web, were sufficient to survive a motion to dismiss Oilpro's copyright infringement claim. Dkt. 102.

DHI objects to this finding, asserting that (1) Oilpro does not identify any material, information, or work that was both subject to copyright protection and actually copied by DHI; and (2) the copyright infringement counterclaim does not even contain allegations as to how or when DHI infringed Oilpro's copyrighted works or what the infringing works are. Dkt. 107.

Oilpro first points out that it must prove that it owned a valid copyright and that DHI copied protected elements of the copyrighted work to prevail on its copyright infringement claim. Dkt. 114 (citing *FloaTEC, LLC v. Magnuson*, No. CIV.A. H-13-2313, 2013 WL 5873363, at *3 (S.D. Tex. Oct. 30, 2013)). Oilpro asserts that it alleged both components in its copyright infringement

counterclaim, which alleges that Oilpro owns a valid, registered copyrights of its website and that DHI accessed the website and copied data, member profiles, and other information from the website. *Id.* (citing Dkt. 63 at 27, 30). Oilpro argues that the additional information that DHI suggests is needed about exactly what, how, or when wrongfully applies a heightened pleading standard to a copyright infringement claim. *Id.* Oilpro additionally asserts that the "extent and details of the wrongfully scraped information published by [DHI] is not available publicly without paying [DHI]." *Id.*

First of all, as Oilpro suggests, proof of a "copyright infringement claim requires proof of (1) ownership of a valid copyright; and (2) actionable copying, which is the copying of constituent elements of the work that are copyrightable." *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003). Courts in this circuit do not apply a heightened pleading standard to copyright infringement cases, so Oilpro must only satisfy the *Twombly/Iqbal* plausibility standard. *See Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, No. 3:16-CV-1651-L, 2016 WL 4944370, at *12 (N.D. Tex. Sept. 16, 2016) (collecting cases that indicate there is no heightened pleading standard for copyright infringement cases in the Fifth Circuit). The second amended counterclaim alleges that the entire Oilpro Website is an original work that includes a "distinctive page layout, design, graphical elements, and organization of member profile pages . . . ." Dkt. 63 at 27. Oilpro provides a copy of its Certificate of Registration with the U.S. Copyright Office as an exhibit to its second amended answer and counterclaims. *See* Dkt. 63, Ex. B. The title of the work listed on this registration is "Oilpro.com website." *Id.* The second amended answer and counterclaims goes on the allege that DHI "improperly downloaded data, member profiles, and other information from the Oilpro Website" and "then published information from the Oilpro Website on a website owned by DHI Group called Dice Open Web . . . ." *Id.* at 30. Since Oilpro alleges the entire website, including

8

the page layout and organization of the member profile pages, is part of its registered copyright and that DHI published this information on its own website, Oilpro has stated a plausible claim for copyright infringement. DHI's objections to the Magistrate Judge's recommendation to deny its motion to dismiss the copyright infringement claim is OVERRULED.

## C.    DMCA Claim

The Magistrate Judge also recommended denying DHI's motion to dismiss Oilpro's Digital Millennium Copyright Act ("DMCA") claim. Dkt. 102. Under the DMCA, "No person shall circumvent a technological measure that effectively controls access to a work protected by this title." 17 U.S.C. § 1201(a)(1)(A). "Circumvent a technological measure" means "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). "Effectively controls access to a work" means that the measure must, "in the ordinary course of its operation, require[] the application of information, or a process of treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B). The DMCA provides copyright owners "a remedy against those who did not themselves infringe a copyright but instead circumvented technological controls and thereby enabled others to infringe." *United States v. Reichert*, 747 F.3d 445, 448 (6th Cir. 2014). Thus, it "'targets the *circumvention* of digital walls guarding copyrighted material (and trafficking in circumvention tools),' even though it 'does not concern itself with the *use* of those materials after circumvention has occurred.'" *Id.* (quoting *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 443 (2d Cir. 2001)).

The Magistrate Judge, in recommending denial of the motion to dismiss, reasoned that Oilpro stated a claim under the DMCA because Oilpro alleged in the second amended counterclaim that it "had technological measures in place, including a robots.txt file, monitoring software, and firewall

software, to prevent automated technologies from accessing the website" and DHI "circumvented these technological measures to access the Oilpro website and download material that was then published on [DHI's] own website." Dkt. 102 at 16.

DHI first asserts that Oilpro's DMCA claim fails because its copyright infringement claim fails. Dkt. 107. It then notes that even if the court agrees with the Magistrate Judge on the copyright infringement claim, it should grant DHI's motion to dismiss the DMCA claim because the M&R does not identify "any non-conclusory, factual allegation in Oilpro's Counterclaim that could possibly demonstrate the effective-control and circumvention elements of Oilpro's DMCA claim." Dkt. 107 at 7. DHI contends that the M&R contains "a series of inaccurate, assumed facts . . . that were never even alleged by Oilpro" and that the security devices discussed in the second amended counterclaim "are far more limited than the characterizations adopted in the [M&R]." *Id.* at 8. DHI argues that the fact that Oilpro has stated that the robot.txt file "*may* qualify as a technological measure" is telling because it does not indicate that the robot.txt file is an effective technological safeguard. *Id.* Additionally, it points out that the second amended counterclaim merely states that the firewall is used to "*monitor* activity," not to actually block data scraping. *Id.*

Oilpro asserts that the Magistrate Judge correctly denied DHI's motion to dismiss Oilpro's DMCA counterclaim because it alleged in the second amended answer and counterclaims that it "had technological measures in place, including a robots.txt file, monitoring software, and firewall software, to prevent automated technologies from accessing the website" and DHI "circumvented these technological measures to access the Oilpro website and download material that was then published on [DHI's] own website." Dkt. 114.

The second amended answer and counterclaims states that "Oilpro employs technical protocols designed to limit the sorts of bots and webcrawlers that can access the Oilpro Website."

Dkt. 63 at 29. Specifically, it points to a robots.txt file, which it describes as "a safeguard that provides a set of instructions to any automated technologies visiting the Oilpro Website." *Id.* It admits that the file permits some webcrawlers, such as search engines, to view the entire site, but contends that it "prohibits and is intended to prevent automated programs like those used by nefarious and unauthorized data scrapers." *Id.* The website also, according to Oilpro, "blocks automated technologies from scraping the data from the Oilpro Website by monitoring for automated technologies and then blocking those IP addresses from accessing Oilpro's computer systems." *Id.* Oilpro additionally discusses its use of Windows Advanced Firewall Software to block scraping by blocking offending IP addresses. *Id.* It asserts that the robot.txt file, monitoring software, and firewall software all constitute "Technological Safeguards."[1] *Id.* Oilpro unambiguously contends that DHI "knowingly and intentionally circumvented the Technological Safeguards and other Oilpro security measures to use automated means to access the Oilpro Website and improperly download data, member profiles, and other information from the Oilpro Website." *Id.* at 30. Assuming only these facts, which are clearly alleged in the second amended answer and counterclaims, are true, the

---

[1] DHI contends that Oilpro somehow limited the assertions in its second amended answer and counterclaims about the effectiveness of the robots.txt file by stating in its response to the motion to dismiss that the "'robots.txt file *may* qualify as a technological measure effectively controlling access.'" Dkt. 107 at 8 (quoting Dkt. 72) (emphasis added by DHI). In context, Oilpro made this statement while discussing cases that have found, under the facts of those cases, that the robots.txt file *does qualify* as a technological measure. *See* Dkt. 72 at 15 (citing *Healthcare Advocates, Inc. v. Harding, Early, Follmer & Frailey*, 497 F. Supp. 2d 627, 643 (E.D. Penn. 2007) ("[I]n this situation, the robots.txt file qualifies as a technological measure effectively controlling access to the archive copyrighted images.") and *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1113 (D. Nev. 2006) (noting that the "Internet industry has widely recognized the robots.txt file as a standard for controlling automated access to Web pages since 1994"). Whether it actually qualifies in this case will be determined definitively at summary judgment or by a jury. At the motion to dismiss stage, it simply must be plausible. Given the precedent cited by Oilpro as well as the affirmative representations in the second amended answer and counterclaim, it is plausible.

court finds that Oilpro has stated a plausible claim for a DMCA violation. DHI's objections to the Magistrate Judge's recommendation on this claim are OVERRULED.

**D.     Trademark Infringement Claim**

DHI next objects to the Magistrate Judge's recommendation to deny its motion to dismiss Oilpro's trademark infringement counterclaim. Dkt. 107. A trademark is "'any word, name, symbol, or device, or any combination thereof,' that is used or intended to be used 'to identify and distinguish' a person's goods 'from those manufactured or sold by others and to indicate the source of the goods even if that source is unknown.'" *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008). To establish a trademark infringement claim under the Lanham Act, a plaintiff must (1) "establish ownership in a legally protectible mark"; and (2) "show infringement by demonstrating a likelihood of confusion." *Id.* at 474. For the first prong, a mark that is registered with the Patent and Trademark Office is prima facie evidence of the mark's validity. 15 U.S.C. §§ 1057(b), 1115(a). However, a mark that is not registered may still be protected "because '[o]wnership of trademarks is established by use, not by registration.'" *Smack Apparel*, 550 F.3d at 475 (quoting *Union Nat'l Bank of Tex., Laredo v. Union Nat'l Bank of Tex., Austin*, 909 F.2d 839, 842 (5th Cir. 1990)).

A mark is protectable if it is "distinctive, either inherently or by achieving secondary meaning in the mind of the public." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). "Marks are often classified in categories of generally increasing distinctiveness; . . . they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S. Ct. 2753 (1992). "[C]ourts have held that a mark can be distinctive in one of two ways. First, a mark is inherently distinctive if '[its] intrinsic nature serves to identify a particular source'"; "[s]econd, a mark has acquired distinctiveness, even if it is not

inherently distinctive, if it has developed secondary meaning, which occurs when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211, 120 S. Ct. 1339 (2000) (quoting *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10–11 (2d Cir. 1976), and *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11, 102 S. Ct. 2182 (1982)).

> In determining whether a likelihood of confusion exists, [courts in the Fifth Circuit] consider[] the following non-exhaustive list of factors: (1) the type of trademark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion.

*Id.* at 194. "The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported by even a majority of the seven factors." *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985). "The elements in common law trademark infringement under Texas law are the same as those under federal trademark law." *Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 730 (Tex. App.—Houston [1st Dist. 2010, pet. denied).

The Lanham Act provides a statutory "fair use" defense whereby use of a mark is permissible and not a violation if the use is "otherwise than as a mark . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin[.]" 15 U.S.C. § 1115(b)(4). "The 'fair-use' defense, in essence, forbids a trademark registrant to appropriate a descriptive term for his exclusive use and so prevent others from accurately describing a characteristic of their goods." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir.1980). The defense is also available with respect to federal and state unfair competition claims. *See id.* at 1190.

To make out the statutory fair use defense, DHI must show that it made use of the mark "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 64 (2d Cir. 2000); *see Soweco, Inc.*, 617 F.2d at 1185 (noting that the "fair-use" defense described in 15 U.S.C. § 1115(b)(4) "is available only when the allegedly infringing term is used not as a trademark but 'fairly and in good faith only to describe to users the goods and services of [a] party, or their geographic origin.'" (quoting 15 U.S.C. § 1115(b)(4)). The defendant does not have an "independent burden to negate the likelihood of any confusion in raising the affirmative defense that a term is used descriptively, not as a mark, fairly, and in good faith." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 124, 125 S. Ct. 542 (2004).

The Magistrate Judge recommended denying DHI's motion to dismiss Oilpro's trademark infringement counterclaim because Oilpro pled that its mark is distinctive, valuable, and associated with its goods and services. Dkt. 102 at 29. She noted that DHI asserted a fair use defense, but found that the defense was best considered at the summary judgment stage. *Id.*

DHI argues that the court should overrule this recommendation because Oilpro did not even identify the section of the Lanham Act under which it brought the trademark infringement counterclaim, and the Magistrate Judge "strain[ed] . . . to cobble together Oilpro's allegations into a cognizable claim." Dkt. 107 at 9. It asserts that Oilpro does not state a claim under the section of the Lanham Act relied upon by the Magistrate Judge, section 43(a), because Oilpro did not allege that DHI ever misrepresented the origin or endorsement of any goods or any false advertising, and it must have done so to assert a valid claim under section 43(a). *Id.* Additionally, DHI contends that Oilpro did not provide any factual support for its conclusory statement that unauthorized use of its design mark is likely to cause confusion. *Id.* Finally, DHI takes issue with the Magistrate Judge's

decision to defer considering its fair use defense until the summary judgment stage. *Id.* at 10. DHI contends that it used Oilpro's mark to acknowledge Oilpro as the source of certain information. *Id.*

Oilpro first notes that it asserts two counterclaims of trademark infringement—one under the Lanham Act and one under Texas common law. Dkt. 114 at 10. It contends that its second amended answer and counterclaims sufficiently alleges that Oilpro owns a legally protectable mark because it pled that the mark is inherently distinctive and automatically refers to the Oilpro brand. *Id.* at 12 (providing no citation to the pleading). It also asserts that its pleading is sufficient to show likelihood of confusion because its mark is arbitrary, distinctive, and fanciful, and the allegations in the second amended answer and counterclaims support a finding that DHI intended to confuse consumers by using Oilpro's mark. *id.* As far as DHI's fair use defense, Oilpro argues that while it is acceptable to use a competitor's mark for comparison or reference purposes, it is not acceptable to use it if it creates a likelihood of confusion as to source, sponsorship, affiliation, or approval. *Id.*

In the second amended answer and counterclaims, Oilpro asserts that "[c]onsumers rely on the Oilpro Design Mark to distinguish Oilpro's goods and services from those provided or sold by others, including those of Oilpro's competitors." Dkt. 63 at 28. Oilpro claims that DHI published the information scraped from Oilpro's website, "using the OilPro Design Mark and thereby caus[ing] confusion as to whether Oilpro authorized or sponsored the content provided on the DHI Open Web Website." *Id.* at 31. The counterclaim goes on to specifically state that DHI's use of the mark on its website is "likely to cause, or is causing, confusion, mistake, and deception regarding the source, sponsorship and affiliation of the goods and services at issue amongst the consuming public to the harm of Oilpro." *Id.*

The second amended answer and counterclaims is sufficient to state plausible claims for relief for statutory and common law trademark infringement. While the second amended answer and

counterclaims does not provide sufficient information about distinctiveness of the mark to state a claim that the mark is inherently distinctive, Oilpro asserts in its trademark infringement counterclaim that its customers rely on the mark to distinguish Oilpro's goods and services from those of competitors', which plausibly indicates secondary meaning.

As far as the fair use defense, the court cannot dismiss the claim due to a defense unless the defense is apparent on the face of the second amended answer and counterclaims. *See BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 504 (S.D.N.Y. 2015) (noting that some circuits have approved dismissal pursuant to the fair use defense at the motion to dismiss stage if the "'facts necessary to establish the defense are evident on the face of the complaint'" (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013))); *cf. Garrett v. Commonwealth Mortg. Corp. of Am.*, 938 F.2d 591, (5th Cir. 1991) ("A court should . . . dismiss a case only if an affirmative defense or other bar to relief appears on the face of the complaint."). While DHI argues in its objections that it used the mark to show that Oilpro was the source of the information, the second amended answer and counterclaims does not indicate on its face that DHI used the mark on its website in good faith. Thus, dismissal based on the fair use defense is inappropriate at this stage.

DHI's objection to the Magistrate Judge's recommendation to deny DHI's motion to dismiss the trademark claims is OVERRULED.

### E.     CFAA and THACA Claims

DHI objects to the Magistrate Judge's recommendation to deny its motion to dismiss Oilpro's claims under the Computer Fraud Abuse Act ("CFAA") and the Texas Harmful Access by a Computer ("THACA") statute.  Dkt. 107.  "The CFAA criminalizes various fraudulent and damaging activities related to the use of computers," and "[c]ivil actions are authorized for some, but not all, violations [of the statute's] substantive provisions." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470

F.3d 1150, 1156 (5th Cir. 2006). Namely, under 18 U.S.C. § 1030(g), civil action "may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(I)," and violations of subsection (c)(4)(A)(i)(I) are limited to economic damages." The subclause relevant to this case, subclause (I), relates to an offense or attempted offense that caused "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I).

The THACA, like the CFAA, provides a civil remedy for knowing or intentional violation of the Texas criminal statute prohibiting access to a computer, computer network, or computer system without consent of the owner. Tex. Civ. Prac. & Remedies Code § 143.001; Tex. Penal Code § 33.02.

The Magistrate Judge carefully considered DHI's motion to dismiss Oilpro's counterclaims under the CFAA and THACA, and she concluded that the allegations that DHI knowingly violated the terms and conditions of Oilpro's website are sufficient to meet the statutory requirements of both statutes. Dkt. 102 at 20–22.

DHI asserts that the terms and conditions are contained in an unenforceable browsewrap agreement and thus there are insufficient facts alleged to rebut the notion that DHI's access was authorized. Dkt. 107. It cites to two cases that it asserts support this conclusion: *Cvent*, 739 F. Supp. 2d at 932–34, and *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016). It distinguishes the cases relied upon by the Magistrate Judge, arguing that, in those cases, there was affirmative assent or actual awareness of limitations to access. *Id.* at 14 (attempting to distinguish *United State v. John*, 597 F.3d 263 (5th Cir. 2010), and *Meats by Linz, Inc. v. Deare*, No. 3:10-CV-1511-D, 2011 WL 1515028 (N.D. Tex. Apr. 20, 2011)).

Oilpro concedes that DHI "may have been authorized to view profiles of certain member data on the Oilpro Website," but argues that DHI was "never authorized to use automated bots to download over 500,000 profiles and then use that data for [its] own commercial purposes in [its] DICE Open Web product." *Id.* at 6.

The court agrees with the Magistrate Judge that Oilpro's allegations of a knowing violation of the terms and conditions of the website are sufficient to state a claim under both the CFAA and the THACA. DHI's attempt to distinguish the cases relied upon by the Magistrate Judge because this case involves a browsewrap agreement fails because the Magistrate Judge specifically noted that this case contains allegations of a *knowing* violation of the terms and conditions contained in that browsewrap agreement. *See* Dkt. 102 at 20, 22. Neither of the cases relied upon by DHI in its objections are binding. DHI's objections to these recommendations are OVERRULED.

F.     **Misappropriation Claim**

The Magistrate Judge recommended denying DHI's motion to dismiss Oilpro's misappropriation claim, and DHI objects to this recommendation. Dkts. 102, 107. Under Texas law, the elements of an unfair competition by misappropriation claim include:

> (i) the creation by plaintiff of a product through extensive time, labor, skill and money; (ii) the use of that product by defendant in competition with plaintiff, thereby giving the defendant a special competitive advantage because he was burdened with little or none of the expense incurred by plaintiff in the creation of the product; and (iii) commercial damage to plaintiff.

*Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 788 (5th Cir. 1999). The Magistrate Judge found that Oilpro's allegations that it competed with DHI, that it expended time and labor creating its website, and that DHI wrongfully published information from Oilpro's website on DHI's website

causing DHI economic damage, were sufficient to state a claim for unfair competition by misappropriation.  Dkt. 102 at 24.

DHI argues that the Magistrate Judge erred in accepting Oilpro's "formulaic recitation of the elements of a misappropriation claim," which it contends are "wholly conclusory and bereft of any factual detail."  Dkt. 107 at 15.  DHI asserts that Oilpro fails to offer any facts supporting the existence of any product, trade secrets, or proprietary information that DHI allegedly obtained that could state a claim for misappropriation.  *Id.*

Oilpro, in response to these objections, notes that its misappropriation counterclaim contains allegations that (1) it invested in its website, computer systems and servers, and content and information on its website; (2) DHI wrongfully accessed the website and obtained data without having to invest as much as Oilpro; and (3) DHI's use of Oilpro's computer systems and servers as well as data from its website constitutes free-riding on Oilpro's investment.  Dkt. 114 at 10.  It contends these allegations are sufficient to state a claim for unfair competition by misappropriation. *Id.*

Oilpro's second amended answer and counterclaims contains more than a bare recitation of these elements.  It specifically states that Oilpro expended time, skill, and financial resources to create the website and information on the website, that DHI wrongfully accessed the site without authorization and obtained Oilpro's data without having the expend the same time, skill, and financial resources, that DHI was free-riding on Oilpro's investment, that Oilpro has had to expend even more time and resources because of this alleged unfair competition, and that Oilpro has been and will continue to be damaged by the misappropriation. Dkt. 63 at 36–37.  Thus, the objection that these allegations are conclusory or a bare recitation of the elements is OVERRULED.

## G.     Tortious Interference Claim

The Magistrate Judge also found that Oilpro alleged enough facts to survive a motion to dismiss its tortious interference with prospective business relations claim. Dkt. 102 at 30. DHI asserts that Oilpro's tortious interference claim must be dismissed because it is based on Oilpro's other causes of action, all of which are deficient and fail to state viable claims. Dkt. 107 at 17. Second, DHI argues that Oilpro has not alleged that there is a reasonable probability of any contractual relations beyond mere negotiations. *Id.* Third, DHI asserts that Oilpro has not alleged any facts that DHI acted with a conscious desire to interfere with Oilpro's prospective contractual relations. *Id.* And fourth, DHI contends that Oilpro does not allege any facts setting forth an independent tortious or wrongful act by DHI. *Id.* at 18.

Oilpro argues that it alleges in the second amended counterclaim that DHI's use of the wrongfully copied information from Oilpro's website circumvented Oilpro's customers' need to use Oilpro's website and that there was a reasonable probability that these customers would have subscribed to Oilpro's website if DHI had not interfered. Dkt. 114 at 14. Oilpro asserts that DHI either knew it was interfering with Oilpro's prospective relations or acted with a conscious desire to impact Oilpro's prospective relations, and that this caused Oilpro damage. *Id.* Oilpro argues that its counterclaim alleges all five elements of the tortious interference claim and that the Magistrate Judge correctly denied DHI's motion to dismiss this claim. *Id.*

The court has considered all of DHI's objections, the elements for a tortious interference claim, which are aptly set forth in the M&R, *see* Dkt. 102 at 29–30, and the facts set forth in the second amended counterclaim, *see* Dkt. 63. As noted by the Magistrate Judge, the facts alleged in the second amended counterclaim are sufficient to meet all of the elements of the claim. DHI's objections to this claim are OVERRULED.

## IV. Conclusion

All of DHI's objections (Dkt. 107) to the M&R (Dkt. 102) are OVERRULED. The M&R (Dkt. 102) is ADOPTED IN FULL. DHI's motion to dismiss (Dkt. 64) is GRANTED IN PART AND DENIED IN PART. It is GRANTED with regard to Oilpro's trespass to chattels and unjust enrichment claims, which are DISMISSED. It is otherwise DENIED.

Signed at Houston, Texas on October 26, 2017.

_____
Gray H. Miller
United States District Judge