UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DHI GROUP, INC. f/k/a DICE HOLDINGS, INC. and RIGZONE.COM, INC., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION H-16-1670 |
| DAVID W. KENT, JR. SINGLE INTEGRATED OPERATIONS PORTAL, INC. d/b/a OILPRO and OILPRO.COM, et al., | § § § § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is a Memorandum and Recommendation ("M&R") in which the Magistrate Judge recommends denying plaintiffs DHI Group, Inc. and Rigzone.com, Inc.'s (collectively, "DHI") motion to compel arbitration (Dkt. 133). Dkt. 175. DHI filed objections to the M&R. Dkt. 178. After reviewing the M&R, objections, related briefing, and the applicable law, the court is of the opinion that DHI's objections should be OVERRULED and the M&R should be ADOPTED IN FULL.

### I. BACKGROUND

The background facts are sufficiently set forth in the case background section of the M&R, and no parties have objected to the Magistrate Judge's recitation of the facts. The court therefore ADOPTS and incorporates the "Case Background" section of the M&R in full.

### II. LEGAL STANDARD

**A.     Review of an M&R**

A party may file objections to a Magistrate Judge's ruling within fourteen days of being

served with a copy of a written order. Fed. R. Civ. P. 72; *see also* 28 U.S.C. § 636(b)(1)(c). The standard of review used by the district court depends on whether the Magistrate Judge ruled on a dispositive or non-dispositive motion. *See* Fed. R. Civ. P. 72; *see also* 28 U.S.C. § 636(b)(1)(c). District courts must "modify or set aside any part of [an order on a nondispositive motion] that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). For dispositive motions, district courts "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 73(b)(3).

The Fifth Circuit has not reached the question of whether a motion to compel arbitration is a dispositive or non-dispositive motion. *See Lee v. Plantation of La., L.L.C.*, 454 F. App'x 358, 359 n.3 (5th Cir. 2011) (unpublished); *Edwards v. Doordash, Inc.*, No. H-16-2255, 2017 WL 244862, at*1 (S.D. Tex. Jan. 19, 2017) (Lake, J.). The First Circuit, however, has concluded that the "'clearly erroneous or contrary to law' standard elucidated in Rule 72(a)," which pertains to nondispositive motions, applies. *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010). The Third Circuit has since agreed that motions to compel arbitration are not dispositive motions. *See Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l, Inc.*, 561 F. App'x 131, 133–34 (3d Cir. 2014) (unpublished). The court agrees with the reasoning in these cases. However, since the Fifth Circuit has not ruled on the issue, the court will undertake the more stringent *de novo* standard in an abundance of caution.

**B.    Arbitration Waiver**

Defendant and counterplaintiff Single Integrated Operations Portal, Inc. d/b/a Oilpro and Oilpro.com ("Oilpro") contends that DHI waived its right to compel arbitration, and the Magistrate Judge agreed. *See* Dkt. 175. "'Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.'" *In re Mirant Corp.*,

613 F.3d 584, 588 (5th Cir. 2010) (quoting *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991)). Invocation of the process involves, "'at the very least,'" engaging "'in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'" *Id.* at 589 (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999)). In the Fifth Circuit, there are no bright-line rules with regard to waiver. *Id.* Instead, waiver is determined under the facts of each case. *Id.* The party claiming waiver has a "heavy burden" because "[t]here is a strong presumption against finding a waiver of arbitration." *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004).

### III. ANALYSIS

The Magistrate Judge determined that DHI waived its right to compel arbitration of Oilpro's counterclaims by waiting to file its motion to compel arbitration until after it had filed two motions to dismiss, both of which were directed to the merits of Oilpro's counterclaims and which were based partially on the affirmative defense of fair use. Dkt. 175 at 8. She determined that this was a substantial invocation of the judicial process. *Id.* She noted that the party advocating for waiver must also demonstrate prejudice, and she determined that Oilpro had shown prejudice by demonstrating that it had spent over $90,000 in legal fees litigating its counterclaims. *Id.* at 9–10. She found it significant that DHI did not seek arbitration in the alternative when it filed its motion to dismiss and instead waited until after the Magistrate Judge made a recommendation on the second motion to dismiss to move to compel arbitration, thereby wasting judicial resources by delaying "what should have been a threshold issue." *Id.*

DHI argues first that the M&R erroneously concludes that it substantially invoked the judicial process with regard to Oilpro's counterclaims. Dkt. 178 at 2. It asserts that the M&R reaches this conclusion by relying solely on the two motions to dismiss, which it states were filed from a purely

3

defensive posture. *Id.* It contends that the M&R incorrectly characterized its motions to dismiss as seeking dismissal of the counterclaims with prejudice and inaccurately indicated that any assertion of an affirmative defense constitutes a waiver of the right to compel arbitration. *Id.* at 3. DHI also argues that the M&R placed too much weight on the timing of the motion to compel arbitration. *Id.* at 4. DHI also asserts that even if the court agrees with the Magistrate Judge that it substantially invoked the judicial process with respect to Oilpro's counterclaims, the court must find that the Magistrate Judge erred in determining that Oilpro has shown sufficient detriment or prejudice. *Id.* at 7. The court will first address the objections regarding invocation of the judicial process and then turn to DHI's objection to the finding of prejudice.

**A.     Invocation of Judicial Process**

Oilpro filed its answer and counterclaims on August 5, 2016, and it attached its website's terms and conditions, which contain an arbitration clause. Dkt. 34 & Ex. A. DHI moved to dismiss the counterclaims on September 2, 2016. Dkt. 49. The motion included arguments that Oilpro did not allege facts sufficient to show that DHI assented to the terms and conditions of the website and that the terms and conditions attached to the counterclaim were not in effect at the time of the alleged wrongdoing. *Id.* Before the court ruled on the motion to dismiss, Oilpro filed its second amended answer and counterclaims on November 15, 2016. Dkt. 63. In the amended counterclaims, Oilpro notes that the terms and conditions state they were updated on September 2, 2015, but that they actually had been in force, unmodified, since January 11, 2014. Dkt. 63. It again attached the terms and conditions. Dkt. 63 & Ex. A.

On December 5, 2016, DHI filed another motion to dismiss. Dkt. 64. In this second motion, DHI made several arguments for dismissal, including that its use of the mark at issue was fair use.

4

*Id.* The motion does not refer to the counterclaims being subject to arbitration. *See id.* The motion merely seeks dismissal, but the reply seeks dismissal with prejudice. Dkts. 64, 82.

On April 21, 2017, the Magistrate Judge issued an memorandum and recommendation recommending that DHI's second motion to dismiss Oilpro's counterclaims be granted in part and denied in part. Dkt. 102. Specifically, she recommended granting the motion to dismiss as it pertained to Oilpro's trespass to chattels and unjust enrichment counterclaims and denying the motion as it related to the remaining counterclaims. *Id.* After considering objections to the M&R, this court adopted the Magistrate Judge's recommendations in full on October 26, 2017. Dkt. 153. In the interim, on June 9, 2017, DHI had filed its motion to compel arbitration. Dkt. 133.

The Magistrate Judge issued her M&R recommending denial of the motion to compel arbitration on January 9, 2018. Dkt. 175. The Magistrate Judge relied heavily on *Mirant* in reaching her conclusion that DHI had substantially invoked the judicial process. *See* Dkt. 175. DHI contends that *Mirant* is readily distinguishable and fails to support a departure from well-established Fifth Circuit precedent, including *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 576–77 (5th Cir. 1991), *Tenneco Resins, Inc. v. Davy International, AG*, 770 F.2d 416, 420–21 (5th Cir. 1985), and *Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897 (5th Cir. 2005). Dkt. 178 at 4–7. It also calls *Mirant* into question, noting that the Fifth Circuit has only cited the case five times since it was decided in 2010, and three of those times were for unrelated propositions. *Id.* at 7.

In *Mirant*, which is binding precedent to this court regardless of the number of times it has been cited, the Fifth Circuit instructs that there is no bright line and that courts must consider whether a party has waived arbitration on a case-by-case basis. 613 F.3d at 589. Because there is no bright line, the facts in each of the cited cases are instructive.

5

### 1. *Mirant*

In *Mirant*, the claim at issue was a fraudulent transfer adversary proceeding connected to a bankruptcy. 613 F.3d at 587. The complaint sought to avoid two purchase sales agreements ("PSAs") as fraudulent transfers, but did not allege breach of the second agreement. *Id.* The bankrupt company moved to stay the adversary proceeding shortly after it was filed, which the court granted, and the case was stayed for nineteen months. *Id.* After the stay, the defendant filed an answer that contained affirmative defenses, including its right to compel arbitration. *Id.* The defendant requested a jury and moved to withdraw reference to the bankruptcy court. *Id.* It stated that it intended to preserve its right to compel arbitration in a footnote on the motion to withdraw reference. *Id.* The plaintiff then amended its complaint, and the defendant filed a motion to dismiss the amended complaint under Rules 9(b), 12(b)(6), and 12(c). *Id.* The defendant included a footnote reserving its right to compel arbitration in a footnote in the motion to dismiss. *Id.* The defendant also filed a motion for protective order in which it requested that the court stay discovery pending the resolution of its motion the dismiss. *Id.* The court granted the protective order and stayed discovery. *Id.*

The plaintiff filed a second amended complaint, and the defendant filed another motion to dismiss under Rules 9(b) and 12(b)(6), reserving its right to compel arbitration in a footnote. *Id.* at 588. It filed a separate motion to dismiss under Rule 12(b)(1). *Id.* The plaintiff filed its third amended complaint, and the defendant filed another motion to dismiss under rules 9(b) and 12(b)(6), reserving its right to compel arbitration. *Id.* In the third motion to dismiss, the defendant requested that the court use its discretion to deny further amendments to the complaint and dismiss all claims with prejudice. *Id.* The court partially granted the motion and dismissed the plaintiff's breach of fiduciary duty claim with prejudice. *Id.*

The defendant then filed its motion to compel arbitration. *Id.* The plaintiff argued that the defendant waived its right to compel arbitration by substantially invoking the judicial process and that the plaintiff had been prejudiced by incurring $265,559 in attorneys' fees and costs associated with defending against the motions to dismiss. *Id.* The district court agreed, holding that the defendant had waived its right to compel arbitration by filing multiple motions to dismiss, actually obtaining dismissal with prejudice on one of the claims, and waiting eighteen months before invoking arbitration, and that the plaintiff had suffered prejudice through the delay, including legal fees and dismissal of one of its claims. *Id.* The defendant filed an interlocutory appeal. *id.*

The defendant argued on appeal that its motions to dismiss were "perfunctory." *Id.* at 589. The Fifth Circuit disagreed, noting that the second and third motions were based partially on affirmative defenses of waiver and release. *Id.* The Fifth Circuit reasoned that "[b]y seeking to prove its own allegations to the district court, [the defendant] invoked the judicial process to a greater degree than it would have by filing a mere 'perfunctory motion to dismiss.'" *Id.* (citing *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995)). The court noted that its holding did not mean that filing a motion to dismiss based on an affirmative defense *always* results in waiver, just that it resulted in waiver under the facts of the *In re Mirant* case. *Id.*

The Fifth Circuit also noted that in the third motion to dismiss, the defendant sought dismissal with prejudice and was partially successful, which the court found reinforced its decision that the defendant had invoked the judicial process. *Id.* The court also found it significant that the defendant did not present the motion to compel arbitration as an actual alternative to the dispositive motions and instead seemed to be "gam[ing] the system by seeking a decision on the merits while keeping the arbitration option as a backup plan in case the effort fails." *Id.* at 590.

7

## 2. *Walker*

The *Walker* plaintiffs filed their case in state court. 938 F.2d at 576. The defendant removed the case to federal court and served the plaintiffs with interrogatories and requests for production. *Id.* The plaintiffs responded to the requests for production about ten months later, but never answered the interrogatories. *Id.* The defendant then filed an answer. *Id.* The district court issued a scheduling order, which it amended twice, and also granted a request by the plaintiffs to extend the discovery response deadline. *Id.* The plaintiffs filed a motion to transfer their suit to another court, and the defendant then filed a motion to compel arbitration. *Id.* The district court denied the motion to compel arbitration, noting that the defendant had waived the right to arbitrate by positively invoking federal court procedures. *Id.*

On appeal, the Fifth Circuit noted that in "general, we do not look kindly on parties who use federal courts to advance their causes and then seek to finish their suits in the alternate fora that they could have proceeded to immediately." *Id.* at 577. It also stated, the "attempt of [the defendant's] attorneys to switch judicial horses in midstream either shows poor judgment, if planned, or poor foresight, if not." *Id.* However, the court reasoned that the district court's actions mainly had been "routine scheduling orders and discovery continuances" and that the defendant "did not ask the court to make any judicial decisions, for example, by requesting summary judgment." *Id.* at 577–78. It found that the "two-year lapse between the occurrence of the events prompting this suit and the filing of the motion to compel arbitration is not determinative" as "[p]re-suit inactivity does not invoke the judicial process and cannot support a finding of waiver." *Id.* at 578. The court sympathized with the plaintiffs because the defendant was seeking arbitration after a thirteen-month delay, but it pointed out that the defendant "was not entirely responsible for the delay, and . . . the minimal discovery that ha[d] occurred in federal court did not prejudice plaintiffs." *Id.* The Fifth Circuit held

that the defendant's "actions in federal court were not so substantial as to mandate that we overcome the legal presumption that parties who contracted for arbitration should be allowed to arbitrate," and it reversed the district court's judgment and remanded with instructions for the court to stay the case pending arbitration. *Id.* at 578–79.

### 3. *Tenneco*

The *Tenneco* case involved a contract for drums of catalyst shipped from Germany to Texas. 770 F.2d at 417. The contract included an arbitration clause. *Id.* The plaintiff filed suit in September 1983, and the defendant answered in November 1983. *Id.* In its answer, the defendant alleged that the action should be dismissed because of the arbitration clause. *Id.* The defendant also served the plaintiff with interrogatories and a request for production, to which the plaintiff responded. *Id.* In January 1984, the plaintiff noticed the deposition of corporate representatives of the defendant. *Id.* The defendant moved for a protective order or to quash the depositions. *Id.* The court ordered that the depositions be taken at the defendant's headquarters in Germany. *Id.* In April, the plaintiff moved for a protective order, asking the court to require the defendant to produce witnesses in Germany, and the defendant, in response, asked the court to deny the motion or order the defendant to comply with the Hague Convention. *Id.* at 418.

Three days before the hearing on the plaintiff's motion, the defendant filed a motion to stay pending arbitration. *Id.* The district court held a hearing on the protective order, and it ordered the defendant to produce the corporate representatives in Germany, noting that the defendant had volunteered to do so. *Id.* However, the defendant had specifically asked if its agreement would waive its right to arbitrate, and the court advised that any actions after the motion would not be considered voluntary. *Id.* The district court denied the defendant's motion to stay pending arbitration, and the defendant appealed. *Id.*

9

The Fifth Circuit noted that the burden of proving waiver is heavy, and it "falls even more heavily on the shoulders of the party seeking to prove waiver" when the party seeking arbitration made a timely demand for arbitration at or before the commencement of judicial proceedings. *Id.* at 420. It pointed out that even though the defendant did not move for a stay until eight months into the litigation, it had sought dismissal of the case due to the arbitration clause in its original answer. *Id.* The court instructed that waiver depends on the facts of each case but that in the *Tenneco* case, the record did "not fairly support a conclusion that [the defendant] had substantially utilized the legal process before moving for a stay of judicial proceedings so that the dispute could be settled by arbitration." *Id.* The court thus rejected the claim of waiver. *Id.* at 421.

4. ***Keytrade***

In *Keytrade*, the plaintiff filed suit against the defendants for breach of contract and violation of the Carriage of Goods by Sea Act. 404 F.3d at 893. One of the defendants filed a motion to dismiss and compel arbitration. *Id.* The district court denied the motion because the arbitration agreement was between the defendant and the plaintiff's parent company, noting that the defendant would need to establish an agency relationship between the plaintiff and its parent. *Id.* The defendant moved to dismiss again, providing evidence of an agency relationship, and the district court held that arbitration was proper. *Id.* Another defendant that was not subject to the arbitration agreement moved to compel arbitration on theories of equitable estoppel; the district court denied that motion. *Id.* After the defendant that was subject to the arbitration agreement settled, the other defendant reurged its motion to compel arbitration, and the district court again denied the motion. *Id.*

On appeal, the Fifth Circuit determined that the remaining defendant had a right to compel arbitration for reasons unrelated to the current case. *Id.* at 896. It then turned to whether the

defendant had waived that right by invoking "the judicial machinery." *Id.* at 897. The plaintiff argued that the defendant did so by filing an extensive summary judgment motion with little evidence of an indication for arbitration and participating in a number of discovery requests. *Id.* at 897–98. The defendant had filed a motion to compel arbitration concurrently with the motion for summary judgment. *Id.* at 898. The Fifth Circuit reasoned that the plaintiff offered "no legal authority for why a motion for summary judgment, filed from a defensive posture, can be characterized as an invocation of the judicial process." *Id.* at 897. Additionally, the fact that the defendant concurrently filed a motion to compel arbitration "remov[ed] any doubt as to waiver." *Id.* at 898. As far as the discovery, the Fifth Circuit noted that a party may participate in discovery if it does not "'shower[] [the opposing party] with interrogatories and discovery requests.'" *Id.* (citing *Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai*, 141 F.3d 234, 238 (5th Cir. 1998)). The court reversed the district court's ruling and remanded with instructions to enter an order granting the motion to compel arbitration. *Id.* at 898.

    5.  ***Electrostim Medical Services***

The court also finds *Electrostim Medical Services, Inc. v. Health Care Service Corp.*, No. H-11-2745, 2012 WL 5373462 (S.D. Tex. Oct. 30, 2012) (Rosenthal, J.), instructive. *Electrostim* was a breach-of-contract case in which the plaintiff alleged that the defendant, an insurance company, failed to pay claims. 2012 WL 5373462, at *1. The plaintiff sued the defendant in state court in August 2010. *Id.* It amended its petition in June 2011, and the amended petition included an allegation that the insurance company violated the Employment Retirement Income Security Act ("ERISA"). *Id.* The defendant filed an answer and a notice of removal to federal court in July 2011. *Id.* at *2.

The parties filed a joint discovery and case management plan with the federal court, and the court entered a scheduling and docket-control order. *Id.* In December 2011, the defendant filed an agreed motion for a protective order regarding confidential information exchanged during discovery and filed its initial disclosures. *Id.* It filed an unopposed motion to amend its answer in January 2012 and amended its answer shortly thereafter. *Id.* The amended answer included several affirmative defenses. *Id.* In late January, the defendant filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6). *Id.* The defendant then served the plaintiff with various discovery requests, including interrogatories and requests for production as well as requests for depositions. *Id.* at *3. In April, the parties filed a joint status on mediation indicating that mediation would not be appropriate until they had engaged in more discovery and noting that "'mediation would be the most appropriate form of ADR.'" *Id.* The defendant requested additional discovery in May. *Id.* In July, which was twenty-three months after the case was filed in state court and almost a year after the defendant removed it to federal court, the defendant filed a motion to compel arbitration and a motion to compel discovery responses. *Id.* The motion to compel discovery responses was filed subject to the motion to compel arbitration. *Id.*

The court heard argument on the motion to dismiss and the discovery issue in early August. *Id.* The defendant sought to dismiss some claims based on preemption and similar theories and it sought to dismiss other claims based on sovereign immunity. *Id.* The court granted the motion to dismiss without prejudice and allowed the plaintiff to amend its complaint. *Id.* The court also ordered additional discovery. *Id.*

In mid-August, the plaintiff responded to the defendant's motion to compel arbitration and argued that the defendant had waived the right to compel arbitration. *Id.* at *4. The plaintiff also amended its complaint. *Id.* The court heard arguments on discovery and the motion to compel

12

arbitration in late August. *Id.* The court ruled that all claims occurring prior to a certain date were arbitrable and that the claims after that date were not. *Id.* It deferred ruling on the waiver issue. *Id.* The defendant subsequently moved to dismiss the second amended complaint, "subject to and without waiving its motion to compel arbitration." *Id.* The plaintiff conceded that the arbitration clause was valid, but argued that the defendant waived its right to compel arbitration by not timely requesting arbitration and extensively litigating the case in the interim. *Id.*

Judge Rosenthal held that the defendant had waived its right to compel arbitration. *Id.* She noted that "[c]ourts generally hesitate to find waiver in all but the clearest cases due to the strong presumption of enforceability." *Id.* at *5. She reasoned that a lengthy lapse of time is not dispositive and what matters is "how extensively the parties have engaged in the litigation process during that time." *Id.* at *6. She found that a "key inquiry" is "whether finding no waiver would effectively give a litigant 'a second bite at the apple through arbitration.'" *Id.* (quoting *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 482 (5th Cir. 2009)). She noted that while a perfunctory motion to dismiss will not waive the right to compel arbitration, motions to dismiss that more substantially invoke the judicial process by, for instance, raising affirmative defenses or seeking dismissal with prejudice for failure to state a claim, may result in waiver. *Id.* Motions to dismiss that do not include a motion to compel arbitration in the alternative may also be found to substantially invoke the judicial process. *Id.*

Judge Rosenthal, turning to the facts of *Electrostim*, noted that the defendant's motion to dismiss was not presented as an alternative to a motion to compel arbitration or accompanied by a reservation of arbitration rights. *Id.* at *7. "Instead, [the defendant] asserted its arbitration right long after it first moved to dismiss and after the parties filed extensive briefs on that motion." *Id.* She reasoned that in some cases filing a motion to dismiss can be "consistent with pursuing a right to

13

arbitration," for instance, a motion seeking dismissal of only claims that are not actually arbitrable. *Id.* Judge Rosenthal found it significant that the defendant had moved to dismiss arbitrable and well and non-arbitrable claims. *Id.* She additionally noted that the extent to which the parties engage in discovery and other pretrial activity is an important consideration in determining whether a party substantially invoked the judicial process. *Id.* at *8. She found that the discovery in *Electrostim* was not as extensive as in other cases finding waiver, but it was explicitly directed at the merits, and this, combined with the volume, supported her finding that the defendant substantially invoked the judicial process. *Id.*

### 5. Analysis

DHI argues in its motion to compel arbitration that all of Oilpro's counterclaims are arbitrable. Dkt. 133. However, this was after moving to dismiss all of these arbitrable counterclaims for failure to state a claim twice and, in the second motion, specifically invoking a fair use defense in seeking dismissal of Oilpro's trademark claim. Dkts. 49, 64. In filing its motions to dismiss, DHI did not reserve its right to compel arbitration. *See* Dkts. 49, 64. The replies to Oilpro's responses to the motions to dismiss state that DHI requests dismissal *with prejudice.* Dkt. 62 at 11; Dkt. 82 at 15. The first motion was moot before resolution, but the Magistrate Judge recommended that the court grant the second motion to dismiss with regard to the trespass to chattels and unjust enrichment claims and deny the motion to dismiss with regard to the other claims. Dkt. 102. DHI filed objections to the Magistrate Judge's recommendation, urging this court to dismiss all of the claims. Dkt. 107. It specifically argued that the Magistrate Judge erroneously suggested that its fair use defense was not appropriate for a motion to dismiss. *Id.* This court overruled DHI's objections and adopted the Magistrate Judge's recommendation in full. Dkt. 153. The court therefore dismissed

two of Oilpro's arbitrable claims—the trespass to chattels and unjust enrichment claims.[1] *Id.* Thus, DHI moved for the Magistrate Judge to dismiss several claims that it now claims are arbitrable, with prejudice, twice, relying on an affirmative defense for one of the claims in one of the motions, and it obtained the Magistrate Judge's recommendation of dismissal for two claims. Then, with regard to the second motion, it requested that this court review the Magistrate Judge's findings *de novo*, seeking dismissal of all of the claims it now contends are arbitrable. This court adopted the Magistrate Judge's findings and dismissed two of the claims that DHI claims are arbitrable. It did not dismiss several other claims. It was only *after* the Magistrate Judge recommended denying the motion to dismiss in part that DHI attempted to invoke arbitration.

DHI more substantially invoked the judicial process than the litigants in the cases it relies on—*Walker*, *Tenneco*, and *Keytrade*. In *Walker*, there was a substantial time lapse but no dispositive motions prior to the request to compel arbitration. In *Tenneco*, the litigation activity prior to the motion to compel arbitration was primarily discovery, and the defendant asserted its right to arbitration in its original answer. In *Keytrade*, the defendant filed a dispositive motion, but it concurrently filed a motion to compel arbitration. None of these cases evidence, as the *Tenneco* court noted, an intent to switch judicial horses midstream.

This case more closely mirrors *In re Mirant* and *Electrostim*. Like in *In re Mirant*, DHI's motions to dismiss, were not merely perfunctory. DHI sought dismissal, with prejudice, of all of the counterclaims that it now seeks to arbitrate, and it received dismissal of two of those claims.[2] And,

---

[1] The court did not state whether these claims were dismissed with or without prejudice. *See* Dkt. 153.

[2] The court understands that DHI seeks to distance itself from its requests for prejudicial dismissal now by stating that the requests were in the replies, not the original motions. The court finds this argument disingenuous. Whether the request was made in the original motion, the reply, or, if applicable, during oral arguments, it is a request to the court.

like in *Electrostim*, DHI asserted its arbitration right "long after it first moved to dismiss and after the parties filed extensive briefs on that motion." 2012 WL 5373462, at *7. DHI's motions, which did not reserve or mention the right to compel arbitration, were not consistent with pursuing the right to arbitration as DHI sought dismissal of the arbitrable claims. And while DHI contends that the Magistrate Judge placed too much emphasis on the timing of its motion to compel, the fact that DHI filed the motion to compel arbitration after the Magistrate Judge recommended denial of its request for dismissal of most of the counterclaims certainly evidences what Judge Rosenthal termed as a request for a "second bite at the apple." *Id.* at *6. The court finds that the Magistrate Judge correctly determined that DHI substantially invoked the judicial process with regard to Oilpro's counterclaims prior to seeking to compel arbitration.

**B.     Prejudice**

The Magistrate Judge determined that Oilpro had shown prejudice by demonstrating that it spent over $90,000 in legal fees litigating its counterclaims and that it had wasted judicial resources by the delay in attempting to compel arbitration. Dkt. 175. "'Prejudice in the context of arbitration waiver refers to delay, expense, and damage to a party's legal position.'" *In re Mirant*, 613 F.3d at 591 (quoting *Nicholas v. KBR, Inc.*, 565 F.3d 904, 910 (5th Cir. 2009)). DHI contends that the Magistrate Judge erred in this determination because the delay here was not sufficient to overcome the strong presumption against arbitration and the cost of defending against motions to dismiss are insufficient to show prejudice. Dkt. 178. DHI also takes issue with the affidavit Oilpro provided to prove the expenses it incurred in opposing the motions to dismiss, arguing that the affidavit is "cursory" and does not apportion any amounts to specific activities. *Id.*

Here, DHI first contends that the Magistrate Judge's incorrectly concluded that it took DHI ten months to demand arbitration. Dkt. 178. The Magistrate Judge reached this conclusion by

16

calculating the number of months between the date Oilpro filed its counterclaims, to which the agreement that contained the arbitration provision was attached, and the date that DHI moved to compel arbitration. *See id.* DHI contends that the agreement that Oilpro attached to its original counterclaims was incorrectly dated and that the time should thus be calculated from the date Oilpro's *second* amended answer and counterclaim, which included the correct agreement and several new causes of action. Dkt. 178. The time lapse between the second amended answer and counterclaim and the motion to compel arbitration was six months. *See id.*

First, DHI had notice that Oilpro contended it breached an agreement that included an arbitration clause when Oilpro initially filed its counterclaims and attached the agreement. While the agreement was not correctly dated, DHI could have requested the correct agreement via a request for production to determine if there was also an arbitration agreement in the correctly dated agreement. Second, the difference between six and ten months is not incredibly significant under the facts of this case. What happened during the time period is more important than how much time actually passed. If the delay was only six months but a large portion of Oilpro's time was spent working on counterclaims that DHI now seeks to send to arbitration, the delay of six months was significant. Alternatively, if it took ten months but there was little litigation occurring relating to the arbitrable claims, then it would not be significant. Here, as explained above, the delay of six months was significant because during that time DHI substantially invoked the judicial process with regard to the arbitrable claims.

Additionally, DHI argues that it is improper for the court to consider the expenses Oilpro incurred in defending against the motions to dismiss. Dkt. 178 (citing two unpublished Fifth Circuit cases). However, the *In re Mirant* court, in a published opinion, found the fact that the party asserting waiver "incurred considerable legal expenses as a result of [the party compelling

17

arbitration's] use of the federal court system" supported a finding of prejudice. *In re Mirant*, 613 F.3d at 591. Thus, the court finds it proper to consider the expenses. DHI contends, however, that many of the expenses Oilpro expended were driven by its own conduct, pointing out that Oilpro attached the wrong agreement to its original counterclaim. *Id.* While this is possible, the court finds that Oilpro has provided sufficient evidence that it expended significant resources defending against the motions to dismiss, even if not the full $90,000.[3] This weighs in favor of a finding of prejudice.[4]

The court agrees with the Magistrate Judge that Oilpro was prejudiced by DHI's delay.

### IV. CONCLUSION

DHI's objections to the M&R are OVERRULED. The M&R is ADOPTED IN FULL. DHI has waived its right to compel arbitration, and the motion to compel arbitration is therefore DENIED.

Signed at Houston, Texas on March 5, 2018.

Gray H. Miller
United States District Judge

---

[3] Oilpro's counsel submitted a delcaration indicating that Oilpro "incurred fees and expenses totaling over $90,000 in litigating its counterclaim, not including any fees and expenses incurred in responding to the motion to compel arbitration." Dkt. 154-4. Oilpro's counsel specifically noted that he excluded billing entries related to DHI's claims. *Id.*

[4] The Magistrate Judge found that DHI "wasted judicial resources and delayed consideration of what should have been a threshold issue" thereby prejudicing Oilpro, and this court agrees. Dkt. 175. The Magistrate Judge expended significant time wading through the multiple arguments DHI made for dismissal, and then this court, after DHI objected, conducted a de novo review. While the waste of judicial resources is not actually prejudicial *to Oilpro*, this court agrees that if DHI wanted to enforce an arbitration clause, it should have done so before asking two federal judges to dismiss the arbitrable claims with prejudice.