**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| DHI Group, Inc. f/k/a Dice Holdings Inc. and RIGZONE.com, Inc., | |
| Plaintiffs, | |
| vs. | |
| David W. Kent, Jr., Single Integrated Operations Portal, Inc. d/b/a Oilpro and OILPRO.com, Estevan Dufrin, Matthew Kent, Bryan Robins, Jeremy Antonini, and John Does Nos. 1-10, | |
| Defendants. | Civil Action Number: 16-cv-01670 |
| Single Integrated Operations Portal, Inc. d/b/a Oilpro and OILPRO.com, | |
| Counter-Plaintiff, | |
| vs. | |
| DHI Group, Inc. f/k/a Dice Holdings Inc. and RIGZONE.com, Inc., | |
| Counter-Defendants. | |

**OILPRO'S RESPONSE TO PLAINTIFFS' MOTION TO STRIKE THE REBUTTAL**
**EXPERT REPORT OF TRENT LIVINGSTON**

## TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ...................................................................................2

BACKGROUND ....................................................................................................3

   A.  Oilpro Timely Designated Livingston. ...........................................................3

   B.  Defendants Properly Responded and Objected to Plaintiffs' Discovery Requests..............6

AUTHORITY AND ARGUMENT ...........................................................................11

   A.  Oilpro Timely Designated Livingston. .........................................................11

   B.  Livingston Only Rebuts Plaintiffs' Experts. ...................................................11

   C.  Plaintiffs Cite Inapplicable Cases. ..............................................................12

      1.  *Three expert witness deadlines, with the first for plaintiff, the second for defendant, and the third for plaintiff's rebuttal.* ....................................... 13

      2.  *Two expert witness deadlines, with simultaneous designation by both plaintiff and defendant and rebuttal thereafter.* ...................................... 13

      3.  *Rebuttal witnesses at trial* ............................................................... 14

   D.  Plaintiffs Feign Prejudice to Avoid Harmless Error. .........................................14

   E.  Kent Made No Judicial Admission. ..............................................................16

   F.  Plaintiffs Misstate or Omit Critical Facts Related to the Document Production..............17

      1.  *The documents at issue were privileged.* ............................................... 18

      2.  *Plaintiffs withdrew their request for the Oilpro database.* ........................... 19

      3.  *Plaintiffs' other requests are unrelated to Livingston or involve objections that Plaintiffs never challenged.* ............................................... 19

CONCLUSION....................................................................................................24

CERTIFICATE OF SERVICE ...............................................................................26

i

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Blankenship v. Buenger*,
    653 F. App'x 330 (5th Cir. 2016) ..........................................................17

*Cates v. Sears, Roebuck & Co.*,
    928 F.2d 679 (5th Cir. 1991) ...............................................................14

*Clear-View Techs., Inc. v. Rasnick*,
    13-CV-02744-BLF, 2015 WL 3509384 (N.D. Cal. June 3, 2015) .........................13

*Climb Tech, LLC v. Verble*,
    A-05-CA-864 LY, 2008 WL 11334915 (W.D. Tex. Dec. 29, 2008).....................23

*Deal v. Louisiana ex rel. Dept. of Justice*,
    CIV. A. 11-743-JJB, 2013 WL 4546772 (M.D. La. Aug. 28, 2013).....................17

*Felix v. CSAA Gen. Ins. Co.*,
    215CV02498APGNJK, 2017 WL 1159724 (D. Nev. Mar. 28, 2017)....................13

*Marmo v. Tyson Fresh Meats, Inc.*,
    457 F.3d 748 (8th Cir. 2006) ...............................................................14

*McAfee v. Murray Ohio Mfg., Inc*,
    66 F. App'x 523 (5th Cir. 2003) ...........................................................14

*Morgan v. Commercial Union Assur. Companies*,
    606 F.2d 554 (5th Cir. 1979) ..........................................................12, 13

*In re President Casinos, Inc.*,
    02-53005-659, 2007 WL 7232932 (Bankr. E.D. Mo. May 16, 2007) ....................13

*Sandifer v. Hoyt Archery, Inc.*,
    CIV.A. 12-322-SDD, 2014 WL 3540812 (M.D. La. July 17, 2014).....................18

*Sierra Club v. Energy Future Holdings Corp.*,
    6:12-CV-00108-WSS, 2014 WL 12690021 (W.D. Tex. Jan. 29, 2014)................13

*Smith v. Johnson & Johnson, Inc.*,
    483 F. App'x 909 (5th Cir. 2012) .........................................................14

*United States v. Chavez–Hernandez*,
    671 F.3d 494 (5th Cir. 2012) ...............................................................17

| **Rules** | **Page(s)** |
|---|---|

Fed. R. Civ. P. 16.................................................................................................4, 10, 12

Fed. R. Civ. P. 26(a)(2)(B) ...................................................................................17, 18

Fed. R. Civ. P. 26(b)(3)................................................................................................2

**OILPRO'S RESPONSE TO PLAINTIFFS' MOTION TO STRIKE THE REBUTTAL EXPERT REPORT OF TRENT LIVINGSTON**

Defendants Single Integrated Operations Portal, Inc. d/b/a Oilpro and OILPRO.com ("Oilpro") and David W. Kent, Jr. ("Kent" and collectively with Oilpro "Defendants") file this response to Plaintiffs DHI Group, Inc. f/k/a Dice Holdings Inc. ("DHI") and RIGZONE.com, Inc.'s ("Rigzone" and, collectively with DHI "Plaintiffs") motion to strike the rebuttal expert report of Trent Livingston ("Livingston").

In every sense of the word, Plaintiffs' motion is nonsense. Had Plaintiffs' former counsel filed the motion, Oilpro would have sought sanctions. Affording Plaintiffs' current counsel the benefit of doubt, the motion rests on four fundamental misunderstandings.

*First*, Plaintiffs assume wrongfully that this Court's Scheduling Order included three deadlines for expert witness reports. The facts differ. The Scheduling Order set two deadlines, one for "EXPERT WITNESSES FOR PLAINTIFF/COUNTER-PLAINTIFF" and a second for "EXPERT WITNESSES FOR DEFENDANT/COUNTER-DEFENDANT" later described as "Rebuttal experts."

*Second*, Plaintiffs believe that Livingston is not a rebuttal expert. This assertion lacks any semblance of logic. Livingston's entire report focuses on rebutting the opinions of Plaintiffs' five non-retained experts and one retained expert. Nothing in Livingston's report relates to Oilpro's counterclaim, so no reason existed to serve the report by the deadline set for Counter-Plaintiff.

*Third*, Plaintiffs complain about Oilpro not producing its database earlier when, in fact, Plaintiffs' prior counsel expressly withdrew this request. That Plaintiffs seek to strike Livingston based on an argument directly inconsistent with prior counsel's agreement is extraordinary.

*Fourth*, Plaintiffs assume an order that does not exist. Plaintiffs' former counsel never challenged Oilpro's privilege assertions, and the Court did not order Oilpro to produce any of

Kent's Rule 26(b)(3) trial preparation materials. Plaintiffs never raised the issue.

Plaintiffs' motion is a desperate effort to avoid the cold, hard fact that Plaintiffs encouraged the Department of Justice to prosecute David Kent and then filed a civil suit seeking damages, all based on factually false numbers of copied resumes and persons who joined Oilpro. Livingston's testimony confirms the true facts.

## I.        SUMMARY OF ARGUMENT

What Plaintiffs lack in facts and relevant case law, Plaintiffs seek to make up in hyperbole and misrepresentations. But the record is unambiguous. Oilpro timely designated a rebuttal expert by the only deadline that existed for *Defendants*, and Oilpro timely produced all facts and data considered by Livingston in forming his opinions. For the following reasons, Plaintiffs' motion lacks merit. The facts are:

**(a)**     **Oilpro Timely Designated Livingston.**  The Scheduling Order, along with subsequent amendments, required Defendants to designate experts by July 6, 2018. Oilpro did.

**(b)**     **Livingston Only Rebuts Plaintiffs' Experts.** Livingston's report directly rebuts testimony by Plaintiffs' experts on the number of resumes and members converted. Moreover, the first of two expert witness deadlines extended only to "EXPERT WITNESSES FOR PLAINTIFF/COUNTER-PLAINTIFF." Livingston's opinions have nothing to do with the Counter-claim.

**(c)**     **Plaintiffs Cite Inapplicable Cases.** Plaintiffs rely on irrelevant cases involving (i) three separate expert witness designation deadlines, (ii) a simultaneous report deadline for both plaintiffs and defendants and a second deadline for rebuttal reports, or (iii) rebuttal witnesses at trial. This Scheduling Order differs.

**(d)**     **Plaintiffs Feign Prejudice to Avoid Harmless Error.** No changes to the schedule are necessary, since Plaintiffs have had the relevant documents for over four months. Plaintiffs have not deposed Livingston, and time remains for that deposition. Also, Livingston independently analyzed the data and did not use Kent's work product anyway.

(e)     **Kent Made No Judicial Admission.** One hundred and eighty degrees contrary to Plaintiffs' motion, Kent stated that he disputed the 111,000 members pleaded by the Department of Justice and that this number grossly exaggerated the quantity of members resulting from the disputed access. Plaintiffs mis-quote the record.

(f)     **Plaintiff's Complain About Documents Produced Months Ago.** This is much ado about nothing. Plaintiffs asked for documents in December 2017. Oilpro produced the documents on April 6, 2018.

(g)     **The Privileged Nature of Kent's Work Product Substantially Justified the Uncontested Objections.** Oilpro objected rightfully to producing the documents at issue. Plaintiffs never challenged the objections. After Kent's deposition, Oilpro agreed to produce (and did produce) Kent's work product prepared in preparation for trial. This work product showed the source of Oilpro members.

(h)     **Plaintiffs Withdrew Their Request for the Oilpro Database.** Plaintiffs confirmed in writing that they were *not* insisting on production of the Oilpro database. Incredibly, Plaintiffs now accuse Oilpro of not producing that very database.

(i)     **Plaintiffs' Other Requests Are Unrelated to Livingston or Involve Uncontested Objections.** Many of the requests relate to topics irrelevant to Livingston's reports, such as all communications of Jeremy Antonini. Regardless, Plaintiffs' never challenged Oilpro's objections and never even conferred in good faith prior to the present motion.

## II.     <u>BACKGROUND</u>

**A.  Oilpro Timely Designated Livingston.**

Plaintiffs assume court-ordered deadlines that do not exist. The Scheduling Order never required Defendants to designate simultaneously with Plaintiffs. The Rule 16 Scheduling Order stated the following:

3

**RULE 16 SCHEDULING ORDER**

Anticipated Length of Trial: ___10___ days      Jury: ✓      Non-Jury: _____

The disposition of this case will be controlled by the following schedule:

1. __12-31-16__   **NEW PARTIES** shall be joined by this date.  The attorney causing such joinder must provide copies of this ORDER to the new parties.

2. __12-31-16__   **AMENDMENTS** to pleadings by Plaintiff or Counter-Plaintiff shall be made by this date.  Absent parties' agreement or court approval, answers may not be amended more than 20 days after this date.  Answers to amended claims and counterclaims are due 20 days after amended claims or counterclaims are filed.  Any amendments after this date must be accompanied by a motion.

3. __5-22-17__   **EXPERT WITNESSES FOR PLAINTIFF/COUNTER-PLAINTIFF** shall be identified by a report listing the qualifications of each expert, each opinion the expert will present, and the basis for each opinion.

4. __6-21-17__   **EXPERT WITNESSES FOR DEFENDANT/COUNTER-DEFENDANT** shall be identified by a report listing the qualifications of each expert, each opinion the expert will present, and the basis for each opinion.

(DE 47). The order calls for the designation of "EXPERT WITNESSES FOR PLAINTIFF/COUNTER-PLAINTIFF" and a second designation for "EXPERT WITNESSES FOR DEFENDANT/COUNTER-DEFENDANT." (DE 47). The parties agreed to extend, the Plaintiff/Counter-Plaintiff deadline to May 30, 2017, and the Defendant/Counter-Defendant deadline to June 29, 2017.[1] Oilpro timely designated an expert witnesses supporting its Counterclaim.[2]

The word "rebuttal" does not appear on the face of the Scheduling Order, and the Court set only two expert witness deadlines, one for each side. The second deadline is a rebuttal expert deadline, in the sense that a Defendant's expert or a Counter-Defendant's expert would rebut a report served on May 30, 2017.

The deadline for Defendant/Counter-Defendant experts became moot when the parties announced settlement and the Court conditionally dismissed the case on June 26, 2017, three days before the designation deadline. (DE 139). On July 27, 2017, the Court entered an order reinstating and staying the case. (DE 147). When the Court reactivated the case on October 19,

---

[1] Ex. 1, Kevin Jacobs' June 13, 2017 Email.
[2] Ex. 2, Oilpro's Designation of Experts dated May 30, 2017.

4

2017, the Court described the deadline governing expert witnesses for Defendant/Counter-Defendant as a deadline for "Rebuttal experts' reports." (DE 150). The Court made the following docket entry for the October 19, 2017 hearing:

> DOCKET ENTRY
>
> NKJ: <u>Discovery Hearing.</u>
>
> <u>Status Conference held on the record. Response to motion for arbitration due by October 30, 2017.</u>
>
> <u>Discovery cutoff 04/30/18. Rebuttal experts' reports due by 02/23/18. Dispositive motions due by</u>
>
> <u>06/04/18. Each side is permitted ten depositions. Any additional depositions must be with leave of</u>
>
> <u>court.</u>
>
>       SIGNED in Houston, Texas, this <u>19th</u> day of October , 2017.

(DE 150).

      Due to Plaintiffs' extended delay in producing documents,[3] the Court subsequently extended the February 23, 2018 deadline to June 1, 2018. (DE 201). At that hearing Plaintiffs' new counsel tried to argue that the deadline for Defendants' experts had passed—an argument that the Court flatly rejected.[4] Because Plaintiffs still had not finalized their document production (DE 202), the Court again extended the deadline to July 6, 2018. (DE 203). Importantly, the Court determined these extensions based on Plaintiffs' representations as to when they would complete the document production.[5] While the extension orders refer to "Rebuttal experts," the Court never set a different (earlier) deadline for Defendant/Counter-Defendant experts. The term "Rebuttal" did not alter the initial order that set an initial expert deadline for Plaintiff/Counter-Plaintiff and a second deadline for Defendant/Counter-Defendant. Defendants timely designated

---

[3] Ex. 3, January 4, 2018 Hearing Transcript at 38:21-39:15; Ex. 4, March 20, 2018 Hearing Transcript at 39:7-8.
[4] Ex. 4, March 20, 2018 Hearing Transcript at 42:10-43:24.
[5] *Id.* at 39:7-40:8.

Livingston.[6] Literally no other deadline existed by which Defendants could designate expert witnesses to rebut Plaintiffs' experts.

### B. Defendants Properly Responded and Objected to Plaintiffs' Discovery Requests.

On September 2, 2016, DHI requested that Oilpro produce its database. On October 6, 2016, Oilpro responded and objected.[7] Plaintiffs did not raise this issue until the May 12, 2017 hearing at which the Court was considering other, unrelated issues.[8] The discussion surrounding the database ended with this exchange:[9]

```
        MR. MUNISTERI:  I think it's impossible for me but
relatively simple for those who know how to use the website,
but -- people with the technical background.  And again, I
can find out, because this is not the subject of the motion
papers, I'm not prepared to address that at this time.

        MR. LIPE:  Your Honor, these are requests that
have been in since last September.

        THE COURT:  Yeah, but you've been focused on
getting stuff out of the Government's paws and not directly
from them.  And I'm telling you, I'm not going to get into
sorting out what the Government has and what's relevant and
what's under the protective order and all that, when you
need to get it directly from Oilpro.

        So to -- let's just say that.  To that extent
then, we need to talk about what you think the Government
has that is interesting and get it from them, because
they've got to have it, if it's their document it's been
returned to them.
```

---

[6] Ex. 5, Heidi Rasmussen's July 6, 2018 Email.

[7] Ex. 6, Oilpro's Objections and Responses to Plaintiffs' First Requests for Production to Oilpro; *see also* Ex. 7, Outlining Oilpro's objections.

[8] Plaintiffs state inaccurately—and without any citation to a docket entry or order—that "Defendants also ignored the Court's May 5, 2017 instruction to produce its entire member database." (DE 251 at 3). Oilpro has not found any such order issued by the Court on May 5, 2017. Oilpro does not know whether this is an intentional misstatement to bolster Plaintiffs' motion or simply an error.

[9] Ex. 8, May 12, 2017 Hearing Transcript at 20:4-21.

No production was ordered. In fact, the Court noted that rather than focusing on the requests *to Oilpro*, Plaintiffs had "been focused on getting stuff out of the Government's paws . . . ."[10] Additionally, neither minute entry mentioned the database. (DE 111; DE 113). The final minute entry order on this hearing stated:

> NKJ: Motion Hearing. **(AMENDED)**
>
> Plaintiff's Motion to Compel (Doc. 104) is GRANTED IN PART, DENIED IN PART. Defendant Kent shall turn over a balance sheet  net worth statement and all statements or testimony given to law enforcement within 10 days.  If parties have any additional questions on production, parties will come back on May 19, 2017 at 2:00 p.m..

(DE 113). Both orders provided the parties an opportunity to seek clarification. (DE 111; DE 113). And Plaintiffs sought no clarification.

Immediately after the hearing, Oilpro served its Fourth Requests for Production on May 12, 2017. Request No. 72 is listed below along with Plaintiffs' June 12, 2017 response refusing to produce the Rigzone membership database:[11]

> **REQUEST FOR PRODUCTION 72:**
>
> Provided that DHI insists on the production of Oilpro's entire membership database, produce the entire membership of the Rigzone Database.
>
> **RESPONSE:**   Plaintiffs hereby incorporate by reference their objections to definitions and instructions.  In addition to their objections to definitions and instructions, Plaintiffs object to this request because it is grossly overbroad, unduly burdensome, is without any temporal limitation, and seeks documents that are not relevant to any claim or defense in this lawsuit and is disproportionate to the needs of the case and the claims in Plaintiffs' Original Complaint or Oilpro's Amended Counterclaim.

---

[10] Ex. 8, May 12, 2017 Hearing Transcript at 20:4-16.
[11] Ex. 9, Plaintiffs' Responses to Oilpro's Fourth Requests for Production No. 72.

The parties attended mediation on June 21, 2017, and both accepted a mediator's proposal. As a result, on June 26, 2017, the Court dismissed the case conditionally. (DE 139). The settlement fell through after Plaintiffs said they would no longer agree to the mediator's proposal. The Court subsequently reinstated the case and entered a stay on July 27, 2017, pending completion of the then-pending criminal case. (DE 147). The Court reactivated the case on October 19, 2017. (DE 150).

Kent appeared for deposition on November 20, 2017.[12] During his deposition Kent testified about the work he did sourcing each Oilpro member.[13] On December 11, 2017, Plaintiffs served their Third Requests for Production.[14] Oilpro responded on January 8, 2018.[15] In the response Oilpro agreed to produce Kent's privileged work product, given that he had described that work in his deposition—even though Kent prepared the analysis at counsel's request to defend criminal and civil claims.[16]

The Oilpro database is what Plaintiffs need to evaluate the member sources. But, Plaintiffs confirmed affirmatively that they were *not* requesting the Oilpro database and had withdrawn their earlier request. This reversal was confirmed after Oilpro re-urged its request for Plaintiffs' Rigzone database on December 29, 2017.[17] During the meet and confer, Plaintiffs' counsel stated that Oilpro's request was not valid because Plaintiffs were *not* insisting on production of Oilpro's database.[18] While Plaintiffs claimed later that the specific request was not discussed, Plaintiffs nevertheless withdrew—in writing—their request for the Oilpro database, stating the following:

---

[12] Ex. 10, Deposition of David W. Kent, Jr.
[13] *Id.* at 139:1-19.
[14] Ex. 11, Plaintiffs' Third Requests for Production to Oilpro.
[15] Ex. 12, Oilpro's Response to Plaintiffs' Third Requests for Production to Oilpro.
[16] Ex. 13, Declaration of Marla Thompson Poirot ¶¶ 4, 8-9; Ex. 14, Declaration of David W. Kent, Jr. ¶¶ 3-6.
[17] Ex. 15, December 29, 2017 Letter to Kevin Jacobs.
[18] Ex. 16, Email Exchange Between Heidi Rasmussen and Justin Lipe Beginning February 22, 2018.

- RFP 72: This was never discussed during our call. We only discussed RFP 70. **Regardless, RFP 72 is made contingent upon Plaintiffs insisting on the production of Oilpro's members' database, and at this time, Plaintiffs are not insisting on that production.**[19]

This remained Plaintiffs' position and did not change.

On February 23, 2018, Plaintiffs asked when Oilpro planned to produce documents responsive to Plaintiffs' third set of requests.[20] Oilpro stated it would produce documents on a rolling basis starting in late March.[21] Plaintiffs voiced no objection. After the hearing in which the parties discussed Plaintiffs producing all documents by April 6, 2018 (which Plaintiffs failed to do), Oilpro prepared its production. On April 6, 2018, Oilpro produced responsive documents, including the following:

| PROD_EndDoc | File Name | Notes |
|---|---|---|
| Oilpro_0008682 | Oilpro Members by Source.xlsx | A spreadsheet of the number of Oilpro members by source category. |
| Oilpro_0008683 | RigzoneID_Email.csv | A list of all allegedly accessed Rigzone resumes. |
| Oilpro_0008684 | Step 1 - Readme.docx | The steps David Kent took in sourcing Oilpro members. |
| Oilpro_0008685 | Step 2 - Create Source Tables.sql | |
| Oilpro_0008686 | Step 3 - Never Emailed Before.sql | |
| Oilpro_0008687 | Step 4 - Load Member Source Tables.sql | |
| Oilpro_0008688 | Oilpro_Members.mdb | A Microsoft Access database file listing all Oilpro members by source |

The production of these items, over four months ago, complied with Oilpro's obligations under the Federal Rules. Most importantly, the Oilpro_Members.mdb file lists the source of

---

[19] *Id.* (emphasis added).
[20] *Id.*
[21] *Id.*

9

every single member of Oilpro through April 1, 2016.[22] This file provides the data needed for analyzing member source.[23] Plaintiffs raised no issues with this production. Now, Plaintiffs complain non-specifically that they lack documents, yet Plaintiffs cannot identify anything missing. (DE 215).

Plaintiffs also assert that Kent "refused to provide a substantive interrogatory response specifically directed at the subject matter on which Livingston now opines." (DE 215 at 9). Plaintiffs reference an interrogatory served in 2016, but fail to quote Kent's actual answer and instead simply state that he "refused to respond." *Id.* This accusation is false. Kent's response reads:

> Kent incorporates the Criminal Case Objection noted above. Kent further objects that this interrogatory is argumentative, and contains various factual and legal conclusions, including that "Oilpro users . . . were improperly acquired from Plaintiff's computer systems," and that a process was "required by the Federal Bureau of Investigation and/or the U.S. Attorneys' Office in order for Oilpro to re-obtain its computer servers."

> Subject to and without waiving the forgoing, Kent will comply with the court's May 19, 2017 order and turn over his "statements or testimony given to law enforcement" on or before May 30, 2017 (Docket No. 113), as agreed between counsel for Plaintiff and Kent, and directs Plaintiff to that production.[24]

Kent pointed out several deficiencies in this interrogatory. Plaintiffs never cured the defects and certainly never filed a motion. Plaintiffs made no complaint until they realized how much Livingston's report undermines their case.

---

[22] Ex. 13, Declaration of Marla Thompson Poirot ¶¶ 6, 7.
[23] *Id.*
[24] Ex. 17, Defendant David W. Kent, Jr.'s Answers to Rigzone.com's First Set of Interrogatories.

### III.       AUTHORITY AND ARGUMENT

#### A.  Oilpro Timely Designated Livingston.

The Rule 16 Scheduling Order states unambiguously that Oilpro would designate expert witnesses—as a defendant—subsequent to Plaintiffs' expert witness designation. (DE 47). Oilpro followed the scheduling order by timely designating Counter-Plaintiff's expert witnesses by May 30, 2017, and Defendants' expert witnesses (in rebuttal to Plaintiffs' reports) by July 6, 2018.[25]

Plaintiffs misrepresent the Scheduling Order, stating "the parties were obligated to identify any affirmative expert witness and serve corresponding expert reports by May 22, 2017." (DE 215 at 10, note 24). The term "affirmative expert witnesses" does not exist in the Scheduling Order. What the Scheduling Order states, in essence, is that parties asserting affirmative claims must designate simultaneously, but the Defendants or Counter-Defendants will thereafter designate experts in rebuttal by a second deadline (ultimately July 6, 2018). (DE 47).

#### B.  Livingston Only Rebuts Plaintiffs' Experts.

A rebuttal expert under Rule 26 is an expert "intended solely to contradict or rebut evidence on the same subject matter identified by another party." FED. R. CIV. P. 26(a)(2)(D)(ii). Livingston's report is for the sole purpose of contradicting both Plaintiffs' non-retained experts and Johnson. Livingston offers opinions to *rebut* the opinions of (i) Evelina Aslanyan, Michael Badeaux, Jason Braddy, Chad Norville and Jamie Matlin, all of whom Plaintiffs designated as experts on the same subject, and (ii) Shane Johnson who relied blindly on conclusions reached by the non-retained experts.[26] Plaintiffs complain that Livingston mentions these experts only

---

[25] Ex. 2, Oilpro's May 30, 2017 Expert Witness Designation; Ex. 18, Defendants' July 6, 2018 Rebuttal Expert Disclosures.
[26] Ex. 19, Livingston Report at 2.

once in his report—which is just not true. Livingston states in his Summary of Opinions that he was retained "as a testifying expert witness in the above-referenced matter for the purpose [of] rebutting statements and testimony by Shane Johnson, PH.D., and the statements of the non-retained experts: Evelina Aslanyan, Michael Badeaux, Jason Braddy, Chad Norville and Jamie Matlin."[27] And Livingston refers to the non-retained experts elsewhere on pages 6, 27, and 29. Livingston repeatedly describes the non-retained experts' testimony as part of what he is rebutting.[28] On page 27, Livingston states that "[t]he non-retained experts also artificially inflate the Rigzone User Information accessed by Oilpro."[29] The only logical explanation for Plaintiffs' misrepresentation is that Plaintiffs did not read Livingston's report.

Further, each of Plaintiffs' individual designations repeats the same sparse conclusions.[30] Livingston's sole purpose is to rebut the numbers presented by these five experts and then assumed in Johnson's report. Livingston is a quintessential rebuttal expert.

### C. Plaintiffs Cite Inapplicable Cases.

In *Morgan v. Commercial Union Assurance Companies* the Fifth Circuit noted that "boilerplate rule 16 orders have engendered confusion." *Morgan v. Commercial Union Assur. Companies*, 606 F.2d 554, 556 (5th Cir. 1979). Plaintiffs seek to create such confusion here, by citing cases that involve different scheduling order sequences or that involve trial testimony.

Plaintiffs rely most heavily on *Morgan* to argue that Livingston is not a rebuttal witness. *Morgan* is factually distinct. In *Morgan* the defendant sought to impeach plaintiff's trial testimony with the testimony of a doctor who had treated the plaintiff. *See Morgan*, 606 F.2d at 555. But at the pre-trial conference, the Court ordered required each party to identify "all

---

[27] *Id.* at 2.
[28] *Id.* at 6.
[29] *Id.* at 27.
[30] Ex. 20, Plaintiffs' Expert Designation at 3-7.

prospective witnesses" except for rebuttal witnesses. The defendant argued that the doctor was a "rebuttal witness" and did not need to be listed, but the court found that "a defense witness whose purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief can never be considered a 'rebuttal witness,' or anything analogous to one." *Id.* at 556. Moreover, the court reasoned that the defendant had the burden to prove its defense of pre-existing condition. *Id.* The *Morgan* case is obviously inapposite. This case is not in trial, and Defendants' timely identified Livingston. To boot, Oilpro does not have the burden to prove the number of resumes misappropriated.

In addition to *Morgan*, Plaintiffs cite several other inapplicable cases. (DE 215 at 14-16). The cases fall into three categories.

> 1. *Three expert witness deadlines, with the first for plaintiff, the second for defendant, and the third for plaintiff's rebuttal.*

Two cases involved scheduling orders with three expert deadlines. *See Sierra Club v. Energy Future Holdings Corp.*, 6:12-CV-00108-WSS, 2014 WL 12690021, at *3 (W.D. Tex. Jan. 29, 2014), report and recommendation adopted sub nom., *Sierra Club v. Energy Future Holdings Corp.*, W-12-CV-108, 2014 WL 12690016 (W.D. Tex. Feb. 20, 2014); *In re President Casinos, Inc.*, 02-53005-659, 2007 WL 7232932, at *1 (Bankr. E.D. Mo. May 16, 2007). All these cases deal with a plaintiff's rebuttal expert and have nothing to do with Oilpro's designation. Here, only two deadlines existed—the Plaintiff/Counter-Plaintiff expert deadline and then the Defendant/Counter-Defendant deadline.

> 2. *Two expert witness deadlines, with simultaneous designation by both plaintiff and defendant and rebuttal thereafter.*

In these cases the court set an entirely different structure for expert witness deadlines—one for both sides to exchange initial expert reports simultaneously and another to exchange rebuttal expert reports. *Clear-View Techs., Inc. v. Rasnick*, 13-CV-02744-BLF, 2015 WL

3509384, at *1 (N.D. Cal. June 3, 2015); *Felix v. CSAA Gen. Ins. Co.*, 215CV02498APGNJK, 2017 WL 1159724, at *1 (D. Nev. Mar. 28, 2017). Here, the first deadline extended only to Plaintiff/Counter-Plaintiff. The second applied to Defendants/Counter-Defendant. (DE 47).

### 3. Rebuttal witnesses at trial

The remaining three cases relate to the order of witnesses at trial. *See McAfee v. Murray Ohio Mfg., Inc*, 66 Fed. App'x 523 (5th Cir. 2003) ("The court prevented the McAfees from calling Dixon, stating that he was not a proper rebuttal witness and had not been identified as a witness on the final pretrial order."); *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758–59 (8th Cir. 2006) (progression order set three expert designation deadlines, with the final for only rebuttal experts; court did not permit a rebuttal expert to testify in plaintiff's case-in-chief); *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir. 1991) ("Cates contends that the trial court erred in denying his proffer of testimony by the expert witness who had testified during Cates' case-in-chief which would have rebutted Sears' contention that a wrongway feed had occurred. Sears maintains that what Cates styles as rebuttal was merely revisiting evidence earlier presented."). These cases are irrelevant.

### D. Plaintiffs Feign Prejudice to Avoid Harmless Error.

 "In determining whether to permit the late designation of an expert, district courts apply the four-factor test . . . considering 1) the explanation given for the failure to identify the witness, 2) the importance of the witness's testimony, 3) potential prejudice to the opposing party in allowing the witness's testimony, and 4) the possibility that a continuance would cure such prejudices." *Smith v. Johnson & Johnson, Inc.*, 483 F. App'x 909, 913 (5th Cir. 2012).

In this case Oilpro designated Livingston when it did because the initial scheduling order required designation of "DEFENDANT/COUNTER-DEFENDANT EXPERT WITNESSES"

after the designation of "PLAINTIFF/COUNTER-PLAINTIFF EXPERT WITNESSES." Oilpro had no other deadline to follow.

Plaintiffs highlight their misunderstanding by stating, incorrectly, that Livingston does "little more than duplicate the steps Kent claims to have taken." (DE 215 at 17). Again, Plaintiffs appear to have filed their motion without reading Livingston's report. Livingston states in no uncertain terms that he determined the member source independently of Kent's work product.[31] In fact, Livingston's report highlights the differences between his analysis and Kent's analysis— noting the significance of the weblogs Plaintiffs refuse to produce.[32] Furthermore, Plaintiffs confirm the importance of this issue by designating *five* experts on this issue alone.

Third, Plaintiffs suffer no prejudice. Plaintiffs have now had Kent's analysis for over four months. And, in addition to Oilpro timely producing Livingston's file at the time of designation, Plaintiffs never sought to compel these documents for almost two years. Any additional documents were either (i) privileged work product later produced with Livingston's report (despite Plaintiffs withdrawing their request for the Oilpro database) or (ii) already possessed by Plaintiffs in the case of the web logs and email list. Plaintiffs claim that their choices would be to "depose Livingston without relevant documents . . . or wait months for Defendants to produce 'irrelevant' documents . . . ." This statement is untethered to reality. Plaintiffs have had the documents for months (and, in some cases, for over two years) and cannot identify a single non-privileged document missing from the production.[33]

---

[31] Ex. 19, Report of Trent Livingston at 8, ¶20.
[32] *Id.*
[33] Plaintiffs point to Jeremy Antonini's analysis of the Oilpro database in 2016. The work Antonini did was privileged. Likewise, Plaintiffs suggest Kent performed two separate analyses of the database. This is false. As Livingston explains in his declaration, the November 21, and 22 dates listed in his report were not the dates these files were created. Ex. 26, Declaration of Trent Livingston ¶ 8. Kent's analysis was produced as Oilpro_0008684-Oilpro_0008687.

Finally, no need exists to "overhaul" the schedule. Plaintiffs have ample time to depose Livingston. No trial setting has been set, and Defendants *do not want* a delay.

**E.  Kent Made No Judicial Admission.**

Plaintiffs have twice attempted to mislead the Court by stating (without citation to any case law or rule) that David Kent made a judicial admission in conflict with his position before this Court. (DE 215 at 1). Statements by Plaintiffs' counsel at the June 19, 2018 hearing were particularly troubling. Plaintiffs' counsel claimed that David Kent admitted in his sentencing memorandum that the number of members converted was 111,000.[34] This statement was false then and remains so today.

As shown by Kent's sentencing memorandum (the relevant portion of which is included below), Kent made no stipulation or judicial admission to the 111,000 number.[35]

> Mr. Kent accessed approximately 796,000 Rigzone members' accounts, which contained approximately 586,560 unique email addresses.[23] Approximately 17.7% of those email addresses were later invited to join Oilpro, and approximately 35.7% of the individuals invited to join did in fact join.[24] In total, approximately 111,000 Rigzone members whose email addresses were obtained improperly by Mr. Kent became members of Oilpro.[25] However, as explained in the Revised PSR, the government agrees "that there is no proof or indication that all 111,000 new Oilpro members joined based on Kent's activities."[26] And certainly, some joined independently of Mr. Kent's conduct, just as many people maintain more than one online social media or professional networking profile. The exact number of users that Oilpro gained as a result of Mr. Kent's actions remains unknown.

Rather, Kent stated that at the time of the sentencing, the "*exact number of users that Oilpro gained as a result of Mr. Kent's actions remains unknown.*"[36]

---

[34] Ex. 21, Transcript of June 19, 2018 Hearing at 15:14-16:5.
[35] Ex. 22, Sentencing Memorandum at 17-18.
[36] *Id.*

Plaintiffs have no basis to make such a haphazard legal assertion. A judicial admission "must be made intentionally as a waiver, releasing the opponent from proof of fact." *United States v. Chavez–Hernandez*, 671 F.3d 494, 501 (5th Cir. 2012). "In any event, 'judicial admissions are not conclusive and binding in a separate case from the one in which the admissions were made.'" *Blankenship v. Buenger*, 653 F. App'x 330, 335 (5th Cir. 2016). Kent never stated what Plaintiffs represent.

### F. Plaintiffs Misstate or Omit Critical Facts Related to the Document Production.

Illustrating what it looks like to grasp for straws, Plaintiffs now claim that Defendants supposedly withheld some documents. This accusation is seriously wrong, as explained below. Regardless, Plaintiffs' motion is devoid of any case law that would support the draconian discovery sanction Plaintiffs suggest. This Court lacks authority to strike Livingston when he timely produced his file and Plaintiffs have never previously moved to compel. Under Rule 26(a)(2)(B), Oilpro was obligated to produce Livingston's report which "must contain: . . . (ii) the facts or data considered by the witness in forming" his opinions. *See Deal v. Louisiana ex rel. Dept. of Justice*, CIV.A. 11-743-JJB, 2013 WL 4546772, at *6 (M.D. La. Aug. 28, 2013) ("Under Rule 26(a)(2)(B), Plaintiff was required to produce the complete tax returns furnished to Mr. Cliffe, along with his expert report, as of December 3, 2013—the day he provided his expert report to Defendant."). Oilpro undeniably produced the expert's file with Livingston's report.

Furthermore, the privileged information received by Livingston only became discoverable when he was designated as an expert. *See Sandifer v. Hoyt Archery, Inc.*, CIV.A. 12-322-SDD, 2014 WL 3540812, at *2 (M.D. La. July 17, 2014) ("As it now stands, none of the experts currently retained in this case have reviewed the Feddersen Report, placing it outside the scope of Rule 26(a)(2)(B). The only person that has reviewed the Feddersen Report is Mr.

Ragsdale, who wrote the report but is no longer a retained expert. If he were, the Feddersen Report would be discoverable under Rule 26(a)(2)(B), as Ragsdale clearly reviewed the Feddersen Report in forming his opinion in this case.").

### 1. *The documents at issue were privileged.*

Oilpro understandably anticipated criminal and civil litigation no later than March 29, 2016.[37] In response to Plaintiffs' first discovery requests, Oilpro noted that any documents created for Oilpro or Kent's defense in the civil or criminal cases were privileged.[38] This changed slightly after Kent's deposition.[39] Accordingly, Oilpro produced on April 6, 2017, documents that it had previously prepared in connection with the criminal case (Oilpro_0008688—Oilpro_Members.mdb), documents provided by the government and that originally came from Plaintiffs (Oilpro_0008683—RigzoneID_Email.csv), and the work product documents referenced in Kent's deposition (Oilpro_0008684—Step 1 – Readme.docx; Oilpro_0008685—Step 2 – Create Source Tables.sql; Oilpro_0008686—Step 3 – Never Emailed Before.sql; Oilpro_0008687—Step 4 – Load Member Source Tables.sql).

Plaintiffs never challenged this privilege assertion and never moved to compel production. Worse yet, Plaintiffs' prior counsel had extensive discussions about discovery in late 2017 and early 2018, but still did not identify the privilege assertion as an issue.[40] Even the day Plaintiffs filed their motion to strike Livingston, Plaintiffs' new counsel made no mention of any discovery issue and only stated that Plaintiffs sought to strike Livingston for not being a rebuttal witness expert.

---

[37] Ex. 13, Declaration of Marla Thompson Poirot ¶ 3.
[38] *Id.* ¶ 3; Ex. 12, Oilpro's Objections and Responses to Plaintiffs' Third Requests for Production.
[39] Ex. 13, Declaration of Marla Thompson Poirot ¶¶4-6.
[40] Ex. 16, Email Exchange Between Heidi Rasmussen and Justin Lipe Beginning February 22, 2018; Ex. 23, Kevin Jacob's January 10, 2018 Letter; Ex. 24, Kevin Jacob's February 5, 2018 Letter; Ex. 25, Kevin Jacob's February 13, 2018 Letter.

### 2. *Plaintiffs withdrew their request for the Oilpro database.*

Plaintiffs withdrew their request for the Oilpro database. Now that Plaintiffs believe it suits their interests, they claim Defendants somehow refused to produce the Oilpro database that Plaintiffs' former counsel confirmed six months ago they were no longer requesting. Plaintiffs stated that they "are not insisting on that production."[41] Plaintiffs never brought up the Oilpro database again. But, in any event, Oilpro produced the database along with the Livingston report.

### 3. *Plaintiffs' other requests are unrelated to Livingston or involve objections that Plaintiffs never challenged.*

Plaintiffs' assertion that Oilpro failed to respond is a red herring. As described above, three months before the Livingston designation, on April 6, 2018, Oilpro produced Kent's privileged work product described in his deposition and a list of every Oilpro member by source.

The documents Livingston actually considered in forming his opinions include:[42]

    a. Oilprosite.bak

    b. RigzoneID_Email.csv

    c. FEyeDHI_00001_CONFIDENTIAL_pan_logs.20140201-20140509.txt

    d. FEyeDHI_00002_CONFIDENTIAL_rigzone_web.20131017-20131022.string-123admin.txt

    e. FEyeDHI_00003_CONFIDENTIAL_rigzone_web.20140201-20140509.string-123admin.txt

    f. FEyeDHI_00004_CONFIDENTIAL_rigzone_web.20140201-20140509.string-IPs.txt

Of these documents, the only document that Plaintiffs did not already possess was the Oilpro database backup file. As explained above, Oilpro had a legitimate reason not to produce this file

---

[41] Ex. 16, Email Exchange Between Heidi Rasmussen and Justin Lipe Beginning February 22, 2018.
[42] Ex. 26, Declaration of Trent Livingston ¶3.

(i.e., Plaintiffs withdrew their request for the database). Next, the FEyeDHI files were all files that Plaintiffs already had; those files are the web logs Plaintiffs provided to Mandiant. The remaining file, RigzoneID_Email.csv, is a file that the government provided and that Oilpro produced to Plaintiffs on April 6, 2018.[43] The RigzoneID_Email.csv file apparently came from Plaintiffs, who had this document more than two years ago.

Plaintiffs' complaints divide into two categories (i) requests for which Oilpro produced relevant documents months prior to the Livingston designation, and (ii) requests that seek documents unrelated to Livingston's analysis. The following chart outlines the requests and the documents produced.

| Plaintiffs' Requests | Documents Produced April 6, 2018 |
|---|---|
| (1st set) Request for Production No. 15: Please produce a list of the e-mail addresses and resident IDs that were allegedly accessed without authorization from Rigzone's website. | Oilpro_0008683 |
| (1st set) Request for Production No. 164: Please produce all documents referring or relating to the origins of your members, including the date each member joined and each member's source category. | Oilpro_0008682; Oilpro_0008684; Oilpro_0008685; Oilpro_0008686; Oilpro_0008687; Oilpro_0008688. |
| (3rd set) Request for Production No. 13: Please produce all documents evidencing, referring to, or identifying to the source and/or origin of Oilpro's members. | Oilpro_0008682; Oilpro_0008684; Oilpro_0008685; Oilpro_0008686; Oilpro_0008687; Oilpro_0008688. |
| (3rd set) Request for Production No. 23: Please produce all documents and communications constituting, evidencing, or relating to the work performed by David W. Kent, Jr. to source the origin of Oilpro's members and resumes, including, without limitation: | Oilpro_0008684; Oilpro_0008685; Oilpro_0008686; Oilpro_0008687; |

---

[43] Ex. 13, Declaration of Marla Thompson Poirot ¶6.

| Plaintiffs' Requests | Documents Produced April 6, 2018 |
|---|---|
| a)    the code that was utilized;<br>b)    all documents and communications evidencing or relating to the process used to source the origin of Oilpro's members and resumes;<br>c)    all documents and communications referring to, evidencing, or relating to the origins of the members and resumes sourced;<br>d)    all documents referring to, evidencing, or relating to the members you contend were not sourced from Rigzone, including, without limitation, the identities, sources, and origins of such members, as well as any documents and communications supporting your contention that they were not sourced from Rigzone; and<br>e)    all documents and communications exchanged with the federal government evidencing or relating to your work. (David Kent Dep. 141:20-22; 155:16-20.) | Oilpro_0008688. |
| (3rd set) Request for Production No. 24: Please produce all documents and communications constituting, evidencing, or relating to the "database of every member that [Oilpro] had in [its] database up to April 1, 2016, with member I.D., email address, name, where they were sourced from," including but not limited to a copy of the database and the documents and communications you exchanged with the government about the database. (David Kent Dep. 152:4-9.) | Oilpro_0008684; Oilpro_0008685; Oilpro_0008686; Oilpro_0008687; Oilpro_0008688. |
| (3rd set) Request for Production No. 28: Please produce all documents, communications, and/or other evidence in support of your claim at your deposition that only 24,000 of Oilpro's members were acquired through unauthorized access of Rigzone's members database. (David Kent Dep. 150:6-8.) | Oilpro_0008684; Oilpro_0008685; Oilpro_0008686; Oilpro_0008687; Oilpro_0008688. |

In their cursory analysis, Plaintiffs state that the Court admonished Oilpro "that documents related to the criminal case but generated as part of Oilpro's business . . . are relevant and should be produced if requested." (DE 215 at 9). Perhaps misunderstanding the issue, Plaintiffs confuse the topics of *relevance* and *privilege*. Oilpro objected to producing documents after March 29, 2016 based on *privilege*. Regardless, the Court was not addressing the privilege at issue here.[44] Oilpro appropriately asserted privilege and then, following Kent's deposition, produced the documents listed above in response to Plaintiffs' requests served on December 11, 2017.

---

[44] Ex. 8, Transcript of May 12, 2017 Hearing at 6:2-7:2.

The chart below describes the second category of requests about which Plaintiffs complain.

| Plaintiffs' Requests | Limited Relevance to Plaintiffs' Motion |
|---|---|
| (1st set) Request for Production No. 160: Please produce all documents referring or relating to the June 22, 2016 article published on your website that was entitled "Rapid Membership Growth Explained," including all drafts of the article. | The article Plaintiffs reference does not relate in any way to Livingston's report. Further the article does not relate to this suit. Moreover, Plaintiffs seek to have it both ways. Plaintiffs refused to produce documents in response to Oilpro's requests related to Plaintiffs' article.[45] Regardless, Oilpro produced to Plaintiffs documents Kent used in completing this analysis. |
| (1st set) Request for Production No. 161: Please produce all documents referring or relating to the process of "source[ing] the origin of each and every active member" that is referenced in the June 22, 2016 article published on your website that was entitled "Rapid Membership Growth Explained," including all documents showing the origins of each Oilpro member. | Again, this request seeks irrelevant documents to the extent it seeks documents related to the article. Additionally, Oilpro produced the information, including Kent's analysis and an access database with the source of each member. |
| (3rd set) Request for Production No. 30: Please produce all documents and communications exchanged between you and Jeremy Antonini between March 1, 2016 and present regarding Oilpro, Rigzone, DHI Group, and/or the source or origin of Oilpro's members. | This overbroad request is of little relevance (if any) to Livingston's analysis. Every communication between Jeremy Antonini and any Oilpro employee about Oilpro is overbroad given that this would be every communication Jeremy had as an Oilpro employee. Further, Oilpro appropriately objected to this request as seeking documents after the date of anticipated litigation. Regardless, Oilpro agreed to produce and actually produced documents "regarding the source or origin of Oilpro's members." |
| (3rd set) Request for Production No. 31: Please produce all documents and communications exchanged between you and any Oilpro employee regarding the re-activation of any Oilpro member's account between March 30, 2016 and present. | Oilpro's "reactivation" of its members has no relevance to Livingston's analysis. Furthermore, Oilpro properly objected to this request. |

---

[45] Ex. 27, Plaintiffs' Responses to Oilpro's Second Requests for Production.

Plaintiffs complain that Oilpro should have produced certain documents on which Livingston "relied" in his report. But Oilpro did timely produce the documents. The deadline for production of expert materials is the same date as the deadline for expert reports. *Climb Tech, LLC v. Verble*, A-05-CA-864 LY, 2008 WL 11334915, at *2 (W.D. Tex. Dec. 29, 2008). The first document that Plaintiffs identify is Oilpro_Livingston_0000001. This file is the Oilprosite.bak. As discussed above, Plaintiffs withdrew their request. Plaintiffs also complain that Oilpro should have produced Oilpro_Livingston_0000002, Oilpro_Livingston_0000003, and Oilpro_Livingston_0000004 before Livingston's report. As explained above, these documents were withheld as privileged.[46] Without a word of analysis and with only a chart giving a short description of what the file contains, Plaintiffs claim that Oilpro_Livingston_0000001-Oilpro_Livingston_0000004 "go to  the heart of the analysis." (DE 215 at 12). While these documents were provided to Livingston, they do not "go to the heart" of his analysis.[47]

Plaintiffs further claim that Oilpro_Livingston_0000003 is of particular importance. Ironically, none of Plaintiffs' listed requests, when read in light of Oilpro's objections to Plaintiffs' overbroad requests, could fairly be construed to require production of Oilpro_Livingston_0000003. Plaintiffs did not ask for documents proving that they had inflated the resume quantity for the government—which is what this document is.[48] Regardless, as Livingston notes in his declaration, this was not one of the documents used for  his analysis.[49] Livingston's analysis is entirely independent of Kent's analysis.[50]

---

[46] Ex. 13, Declaration of Marla Thompson Poirot ¶¶ 8, 9.
[47] Ex. 26, Declaration of Trent Livingston ¶¶5-6.
[48] Ex. 14, Declaration of David Kent ¶4.
[49] Ex. 26, Declaration of Trent Livingston ¶6.
[50] *Id.*

**CONCLUSION**

Plaintiffs over-zealously advocated to the government the wrong number of resumes copied and the wrong number of members who joined Oilpro as a result of the access. Now in this case, Plaintiffs seek to conceal from this Court the accurate numbers identified by Livingston. Plaintiffs' hastily drafted motion is full of fanciful phrases but no factual integrity. Plaintiffs' motion should be denied.

Dated:  August 10, 2018

         Respectfully submitted,

         **FOLEY GARDERE**
         **FOLEY & LARDNER LLP**
         <u>/s/*James G. Munisteri*</u>
         /s/ James G. Munisteri
         James G. Munisteri
         Texas Bar No. 14667380
         Marla T. Poirot
         Texas Bar No. 00794736
         Heidi Rasmussen
         Texas Bar No. 24090345
         1000 Louisiana, Suite 2000
         Houston, Texas 77002-2099
         Telephone: (713) 276-5500
         Facsimile: (713) 276-5555
         jmunisteri@foley.com
         mpoirot@foley.com
         hrasmussen@foley.com

         Peter S. Vogel
         Texas Bar No. 20601500
         2021 McKinney, Suite 1600
         Dallas, Texas 75201-3340
         Telephone: (214) 999-3000
         Facsimile: (214) 999-4667
         pvogel@foley.com

         ATTORNEYS FOR DEFENDANT/
         COUNTER-PLAINTIFF, SINGLE
         INTEGRATED OPERATIONS PORTAL,
         INC. D/B/A OILPRO AND OILPRO.COM
         AND DAVID W.  KENT, JR.

## CERTIFICATE OF SERVICE

I certify that a copy of the forgoing was served via email on August 10, 2018 on the following:

| | |
|---|---|
| Walter Lynch<br>Amir Halevy<br>Jeb Golinkin<br>Jordan, Lynch & Cancienne PLLC<br>1980 Post Oak Blvd., Suite 2300<br>Houston, Texas   77056<br>wlynch@jlcfirm.com<br>ahavely@jlcfirm.com<br>jgolinkin@jlcfirm.com | Counsel for Plaintiffs DHI Group, Inc.<br>f/k/a Dice Holdings, Inc. and Rigzone.com,<br>Inc. |
| Derek Hollingsworth<br>Rusty Hardin & Associates, LLP<br>1401 McKinney Street, Suite 2250<br>Houston, Texas  77010-4035<br>dhollinsworth@rustyhardin.com | Counsel for Defendant Matthew Kent |

*/s/ James G. Munisteri*
James G. Munisteri