# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC., <br><br> *Plaintiffs,* <br> v. <br> DAVID W. KENT, JR., SINGLE INTEGRATED OPERATIONS PORTAL, INC. D/B/A OILPRO AND OILPRO.COM, ET AL., <br> *Defendants.* | C.A. NO.: 16-cv-01670 |

**PLAINTIFFS' MOTION TO EXCLUDE THE UNRELIABLE TESTIMONY OF DEFENDANTS' EXPERT TRENT LIVINGSTON**

JORDAN, LYNCH & CANCIENNE PLLC

**Walter Lynch**
State Bar No. 24046330
Federal ID No. 965265
**Amir Halevy**
State Bar No. 24065356
Federal ID No. 1259956
**Joseph W. ("Jeb") Golinkin II**
State Bar No. 24087596
Federal ID No. 2515657
1980 Post Oak Blvd.; Suite 2300
Houston, Texas 77056
Telephone: 713-955-4020
wlynch@jlcfirm.com
ahalevy@jlcfirm.com
jgolinkin@jlcfirm.com

ATTORNEYS FOR PLAINTIFFS DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC.

## **TABLE OF CONTENTS**

**Page**

I.   SUMMARY OF ARGUMENT ................................................................. 1

II.  LEGAL STANDARD ........................................................................... 2

III. ARGUMENT ........................................................................................ 3

A.  TRENT LIVINGSTON'S SPECIFIC METHODOLOGY IS UNKNOWN
AND UNKNOWABLE. ......................................................................... 4

B.  LIVINGSTON DID NOT RECORD OR MAINTAIN RECORDS OTHER
THAN HIS CONCLUSORY NUMBERS. .............................................. 7

C.  LIVINGSTON DID NOT VALIDATE OR ASSESS THE COMPLETENESS
OF THE DATA RELIED UPON. .......................................................... 9

D.  LIVINGSTON DID NOT HAVE ALL THE DATA HE NEEDED TO
COMPLETE HIS EXPERT ANALYSIS. ............................................... 10

IV. CONCLUSION .................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alaska Rent-A-Car, Inc., v. Avis Budget Group, Inc.,*
No. 3:03-cv-00029-TMB, 2009 WL 10672789 at *5 (D. Alaska Sept. 16, 2009)........ 6

*Astro Tech., Inc. v. Alliant Techsystems, Inc.,*
Civil Action No. H-03-0745, 2005 WL 6061803, at *11 (S.D. Tex. Sep. 28, 2005) .... 3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
509 U.S. 579 (U.S. 1993) ............................................................................................. 2

*Gen. Elec. Co. v. Joiner,*
522 U.S. 136 (1997) ..................................................................................................... 7

*Hendrix v. Evenflo Co., Inc.,*
255 F.R.D. 568 (N.D. Fla. 2009).................................................................................. 3

*Johnson v. Samsung Elec.s Am., Inc.,*
277 F.R.D. 161 (E.D. La. 2011) ................................................................................... 8

*Knight v. Kirby Inland Marine Inc.,*
482 F.3d 347 (5th Cir. 2007) ....................................................................................... 3

*Lawrence v. Raymond Corp.,*
No. 3:09-cv-1067, 2011 WL 3418324, at *7 (N.D. Ohio Aug. 4, 2011). ................. 3, 5

*Lee-Bolton v. Koppers Inc.,*
319 F.R.D. 346 (N.D. Fla. 2017).................................................................................. 3

*Lewis v. Parish of Terrebonne,*
894 F.2d 142 (5th Cir. 1990) ....................................................................................... 6

Plaintiffs DHI Group, Inc. and Rigzone.com, Inc. (collectively, "Plaintiffs") submit this Motion To Exclude The Unreliable Testimony Of Defendants' Expert Trent Livingston.[1]

## I.      SUMMARY OF ARGUMENT

Despite pleading guilty in Federal court and admitting that "I honestly don't know the full extent of what the damages were, but I accept I'll pay, et cetera, whatever I need to do which has been made clear,"[2] David Kent claims the number of resumes he stole from Plaintiffs, and the number of ill-gotten members of OilPro, are a fraction of what the government investigation identified.[3] To support this flimsy claim,[4] Defendants have retained Trent Livingston, a self-proclaimed expert in "structured data analytics,"[5] to do a "black box" analysis of the OilPro database to bolster David Kent's allegations and testimony about how many resumes he stole and how many new members those thefts generated for OilPro.

---

[1] On June 20, 2018, Plaintiffs filed a separate Motion to Strike the Improper "Rebuttal" Expert Report of Trent Livingston based on significant procedural and discovery issues. Plaintiffs believe that the prior motion is enough to prevent Livingston's testimony, but in an abundance of caution, bring this "*Daubert*" motion as an independent and alternative reason to strike Livingston's testimony.

[2] David Kent sentencing hearing transcript, October 6, 2017, 32:22-24. (Attached as Ex. 1)

[3] United States v. David W. Kent, Sealed Complaint filed March 22, 2016, 25(f). (Attached as Ex. 2)

[4] Knowing that a jury may choose to disbelieve a convicted felon concerning the true extent of his theft and knowing that David Kent's fabrication that the government audited and approved his analysis would eventually be discovered, Livingston was hired to do David Kent's bidding. During his deposition, David Kent claimed that the government audited and approved his analysis which allowed him to activate all but around 24,000 OilPro members. *See* Dep. of David Kent, Nov. 20, 2017, 150:6-152:1. (Attached as Ex. 3). However, that statement was simply not true. *See* September 24, 2018 Letter from AUSA Andrew Chan to Dan Cogdell. ("The Government did not request that OilPro or the defendant provide information to substantiate the source of the members who were reactivated. Nor did the Government conduct, or advise you or the defendant that it had conducted, an independent audit to verify the methodology used prior to consenting to this additional batch of members being activated."). (Attached as Ex. 4).

[5] Dep. of Trent Livingston, Sept. 18, 2018, 33:11-18. (Attached as Ex. 5)

Livingston's weak credentials, and his total reliance on David Kent for both data and guidance, make wonderful fodder for a "vigorous cross examination" as envisioned in *Daubert. See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (U.S. 1993). However, Livingston's methodology is so unreliable and opaque that it cannot be cured with anything less than exclusion. Moreover, although Livingston has previously told this Court that he could not complete his analysis without Web Logs, he did so anyway, further calling into question the validity of his analysis.

## II.      LEGAL STANDARD

Expert testimony is governed by Rule 702 of the Federal Rules of Evidence which states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The reliability components of this Rule have been interpreted over the past 25 years in many opinions, starting with *Daubert*. The *Daubert* Court created a non-exclusive checklist of factors for trial courts to assess the reliability of expert testimony including whether the technique can be tested, whether it has been subjected to peer review, the known or potential error rate of the technique, "the existence and maintenance of standards controlling the technique's operation," and whether the technique is generally accepted. *Daubert*, 509 U.S. at 593-94.

The key is that an expert must have an acceptable methodology. *See Astro Tech., Inc. v. Alliant Techsystems, Inc.*, Civil Action No. H-03-0745, 2005 WL 6061803, at *11 (S.D. Tex. Sep. 28, 2005). Moreover, "[t]he need for an expert to complete and explain his methodology is at the heart of reliability." *Lee-Bolton v. Koppers Inc.*, 319 F.R.D. 346, 378 (N.D. Fla. 2017). In fact, an "expert's testimony must be reliable at each and every step or else it is inadmissible." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). *See also Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009) (finding that when assessing the purported methodology, "the court must undertake an independent analysis of each step in the logic leading to the expert' conclusions; if the analysis is deemed unreliable at any step the expert's entire opinion must be excluded"). In other words, "[a]n expert is not a black box into which data is fed at one end and from which an answer emerges at the other; the Court must be able to see the mechanisms in order to determine if they are reliable and helpful." *Lawrence v. Raymond Corp.*, No. 3:09-cv-1067, 2011 WL 3418324, at *7 (N.D. Ohio Aug. 4, 2011).

## III.   ARGUMENT

Even Livingston acknowledges that "any sound computer forensic report must have conclusions that are reproducible by a qualified independent third party."[6] Yet, as detailed below, Livingston did not disclose his specific methodology, thereby making it impossible to evaluate or verify. Defendants and Livingston want this Court to trust his black box methodology. However, Livingston repeatedly admitted that he did not keep

---

[6] Ex. 5 at 65:12-17.

3

or maintain records of key intermediate steps in his analysis. This is crucial because he admits that he used a multi-step analysis and "as a result of each step being performed sequentially," he reached his end result.[7] Additionally, despite spending "in excess of a hundred hours" as a retained expert before his deposition,[8] Livingston did not bother to spend the time to validate, or assess the completeness of, the data provided to him by David Kent. His methodology is unreliable and thus the Court should exclude his testimony. Finally, Livingston did not review the "Web Logs" that he told this Court were "necessary" to complete his analysis properly.

### A.  Trent Livingston's Specific Methodology is Unknown and Unknowable.

In an interview unrelated to this litigation, Livingston helpfully explains the distinction between data and information:

> Let me take a quick step back to describe the important difference between data and information. They are not interchangeable terms. Data refers to unprocessed facts and figures, while information is the contextual result of processing and analyzing data to provide a tangible benefit to the company.[9]

Defendants theoretically hired Livingston to process and analyze "data" (selected parts of the OilPro database) to provide "information" (his conclusions) to "provide a tangible benefit" (the bolstering of David Kent's claim that only approximately 24,000 OilPro members joined because of his criminal activities[10]). Specifically, to reinforce the results

---

[7] *Id*. at 138:18-20.
[8] *Id*. at 38:1-9.
[9] "Information Governance–A Corporate Imperative: Library Model Delivers A-to-Z Strategies", Interview by Metropolitan Corporate Counsel with Neal Lawson, March 2015. (Attached as Ex. 6)
[10] Ex. 3 at 150:6-8.

previously conjured by David Kent, Livingston was brought in to do his bidding and used a five-part approach to reach his conclusions. He (1) evaluated the tables from the OilPro database provided to him by David Kent, (2) devised a series of steps to analyze the database (his expressed methodology), (3) wrote database queries that Livingston claims effectuated the database analysis designed by him, (4) ran the queries and generated reports that showed the results of the queries, and (5) provided summary charts showing how many ill-gotten new members OilPro received each month during the date range he thought was relevant. On the surface, this five-part approach seems comprehensive and reasonable; however, the lack of detail in his methodology—completely failing to provide any documentation of parts 3 and 4—renders his analysis nothing more than a "black box into which data is fed at one end and from which an answer emerges at the other." *Lawrence*, 2011 WL 3418324 at *7.

Plaintiffs acknowledge Livingston's Report includes a section titled "Methodology for Analysis."[11] In it, he provides his high level framework for analyzing the database in general terms. Indeed, Livingston readily admits that the methodology outlined in his report was only in "layperson's terms:"

> Q. And I understand that that's going to be more specific and we'll get there; but in lay terms just at a high level, can you describe to me what that method of analysis consisted of?
> * * *
> A. In layperson's terms, it's described in those terms. I'm happy to read through this with you.
> * * *
> A. Because it is in layperson's terms.[12]

---

[11] Livingston Expert Report, p.8-17 (para 22-41). (Attached as Ex. 7)
[12] Ex. 5 at 107:7-15.

What is crucially missing, however, are the detailed technical steps (parts 3 and 4 described above) that he used in his processing and analyzing the OilPro database. "But, as is often the case, the devil is in the details. In addition to the relevance and overall methodology, in applying the reliability test this Court must examine the reasoning and procedure of the expert underlining his or her conclusions to determine whether those conclusions are based upon mere subjective beliefs or unsupported speculation or conjecture." *Alaska Rent-A-Car, Inc., v. Avis Budget Group, Inc.*, No. 3:03-cv-00029-TMB, 2009 WL 10672789 at *5 (D. Alaska Sept. 16, 2009). *See also*, *Lewis v. Parish of Terrebonne*, 894 F.2d 142, 146 (5th Cir. 1990) ("An expert's opinion must be preceded by facts in evidence and cannot be the basis of speculation or conjecture."). Simply put, details matter.

Livingston performed a multi-step analysis of select parts of the OilPro database to reach his conclusion.[13] At each step of the analysis, Livingston used "queries[14] that [he] ran as [he] was writing [his] report against the databases" to identify sets of members, and to ultimately reach his conclusion that only 20,905 OilPro members joined as a result of the criminal activities.[15] However, when asked for the actual queries he created and ran against the OilPro database, he responded that "I don't have them. They're not set out in the report. I don't have them."[16] Shockingly, the actual steps Livingston used to process and analyze the data were neither disclosed, nor even retained for later

---

[13] Ex. 7 at 8-17 (para 22-41).
[14] A database query is used to find information from a database.
[15] Ex. 5 at 122:11-123:15; 138:12-20.
[16] *Id*. at 124:5-8.

disclosure. In other words, Livingston's analysis cannot be tested. Rather, it is a black box: data in, conclusions out.

**B. Livingston Did Not Record or Maintain Records Other than His Conclusory Numbers.**

In addition to not disclosing or maintaining his actual database queries, Livingston did not provide, or even apparently keep, a list of the members allegedly identified at each step of his process. Instead, he merely provided the conclusion derived from his work, his determination of the monthly and total number of ill-gotten OilPro members. Indeed, he apparently did not even retain the final list of invalid members. When specifically asked "for a list with the member and the Member ID and why they were assigned" to either OilPro or Rigzone, he admitted that "there is not a line-by-line list."[17] However, without actually identifying members, neither Plaintiffs nor a "qualified independent third party" could analyze Livingston's claims, or even perform a random spot check of his results. His black box methodology means that his conclusions cannot be tested, nor can his error rate be assessed; thus, it is unreliable and must be excluded. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). Data in, conclusions out.

Moreover, the actual list of members identified by his methodology is not the only data set vital to understanding Livingston's methodology that was not disclosed or retained. For example, understanding exactly which data sets were analyzed is vital to

---

[17] *Id*. at 151:1-14.

understanding both methodology and conclusions. Livingston states that "[o]nly those users that had claimed their profile ('Member Profiles') were considered in my analysis, not those with Soft Profiles."[18] When asked how many Soft Profiles he identified, he responded that "I can't recall."[19] When asked for "a list of those members who were not considered in [his] analysis," he responded that "I don't have that list."[20] Data in, conclusions out.

When asked for "the list of those members that you assigned first possession to OilPro," Livingston did not provide the requested list and instead recommended that Plaintiffs can "go through the steps that I performed, and repeat the same analysis."[21] The ridiculousness of that statement notwithstanding, it is impossible for Plaintiffs, or any "qualified independent third party," to repeat Livingston's analysis, because as noted above, he did not disclose or retain his actual database queries.[22] Data in, conclusions out.

Additionally, Livingston revealed in his deposition that if Rigzone were given credit for the member in both step one and step two of his analysis, but his step three

---

[18] Ex. 7 at para 18.
[19] Ex. 5 at 105:23-25.
[20] *Id*. at 106:6-11.
[21] *Id*. at 149:19-150:2.
[22] Plaintiffs anticipate that Defendants will suggest that Plaintiffs should have hired their own database expert to follow Mr. Livingston's methodology described in his report to check his results. If presented, this would be a frivolous argument. The problem Plaintiffs have with Mr. Livingston's analysis is that he failed to produce the actual database queries and results of the queries for Plaintiffs to evaluate. Accordingly, Plaintiffs are simply unable to determine if Livingston reliably applied his methods of analysis to the facts of this case. Plaintiffs have no means of checking to see if he wrote or ran his queries correctly. Without copies of the actual queries he ran and the reports they generated, Plaintiffs are left to accept the say-so of Livingston that he applied his methodology reliably. Say-so doesn't cut it. *See 999* ("[A] party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required.").

analysis determined that OilPro should be credited, he gave OilPro credit in the final count.[23] In addition to not keeping a record of the members he chose to convert to OilPro, Livingston did not even bother to tally the total. Indeed, when asked how many times that exception occurred, he responded that "I did not track this on a member-by-member basis."[24] Once again, neither Plaintiffs nor any "qualified independent third party," can either test his results or ascertain his error rate. Data in, conclusions out.

## C. Livingston Did Not Validate or Assess the Completeness of the Data Relied Upon.

Even if Livingston's analysis methodology were above reproach, the accuracy of his analysis would depend on having access to all of the necessary data. Importantly, Livingston "did not have a copy of the OilPro database server."[25] Rather, he was given "extracted tables from the OilPro database."[26] Livingston detailed the tables he received in Appendix B of his report.[27] However, Livingston acknowledges "there were more tables in the OilPro database."[28] Furthermore, despite spending over 100 hours on this case prior to deposition, Livingston was forced to admit that he did not bother to confirm that all of the OilPro database tables not provided to him were actually irrelevant:

---

[23] Ex. 5 at 130:5-21.
[24] *Id*. at 130:22-131:7.
[25] *Id*. at 63:16-22.
[26] *Id*. at 59:23-60:2.
[27] *Id*. at 118:13-20.
[28] *Id*. at 118:21-24.

Q. How do you know if the other tables, in other words, the other tables that are not listed in Appendix B, are not relevant if you don't know what they are?

A. I examined some of those tables to identify that they were not related to membership information or any of the profile information.

Q. Did you examine all of the other–the tables in that OilPro database to confirm that—

A. Not every single one, no.[29]

Analyzing all of the relevant data in the OilPro database is fundamental to an appropriate methodology. Instead, Livingston simply relied on what David Kent told him about the database.[30] However, since Livingston did not confirm that all of the non-analyzed tables were irrelevant, neither Livingston, nor Plaintiffs, nor any "qualified independent third party," can be assured that David Kent provided all the necessary data.

### D. Livingston Did Not Have All the Data He Needed to Complete His Expert Analysis.

In addition to the foregoing, Livingston's analysis cannot be trusted because he did not have the Web Logs that he has previously avowed were required to complete his analysis. In an undated declaration submitted by Defendants in support of an effort to compel Plaintiffs to provide Web Logs, Livingston explained that the Web Logs related to the second round of hacks were "necessary for [him] to complete the expert analysis

---

[29] Ex. 5 at 121:9-18.
[30] *Id*. at 118:13-119:19.

10

[he was] performing."[31] In fact, he described the Web Logs as "the most important source documents" for his analysis of the actual resumes taken by David Kent "and ultimately the number of Rigzone Website members converted to OilPro members."[32] He claimed the lack of Web Logs made it "nearly impossible to properly calculate the number of Rigzone Website members converted by OilPro without making substantially broad assumptions."[33] Livingston concluded his declaration by claiming that "without the Web Logs, [he could not] complete [his] expert analysis without [sic] the precision appropriate for Court testimony."[34] When Livingston drafted his expert report, he still did not have the Web Logs related to the second round of hacks.[35] Undeterred, Livingston managed to complete his analysis, but failed to explain why the Web Logs were no longer necessary. Plaintiffs request this Court take Livingston at his word and rule that because he did not have the Web Logs, his analysis lacks "the precision appropriate for Court testimony."

## IV.   CONCLUSION

Considering the above, Plaintiffs respectfully request that the Court exclude the testimony of Trent Livingston and prohibit any of Defendants' experts from referencing or relying on conclusions drawn by Livingston.

---

[31] Livingston Declaration at para 8. (Attached as Ex. 8)
[32] *Id*. at paragraph 29.
[33] *Id*.
[34] *Id*. at para 32.
[35] Ex. 7 para 36.

Respectfully submitted,

**JORDAN, LYNCH & CANCIENNE PLLC**

By: _s/ Walter Lynch_
      **Walter Lynch**
      State Bar No. 24046330
      Federal ID No. 965265
      **Amir Halevy**
      State Bar No. 24065356
      Federal ID No. 1259956
      **Joseph ("Jeb") W. Golinkin II**
      State Bar No. 24087596
      Federal ID No. 2515657
      1980 Post Oak Blvd., Ste. 2300
      Houston, Texas 77056
      713-955-4020 (Telephone)
      713-955-9644 (Fax)
      wlynch@jlcfirm.com
      ahalevy@jlcfirm.com
      jgolinkin@jlcfirm.com

      ATTORNEYS FOR PLAINTIFFS DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC.

## CERTIFICATE OF SERVICE

      I hereby certify that on this 12th day of October, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all counsel of record in this case.

      _/s/ Jeb Golinkin_
      Joseph W. Golinkin II

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC.,<br><br>*Plaintiffs,*<br><br>  v.<br>DAVID W. KENT, JR., SINGLE INTEGRATED OPERATIONS PORTAL, INC. D/B/A OILPRO AND OILPRO.COM, ESTEVAN DUFRIN, MATTHEW KENT, BRYAN ROBINS, JEREMY ANTONINI, AND JOHN DOES NOS 1-10,<br>                    *Defendants.* | C.A. NO.: 16-cv-01670 |

## PROPOSED ORDER

Oilpro's Motion To Exclude The Unreliable Testimony Of Defendants' Expert Trent Livingston is **Granted.** The Court hereby **EXCLUDES** the testimony of Trent Livingston.

_____
The Honorable Nancy K. Johnson
United States Magistrate Judge

13