IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DHI GROUP, INC. F/K/A DICE
HOLDINGS, INC. AND
RIGZONE.COM, INC.,

               *Plaintiffs,*

   v.

DAVID W. KENT, JR., SINGLE
INTEGRATED OPERATIONS
PORTAL, INC. D/B/A OILPRO AND
OILPRO.COM, ET AL.,
               *Defendants.*

C.A. NO.: 16-cv-01670

## PLAINTIFFS' AFFIRMATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

JORDAN, LYNCH & CANCIENNE PLLC

**Walter Lynch**
State Bar No. 24046330
Federal ID No. 965265
**Amir Halevy**
State Bar No. 24065356
Federal ID No. 1259956
**Joseph ("Jeb") W. Golinkin II**
State Bar No. 24087596
Federal ID No. 2515657
1980 Post Oak Blvd., Ste. 2300
Houston, Texas 77056
713-955-4020 (Telephone)
wlynch@jlcfirm.com
ahalevy@jlcfirm.com
jgolinkin@jlcfirm.com

ATTORNEYS FOR PLAINTIFFS DHI GROUP,
INC. F/K/A DICE HOLDINGS, INC. AND
RIGZONE.COM, INC.

# TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT ............................................................................. 1

II. NATURE AND STAGE OF PROCEEDING ...................................................... 3

III. STATEMENT OF ISSUES AND STANDARD FOR REVIEW ........................ 4

IV. STATEMENT OF FACTS .................................................................................. 5

    A. Kent Sells Rigzone To DHI And Admits The Contents of The Resume Database Are Trade Secrets. ............................................... 6

    B. Ernst & Young Audits The Security of Rigzone.com. ..................... 7

    C. Kent Launches Oilpro and Begins Stealing from the Resume Database. .............................................................................................. 8

    D. Kent Arrested for Stealing Resumes from the Rigzone Resume Database. .............................................................................................. 9

    E. Kent Pleads Guilty to Fraud and Related Activity in Connection With Computers. .................................................**Error! Bookmark not defined.**

V. ARGUMENT AND AUTHORITIES ................................................................ 10

    A. David Kent Misappropriated Plaintiffs' Trade Secrets. ............... 11

        1. *The Contents of Rigzone's Resume Database Are Trade Secrets.* ............ 13

        2. *Kent Obtained the Resumes by Improper Means.* ..................................... 14

    B. Plaintiffs Are Also Entitled to Judgment As a Matter of Law on the Same Counts Against Oilpro Under the Vice-principal Theory. ............... 16

VI. CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Beardmore v. Jacobsen*,
    131 F. Supp. 3d 656 (S.D. Tex. 2015) ...................................................................... 12

*Bennett v. Reynolds*,
    315 S.W.3d 867 (Tex. 2010). ................................................................................ 16

*Bishop v. Miller*,
    412 S.W.3d 758 (Tex. App.—Houston [14th Dist.] 2013, no pet.)......................... 12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................ 4

*Fontenot v. Upjohn Co.*,
    780 F.2d 1190 (5th Cir. 1986) ............................................................................. 4

*GTE Sw., Inc. v. Bruce*,
    998 S.W.2d 605 (Tex. 1999) ................................................................................ 16

*Hammerly Oaks, Inc. v. Edwards*,
    958 S.W.2d 387 (Tex. 1997) ................................................................................ 16

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994) ............................................................................... 4

*MAI Sys. Corp. v. Peak Computer, Inc.*,
    991 F.2d 511 (9th Cir. 1993) ............................................................................... 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................................ 4

*Priority Assist, Inc. v. Stockard & Associates, Inc.*,
    4:15-CV-02970, 2016 WL 4479529, at *4 (S.D. Tex. Aug. 24, 2016)........................ 11

*Rimkus Consulting Group, Inc. v. Cammarata*,
    255 F.R.D. 417 (S.D. Tex. 2008)............................................................................ 12

*Royal v. CCC & R Tres Arboles, L.L.C.*,
    736 F.3d 396 (5th Cir. 2013) ............................................................................... 4

*Santiero v. Denny's Rest. Store,*
    786 F. Supp. 2d 1228 (S.D. Tex. 2011) .................................................... 16

*Spear Mktg., Inc. v. BancorpSouth Bank,*
    791 F.3d 586 (5th Cir. 2015) .................................................................. 11

*Supply Pro, Inc. v. Ecosorb Int'l, Inc.,*
    01-15-00621-CV, 2016 WL 4543136, at *13 (Tex. App.—Houston [1st Dist.]
    Aug. 30, 2016, no pet.) ........................................................................... 17

*Wellogix, Inc. v. Accenture, L.L.P.,*
    716 F.3d 867 (5th Cir. 2013) .................................................................. 12

*Williams Consol. I, Ltd. v. Smith,*
    No. 4:08-CV-766, 2009 WL 10698215, at *11 (S.D. Tex. Oct. 19, 2009) .................. 12

Plaintiffs DHI Group, Inc. ("DHI") and Rigzone.com, Inc. D/B/A Rigzone and Rigzone.com (collectively, "Rigzone" and together with DHI Group, "Plaintiffs") move for summary judgment on Plaintiffs' claim for misappropriation of trade secrets (Count VIII) against David Kent ("Kent") and Single Integrated Operations Portal, Inc. D/B/A Oilpro and Oilpro.com (collectively, "Oilpro"). As set forth below, under Federal Rule of Civil Procedure 56, Plaintiffs are entitled to judgment as a matter of law.

## I.      SUMMARY OF ARGUMENT

In 2010, Defendant David Kent sold Rigzone to DHI for more than $51 million. In the Purchase Agreement, Kent warranted that he and Rigzone had "taken all necessary and otherwise reasonable steps to protect and preserve the confidentiality of all of its trade secrets,"[1] including the compilation of resumes in the Rigzone Resume Database (also referred to as "the Resume Database").

Several years after the sale, Kent founded a competitor to Rigzone.com called Oilpro.com. To compete with Rigzone, Kent needed to replicate the size and quality of the Rigzone Resume Database. Rather than spending the time and money to try to build a resume database legally, Kent repeatedly hacked into the Rigzone Resume Database to steal resumes. Kent was subsequently indicted and pleaded guilty to federal criminal charges based on this conduct. During his sentencing hearing, Kent admitted that he "intentionally accessed without authorization the database of" Rigzone.com where hundreds of thousands of individual resumes, personal email addresses, and other

---

[1] Stock Purchase Agreement between Dice Holdings and Rigzone and David Kent, August 11, 2010 (Ex. 1) at p.14, Section 3.20(c).

confidential and proprietary information were stored, and he "took the resumes [and other information] for [his] commercial advantage to help [his] business Oilpro."[2] In his Sentencing Memorandum, Kent represented that he "accessed approximately 796,000 Rigzone members' accounts, which contained approximately 586,560 unique email addresses."[3]

Among other things, Plaintiffs sued David Kent for misappropriation of trade secrets based on Kent's massive theft of resumes from Rigzone Resume Database. Faced with this lawsuit, David Kent now argues that he was, in effect, just kidding when he negotiated and signed a contract that defined the contents of the Resume Database as trade secrets and promised that he and Rigzone had taken reasonable measures to protect the confidentiality of the contents of the Resume Database. Other than not wanting to have to accept responsibility for his misconduct, Kent offers no evidence to account for his change of position. Indeed, Kent himself admits that security at Rigzone has *improved* since he warranted that he and Rigzone took "all necessary and otherwise reasonable steps" to protect the confidentiality of the contents of the Rigzone Resume Database.

What makes this case unusual, if not unique, is that David Kent's own written warranties and testimony establish that there is no genuine issue of material fact about whether the resumes he stole are trade secrets. This evidence establishes that Plaintiffs are entitled to summary judgment on Count VIII of its Complaint against David Kent.

---

[2] Sentencing Hearing Tr., December 19, 2016 (Ex. 2) at pp. 13:2–9, 14:11–12.
[3] D. Kent's Sentencing Memorandum To US District Court Judge Denise Cote, filed September 22, 2017 (Ex. 3) at p. 17.

Plaintiffs are also entitled to judgment as a matter of law on the same Count against Oilpro under the vice-principal theory.

## II.     NATURE AND STAGE OF PROCEEDING

Before Kent pleaded guilty to computer fraud, Plaintiffs brought this civil suit under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, the Stored Wire and Electronic Communications and Transactional Records Access Act ("SCA"), 18 U.S.C. §§ 2701, *et seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*, the Texas Uniform Trade Secrets Act ("TUTSA"), TEX. CIV. PRAC. & REM. CODE §§ 134A.001, *et seq.*, the Texas Harmful Access by Computer Act ("THACA"), TEX. CIV. PRAC. & REM. CODE §§ 143.001, *et seq.*, the Texas Theft Liability Act ("TTLA"), TEX. CIV. PRAC. & REM. CODE §§ 134.001, *et seq.*, and other claims under Texas common law, including misappropriation of confidential information, fraud, breach of fiduciary duty, and unfair competition.

Kent's criminal conviction, guilty plea, admissions in open court, deposition testimony, and other admissible evidence establishes that there is no genuine issue of material fact as to Count VIII (trade secret misappropriation) because no reasonable jury could enter a verdict for Kent and Oilpro on this Count. Plaintiffs thus are entitled to judgment as a matter of law on its trade secret misappropriation claim against Kent and Oilpro.

### III.    STATEMENT OF ISSUES AND STANDARD FOR REVIEW

Whether Plaintiffs are entitled to summary judgment on Count VIII (trade secret misappropriation) against Kent and whether Plaintiffs are entitled to summary judgment on the same count against Oilpro under the vice-principal theory.

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A genuine dispute of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

Once the movant provides the basis of its motion and identifies the portions of the record that demonstrate the lack of a genuine issue of material fact, the burden is on the nonmovant to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" and instead "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586–87 (citations omitted). "If the nonmoving party fails to meet this burden, the motion for summary judgment *must* be granted." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994) (en banc) (emphasis added).

## IV.    STATEMENT OF FACTS

David Kent co-founded Rigzone with his father in 2000. Rigzone offers an online platform specific to professionals in the energy industry and has developed marketing and engagement methods to create and present content that energy professionals find valuable.[4]

Rigzone allows its members—oil and gas professionals—to create online profiles that contain personal and professional information.[5] As part of their profiles, members can also upload their resumes, which are assigned unique numerical identifiers ("Resume ID numbers").[6] This allows Rigzone's members to apply for job openings posted by recruiters and employers.[7] Similarly, recruiters and employers who pay for access to Rigzone's members can also solicit members (depending on an individual member's privacy settings) directly for job opportunities.[8] Rigzone's Resume Database is a closed environment, meaning that only Rigzone's paying customers may access it.[9] In other words, unlike other websites such as LinkedIn, the member profiles on Rigzone are not published, or otherwise made available, to the public.[10] Moreover, Rigzone does not sell its competitors subscriptions to its Resume Database.[11]

---

[4] D. Kent's Orig. Answer (ECF No.17) at ¶24.
[5] D. Kent Dep. Tr. (Ex. 4) at p. 125:18-24; Kent's Orig. Answer (ECF No.17 ) at ¶25.
[6] Ex. 4 at pp. 125:18-126:3; Kent's Orig. Answer (ECF No. 17) at ¶25.
[7] D. Kent's Orig. Answer (ECF No. 17) at ¶26.
[8] *Id.*
[9] Ex. 4 at pp. 73:4-9; 187:8-9.
[10] *Id.*
[11] *Id.*

A.  **Kent Sells Rigzone to DHI and Admits the Contents of the Resume Database Are Protected Trade Secrets.**

In August 2010, David Kent sold Rigzone, its website, and its assets—including its database of member resumes, profiles, and other confidential information—to DHI for around $51 million.[12] After paying off a loan and some bonuses to his employees, Kent personally walked away from the sale with between $38-40 million.[13]

Kent and DHI memorialized the Rigzone transaction in a Purchase Agreement executed by both parties.[14] Sophisticated advisors—including lawyers and experts in the sale of social media businesses like Rigzone—represented David Kent in the negotiations that led to the signing of the Purchase Agreement.[15]

In the Purchase Agreement, David Kent warranted that Rigzone "has taken all necessary and otherwise reasonable steps to protect steps and preserve the confidentiality of all of its Trade Secrets."[16]  The Purchase Agreement defines "trade secret" as "any trade secrets or other proprietary and confidential information including. . . Personal Information . . . [and] data collections."[17] The Purchase Agreement defines "Personal Information" as "[a]ll information or data associated with individual Persons, including customers and employees, that is collected by the Company in the course of its operations."[18]

---

[12] Ex. 4 at pp. 11:4-7; 12:2-8.
[13] *Id*. at pp. 12:11-13:1.
[14] *Id*. at p. 203:19-23.
[15] *Id*. at p. 204:2-17.
[16] Ex. 1 at p.14, Section 3.20(c); Ex. 4 at pp. 205:23-206:2, 211:18-213:4.
[17] Ex. 1 at pp. 54-55; Ex. 4 at pp. 205:23-206:2.
[18] Ex. 1 at p. 52; Ex. 4 at p. 206:13-20.

Faced with this reality, Kent acknowledged during his deposition that the contents of Rigzone's Resume Database are "Trade Secrets" as defined by the Purchase Agreement."[19] Kent also testified that his representation to DHI in the Purchase Agreement that Rigzone took reasonable steps to protect the confidentiality of its Trade Secrets—including the contents of the Rigzone Resume Database—was true when he signed the Purchase Agreement.[20] Indeed, Kent admitted that "we took *all* reasonable steps to protect the website."[21] Finally, Kent confirmed that the "backdoor" URLs he later used to steal Rigzone's trade secret information existed when he sole Rigzone to DHI.[22]

## B.    DHI Further Enhances the Security of Rigzone.com.

Despite all the security measures in place at the time of the sale, DHI supplemented and augmented site security to further protect the trade secrets it had purchased for over $50 million. Kent, who remained as Rigzone's President for over a year after the sale,[23] admitted that DHI undertook "additional work to protect the website and the database of Rigzone."[24] Specifically, Kent testified that DHI retained Ernst & Young ("E&Y") to audit Rigzone's security measures.[25] Although he has changed his tune in response to this litigation, Kent admitted that while serving as Rigzone's President post-sale, he thought the E&Y audit was unnecessary and that the website was secure: "I

---

[19] Ex. 4 at pp. 207:1-208:9.
[20] *Id.* at p. 213:5-7.
[21] *Id.* at p. 213:13-14 (emphasis added)
[22] *Id.* at p. 213:15-21.
[23] *Id.* at p. 13:2-8.
[24] *Id.* at pp. 213:23-214:7.
[25] *Id.* at p. 214:8-12.

thought the security was fine on the website. I didn't think we needed to do—do that work, but I went along with it."[26]

Importantly, Plaintiffs did not ignore E&Y's findings and recommendations. Jeremy Antonini, a co-founder of Rigzone who stayed on after the sale until the middle of 2013, and subsequently joined OilPro, confirmed that post-sale to DHI, Rigzone "did go through an audit from E&Y that then highlighted some potential security issues that were remediated."[27] E&Y's focus "was to examine the Rigzone system from . . . an external basis [] to see if there were any vulnerabilities []that could be exploited . . ."[28] Of course, no audit can guard against an insider, or former insider, willing to exploit legitimately acquired knowledge for illegal purposes.

**C.    Kent Launches Oilpro and Begins Stealing from the Resume Database.**

As a condition of the sale of Rigzone, Kent executed a non-compete agreement that prohibited him from competing with Plaintiffs until at least October 1, 2013.[29] As soon as his non-compete expired, David Kent publicly announced the launch of Oilpro.com and made the entire website available to the public.[30] From its inception, Oilpro competed directly with Rigzone.[31]

Shortly after launching OilPro, to enhance the growth rate and thus the commercial value of OilPro, Kent began stealing resumes from the Rigzone Resume

---

[26] *Id.* at pp. 214:21-215:1.
[27] J. Antonini Dep. (Ex. 5) at pp. 20:25-21:8.
[28] *Id.* at pp. 113:9-17.
[29] Ex. 4 at pp. 84:3-15; 95:1
[30] *Id.* at p. 17:6-7.
[31] *Id.* at p. 17:8-10.

Database.[32] Kent accomplished this by navigating to two secret administrative URLs that were known to only a handful of Rigzone insiders.[33]  Using his prior insider knowledge of the design of the Rigzone database as well as his knowledge of Rigzone's internal processes, Kent designed a computer program to systematically steal resumes by the thousands.[34]

Kent acknowledges that Rigzone never authorized him to access the Resume Database during his tenure at Oilpro.[35] Indeed, Kent admits Rigzone would not have allowed OilPro, or any other competitor, access to the Resume Database even if it had offered to pay for it because the Resume Database gave Rigzone a competitive advantage over Oilpro and its other competitors.[36]

**D.    Kent is Arrested and Pleads Guilty to Stealing Resumes from the Rigzone Resume Database.**

On   March 23,   2016,   the   United   States   filed   a   criminal   complaint ("Criminal Complaint") against Kent based on the above, as well as additional acts.[37] The Criminal Complaint outlined a scheme to defraud Plaintiffs through a pattern of computer hacking and other illegal activities including:

▪ **The First Round of Hacks**. "[O]n or about October 17, 2013 and on or about April 15, 2014, approximately 100,000 suspicious" HTTP requests bombarded Rigzone.com with a computer command that was "crafted to exploit a piece of source code unique to [Rigzone.com] known only to a few individuals, including DAVID W. KENT, the defendant," and caused "the unauthorized access of information from *approximately 96,000 resumes*."[38]

---

[32] *Id*. at pp. 17:17-18:25.
[33] *Id*. at pp. 25:25-128:13; 201:9-21.
[34] *Id*. at p. 129:11-25.
[35] *Id*. at p. 17:17-19.
[36] *Id*. at pp. 61:20-62:14.
[37] Criminal Complaint (Ex. 6).
[38] *Id*. at ¶ 23 (emphasis added).

- ▪ **The Second Round of Hacks**. "[O]n or about June 17, 2015 and on or about August 2, 2015, approximately 750,000 suspicious HTTP requests" bombarded Rigzone.com with a different computer command that "exploited" a certain file called "resume_writer.asp" that "[o]nly a person with intimate knowledge of how resume_writer.asp works and how [Rigzone.com] cataloged each resume . . . would be able to submit the appropriate commands to extract such a large quantity of resumes in such a short period of time," and caused "the unauthorized access of information from *approximately 700,000 resumes*."[39]

Kent ultimately pleaded guilty to fraud and related activity in connection with computers. Furthermore, at his plea hearing, Kent admitted: (1) that he "intentionally accessed without authorization the database of a website called Rigzone;"[40] (2) that he "circumvented the password protected features of the [Rigzone] website;"[41] and (3) that he "took the resumes for my own commercial advantage to help my business Oilpro."[42]

## V.    ARGUMENT AND AUTHORITIES

"Resumes are [] an element that create value for the business line that we're in."[43] David Kent successfully monetized that value when he received more than $51 million by selling Rigzone to DHI in 2010. To get his money, Kent, as the sole shareholder of Rigzone, contractually represented and warranted that the contents of the Rigzone Resume Database are trade secrets, and that he and Rigzone "had taken all necessary and otherwise reasonable steps to protect and preserve the confidentiality" of all of Rigzone's

---

[39] *Id*. at ¶ 24 (emphasis added).
[40] Ex. 2 at pp. 12:24-13:4.
[41] *Id*. at 17:2-4.  Kent quibbled about whether the specific URLs through which he gained access were individually password protected, but he acknowledged that he did not have a password for the Rigzone website. *Id*. at 17:5-20.
[42] *Id*. at p. 13:5-9.
[43] Ex. 4 at p. 62:13-14.

trade secrets. Since then, David Kent's own testimony establishes that DHI actively took measures, including an audit by external website security professionals, to *improve* the security of the Rigzone website. Kent's own sworn testimony and contractual guarantees establish that Plaintiffs are entitled to summary judgment on their claim that Kent and Oilpro misappropriated trade secrets by unlawfully accessing the Resume Database and stealing hundreds of thousands of resumes.

**A.    David Kent Misappropriated Plaintiffs' Trade Secrets.**

Plaintiffs have conclusively established that Kent violated the TUTSA. "Trade secret misappropriation under Texas law is established by showing: (a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret without authorization from the plaintiff." *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 600 (5th Cir. 2015). There is no genuine issue of material fact with respect to any of these elements.

A trade secret is defined as "information, including a formula, pattern, compilation, program, device, method, technique, process, financial data, or list of actual or potential customers or suppliers, that: (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Priority Assist, Inc. v. Stockard & Associates, Inc.*, 4:15-CV-02970, 2016 WL 4479529, at *4 (S.D. Tex. Aug. 24, 2016) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002).

"To determine whether a trade secret exists, [courts applying Texas law] consider six factors, weighed in the context of the surrounding circumstances: (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of the measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874–75 (5th Cir. 2013) (quoting *In re Bass*, 113 S.W.3d 735, 739–40 (Tex. 2003)). Plaintiffs "do not need to satisfy all six factors, because trade secrets 'do not fit neatly into each factor every time.'" *Beardmore v. Jacobsen*, 131 F. Supp. 3d 656, 671 (S.D. Tex. 2015) (quoting *In re Bass*, 113 S.W.3d at 739).

Texas Courts have routinely held that a business compilation, when used by the business to obtain an advantage over competitors, is a trade secret. *Williams Consol. I, Ltd. v. Smith*, No. 4:08-CV-766, 2009 WL 10698215, at *11 (S.D. Tex. Oct. 19, 2009) ("Under Texas law, a 'trade secret' is a 'formula, pattern, device or compilation of information used in a business, which gives the owner an opportunity to obtain an advantage over his competitors who do not know or use it.'") (citing *Triple Tee Golf, Inc., v. Nike, Inc.* 485 F.3d 253, 261 (5th Cir. 2007); *see also Rimkus Consulting Group, Inc. v. Cammarata*, 255 F.R.D. 417, 441 (S.D. Tex. 2008) ("Customer lists, pricing information, client information, customer preferences, buyer contacts, and marketing strategies have all been recognized as trade secrets.") (Rosenthal, J.); *see also Bishop v. Miller*, 412 S.W.3d 758, 769, 771 (Tex.

App.—Houston [14th Dist.] 2013, no pet.) (noting that compilations of readily available information can amount to more than the sum of their constituent parts and in combination constitute trade secret). Furthermore, the contents of databases are protectable as Trade Secrets. *See, e.g.*, *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (holding "Customer Database constitutes a trade secret" and affirming summary judgment for plaintiff on its claim that defendant misappropriated its "Customer Database").

### 1.  *The Contents of Rigzone's Resume Database Are Trade Secrets.*

David Kent's own testimony and contractual representations and warranties conclusively establish that the member information in the Resume Database is a trade secret. To obtain his windfall when he monetized the value of Rigzone, David Kent contractually represented to DHI that Rigzone "has taken all necessary and otherwise reasonable steps to protect and preserve the confidentiality of all of its Trade Secrets."[44]

The Purchase Agreement unequivocally establishes that the contents of the Resume Database were trade secrets when Kent sold Rigzone to DHI in 2010. Thus, the only way David Kent can create a fact issue on whether the resume database is a trade secret would be by demonstrating that DHI stopped taking reasonable measures to keep the contents of the Resume Database confidential. Kent offers no such evidence. Indeed, Kent actually confirms DHI *improved* the security of the Resume Database after the acquisition even though he thought those improvements were unnecessary.[45] Combined

---

[44] Ex. 1 at p. 14, section 3.20(c); Ex. 4 at pp. 205:23-206:2, 211:18-213:4.
[45] Ex. 4 at pp. 214:21-215:1.

with his testimony and contractual promise that Rigzone had taken reasonable measures to protect the confidentiality of its trade secrets—including the contents of the Rigzone Resume Database—Kent's testimony about the steps DHI took to improve security at Rigzone precludes any reasonable juror from finding that the 796,000 resumes from the Resume Database were not trade secrets.

The evidence also establishes that the information in the Resume Database is valuable and not generally known or readily ascertainable by competitors. If Kent could have created an alternative to Rigzone's Resume Database using solely legitimate means, Kent would not have used such unscrupulous measures to obtain copies of the resumes in Rigzone's Resume Database. Risking prison time makes no sense if Kent could have easily replicated or gathered the contents of the Resume Database from publicly available sources without spending large sums of time and effort working on the project and incurring substantial expenses.  Moreover, while Defendants now dispute the value of the Resume Database, even Kent admitted the Resume Database, which is a business compilation used by Rigzone to obtain advantage of its competitors,[46] is valuable when he testified that "Resumes are [] an element that create value for the business line that we're in."[47]

### 2.    *Kent Obtained DHI's Trade Secrets by Improper Means.*

Kent also cannot dispute that he obtained the information contained in the resumes he took by improper means.  As part of his plea bargain, Kent admitted in open

---

[46] *Id.* at pp. 61:20-62:14
[47] *Id.* at p. 62:13-14.

court that he "intentionally accessed without authorization the database of" Rigzone.com.[48] Furthermore, at that same hearing Kent acknowledged that he knew what he did was "wrong" and "a crime."[49]

### 3.   Defendants Used DHI's Trade Secrets Without Authorization of DHI.

Kent also admits that he used the improperly obtained resumes without authorization from DHI. At his plea hearing, Kent acknowledged that "I took the resumes for my own commercial advantage to help my business Oilpro."[50] He did so without authorization,[51] specifically stating that: "I didn't have permission, your Honor, to access those web pages."[52] Moreover, in his deposition, Kent admitted that Defendants actually used the improperly obtained resumes to bolster OilPro's membership numbers confirming that "After I downloaded a copy of the resumes, I took a subset of those resumes and invited them --those people to join Oilpro."[53]

Kent's prior representations coupled with his testimony in both the criminal case and this civil case confirms that (a) DHI's resumes were trade secrets; (b) they were acquired by Defendants through improper means; and (c) Defendants used them without authorization from DHI.  Plaintiffs are thus entitled to judgment as a matter of law on Count VIII against Kent for misappropriating Plaintiffs' trade secrets in violation of the TUTSA.

---

[48] Ex. 2 at p. 13:2–9.
[49] *Id.* at pp. 13:23-14:2.
[50] *Id.* at p. 13:5-9.
[51] *Id.* at p. 14:3-5.
[52] *Id.* at p. 17:12-14.
[53] Ex. 4 at pp. 19:1-14.

**B.**   **Plaintiffs Are Also Entitled to Judgment as a Matter of Law on the Same Counts Against Oilpro Under the Vice-principal Theory.**

By conclusively establishing their entitlement to summary judgment on their misappropriation of trade secrets claim against Kent, Plaintiffs are also entitled to judgment as a matter of law on the same count—specifically, Count VIII (TUTSA)—against Oilpro under the vice-principal theory.

"Corporations can act only through their agents." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999). "A vice-principal's acts are the acts of the corporation itself, and corporate liability in this situation is direct rather than vicarious." *Santiero v. Denny's Rest. Store*, 786 F. Supp. 2d 1228, 1236 (S.D. Tex. 2011) (Miller, J.) (citing *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997)). Under Texas law, "[w]hen actions are taken by a vice-principal of a corporation, those acts may be deemed to be the acts of the corporation itself." *Bennett v. Reynolds*, 315 S.W.3d 867, 883 (Tex. 2010) (quoting *Bruce*, 998 S.W.2d at 618).

Plaintiffs have conclusively established that Kent is a vice-principal of Oilpro. To establish that Kent is a vice-principal, Plaintiffs must show Kent falls under at least one of these four classes of corporate agents: (a) corporate officer; (b) those who have authority to employ, direct, and discharge servants of the master; (c) those engaged in the performance of nondelegable or absolute duties of the master; or (d) those to whom a master has confided the management of the whole or a department or division of his business." *Bennett*, 315 S.W.3d at 884 (quoting *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 250 n.1 (Tex. 2009)); *see, e.g., Bruce*, 998 S.W.2d at 618 (concluding that a supply operations supervisor, in charge of eight employees, was a vice-

principal because he was the most senior manager at the facility and he had the authority to hire, direct, and fire employees).

Several courts applying Texas law have found executives like Kent are vice principals and attributed their conduct to their companies. *See, e.g.*, *Supply Pro, Inc. v. Ecosorb Int'l, Inc.*, 01-15-00621-CV, 2016 WL 4543136, at *13 (Tex. App.—Houston [1st Dist.] Aug. 30, 2016, no pet.) (holding owner and president of corporation was a vice-principal and his conduct could be imputed to corporation "as a matter of law"). In *Supply Pro*, the court recognized that "a corporation's officers are considered corporate vice principals," and "a corporation and its corporate officer can both be liable for exemplary damages based on the *same misconduct*." *Id.* (emphasis in original).

There is no genuine issue of material fact about whether Kent is a vice-principal of Oilpro and Oilpro's liability for Kent's conduct. Kent is the actual and self-proclaimed founder, president, and majority shareholder of Oilpro.[54] Moreover, like the individual in *Bennett*, Kent directed Oilpro employees to help him steal and then use Rigzone.com's confidential and proprietary information "to help [his] business Oilpro."[55] Thus, Kent's criminal and tortious conduct is attributable to Oilpro, and Plaintiffs are entitled to judgment as a matter of law against Oilpro on the same counts that Plaintiffs have conclusively established against Kent.

---

[54] Declaration of David W. Kent Jr. (ECF No. 63-1) at ¶ 2.
[55] Ex. 2 at p. 14:11–12.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court enter summary judgment in their favor and against Kent and Oilpro on Count VIII and award Plaintiffs any further and other relief to which they may be entitled.

Respectfully submitted,

**JORDAN, LYNCH & CANCIENNE PLLC**

By: *s/ Walter Lynch*
        **Walter Lynch**
        State Bar No. 24046330
        Federal I.D. No. 965265
        **Amir Halevy**
        State Bar No. 24065356
        Federal I.D. No. 1259956
        **Joseph ("Jeb") W. Golinkin II**
        State Bar No. 24087596
        Federal I.D. No. 2515657
        1980 Post Oak Blvd., Ste. 2300
        Houston, Texas 77056
        713-955-4020 (Telephone)
        713-955-9644 (Fax)
        wlynch@jlcfirm.com
        ahalevy@jlcfirm.com
        jgolinkin@jlcfirm.com

        ATTORNEYS FOR PLAINTIFFS DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC.

### CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served by ECF on all counsel of record on this 12th day of October, 2018.

        */s/ Jeb Golinkin*
        Joseph W. Golinkin II