# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

DHI Group, Inc. f/k/a Dice Holdings Inc. and
RIGZONE.com, Inc.,
                Plaintiffs,

vs.

David W. Kent, Jr., Single Integrated
Operations Portal, Inc. d/b/a Oilpro, et al.,
                Defendants.

Single Integrated Operations Portal, Inc. d/b/a
Oilpro and OILPRO.com,
                Counter-Plaintiff,

vs.

DHI Group, Inc. f/k/a Dice Holdings Inc. and
RIGZONE.com, Inc.,
                Counter-Defendants.

Civil Action Number: 16-cv-01670

## OILPRO'S RESPONSE TO MOTION FOR
## SUMMARY JUDGMENT ON COUNTERCLAIMS

FOLEY GARDERE
FOLEY & LARDNER LLP

James G. Munisteri
Texas Bar No. 14667380
Marla T. Poirot
Texas Bar No. 00794736
1000 Louisiana, Suite 2000
Houston, Texas 77002-2099
Telephone: (713) 276-5500
Facsimile: (713) 276-5555
jmunisteri@foley.com
mpoirot@foley.com

Sara Ann Brown
Texas Bar No. 24075773
2021 McKinney, Suite 1600
Dallas, Texas 75201-3340
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
sabrown@foley.com

ATTORNEYS FOR DEFENDANTS

# TABLE OF CONTENTS

Table of Authorities ......................................................................................................... 3

Background Facts .............................................................................................................. 5

Objections to Plaintiffs' Evidentiary Submissions ...................................................... 10

    A.    The Court should strike the web archive screenshots because they were not produced in discovery. ......................................................................................... 11

    B.    The Court should strike the Web Archive screenshots because they are unauthenticated hearsay. ..................................................................................... 12

Arguments and Authorities .............................................................................................. 14

    A.    Plaintiffs' "unclean hands" argument lacks merit. ............................................... 14

    B.    DHI is the correct defendant. ................................................................................ 15

    C.    The terms & conditions were published on Oilpro's website, when DHI scraped. ................................................................................................................ 15

    D.    Tortious Interference with Prospective Business Relations.................................. 19

Conclusion ........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Audi AG v. Shokan Coachworks, Inc.*,
 592 F.Supp.2d 246 (N.D.N.Y.2008) ...................................................................14

*Bagby Elevator Co., Inc. v. Schindler Elevator Corp.*,
 609 F.3d 768 (5th Cir. 2010) ("Texas courts have long held that the
 affirmative defense of unclean hands is available only in equity") .......................15

*Be In, Inc. v. Google Inc.*,
 12-CV-03373-LHK, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013).........................18

*Brown v. AT & T Services Inc.*,
 236 F. Supp. 3d 1000 (S.D. Tex. 2017) (Hittner, J.).............................................12

*Cairo, Inc. v. Crossmedia Services, Inc.*,
 C 04-04825 JW, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005)..................................18

*Coinmach Corp. v. Aspenwood Apartment Corp.*,
 417 S.W.3d 909 (Tex. 2013)..................................................................................20

*Couponcabin LLC v. Savings.com, Inc.*,
 2:14-CV-39-TLS, 2016 WL 3181826 (N.D. Ind. June 8, 2016) ............................18

*Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*,
 671 F.3d 512 (5th Cir. 2012) .................................................................................11

*Gutierrez v. Wiesnet*,
 1:12-CV-155, 2015 WL 12940215 (S.D. Tex. Aug. 3, 2015) .................................15

*Hollywood Fantasy Corp. v. Gabor*,
 151 F.3d 203 (5th Cir.1998) ..................................................................................17

*Karl Rove & Co. v. Thornburgh*,
 39 F.3d 1273 (5th Cir.1994) ..................................................................................17

*Keystone Driller Co. v. General Excavator Co.*,
 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933)..................................................15

*Lee v. Offshore Logistical & Transp., L.L.C.*,
 859 F.3d 353 (5th Cir. 2017) .................................................................................12

*Little v. Shell Expl. & Prod. Co.*,
 CV H-07-871, 2017 WL 4742917 (S.D. Tex. Aug. 18, 2017) (Johnson, J.)...........13

**Cases**  **Page(s)**

*Mitchell Bros. Film Group v. Cinema Adult Theater*,
    604 F.2d 852 (5th Cir.1979) ............................................................15

*Mobile Telecommunications Techs., LLC v. Blackberry Corp.*,
    3:12-CV-1652-M, 2016 WL 6271717 (N.D. Tex. May 6, 2016) ............................12

*Moorer v. Stemgenex Med. Group, Inc.*,
    3:16-CV-02816, 2017 WL 1281882 (S.D. Cal. Apr. 6, 2017) .............................14

*Novak v. Tucows, Inc.*,
    06-CV-1909(JFB)(ARL), 2007 WL 922306 (E.D.N.Y. Mar. 26, 2007), aff'd,
    330 Fed. Appx. 204 (2d Cir. 2009)......................................................13

*Petro Franchise Sys., LLC v. All Am. Properties, Inc.*,
    607 F. Supp. 2d 781 (W.D. Tex. 2009)..................................................15

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir.2004)............................................................18

*Sam's Riverside, Inc. v. Intercon Sols., Inc.*,
    790 F. Supp. 2d 965 (S.D. Iowa 2011) .................................................14

*Specht v. Google Inc.*,
    758 F. Supp. 2d 570 (N.D. Ill. 2010), aff'd 747 F.3d 929 (7th Cir. 2014) ............13

*Specht v. Netscape Communications Corp.*,
    306 F.3d 17 (2d Cir.2002)..............................................................18

*St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*,
    No. 06–CV–223, 2006 WL 1320242 (M.D.Fla. May 12, 2006) ............................14

*Sw. Airlines Co. v. BoardFirst, L.L.C.*,
    3:06-CV-0891-B, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ...................17, 18

*Sw. Airlines Co. v. Farechase, Inc.*,
    318 F. Supp. 2d 435 (N.D. Tex. 2004) .................................................18

*Ticketmaster Corp. v. Tickets.Com, Inc.*,
    No. CV–997654, 2003 WL 21406289 (C.D.Cal. Mar. 7, 2003) ...........................18

*United States v. Solvay*,
    CV H-06-2662, 2016 WL 1258401 (S.D. Tex. Mar. 31, 2016) (Miller, J.) ............13

*Wong v. TrueBeginnings, LLC*,
    3:07-CV-1244-N, 2008 WL 11348237 (N.D. Tex. Dec. 3, 2008).........................18

Defendant Single Integrated Operations Portal, Inc. d/b/a Oilpro and Oilpro.com ("Oilpro") files this response to the Motion for Summary Judgment on Oilpro's Counterclaims filed by Plaintiffs DHI Group, Inc. f/k/a Dice Holdings Inc. ("DHI") and RIGZONE.com, Inc. ("Rigzone" and, collectively with DHI, "Plaintiffs").[1] Because Oilpro does not intend to pursue its trademark infringement, copyright infringement, or Digital Millennium Copyright Act claims at trial, this response only addresses Plaintiffs' motion for summary judgment on the breach of contract, Computer Fraud and Abuse Act, Texas Harmful Access by Computer Act, Misappropriation, and tortious interference claims.

## BACKGROUND FACTS

Plaintiffs want to talk about David Kent, rather than their own conduct. But it is the Plaintiffs' conduct at issue in the counterclaims. Plaintiffs claim in their motion that it was a DHI-subsidiary—not DHI—that scraped Oilpro's website and that DHI did not know Oilpro's terms and conditions prohibited scraping. But DHI's CEO and CFO tell a different story, admitting repeatedly that exactly the opposite is true. Plaintiffs try to distract from this with irrelevant and inaccurate facts[2] and the criminal case, but none of that is relevant to Oilpro's claims against DHI.

DHI's CEO, Michael Durney, sat for his deposition on April 25, 2017, and his testimony lays out the basis for Oilpro's claims:

---

[1]    Defendants filed a sealed appendix on October 12, 2018 (DE 233), that supports their Motion to Strike Plaintiffs' Expert Evelina Aslanyan (DE 230); Motion for Summary Judgment (DE 231); and Motion to Strike __Plaintiffs' Motion to Strike Plaintiffs' Expert Shane Johnson (DE. 232). That appendix contains Defendants Exhibits A – N.

Concurrently with this response, Defendants are filing a second sealed appendix, which will contain Exhibits O - - AA Both appendices will be cited in this motion.

[2]    For example, Plaintiffs discuss "Operation Resume Hoard," which has absolutely nothing to do with the counterclaims or the scraping of Rigzone's website! As the documents and testimony show, Operation Resume Hoard was an effort to research the costs of subscriptions with various websites, which would allow Oilpro to obtain information regarding a set number of users per month, and then email them invitations to join Oilpro. *See.e.g,* DE 228-6 at 3.

Q:     Do you admit that DHI has scraped data from the Oilpro website?

A:     We have.[3]

***

Q:     And you try to make money off that, right?

A:     Yes.

Q:     And you did make money off that, right?

A:     We do.[4]

***

Q:     Did you ask anyone within your organization to get permission from Oilpro to scrape data and place on your own website, as a competitor, the Oilpro trademark?

A:     No.[5]

***

Q:     Who do you get data from when you scrape websites?

A:     There are about 200 or so websites.

Q:     Do you get permission from any of those companies to use those trademarks on your website?

A:     We don't get permission.

Q:     Ha[ve] you done anything to delete information that was scraped from the Oilpro website?

A:     Not to my knowledge.[6]

***

---

[3]   Ex. T [Deposition of Michael Durney] at 61:06 – 08 and 62:11 – 62:18 ("Q: When you said a moment ago that you admitted that data was scraped, what were you referring to? A: I was referring to DHI. I thought you said me in my capacity in DHI").

[4]   Ex. T [Deposition of Michael Durney] at 64:03 – 08.

[5]   Ex. T [Deposition of Michael Durney] at 65:19 – 23.

[6]   Ex. T [Deposition of Michael Durney] at 71:16 – 23.

Q:      [D]on't you believe, as the CEO of the company, that before any of your employees start scraping data from a competitor's website, that the employer of DHI should make sure that it's permitted under that company's website terms?

A:      There would be multiple employees that do that.

Q:      You do believe it should be done, right?

A:      Right, I do.[7]

***

Q:      [D]o you know if the company has done anything to confirm the terms of multiple websites from which you're scraping data?

A:      I know we have confirmed. Sorry. Ask the question again.

Q:      When you say you do know the company has confirmed, how has the company confirmed on each of these multiple websites that those websites allow the scraping of their data?

A:      . . . We have looked at terms and conditions of sites and determined that we're in compliance.[8]

DHI's CFO, John Roberts, testified:

Q:      Then you understood that Dice OpenWeb involved scraping resumes and other information from publicly reachable websites, true?

A:      Yes.[9]

***

Q:      And did you understand that websites like DHI had terms and conditions?

A:      Yes.[10]

***

---

[7]   Ex. T [Deposition of Michael Durney] at 350:04 – 14.

[8]   Ex. T [Deposition of Michael Durney] at 351:13 – 352:02.

[9]   Ex. W [Deposition of John Roberts] at 28:14 – 18.

[10]  Ex. W [Deposition of John Roberts] at 28:22 – 25.

Q: And you were already well familiar before DHI started Dice OpenWeb with the notion that sometimes companies like DHI will put on their terms and conditions that you may not use automated means to take information?

A: Yes.[11]

\*\*\*

Q: And do you know why DHI used these type of anonymous IP addresses in order to hide its identity from Oilpro when it was taking the Oilpro data?

A: I don't.

Q: Was it to hide the identity?

A: I don't know.[12]

\*\*\*

Q: In this case, Oilpro has filed a claim against DHI for scraping hundreds of thousands of resumes from the Oilpro site, and Oilpro claims that DHI received some benefit from those hundreds of thousands of resumes.

Do you believe that Dice OpenWeb and DHI received some benefit?

A: I believe that DHI and Dice OpenWeb get benefit from the product that they were selling, yes.[13]

Oilpro is not the first website that has objected to DHI's conduct. Indeed, in September 2013, and then again in May 2015, DHI received letters from ▓▓▓▓ demanding that it cease scraping ▓▓▓▓ website and posting such material on Dice Open Web. On May 6, 2015, ▓▓▓▓ sent to the following letter to DHI:[14]

---

[11] Ex. W [Deposition of John Roberts] at 29:14 – 21.

[12] Ex. W [Deposition of John Roberts] at 37:08 – 14.

[13] Ex. W [Deposition of John Roberts] at 196:05 – 14.

[14] Ex. R-1 [May 6, 2015 Letter from ▓▓▓▓ to DHI].



Mr. Campbell responded to ███████ letter and took umbrage with many of the statements in ███████ letter, although he made no mention of Work Digital. He even actually admitted that DHI had scraped ███████ but claimed DHI stopped doing so after ███████ sent the first cease and desist letter.[15]

Weeks after DHI's exchange with ███████, Oilpro received a message from Chez Nortman, a recruiter with Progressive Global Energy & Natural Resources, a potential client whose business Oilpro was actively soliciting.[16] Progressive is one of the largest global recruiting firms, spends more on marketing and recruiting subscriptions than most similar firms, and was interested in an Oilpro subscription.[17] But in his text on July 16, 2015, Mr. Nortman shared that he had just

---

[15] Ex. R-3 [May 22, 2015 Letter from DHI].

[16] DE 63-1 at 2 ¶11 and 16; Ex. S [Deposition of Laura Bumby] at 147:10 – 21; Ex. V [Deposition of Matthew Kent] 185:13 – 186:10.

[17] Ex. Q [Declaration of David Kent] at 2¶4.

found Oilpro's profiles on Dice Open Web.[18] It is undisputed that Mr. Nortman was correct; DHI admits that it was scraping Oilpro's website and putting Oilpro profiles on Dice Open Web.[19] After seeing the Oilpro content on Dice Open Web, Progressive did not subscribe to Oilpro and did not become Oilpro's customer.[20]

To be clear, what DHI was doing with the information scraped from Oilpro's website (and what ███████ accused DHI of doing with the profiles scraped from its website) far exceeds Oilpro's conduct. Oilpro used the information to send email invitations to join Oilpro; it never published that information on Oilpro.com.[21] The only way Oilpro's membership grew was if a user independently accepted the invite, filled out an Oilpro profile, and became an Oilpro member. DHI, by contrast, scraped information from over 200 websites, posted that information to Dice Open Web, and then sold subscriptions to view that information.[22]

### OBJECTIONS TO PLAINTIFFS' EVIDENTIARY SUBMISSIONS

Pursuant to Rule 56(c)(2), Defendant objects to the screenshots Plaintiffs included in Section IV D of their motion, DE 228 at 15. *See Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012) (citing Fed.R.Civ.P. 56 advisory committee's note to 2010 amendments) ("Under the now-applicable Rule 56(c)(2), however, it is no longer necessary for a party to file [a motion to strike]; instead, the party may simply object to the material"). An objection to summary judgment evidence "functions much as an objection at trial . . . The burden is on the proponent to show that the material is admissible as presented or to explain

---

[18] DE 63-1 at 16.

[19] Ex. W [Deposition of John Roberts] at 196:05 – 14; Ex. T [Deposition of Michael Durney] at 61:06 – 08 and 62:11 – 62:18 ("Q: When you said a moment ago that you admitted that data was scraped, what were you referring to? A: I was referring to DHI. I thought you said me in my capacity in DHI").

[20] Ex. Q [Declaration of David Kent] at 2 ¶6.

[21] DE 1 at 17 ¶71

[22] Ex. T [Deposition of Michael Durney] at 61:06 – 08 and 64:03 – 08; Ex. W [Deposition of John Roberts] at 196:05 – 14.

the admissible form that is anticipated." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), as revised (July 5, 2017).

Plaintiffs' motion includes two screenshots that purport to be of an archive of Oilpro's website, obtained from https://web.archive.org (also known as "the WayBack Machine"). Plaintiffs did not attach these screenshots as exhibits, but their placement inside the motion does not alter Plaintiffs' burden to demonstrate that this "material is admissible as presented or to explain the admissible form that is anticipated." *Lee,* 859 F.3d at 355. These screenshots are inadmissible for two reasons: (1) they were not produced in discovery, and (2) Plaintiffs did not (and cannot) authenticate them. Significantly, these inserts are not complete captures of the Oilpro webpages and conveniently omit a critical margin hyperlink the subject of Plaintiffs' summary judgment motion.

**A.      The Court should strike the web archive screenshots because they were not produced in discovery.**

The web archive screenshots were not produced in discovery and failure to produce evidence used to support a claim or defense "prohibits a party from using that information to supply evidence on a motion, unless the failure is substantially justified or harmless." *Brown v. AT & T Services Inc.*, 236 F. Supp. 3d 1000, 1005 (S.D. Tex. 2017) (Hittner, J.) (citing Fed. R. Civ. P. 26(a)(1)(A)(ii) and Fed. R. Civ. P. 37(c)(1)); *see also Mobile Telecommunications Techs., LLC v. Blackberry Corp.*, 3:12-CV-1652-M, 2016 WL 6271717, at *4 (N.D. Tex. May 6, 2016). The Court should sustain this objection and exclude the screenshots in its consideration of Plaintiffs' motion for summary judgment.[23]

---

[23] While it is not necessary that Defendant be prejudiced, in order for exclusion to be proper, Plaintiffs' failure to produce these screenshots in discovery and disclose their intent to rely upon them deprived Defendant of the opportunity to explore the reliability of the Internet Archive's files. *See also,* Ex. Q

**B.**     **The Court should strike the Web Archive screenshots because they are unauthenticated hearsay.**

Defendant also objects to the web archive screenshots because Plaintiffs did not authenticate them or establish an exception to the hearsay rule. Under Rule 901(a), in order to properly authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a); *see also United States v. Solvay*, CV H-06-2662, 2016 WL 1258401, at *4 (S.D. Tex. Mar. 31, 2016) (Miller, J.) (sustaining authentication objection to summary judgment evidence). Under Rule 802, hearsay "is not admissible unless" a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court "provide[ ] otherwise." Fed. R. Evid. 802; *see also Little v. Shell Expl. & Prod. Co.*, CV H-07-871, 2017 WL 4742917, at *28 (S.D. Tex. Aug. 18, 2017) (Johnson, J.) (sustaining hearsay objection to summary judgment evidence).

The Eastern District of New York has explained the authentication issues arising from use of a third-party website such as the Wayback machine:

> Plaintiff states that the web pages archived within the Wayback Machine are based upon "data from third parties who compile the data by using software programs known as crawlers," who then "donate" such data to the Internet Archive, which "preserves and provides access to it" . . . it is clear that the information posted on the Wayback Machine is only as valid as the third-party donating the page decides to make it—the authorized owners and managers of the archived websites play no role in ensuring that the material posted in the Wayback Machine accurately represents what was posted on their official websites at the relevant time.

*Novak v. Tucows, Inc.*, 06-CV-1909(JFB)(ARL), 2007 WL 922306, at *5 (E.D.N.Y. Mar. 26, 2007), aff'd, 330 Fed. Appx. 204 (2d Cir. 2009).

Courts have addressed the authenticity of Wayback Machine screenshots by admitting only those that are supported by an affidavit or declaration from a representative of the Internet Archive (i.e., an individual with knowledge regarding the authenticity of the printouts and the methods used to collect the particular archived image at issue). *See e.g.*, *Specht v. Google Inc.*, 758 F. Supp. 2d 570, 580 (N.D. Ill. 2010), aff'd 747 F.3d 929, 933 (7th Cir. 2014) (sustaining authentication objection to screenshots from the Wayback Machine because they were not supported by

declarations from an employee of the Internet Archive); *Sam's Riverside, Inc. v. Intercon Sols., Inc.*, 790 F. Supp. 2d 965, 981 (S.D. Iowa 2011) ("courts have concluded that an affidavit from an Internet Archive employee is sufficient to authenticate screen shots taken from Archive.org"); *Audi AG v. Shokan Coachworks, Inc.*, 592 F.Supp.2d 246, 278 (N.D.N.Y.2008) (same); *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, No. 06–CV–223, 2006 WL 1320242, at *2 (M.D.Fla. May 12, 2006) ("Plaintiff must provide the Court with a statement or affidavit from an Internet Archive representative with personal knowledge of the contents of the Internet Archive website.").[24]

Discovery in this case closed on September 10, 2018; Plaintiffs' opportunity to seek third-party discovery from the Internet Archive has passed;[25] and Plaintiff did not identify a corporate representative of Internet Archive as an individual with relevant knowledge and therefore cannot present live testimony from such individual at trial.[26] Testimony from a person with relevant knowledge regarding Web Archive's collection is not just a technicality—it is necessary to determine the accuracy of the snapshots stored in that collection. David Kent has identified holes and inaccuracies in the snapshots available on Web Archive, including that the snapshots appear to be incomplete because they do not contain the side navigation bar that was available on Oilpro's website (which contained a link to the terms and conditions). In the absence of testimony from a Web Archive representative, the screenshots are not currently in admissible form and Plaintiffs cannot present them in admissible form at trial; the Court should sustain Defendant's authentication and hearsay objections and exclude the screenshots from the Court's consideration of Plaintiffs' motion for summary judgment.

---

[24] Plaintiffs did not request that the Court take judicial notice of the websites, but such relief would be unavailable, in any event. *See Moorer v. Stemgenex Med. Group, Inc.*, 3:16-CV-02816, 2017 WL 1281882, at *5 (S.D. Cal. Apr. 6, 2017) (refusing to take judicial notice of past iteration of webpages found in the Wayback Machine).

[25] DE 203.

[26] DE 233, Ex. N-5 [Plaintiffs' Initial Disclosures] at App. 000996.

**ARGUMENTS AND AUTHORITIES**

**A.     Plaintiffs' "unclean hands" argument lacks merit.**

Plaintiffs' leadoff argument—unclean hands—is a swing and a miss. Plaintiffs ask the Court to grant them summary judgment on Oilpro's claims for *legal damages* but the unclean-hands doctrine does not operate "outside [of] equitable proceedings." *Gutierrez v. Wiesnet*, 1:12-CV-155, 2015 WL 12940215, at *2 (S.D. Tex. Aug. 3, 2015); *Bagby Elevator Co., Inc. v. Schindler Elevator Corp.*, 609 F.3d 768, 774 (5th Cir. 2010) ("Texas courts have long held that the affirmative defense of unclean hands is available only in equity"); *Petro Franchise Sys., LLC v. All Am. Properties, Inc.*, 607 F. Supp. 2d 781, 799 (W.D. Tex. 2009) ("Unclean hands is a historic equitable doctrine which operates to guide a court's discretion in granting equitable relief").

Moreover, the conduct triggering the unclean hands defense must be "directly" related to the claim at issue. *Mitchell Bros. Film Group v. Cinema Adult Theater,* 604 F.2d 852, 863 (5th Cir.1979) ("The maxim of unclean hands is not applied where [the] plaintiff's misconduct is not directly related to the merits of the controversy between the parties"); *Petro Franchise*, 607 F. Supp. 2d at 799. The doctrine of unclean hands "does not purport to search out or deal with the general moral attributes or standing of a litigant." *Mitchell Bros.,* 604 F.2d at 863 (internal quotations omitted). Rather, the doctrine applies "only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933). While the conduct at issue in Plaintiffs' claims against Oilpro is factually similar to Oilpro's claims against Plaintiffs, those claims are separate and distinct and are not "directly related."

David Kent has paid dearly for his conduct, serving prison time and paying Plaintiffs $3.3 million as part of the criminal case. The irony of Plaintiffs calling David Kent a hypocrite—when they were cooperating with the FBI while, *at the same time,* engaging in the same or worse conduct—would be laughable, if the situation hadn't been so tragic for  Mr. Kent. In any event,

the unclean hands defense is simply inapplicable to the facts of this case because Oilpro asserts claims for legal damages and the alleged "misconduct" is not directly related to Oilpro's claims.

**B.      DHI is the correct defendant.**

Plaintiffs claim that WorkDigital, Inc.—not DHI or Rigzone—scraped Oilpro's data. Of course this is directly contradicted by the testimony of both DHI's CEO and CFO[27] as well as the statements of DHI general counsel to ███████.[28] The only evidence that DHI submits to support its contention that Work Digital—and not them—is responsible for the scraping of Oilpro's website is the testimony of  a product manager, Princepreet Chana.[29] But there is no foundation establishing Mr. Chana's personal knowledge or qualifications to testify regarding the corporate structure of DHI. And it is certainly not clear why the knowledge of a product manager would be superior to that of DHI's CEO, CFO, and general counsel. Moreover, Plaintiffs have not produced—and did not submit as summary judgment evidence—any documents evidencing WorkDigital, Inc.'s corporate structure or separate existence, and Oilpro has found no evidence that Work Digital, Inc. has registered to do business in any state in the United States. At the very least, a material question of fact remains regarding DHI's responsibility for the conduct at issue in Oilpro's counterclaims, precluding summary judgment.

**C.      The terms & conditions were published on Oilpro's website, when DHI scraped.**

Plaintiffs' motion for summary judgment on the breach of contract, CFAA, THACA, and misappropriation claims is based solely on the purported absence of a link to the terms and conditions on the Oilpro "site map," which Plaintiffs claim is evidenced by the Wayback Machine screenshots. If the Court sustains Oilpro's objections to those screenshots, it should also deny the

---

[27]   *See, e.g.,*  Ex. T [Deposition of Michael Durney] at 61:06 – 08 and 62:11 – 62:18; Ex. W [Deposition of John Roberts] at 196:05 – 14.

[28]   Ex. R-3 [May 22, 2015 Letter to ███████ ].

[29]   DE 228 at 17; *see* DE 233, Ex. N-5 [Plaintiffs' Initial Disclosures], App. 000996.

motion for summary judgment on these four claims. But even if the Court looks to the merits of the motion to dismiss these four claims, a fact question plainly exists.

Plaintiffs do not argue that the T&Cs were not available or could not be found on Oilpro's website. Instead, they complain that there is no link "to T&Cs on its home page, the tabs available on its home page, or even on its Site Map."[30] As an initial matter, none of Plaintiffs' evidence says anything about the home page or site map. But this is all a red herring because the law does not require the T&Cs to appear in a specific place on a website. The germane question is whether the specific facts and circumstances of the case evidence Plaintiffs' actual or constructive knowledge of Oilpro's T&Cs. The evidence and testimony demonstrate that Plaintiffs either knew, or should have known, that Oilpro's T&Cs prohibited scraping.

 In order for Oilpro to succeed on its breach of contract claim, Oilpro must show: "(1) the existence of a valid contract; (2) the plaintiff's performance or tendered performance; (3) the defendant's breach of the agreement; and (4) the plaintiff's resulting damages." *Sw. Airlines Co. v. BoardFirst, L.L.C.*, 3:06-CV-0891-B, 2007 WL 4823761, at *4 (N.D. Tex. Sept. 12, 2007). Plaintiffs only challenge the first element—the existence of a valid contract.

As the Court has already recognized, parties must assent to be bound by a contract, and "[a]ssent may be manifested directly, as by the written or spoken word, or indirectly, through one's actions or conduct." DE 102 at 10 (quoting *BoardFirst,* 2007 WL 4823761, at *4). The law is not concerned with the particular manner in which an offeree makes his assent known to the offeror provided that it is effectively communicated. *See Hollywood Fantasy Corp. v. Gabor,* 151 F.3d 203, 210 (5th Cir.1998). To manifest tacit assent to a contract through conduct, one must "'[intend] to engage in the conduct and know [ ] or ha[ve] reason to know that the other party may infer from his conduct that he assents.'" *Karl Rove & Co. v. Thornburgh,* 39 F.3d 1273, 1291 (5th Cir.1994) (quoting the Restatement (Second) of Contracts § 19(2)).

---

[30]    DE 228 at 14.

The "validity of a browsewrap license turns on whether a website user has actual or constructive knowledge of a site's terms and conditions prior to using the site." *Id.* at 11 (quoting *BoardFirst,* 2007 WL 4823761, at *5). Mere use of a website can "serve as a manifestation of assent where [d]efendants had, or should have had, reason to know that mere use would be so interpreted." *Be In, Inc. v. Google Inc.*, 12-CV-03373-LHK, 2013 WL 5568706, at *9 (N.D. Cal. Oct. 9, 2013); s*ee also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 401–04 (2d Cir.2004) (imputing knowledge of website's terms of use to repeated user of Register.com's database); *BoardFirst,* 2007 WL 4823761 at *4–6 (finding proper formation of a contract where defendant continued its breach after being notified of the terms in a cease and desist letter); *Cairo, Inc. v. Crossmedia Services, Inc.*, C 04-04825 JW, 2005 WL 756610, at *5 (N.D. Cal. Apr. 1, 2005) (enforcing browsewrap forum selection clause where plaintiff "admit[ted] to actual knowledge" of the agreement); *Ticketmaster Corp. v. Tickets.Com, Inc.*, No. CV–997654, 2003 WL 21406289 (C.D.Cal. Mar. 7, 2003) (denying defendants' summary judgment motion on browsewrap contract claim where defendant continued breaching the contract after receiving letter quoting the browsewrap contract terms).

Courts must examine the circumstances surrounding the use of the website in determining whether a party is bound to the terms of a "browsewrap" agreement. *Sw. Airlines Co. v. Farechase, Inc.*, 318 F. Supp. 2d 435, 441, n. 3 (N.D. Tex. 2004) (discussing *Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2d Cir.2002)). If the facts and circumstances surrounding use of a website shows actual or constructive knowledge of the terms of use, that user "would be bound to them notwithstanding a determination that [the website] presented those terms in the form of an otherwise invalid browsewrap agreement." *Wong v. TrueBeginnings, LLC*, 3:07-CV-1244-N, 2008 WL 11348237, at *3 (N.D. Tex. Dec. 3, 2008)

It is only "when there is no evidence that users had actual knowledge of terms at issue, the validity of a browsewrap contract hinges on whether a website provided reasonable notice of the terms of the contract, i.e., whether users could have completed their purchases without ever having notice that their purchases are bound by the terms." *Couponcabin LLC v. Savings.com, Inc.*, 2:14-

CV-39-TLS, 2016 WL 3181826, at *7 (N.D. Ind. June 8, 2016) (quoting *Sgouros v. TransUnion Corp*, No. 14 C 1850, 2015 WL 507584, at *6 (N.D. Ill. Feb. 5, 2015)

Plaintiffs ask the Court to examine the facts and circumstances surrounding the T&Cs as if DHI were a casual, unsophisticated user of Oilpro's website. It was not. DHI is a sophisticated technology company that itself owns dozens of websites and job boards, with T&Cs just like Oilpro's.[31] Indeed, Rigzone's own T&Cs prohibit use of automated means to scrape, just as Oilpro's do.[32] DHI's CEO and CFO both testified that they knew T&Cs would govern whether a website permitted others to scrape its content.[33] And the CEO stated that beforehand to confirm whether scraping was permitted. Regarding the T&Cs of website DHI scraped, DHI's CEO testified: "I know we have confirmed" and that "there would be multiple employees who would do that [confirm]."[34]

The undisputed evidence is that Oilpro's T&Cs—which prohibited scraping—were available at http://oilpro.com/terms-and-conditions, from January 11, 2014 through August 2017.[35] The T&Cs were available through multiple links throughout the Oilpro.com website and could also be found by running a search for them on Oilpro's website.[36] DHI knew that its use of Oilpro's website—including whether scraping was permitted—would be governed by T&Cs. DHI reviewed the T&Cs and chose to scrape anyway. The facts and circumstances of this case

---

[31] Ex. W [Deposition of John Roberts] at 29:14 – 21.

[32] DE 233, Ex. J-46 [Rigzone's T&Cs], App. 000652 (prohibiting "[u]se [of] any robot, spider, site search/retrieval application, or other manual or automatic device or process to retrieve, index, 'data mine,' or in any way reproduce or circumvent the navigational structure or presentation of the Site or its contents."); *compare* DE 63-1 at 6 ¶15 [Oilpro's T&Cs] (prohibiting use of "automated means, including spiders, robots, crawlers, agents, or the like to download data from any database of Oilpro, or from the Site itself (for example, site or page scraping is prohibited)).

[33] Ex. T [Deposition of Michael Durney] at 350:04 – 14; Ex. W [Deposition of John Roberts] at 28:14 – 18; 28:22 – 25.

[34] Ex. T [Deposition of Michael Durney] at 351:13 – 352:02.

[35] DE 63-1 at 1 ¶¶4 – 8;

[36] Ex. Q [Declaration of David Kent] at 2 ¶¶8-9.

demonstrate that DHI had either actual or constructive knowledge of the T&Cs, and in either case, its use of the Oilpro website demonstrated DHI's assent to those terms and that it is bound by them.

Plaintiffs' motion for summary judgment on the breach of contract, CFAA, THACA, and misappropriation claims hinges on the sole issue of whether Plaintiffs are bound by Oilpro's T&Cs. Because there is evidence demonstrating that DHI had actual or constructive knowledge of the T&Cs, it is bound by them. The Court should therefore deny Plaintiffs' motion for summary judgment on the breach of contract, CFAA, THACA, and misappropriation claims.

**D.      Tortious Interference with Prospective Business Relations.**

To prevail on a claim for tortious interference with prospective business relations, the Texas Supreme Court has held that "the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

Plaintiffs move for summary judgment on the tortious interference claim, claiming that Oilpro did not have evidence to support the first and second element of its claim. However, as set forth in the deposition testimony of Laura Bumby and Matthew Kent, and the declaration of David Kent, Oilpro had a reasonable probability of entering into a business relationship with Progressive.[37] By scraping the Oilpro website and then showing Progressive the availability of those profiles on Dice Open Web, Plaintiffs prevented Oilpro from entering into that business relationship. That Plaintiffs acted with conscious desire to prevent Progressive from entering into a business relationship with Oilpro can be inferred from the circumstances (*i.e.,* that Plaintiffs

---

[37]   Ex. Q [Declaration of David Kent] at 1-2 ¶¶3-6; Ex. S [Deposition of Laura Bumby] 147:10 – 148:01; Ex. V [Deposition of Matthew Kent] 185:13 – 186:05.

were—at the same time—cooperating with the FBI in its investigation of David Kent) and Plaintiffs' competition with Oilpro.

## CONCLUSION

Oilpro respectfully requests that the Court deny Plaintiffs' motion for summary judgment on Oilpro's breach of contract, CFAA, THACA, misappropriation, and tortious interference claims, and grant it any such further relief to which it has shown itself justly entitled.

Respectfully submitted,

**FOLEY GARDERE**
 **FOLEY & LARDNER LLP**

*/s/ James G. Munisteri*
James G. Munisteri
Texas Bar No. 14667380
Marla T. Poirot
Texas Bar No. 00794736
1000 Louisiana, Suite 2000
Houston, Texas 77002-2099
Telephone: (713) 276-5500
Facsimile: (713) 276-5555
jmunisteri@foley.com
mpoirot@foley.com

Sara Ann Brown
Texas Bar No. 24075773
2021 McKinney, Suite 1600
Dallas, Texas 75201-3340
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
sabrown@foley.com

**ATTORNEYS FOR DEFENDANT/**
**COUNTER-PLAINTIFF, SINGLE**
**INTEGRATED OPERATIONS PORTAL,**
**INC. D/B/A OILPRO AND OILPRO.COM**

**CERTIFICATE OF SERVICE**

I certify that on November 16, 2018, a copy of the forgoing was served via email to the following:

Walter Lynch  
Amir Halevy  
Jeb Golinkin  
JORDAN, LYNCH & CANCIENNE PLLC  
1980 Post Oak Blvd., Suite 2300  
Houston, Texas 77056  
wlynch@jlcfirm.com  
ahavely@jlcfirm.com  
jgolinkin@jlcfirm.com  

**Counsel for Plaintiffs DHI Group, Inc. f/k/a Dice Holdings, Inc. and Rigzone.com, Inc.**

_____  
*/s/ Sara Ann Brown*  
Sara Ann Brown