# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

DHI GROUP, INC. F/K/A DICE
HOLDINGS, INC. AND
RIGZONE.COM, INC.,

                *Plaintiffs,*

   v.

DAVID W. KENT, JR., SINGLE
INTEGRATED OPERATIONS
PORTAL, INC. D/B/A OILPRO AND
OILPRO.COM, ET AL.,
                *Defendants.*

C.A. NO.: 16-cv-01670

## PLAINTIFFS' RESPONSE TO DAVID KENT AND OILPROS' MOTION FOR SUMMARY JUDGMENT

JORDAN, LYNCH & CANCIENNE PLLC

**Walter Lynch**
State Bar No. 24046330
Federal ID No. 965265
**Amir Halevy**
State Bar No. 24065356
Federal ID No. 1259956
**Joseph ("Jeb") W. Golinkin II**
State Bar No. 24087596
Federal ID No. 2515657
1980 Post Oak Blvd., Ste. 2300
Houston, Texas 77056
713-955-4020 (Telephone)
wlynch@jlcfirm.com
ahalevy@jlcfirm.com
jgolinkin@jlcfirm.com

ATTORNEYS FOR PLAINTIFFS DHI GROUP,
INC. F/K/A DICE HOLDINGS, INC. AND
RIGZONE.COM, INC.

## TABLE OF CONTENTS

CONTENTS

I.      SUMMARY OF ARGUMENT ................................................................................1

II.     STANDARD OF REVIEW..................................................................................1

III.    STATEMENT OF FACTS..................................................................................2

IV.     ARGUMENT AND AUTHORITIES .................................................................2

      A.    No Claims Are Preempted. .......................................................................2

      B.    Defendants Are Not Entitled to Summary Judgment on Plaintiffs'
          Common-Law Misappropriation of Confidential Information
          Claim, and Plaintiffs Have Dropped Their Unfair Competition
          Claim. ...........................................................................................................4

      C.    Defendants Are Entitled To Summary Judgment On Plaintiffs'
          Texas Theft Liability Act Claim. ............................................................5

      D.    Kent Repeatedly Breached His Fiduciary Duties To DHI. ...........................5

      E.    Plaintiffs' Have Conclusively Established Kent Violated TUTSA. ..............7

          1.    *The Resume Database Is A Trade Secret Compilation.* .............................7

          2.    *David Kent Has Repeatedly Admitted That Rigzone Took*
              *Reasonable Measures To Protect The Confidentiality Of The*
              *Resume Database.*....................................................................................10

          3.    *Binding Fifth Circuit Caselaw Establishes That Defendants Have*
              *Been Damaged.*.......................................................................................14

      F.    Defendants Violated the Stored Communications Act. ...............................16

      G.    Plaintiffs Can Establish A RICO Claim. ...................................................18

          1.    *Defendants' Acts Were Continuous*........................................................18

          2.    *Plaintiffs Sustained RICO Damages*.......................................................21

          3.    *The Remainder of Defendants' Kitchen Sink Arguments Are*
              *Frivolous.* ...............................................................................................22

      H.    Plaintiffs Have Evidence Of Damages Under The CFAA. ..........................22

      I.    Defendants Are Not Entitled To Summary Judgment On Plaintiffs'
          THACA Claim.............................................................................................23

      J.    Limitations Does Not Bar Plaintiffs' Claims Based On First Access...........24

V.      CONCLUSION ..................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*,
No. A-14-CA-00847-SS, 2016 WL 900577 (W.D. Tex. Mar. 2, 2016) ............................10

*Alliantgroup, L.P. v. Feingold*,
803 F. Supp. 2d 610 (S.D. Tex. 2011) (Rosenthal, J.) ........................................9

*Arroyo v. Oprona, Inc.*,
No. CV H-16-852, 2017 WL 3866425 (S.D. Tex. Sept. 5, 2017), *aff'd*, No. 17-
20576, 2018 WL 2026996 (5th Cir. Apr. 30, 2018), *opinion withdrawn and
superseded on reh'g*, 736 F. App'x 427 (5th Cir. 2018) .......................................21

*Cedric Kushner Promotions, Ltd. v. King*,
533 U.S. 158 (2001) ..................................................................................25

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................................................................................5

*Cheng v. Romo*,
No. CIV.A. 11-10007-DJC, 2013 WL 6814691 (D. Mass. Dec. 20, 2013).........................20

*Collins v. Ryon's Saddle & Ranch Supplies, Inc.*,
576 S.W.2d 914 (Tex. App.—Fort Worth 1979, no writ) .................................................10

*Downhole Tech. LLC v. Silver Creek Servs. Inc.*,
No. CV H-17-0020, 2017 WL 1536018 (S.D. Tex. Apr. 27, 2017)......................................7

*Eagle Oil & Gas Co. v. Shale Expl., LLC*,
549 S.W.3d 256 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd) ..........................13

*Fiber Sys. Intern., Inc. v. Roehrs*,
470 F.3d 1150 (5th Cir. 2006) ........................................................................25

*Garcia v. City of Laredo, Tex.*,
702 F.3d 788 (5th Cir. 2012) ..........................................................................19

*Gilmore v. Sammons*,
269 S.W. 861 (Tex. Civ. App.—Dallas 1925, writ ref'd) ...................................................8

*Int'l Bhd. of Elec. Workers, Local 134 v. Cunningham,*
No. 12 C 7487, 2013 WL 1828932 (N.D. Ill. Apr. 29, 2013)............................................20

*Little v. Liquid Air Corp.,*
37 F.3d 1069 (5th Cir. 1994) (en banc) ............................................................................6

*Matter of Mandel,*
720 F. App'x 186 (5th Cir. 2018), *cert. denied sub nom. Mandel v. Thraser*, No.
18-25, 2018 WL 3306840 (U.S. Oct. 1, 2018)....................................................................18

*Matter of Mandel,*
720 Fed. Appx. 186 (5th Cir. 2018)....................................................................................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) .............................................................................................................5

*Metallurgical Indus. Inc. v. Fourtek, Inc.,*
790 F.2d 1195 (5th Cir. 1986) ...........................................................................................13

*Playboy Enters, Inc. v. Webbworld, Inc.,*
991 F. Supp. 543 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. 1999)............................8

*Puig v. High Standards Networking & Computer Serv., Inc.,*
01-16-00921-CV, 2017 WL 4820171 (Tex. App.—Houston [1st Dist.] Oct. 26,
2017, no pet.) ......................................................................................................................26

*Pure Power Boot Camp v. Warrior Fitness Boot Camp,*
587 F.Supp.2d 548 (S.D. N.Y.2008) ..................................................................................21

*Royal v. CCC & R Tres Arboles, L.L.C.,*
736 F.3d 396 (5th Cir. 2013) ...............................................................................................5

*Samsung Elecs. Am., Inc. v. Yang Kun Chung,*
No. 3:15-CV-4108-D, 2017 WL 635031 (N.D. Tex. Feb. 16, 2017) ....................................9

*Steve Jackson Games, Inc. v. United States Secret Service,*
36 F.3d 457 (5th Cir. 1994) ...............................................................................................19

*Sw. Airlines Co. v. Farechase, Inc.,*
318 F. Supp. 2d 435 (N.D. Tex. 2004)...............................................................................26

*Theofel v. Farey-Jones,*
359 F.3d 1066 (9th Cir. 2004) ...........................................................................................20

*In re TXCO Res., Inc.,*
475 B.R. 781 (Bankr. W.D. Tex. 2012) ..............................................................................17

*U.S. Sporting Prod., Inc. v. Johnny Stewart Game Calls, Inc.*,
    865 S.W.2d 214 (Tex. App.—Waco 1993, *writ denied*) ....................................................8

*Ultraflo Corp. v. Pelican Tank Parts, Inc.*,
    926 F. Supp. 2d 935 (S.D. Tex. 2013).............................................................................13

*United States v. Cauble*,
    706 F.2d 1322 (5th Cir. 1983) ........................................................................................24

*United States v. Nosal*,
    844 F.3d 1024 (9th Cir. 2016), *cert. denied,* 138 S. Ct. 314, 199 L. Ed. 2d 207
    (2017) ...............................................................................................................................12

*United States v. Turkette*,
    452 U.S. 576 (1981) ........................................................................................................25

*University Computing Company. v. Lykes-Youngstown Corporation*,
    504 F.2d 518 (5th Cir. 1974) ..........................................................................................17

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*,
    90 F.3d 118 (5th Cir. 1996) ............................................................................... 21, 22, 24

Plaintiffs DHI Group, Inc. ("DHI") and Rigzone.com, Inc. D/B/A Rigzone and Rigzone.com (collectively, "Rigzone" and together with DHI Group, "Plaintiffs") file this Response to Defendants David Kent's and Oilpro's Motion for Summary Judgment.

## I.    SUMMARY OF ARGUMENT

As this Court knows, David Kent pleaded guilty to stealing 796,000 resumes from Rigzone. He also warranted, and subsequently confirmed, that the Rigzone Resume Database is a trade secret compilation that he and Rigzone took reasonable measures to keep secret. Undeterred, Defendants have now filed a motion for summary judgment in which they claim that Kent's prior representations are meaningless and that Defendants' are entitled to summary judgement on every one of Plaintiffs' claims. Defendants' Motion is—with one exception—completely baseless. As set out below, the Court should deny Defendants' Motion in its entirety except on Plaintiffs' Texas Theft Liability Act claim.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A genuine dispute of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Once the movant provides the basis of its motion and identifies the portions of the record that demonstrate the lack of a genuine issue of material fact, the burden is on the nonmovant to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-

87 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" and instead "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586–87 (citations omitted). "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994) (en banc).

## III.    STATEMENT OF FACTS

In their Motion, Defendants offer a self-serving and largely erroneous recitation of what they claim are "undisputed" background facts. Rather than waste the Court's time rebutting each of these "facts," Plaintiffs incorporate the facts, analysis, and exhibits referenced in their Motion for Partial Summary Judgment, pursuant to Federal Rule of Civil Procedure 10(c).[1]

## IV.    ARGUMENT AND AUTHORITIES

### A.    No Claims Are Preempted.

Defendants argue that Plaintiffs' claims for Misappropriation of Confidential Information; violations of the Texas Theft Liability Act; Breach of Fiduciary Duty; and Texas Harmful Access by Computer Act are preempted by the Texas Uniform Trade Secrets Act ("TUTSA") because they are "based on the alleged misappropriation of the same information underlying Plaintiffs' trade secret claims."[2] Since Defendants vigorously maintain the contents of the Rigzone Resume Database is not a trade secret, Defendants' argument that these claims are preempted because they are based on the

---

[1] *See* Plaintiffs' Motion for Partial Summary Judgment (ECF 227).
[2] Defendants' Motion for Summary Judgment (ECF 231) at 13-15.

misappropriation of trade secrets makes no sense. Not surprisingly, Judge Rosenthal and Judge Lake have both explicitly rejected this blanket preemption argument.

In *AMID, Inc. v. Medic Alert Foundation United States, Inc.*, the defendant argued that TUTSA preempted the plaintiff's common-law claim for Unfair Competition by Misappropriation. 241 F. Supp. 3d 788, 825-827 (S.D. Tex. 2017). Judge Rosenthal rejected the blanket preemption argument, explaining that the plaintiff "essentially pleaded alternative theories of relief. It sought relief on the theory that [defendant] misappropriated information protected as trade secrets, and alternatively under the theory that the misappropriated information was not a trade secret *but was confidential*." *Id.* (emphasis added). Judge Rosenthal also explained that "[defendant] denies that the information at issue is a trade secret, but [plaintiff] *could* recover on its tort claim *without proving that the information is protected as trade secrets*." *Id.* at 827 (emphasis added).

Judge Lake subsequently agreed with Judge Rosenthal and rejected the argument Defendants encourage this Court to apply. *Downhole Tech. LLC v. Silver Creek Servs. Inc.*, No. CV H-17-0020, 2017 WL 1536018, at *4 (S.D. Tex. Apr. 27, 2017). In *Downhole Technology*, "Defendants argue[d] that [the plaintiff's] claims for breach of fiduciary duty, tortious interference, and unjust enrichment [were] preempted by the TUTSA." *Id.* Judge Lake expressly relied on the "clear analysis of preemption under TUTSA" provided by Judge Rosenthal in *AMID* and held that "[b]ecause [the plaintiff's] claims involve activity other than misappropriation of trade secrets and permit recovery *in the event that the information obtained and used by defendants does not qualify as 'trade secrets,'* the claims are not preempted by the TUTSA." *Id.* at *3-4 (emphasis added).  Together, the *AMID* and

3

*Downhole Technology* cases make clear that Plaintiffs claims for Misappropriation of Confidential Information; violations of the Texas Theft Liability Act; Breach of Fiduciary Duty; and violations of the Texas Harmful Access by Computer Act should not be preempted by TUTSA yet, in the unlikely event that the theft of the contents of the Rigzone Resume Database is determined to be something other than the theft of trade secrets. *See id.*; *AMID*, 241 F. Supp. 3d at 825-27.

**B.     Defendants Are Not Entitled to Summary Judgment on Plaintiffs' Common-Law Misappropriation of Confidential Information Claim, and Plaintiffs Have Dropped Their Unfair Competition Claim.**

Defendants next argue that this Court should dismiss Plaintiffs' "Common-Law Misappropriation" claim because "Plaintiffs suffered no 'commercial damage' at all."[3] Defendants must be confused: Misappropriation of Confidential Information (Count IX) is a separate and distinct cause of action with different elements than Unfair Competition by Misappropriation (Count XVI). While the cases Defendants cite do show that Unfair Competition by Misappropriation requires proof of "commercial damage," they are irrelevant because Plaintiffs have already withdrawn Count XVI. But *none* of the cased cited by Defendants—*Gilmore, Playboy,* and *U.S. Sporting Prod.*—address the elements of Plaintiffs' live misappropriation claim, Count IX for Misappropriation of Confidential Information. *See U.S. Sporting Prod., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217–18 (Tex. App.—Waco 1993, *writ denied*); *Playboy Enters,, Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 558 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. 1999); *Gilmore v. Sammons*, 269 S.W. 861, 863 (Tex. Civ. App.—Dallas 1925, writ ref'd).

---

[3] Defendants' Motion for Summary Judgment (ECF 231) at 16.

Misappropriation of Confidential Information is a separate cause of action and does not require proof of "commercial damage." "To state a claim for misappropriation of confidential information, [plaintiff] must plausibly allege (1) the existence of confidential information, (2) breach of a confidential relationship or improper discovery of confidential information, (3) use of the confidential information without the plaintiff's authorization, and (4) resulting damages." *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, No. 3:15-CV-4108-D, 2017 WL 635031, at *14 (N.D. Tex. Feb. 16, 2017); *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 624 (S.D. Tex. 2011) (Rosenthal, J.) ("Courts in Texas identify trade secrets, proprietary information, and confidential information separately but provide them similar protection if the requirements—including that of secrecy—are met."). Because "commercial damage" is not an element of Plaintiffs' Misappropriation of Confidential Information claim and Defendants' attack of that claim is premised solely on its absence, Defendants are not entitled to summary judgment on Plaintiffs' Count IX.

## C. Defendants Are Entitled To Summary Judgment On Plaintiffs' Texas Theft Liability Act Claim.

A review of Defendants' arguments related to Plaintiffs' Texas Theft Liability Act claim reveals that Defendants are right: they are entitled to summary judgment on that claim, Count XI of Plaintiffs' Complaint.

## D. Kent Repeatedly Breached His Fiduciary Duties To DHI.

In their attempt to defeat Plaintiffs' Breach of Fiduciary Duties claim (Count XV), Defendants argue that the record does not contain enough evidence to raise a genuine issue of material fact about whether Kent breached a fiduciary duty when he used a secret

backdoor to hack into Rigzone and steal 796,000 resumes.[4] Defendants' argument is built on a misunderstanding of the law.

Citing *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, Defendants disingenuously argue that the *only* duty that survives the end of an executive's employment is "the duty not to disclose trade secrets."[5] 965 S.W.2d 18, 22 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd). But *T-N-T* provides no support for such a narrow view of continuing fiduciary duties. Indeed, *T-N-T* follows all other similar cases in holding that the duty that forbids the former employee "from using confidential or proprietary information acquired during the relationship in a manner adverse to the employer" survives termination of employment. *Id.* at 21-22 (stating a former employee has a duty not to use confidential, proprietary, or trade secret information acquired during the employment "*in a manner adverse to the employer*"). *See also 360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*, No. A-14-CA-00847-SS, 2016 WL 900577, at *5 (W.D. Tex. Mar. 2, 2016); *Collins v. Ryon's Saddle & Ranch Supplies, Inc.*, 576 S.W.2d 914, 915 (Tex. App.—Fort Worth 1979, no writ) ("Even though no written contract is involved, an employee cannot use confidential information <u>or</u> trade secrets acquired while working for her former employer.") (emphasis added). This entire argument, however, is moot because Kent has repeatedly warranted and subsequently affirmed that the stolen resumes are trade secrets. Moreover, independent of the classification of the stolen resumes as trade secrets, Kent used confidential information about the design and

---

[4] Defendants' Motion for Summary Judgment (ECF 231) at 20.
[5] *Id.*

structure of the Rigzone website and database to perpetrate his thefts. Defendants'
attempt to claim that the website functionality used by Kent was not a "secret backdoor"
misses the point.  Yes, others at Rigzone were aware of the functionality used by Kent to
gain access to the resumes, but that in no way establishes that the access method was not
confidential information limited to Rigzone personnel. Since it was, Kent violated his
continued fiduciary duty by using it in a manner adverse to Rigzone.

**E.   Plaintiffs' Have Conclusively Established Kent Violated TUTSA.[6]**

Defendants next argue that they are entitled to summary judgment on Plaintiffs'
TUTSA claim because (1) they allege that the contents of the Resume Database are not
trade secrets; and (2) Plaintiffs cannot show that they were damaged. For the reasons set
out below, both arguments are wrong.

*1.    The Resume Database Is A Trade Secret Compilation.*

Defendants' ignore Kent's contractual warranties and subsequent testimony to
argue that the Rigzone Resume Database is not a trade secret because it did not take a lot
of time and effort to create and because Defendants "took no measures to keep the
resumes secret."[7]

In reality, Kent warranted, as part of his 2010 sale of Rigzone to DHI, that the
contents of the Resume Database were trade secrets. In his deposition, Kent explicitly
admitted that the contents of Rigzone's Resume Database are "trade secrets" as defined

---

[6] For more detail on this subject, *see* Plaintiffs' Motion for Partial Summary Judgment (ECF 227) which
Plaintiffs have incorporated by reference.
[7] Defendants' Motion for Summary Judgment (ECF 231) at 23, 28.

by the Purchase Agreement.[8] Kent also testified that DHI, post-purchase, actually enhanced the database security. Revealingly, Defendants do not cite a single Texas case to support their argument that the compilation of resumes stolen from Rigzone is not a trade secret. And even the tangentially relevant authority Defendants do cite does not support their position. For instance, Defendants rely on *United States v. Nosal* to suggest that the Rigzone database needed to contain "salaries and other nonpublic information" for it to be considered a trade secret compilation.[9] *Nosal* provides no such support.  On the contrary, *Nosal* flatly rejects the very argument Defendants now make: "[t]he thrust of Nosal's argument is that the source lists are composed largely, if not entirely, of public information and therefore couldn't possibly be trade secrets. But he overlooks the principle that a trade secret may consist of a compilation of data, public sources *or* a combination of proprietary and public sources." *United States v. Nosal*, 844 F.3d 1024, 1030 (9th Cir. 2016), *cert. denied,* 138 S. Ct. 314, 199 L. Ed. 2d 207 (2017). In fact, the *Nosal* court held that "[t]he source lists in question are classic examples of a trade secret that derives from an amalgam of public and proprietary source data. To be sure, some of the data came from public sources and other data came from internal, confidential sources. *But cumulatively, the Searcher database contained a massive confidential compilation of data, the product of years of effort and expense.*" *Id.* (emphasis added). If this sounds familiar, that is because the evidence in this case establishes that the Rigzone Resume Database is also a

---

[8] D. Kent Dep. Tr. (ECF 227, Ex. 4) at 207:1-208:9.
[9] Defendants' Motion for Summary Judgment (ECF 231) at 24-25.

massive compilation of confidential information that took huge amounts of time and effort to compile.

Moreover, TUTSA does not require novelty or uniqueness to protect trade secrets. *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 926 F. Supp. 2d 935, 960 (S.D. Tex. 2013). In fact, Texas courts have repeatedly made clear that a collection of components or characteristics, each of which is in the public domain, may combine to qualify as a trade secret if those components together afford the plaintiff a competitive advantage. *Metallurgical Indus. Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1202 (5th Cir. 1986); *Eagle Oil & Gas Co. v. Shale Expl., LLC*, 549 S.W.3d 256, 269–70 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd). For example, earlier this year, Houston's First Court of Appeals rejected a defendant's argument—identical to the one these Defendants raise here—that a compilation of mineral interests entirely derived from *public records* was not protectable as a trade secret compilation. *Eagle Oil & Gas Co. v. Shale Expl., LLC*, 549 S.W.3d 256, 269–70 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd) (internal citations omitted). In so doing, the Court affirmed the jury's verdict that this compilation of information from *public records* was a trade secret compilation. *Id.*

The evidence in this case clearly shows that Rigzone Resume Database took considerable time and effort to build. David Kent's own brother—who worked at Rigzone for years before he blatantly violated his non-compete to become the Vice President at Oilpro—testified that it took many people a lot of time and effort to build the

9

Rigzone Resume Database.[10] Similarly, Jeremy Antonini—David Kent's best friend and the co-founder of Rigzone who became Oilpro's Head of Technology—testified at length about the considerable effort it took to grow the Rigzone Resume Database, and about how it would not be easy to replicate that database.[11] Finally, Rigzone's President testified that "there's significant costs in getting a candidate to the website and to the place where they're going to upload their CV."[12]

The record also makes clear that the Resume Database gave Rigzone an advantage over its competitors. During his deposition, David Kent testified that the Resume Database gave Rigzone a competitive advantage over Oilpro and its other competitors.[13] This admission is in addition to Kent's testimony from his sentencing hearing that he "took the resumes for [his] own commercial advantage to help [his] business Oilpro."[14]

### 2.  *David Kent Has Repeatedly Admitted That Rigzone Took Reasonable Measures To Protect The Confidentiality Of The Resume Database.*

Defendants argue that Plaintiffs "took no measures to keep the resumes secret."[15] However, Defendants once again ignore essential evidence, including the contractual representations made by David Kent at the time of the sale, and his subsequent testimony as part of this litigation.

Defendants ignore Kent's admissions and instead offer a laundry list of "evidence" they claim shows Rigzone did not take reasonable measures to protect the confidentiality

---

[10] Matt Kent Dep. Tr. (Ex. 1) at 33:2-20.
[11] J. Antonini Dep. Tr. (ECF 227, Ex. 5) at 20:12-32:12.
[12] Chad Norville Dep. Tr. (Ex. 2) at 226:13-15.
[13] *Id*. at 61:20-62:14.
[14] *Id*. at 13:5-9.
[15] Defendants' Motion for Summary Judgment (ECF 231) at 28.

of the Rigzone Resume Database.[16] For example, Defendants seek to persuade the Court that there was nothing to prevent Rigzone's customers from purchasing a subscription, downloading large numbers of resumes, and then either publishing them online or starting a competing website.[17] Defendants must not have read the Petronas contract they cite to support this contention, because its content destroys each of Defendants' repetitive complaints on this subject. While not literally titled "nondisclosure agreement," this document shows that Rigzone customers signed a contract in which they specifically agreed "not to use any robot, spider, site search/retrieval application, or other manual or automatic device or process to retrieve, index, "data mine," or in any way reproduce or circumvent the navigational structure of the site or its contents without Rigzone.com prior written authorization."[18] The contract also states that it is "subject to Rigzone.com Terms and Conditions (available at http://www.rigzone.com/terms.asp) and [Petronas'] execution of [the contract] constitutes [its] commitment that all named users covered by this agreement will comply with such terms of use, as they may be amended from time to time."[19] The Terms of Use explicitly state that customers may not:

- Resell or make available to any person not expressly licensed by Rigzone, whether via phone, fax, e-mail, mail, or any other medium, any of the Rigzone services or any information obtained therefrom, including without limitation the resumes/CVs or candidate information;
- Delete or revise any material posted by any other person or entity;

---

[16] Defendants also jump through hoops to make the list appear longer than it is. Number 8 ("Rigzone did not maintain a list of all NDAs that have been signed") is substantively identical to Number 10 ("Rigzone did not have a comprehensive list of all nondisclosure agreements"). Other duplicates include 9 & 12; 18 & 19; 27, 28, & 29; 31 & 32.

[17] Defendants' Motion for Summary Judgement (ECF 231) at 30, n. 77.

[18] *See* Petronas Contract (ECF 233) at Appendix 1012.

[19] *Id.*

- ▪ Modify, adapt, sublicense, translate, sell, reverse engineer, decompile or disassemble any portion of the site;
- ▪ Print out or otherwise copy or use any personally identifiable information about candidates for purposes other than consideration of the candidates for potential employment by your company.[20]

Plaintiffs could continue with a point by point rebuttal of Plaintiffs' repetitive assertions, but this would be besides the point because Kent knew about all of these "problems" when he sold his website to DHI for $51 million. In that transaction, Kent signed a contract in which he personally warranted that Rigzone "ha[d] taken all necessary and otherwise reasonable steps to protect and preserve the confidentiality of all of its trade secrets."[21] The Purchase Agreement defines "trade secret" as "any trade secrets or other proprietary and confidential information including . . . Personal Information . . . [and] data collections."[22] The Purchase Agreement defines "Personal Information" as "[a]ll information or data associated with individual Persons, including customers and employees, that is collected by the Company in the course of its operations."[23]

In his deposition, Kent further testified that his representation to DHI in the Purchase Agreement that Rigzone took reasonable steps to protect the confidentiality of its trade secrets—including the contents of the Rigzone Resume Database—was *true* when he signed the Purchase Agreement.[24] According to Kent, "[Rigzone] took *all*

---

[20] Rigzone-Terms of Use (Ex. 3) at DHI_0192890.
[21] Stock Purchase Agreement (ECF 227, Ex. 1) at 14, Section 3.20(c); D. Kent Dep. Tr. (ECF 227, Ex. 4) at 205:23-206:2, 211:18-213:4.
[22] Stock Purchase Agreement (ECF 227, Ex. 1) at 54-55; D. Kent Dep. Tr. (ECF 227, Ex. 4) at 205:23-206:2.
[23] Stock Purchase Agreement (ECF 227, Ex. 1) at 52; D. Kent Dep. Tr. (ECF 227, Ex. 4) at 206:13-20.
[24] D. Kent Dep. Tr. (ECF 227, Ex. 4) at 213:5-7.

reasonable steps to protect the website."[25] Kent further admitted that DHI undertook "additional work to protect the website and the database of Rigzone."[26] Kent also acknowledged that DHI retained Ernst & Young ("E&Y") to perform an independent and external audit of Rigzone's security measures.[27] Thus Kent's own testimony proves that despite all the security measures in place at the time of the sale, DHI supplemented and *improved* site security to protect the trade secrets it had purchased for over $50 million. Indeed, the reality is that Kent actually testified that he thought the E&Y audit was unnecessary and that the website was secure: "I thought the security was fine on the website. I didn't think we needed to do—do that work, but I went along with it."[28] Not surprisingly, Defendants are now running from, and ignoring, Kent's own words.

Plaintiffs, however, did not ignore E&Y's findings and recommendations. Jeremy Antonini, a co-founder of Rigzone who stayed on after the sale until the middle of 2013, and subsequently joined Oilpro, confirmed that post-sale to DHI, Rigzone "did go through an audit from E&Y that then highlighted some potential security issues that were remediated."[29] E&Y's focus "was to examine the Rigzone system from . . . an external basis [] to see if there were any vulnerabilities []that could be exploited."[30]

---

[25] *Id.* at  213:13-14 (emphasis added)
[26] *Id.* at  213:23-214:7.
[27] *Id.* at  214:8-12.
[28] *Id.* at  214:21-215:1.
[29] J. Antonini Dep. Tr. (ECF 227, Ex. 5) at 20:25-21:8.
[30] *Id.* at  113:9-17.

### 3. *Binding Fifth Circuit Caselaw Establishes That Defendants Have Been Damaged.*

Defendants claim that "[a] plaintiff may only recover total value when the trade secret was published or destroyed."[31] For this proposition, Defendants cite *University Computing Company. v. Lykes-Youngstown Corporation*, 504 F.2d 518, 535 (5th Cir. 1974), *In re TXCO Res., Inc.*, 475 B.R. 781, 824 (Bankr. W.D. Tex. 2012), and *Matter of Mandel*, 720 Fed. Appx. 186, 192 (5th Cir. 2018) (citing *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 879 (5th Cir. 2013)). However, all these cases specifically differentiate between the "total" value of the trade secret and the appropriate measure of damages for theft of trade secrets. In other words, "total value" of the stolen trade secrets is not the only measure of damages.

The court in *Universal Computing* stated that "[w]here the damages are uncertain, however, we do not feel that that uncertainty should preclude recovery; the plaintiff should be afforded every opportunity to prove damages once the misappropriation is shown." *Univ. Computing Co.*, 504 F.2d at 539. And the court in *In re TXCO*, added that "[w]here a trade secret has not been destroyed and the plaintiff is unable to prove a specific injury, the accepted approach to damages measures the value of the misappropriated trade secrets to the defendant." *In re TXCO Res., Inc.*, 475 B.R. at 825.

---

[31] Defendants' Motion for Summary Judgment (ECF 231) at 36.

The Fifth Circuit's recent opinion in *Mandel II* is even more damaging to the Defendants' argument:

> *Mandel I* quoted from *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867 (5th Cir. 2013), which gives some examples of ways to assess trade secret misappropriation damages: "*Damages in misappropriation cases can take several forms: the value of plaintiff's lost profits; the defendant's actual profits from the use of the secret, the value that a reasonably prudent investor would have paid for the trade secret; the development costs the defendant avoided incurring through misappropriation*; and a reasonable royalty." 578 Fed. Appx. at 390 (quoting *Wellogix*, 716 F.3d at 879). This flexible approach has been approved by the Texas Supreme Court, which has held that "[a] flexible and imaginative approach is applied to the calculation of damages in misappropriation-of-trade-secrets cases." *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 710 (Tex. 2016) (quoting *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 538 (5th Cir.1974)). Texas requires "reasonable certainty" to establish lost profits, but not for other methods of assessing damages. (emphasis added).

*Matter of Mandel*, 720 F. App'x 186, 190–91 (5th Cir. 2018), *cert. denied sub nom. Mandel v. Thraser*, No. 18-25, 2018 WL 3306840 (U.S. Oct. 1, 2018). In sum, contrary to Defendants assertions, Fifth Circuit precedent establishes that damages from misappropriation of trade secrets can be calculated in multiple different ways, including what a prudent investor would have paid for the trade secrets. Put simply, the available damages include the value of the misappropriated trade secrets. Plaintiffs have presented the recoverable trade secret damages of what a prudent investor would have paid for the trade secrets through their expert, Professor Shane Johnson, so Defendants' motion for summary judgment on Plaintiffs' TUTSA claim should be denied.

F.      **Defendants Violated the Stored Communications Act.**

Defendants assert that Plaintiffs' Stored Communications Act ("SCA") claim fails. If anything, the opposite is true: Plaintiffs have conclusively established that Kent violated the SCA.  Kent "intentionally accesse[d] without authorization a facility through which an electronic communication service is provided" and "thereby obtain[ed] . . . access to a wire or electronic communication while it is in electronic storage in such system."  *See* 18 U.S.C.A. § 2701(a); *see Garcia v. City of Laredo, Tex.*, 702 F.3d 788, 792 (5th Cir. 2012) ("Courts have interpreted the statute to apply to providers of a communication service such as telephone companies, Internet or e-mail service providers, and bulletin board services."); *see also, e.g., Steve Jackson Games, Inc. v. United States Secret Service*, 36 F.3d 457, 462–63 (5th Cir. 1994) (finding SCA applied to cover the seizure of a computer used to operate an electronic bulletin board system).

The SCA clearly applies to Rigzone.com and Kent's criminal activities.  First, similar to electronic bulletin boards and messaging systems, Rigzone.com is an online platform that allows members, recruiters, and employers to "send or receive wire or electronic communications." 18 U.S.C.A. § 2510(15). Users on Rigzone can create profiles, create resumes, post resumes, upload resumes, edit resumes, share resumes, and apply for jobs.[32] Rigzone customers (typically recruiters) can also solicit members directly from the site (depending on an individual member's privacy settings).[33] Each time a user

---

[32] D. Kent Orig. Answer (ECF 17) at ¶24-26; D. Kent Dep Tr. (ECF 227; Ex. 4) at  125:18-24.

[33] D. Kent's Orig. Answer (ECF No. 17) at ¶26; Rigzone Terms of Use (Ex. 3) at 7 ("The Site is a portal for news and recruitment services in the energy industry. The Site contains job poistings (directly and indirectly, sometimes with the help of third parties) by employers, recruiters, and staffing agencies of available job opportunities at their companies or companies they represent and by jobseekers posting their

engages in one of these activities, the user sends a wire communication for the purpose of the Stored Communications Act.

Second, Kent admitted in open court that he "intentionally accessed without authorization the database of" Rigzone.com, and he "took the resumes for [his] commercial advantage to help [his] business Oilpro."[34] Kent also admitted that Rigzone.com required a password, and he circumvented the password requirement to gain access to Rigzone.com without authorization to steal hundreds of thousands of individual resumes, personal email addresses, and other confidential and proprietary information that was being held in electronic storage in Rigzone's database.[35]

Defendants contend that Plaintiffs have no proof that the resumes stolen by Kent were "in electronic storage." This is not right. The SCA defines the term "electronic storage" as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C.A. § 2510(17). Where a website like Rigzone stores information—in this case, a resume drafted with the specific intent to convey personal information to potential employers—"[a]n obvious purpose for storing [the resume] . . . after delivery is to provide a second copy of the [resume] in the event that

_____

own career history and/or resumes/CVs; postings by sellers of advertisements for new and used energy industry services, equipment, and machinery; the postings by companies in the energy industry related to their companies; the posting of energy industry events, new, analysis, industry forecasts, salary and employer surveys and commentary, and other information related to the energy industry. . .")

[34] D. Kent Sentencing Hearing Tr. (ECF 227, Ex. 2) at 13:6-9.

[35] *Id.* at 16:22-17:4.

the user needs to download it again—if, for example, the [resume] is accidentally erased from the user's own computer. The [Rigzone] copy of the message functions as a "backup" for the user. Notably, nothing in the Act requires that the backup protection be for the benefit of [Rigzone] rather than the user. Storage under these circumstances thus literally falls within the statutory definition." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004); *see also Int'l Bhd. of Elec. Workers, Local 134 v. Cunningham*, No. 12 C 7487, 2013 WL 1828932, at *4 (N.D. Ill. Apr. 29, 2013) (holding that "remotely access[ing] the Plaintiffs' confidential Labor Power database without authorization in order to obtain the e-mail addresses of Plaintiffs' members" can constitute an SCA violation); *Cheng v. Romo*, No. CIV.A. 11-10007-DJC, 2013 WL 6814691, at *4 (D. Mass. Dec. 20, 2013); *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F.Supp.2d 548, 555 (S.D. N.Y.2008) (noting that "[t]he majority of courts which have addressed the issue have determined that e-mail stored on an electronic communication service provider's systems after it has been delivered, as opposed to e-mail stored on a personal computer, is a stored communication subject to the SCA).

## G.    Plaintiffs Can Establish A RICO Claim.

Employing the "everything-but-the-kitchen-sink" approach, Defendants claim that Plaintiffs cannot establish any elements of a RICO claim. Defendants' RICO arguments are mostly frivolous and totally unsound.

### 1.    *Defendants' Acts Were Continuous.*

"To establish a 'pattern of racketeering activity' under RICO, the plaintiff must allege two or more related predicate offenses." *Arroyo v. Oprona, Inc.*, No. CV H-16-852,

2017 WL 3866425, at *2 (S.D. Tex. Sept. 5, 2017), *aff'd,* No. 17-20576, 2018 WL 2026996 (5th Cir. Apr. 30, 2018), *opinion withdrawn and superseded on reh'g,* 736 F. App'x 427 (5th Cir. 2018), and *aff'd,* 736 F. App'x 427 (5th Cir. 2018). "The element of relatedness is established if the acts have the 'same or similar purposes, results, participants, victims, or methods of commission. To establish continuity, plaintiffs must prove continuity of racketeering activity, or its threat. This may be shown by either a closed period of repeated conduct, or an open-ended period of conduct that by its nature projects into the future with a threat of repetition." *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (internal citations and quotations omitted).

Without citing a single case to support their position, Defendants argue that Plaintiffs cannot establish open ended continuity because "Plaintiffs allege that Kent's goal was to sell Oilpro to DHI, Kent and Oilpro's alleged RICO actions could not have continued indefinitely. Once the alleged sale to DHI occurred, no threat of continued activity would exist."[36]  This does not make any sense: just because Kent *hoped* to bamboozle DHI into buying back its own stolen intellectual property does not mean he would have succeeded. Indeed, he did not. Defendants also do not have any evidence that Kent would have *stopped* committing wire fraud or violating the Stored Communications Act had he not been caught. In any event, Plaintiffs can establish open ended continuity.

---

[36] Defendants' Motion for Summary Judgment (ECF 231) at 41.

"An open period of conduct involves the establishment of a threat of continued racketeering activity. This may be shown where there exists a specific threat of repetition extending indefinitely into the future, or where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business." *Word of Faith*, 90 F.3d at 122 (internal citations and quotations omitted).

In their Motion, Defendants' seem to brag about the systematic and efficient way they looted the Rigzone Resume Database. During the First Round of Access, Kent stole tens of thousands of Rigzone resumes in only eight days,[37] while Kent's continued series of thefts—during which Kent took the resumes Rigzone acquired when it paid $26 million for OilCareers.com—only "spanned a few days during a two-month period[38], lasting only through August 2, 2015."[39]

The record leaves no doubt that Kent is indeed a prolific hacker and an efficient thief, but Defendants' own brief establishes that Kent committed 796,000 separate violations of the Stored Communications Act/acts of Wire Fraud over *at least* 10 days widely spread out over a two year period in pursuit of one goal: to illicitly increase Oilpro's value. These admissions, along with Defendants improper use of Rigzone's Google Analytics data,[40] provide more than enough evidence to support a finding of a "specific threat of repetition extending indefinitely into the future."

---

[37] *Id.*

[38] Defendants do not cite any evidence to support the assertion that this second series of hacks took place over a "few" days.

[39] Defendants' Motion for Summary Judgment (ECF 231) at 41.

[40] Oilpro, Kent, and Eduard Dufrin also violated the SCA and committed wire fraud each time they accessed Rigzone's Google Analytics account without permission and used the numbers to benefit Oilpro. *See* Robins Dep. Tr. (Ex. 4) at 36:2-38:2; Dufrin Dep. Tr. (Ex. 5) at 59:5-10.

Defendants further claim that Plaintiffs cannot show "closed continuity" because "more than a year" passed after Kent finished the First Round of hacks before he returned to steal the new Oilcareers.com resumes.[41] This just isn't so. Throughout his much ballyhooed "break" from criminality, David Kent actively participated in an ongoing criminal conspiracy to illegally hack into and make use of Rigzone's Google Analytics Account without Rigzone's consent.[42] And even if the "pause" had occurred, Kent's systematic hacking is sufficient to allow a reasonable juror to conclude that these acts were "'a series of related predicates extending over a substantial period of time.'" *Word of Faith*, 90 F.3d at 122 (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989)).

### 2.    *Plaintiffs Sustained RICO Damages.*

Defendants' claim that Defendants cannot prove RICO damages is also unsound. Section 1962(c) allows for the award of treble damages for any "person *injured* in his business or property." Defendants do not cite a single case to support their assertion that Plaintiffs' RICO damages are limited to lost profits, and the statute does not support such a reading. On remedies, the RICO statute states that a prevailing Plaintiff "shall recover threefold the *damages* he sustains." *Id.* As noted above, the Fifth Circuit has repeatedly held damages for the theft of trade secrets "can take several forms: the value of plaintiff's lost profits; the defendant's actual profits from the use of the secret, *the value that a reasonably prudent investor would have paid for the trade secret; the development costs the*

---

[41] Defendants' Motion for Summary Judgment (ECF 231) at 41.
[42] Robins Dep. Tr. (Ex. 4) at 36:2-38:2; Dufrin Dep. Tr. (Ex. 5) at 59:5-10.

*defendant avoided incurring through misappropriation*; and a reasonable royalty." 578 Fed.Appx. at 390 (quoting *Wellogix*, 716 F.3d at 879) (emphasis added).

### 3.    The Remainder of Defendants' Kitchen Sink Arguments Are Frivolous.

Defendants state Plaintiffs "lack sufficient evidence to prove the existence of either a legal entity or an association- in-fact sufficient to constitute a RICO enterprise."[43] A RICO enterprise can be "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In cases in which a "legal entity is the enterprise, proof that the entity has a legal existence satisfies the enterprise element." *United States v. Cauble*, 706 F.2d 1322, 1340 (5th Cir. 1983).  An enterprise may be an illegitimate enterprise, e.g., a Mafia family, or a wholly legitimate enterprise, e.g., a corporation. *United States v. Turkette*, 452 U.S. 576, 580–81 (1981).

Here, the enterprise is Oilpro and the RICO Defendant who operated the enterprise is David Kent. *See Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161 (2001) ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in [RICO] that requires more 'separateness' than that.").

### H.    Plaintiffs Have Evidence Of Damages Under The CFAA.

Defendants argue that there is no genuine issue of material fact about whether Plaintiffs have suffered damages under the Computer Fraud and Abuse Act. But in their

---

[43] Defendants' Motion for Summary Judgment (ECF 231) at 47.

Motion, Defendants acknowledge the record contains evidence DHI incurred $403,307 in employee time, vendor costs, and legal fees to investigate and combat Kent's illegal activity.[44] Defendants also omit that Plaintiffs had to hire Mandiant—a computer forensics firm—to review their computer systems as a result of Kent's misconduct. Together, this evidence presents a genuine issue of material fact on Plaintiffs' CFAA claim. *See, e.g.*, *Fiber Sys. Intern., Inc. v. Roehrs*, 470 F.3d 1150, 1157 (5th Cir. 2006) (vacating take-nothing judgment on plaintiff's CFAA claim based on lack of damages or loss and remanding case for entry of judgment on the jury's CFAA verdict where Plaintiff spent $36,000 investigating and responding to security breaches).[45]

## I.   Defendants Are Not Entitled To Summary Judgment On Plaintiffs' THACA Claim.

Defendants argue that "Plaintiffs lack sufficient damages to establish a THACA claim." Once again, the law does not support Defendants' argument: THACA "merely requires that the access be without effective consent; it does not require injury." *Sw. Airlines Co. v. Farechase, Inc.*, 318 F. Supp. 2d 435, 443 (N.D. Tex. 2004); *Puig v. High Standards Networking & Computer Serv., Inc.*, 01-16-00921-CV, 2017 WL 4820171, at *5 (Tex. App.—Houston [1st Dist.] Oct. 26, 2017, no pet.). In other words, the access is the injury. *Id.* Even if Plaintiffs had to allege an injury, their having to hire Mandiant and Holland

---

[44] Defendants' Motion for Summary Judgment (ECF 231) at 52.
[45] As for Defendants' assertion that Defendants' have already paid restitution to DHI for Kent's admitted violations of the CFAA, this fact is irrelevant at this stage. Any deduction will be made *after* the jury evaluates damages.

and Knight, not to mention cooperate with the FBI, would create a genuine issue of material fact on that point.

**J.      Limitations Does Not Bar Plaintiffs' Claims Based On First Access.**

Finally, Defendants assert that the two-year statute of limitations precludes Defendants from recovering damages related to certain claims. Plaintiffs own cited materials demonstrate that this argument lacks merit. While Plaintiffs do not dispute that they contacted the FBI in May 2014, Defendants misleadingly cite an email from Holland & Knight to the Department of Justice to create the impression that "DHI also informed the FBI that it believed Oilpro was responsible" before filing this lawsuit. In reality, this email was sent more than three weeks *after* Plaintiffs filed this suit.[46]

## V.      CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court deny Defendants' Motion for Summary Judgment.

---

[46] 7/02/14 Email From DHI to Department of Justice (ECF 233) at Appendix 000121.

Respectfully submitted,

**JORDAN, LYNCH & CANCIENNE PLLC**

By: *s/ Walter Lynch*
          **Walter Lynch**
          State Bar No. 24046330
          Federal I.D. No. 965265
          **Amir Halevy**
          State Bar No. 24065356
          Federal I.D. No. 1259956
          **Joseph ("Jeb") W. Golinkin II**
          State Bar No. 24087596
          Federal I.D. No. 2515657
          1980 Post Oak Blvd., Ste. 2300
          Houston, Texas 77056
          713-955-4020 (Telephone)
          713-955-9644 (Fax)
          wlynch@jlcfirm.com
          ahalevy@jlcfirm.com
          jgolinkin@jlcfirm.com

          ATTORNEYS FOR PLAINTIFFS DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC.

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document has been served by ECF on all counsel of record on this 16th day of November, 2018.

          */s/ Jeb Golinkin*
          Joseph W. Golinkin II