IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> DAVID W. KENT, JR., SINGLE INTEGRATED OPERATIONS PORTAL, INC. D/B/A OILPRO AND OILPRO.COM, ET AL., <br> *Defendants.* | C.A. NO.: 16-cv-01670 |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' EXPERT SHANE JOHNSON**

Plaintiffs DHI Group, Inc. and Rigzone.com, Inc. (collectively, "Plaintiffs") submit this Response to Defendants' Motion to Strike Plaintiffs' Expert Shane Johnson.

I. INTRODUCTION

Plaintiffs' damages expert, Professor Shane Johnson, is the Thomas W. Leland Memorial Chair and the Wells Fargo/Heep Foundation Professor in Finance at the Mays Business School at Texas A&M University, where he teaches business valuation to graduate and undergraduate business students.[1] Professor Johnson calculated two alternative measures of Plaintiffs damages. First, he valued the misappropriation,

---

[1] Johnson Dep. (Ex. 1) at 225:11-226:5; Johnson Report (Ex. 2) at 1.

meaning he determined the value of the resumes Defendants stole from Plaintiffs, and second, he calculated Defendants' unjust enrichment from the thefts.[2]

## II. SUMMARY OF ARGUMENT

Defendants use the "everything-but-the-kitchen-sink" approach to attack Professor Johnson's opinions in an attempt to convince this Court to exclude Plaintiffs' damages expert from testifying at trial. Professor Johnson is a well-qualified expert who used generally accepted methodology to reach his opinions. While Defendants now purport to believe that Professor Johnson's valuation methodology is improper, this was not always so. Back when they were still operating in the real world, Defendants employed a nearly identical methodology to forecast the future value of Oilpro. In fact, Professor Johnson's estimated value per user, which drives part of the valuation, is *lower* than Defendants' 2016 projections. Defendants' motion should be rejected.

## III. ARGUMENT

Plaintiffs make multiple arguments in their Motion to Strike Johnson, some of the arguments, while factually incorrect, actually relate to Professor Johnson. Others, however, are completely unrelated to a motion to strike an expert and are merely included to allow Defendants to repeat the baseless arguments made in their Motion for Summary Judgment. In an abundance of caution, Plaintiffs will also refute Defendants' misstatements of Texas law.

---

[2] Ex. 2 at 6, 10.

**A. Professor Johnson Is Qualified To Render Valuation Opinions.**

Given the absurdity of it, Plaintiffs will address Defendants' penultimate argument first. Defendants argue Professor Johnson—who is a tenured professor of Finance at the Mays Business School at Texas A&M University—is not qualified to testify about damages because "while a professor who teaches valuation, [he] is woefully unfamiliar with even the most basic valuation standards."[3] This laughable statement is unfounded, and Plaintiffs' are sincerely hard-pressed to identify any good faith reason that justifies Defendants' decision to include this argument in their motion.

Defendants claim that Professor Johnson misunderstands "reasonable royalty" under Texas law and that he conflates "a reasonable royalty with the fair market value of the resumes." For support, they cite *Southwestern Energy Production Company v. Berry-Helfand*, 491 S.W.3d 699, 711 (Tex. 2016). Defendants correctly cite that case for the proposition that "[a] reasonable royalty is calculated based on a fictional negotiation of what a willing licensor and licensee would have settled on as the value of the trade secret at the beginning of the infringement." Defendants omit the opinion's very next sentence: "A reasonable royalty is, in essence, a proxy for the value of what the defendant appropriated[.]" *Id.* In other words, Professor Johnson's fair market value of the stolen resumes is precisely the kind of damages available for plaintiffs to recover in cases like

---

[3] Defendants' Motion to Strike Johnson (ECF 232) at 40.

this one.[4] Professor Johnson understands how to value the loss in a case such as this and is qualified to so testify.

## B. Professor Johnson Relies On Valid Assumptions.

Defendants argue that Professor Johnson's valuations "begin with a fatal flaw: accepting the false factual allegations in the Complaint at face value." Defendants complain that Professor Johnson did not "do anything, other than take [numbers] at face value." But this is no flaw at all because the Federal Rules of Evidence explicitly permit experts to "base an opinion on facts or data in the case that the expert has been made aware of." FED. R. EVID. 703. An expert need not independently investigate all the facts of a case.

Defendants also confuse disputed assumptions with false assumptions. Plaintiffs understand that Defendants vigorously contest the fact that the FBI determined that Kent stole hundreds of thousands of resumes and that Oilpro obtained about 111,000 new users, supported by the analysis of Jeremy Antonini, as a direct result of the theft. But Defendants' unqualified assertion that there is "no evidence" to support the damages numbers and that "the only admissible evidence shows that the true number is 20,905" is simply false. Moreover, as this Court is now aware from prior briefing in the Motion to Strike Trent Livingston, the only support for Defendants' estimate of about 21,000 converted users comes from a self-serving and unreproducible "analysis" done by David Kent, which Defendants shamelessly attempt to bolster through the unverifiable analysis

---

[4] *See* Ex. 2 at 57:23-58:23 (describing how a fair market value per user is similar to a reasonable royalty calculation).

done by Trent Livingston. Simply because the parties dispute the magnitude of David Kent's crimes does not mean Professor Johnson's opinions should be excluded.

## C. Professor Johnson's Measures Of Damages Are Accurate And Legally Sound.

Defendants next argument is that Professor Johnson's valuations are irrelevant because they do not comport with Texas law. They first say his valuations are irrelevant because Plaintiffs' claims are preempted. However, the preemption arguments have no bearing on Professor Johnson's ability to opine and testify about the damages suffered by Plaintiffs. Accordingly, putting aside the preemption issue, which is fully addressed in Plaintiffs Response to Defendants' Motion for Summary Judgment, Defendants' arguments regarding Texas damages standards are belied by the very cases that they mis-cite.

For example, Defendants repeatedly assert that "Plaintiffs cannot recover the value of the trade secret unless the trade secret was destroyed,"[5] and that Defendants neither destroyed nor published the trade secrets. For this proposition, Defendants cite *University Computing Company v. Lykes-Youngstown Corporation*, 504 F.2d 518, 535 (5th Cir. 1974) and *In re TXCO Resources, Inc.*, 475 B.R. 781, 824 (Bankr. W.D. Tex. 2012). However, both cases specifically differentiate between the "total" value of the trade secret and the appropriate measure of damages for theft of trade secrets. Indeed, the *Universal Computing* court stated that "[w]here the damages are uncertain, however, we do not feel that that uncertainty should preclude recovery; the plaintiff should be afforded every

---

[5] ECF 232 at 21.

5

opportunity to prove damages once the misappropriation is shown." *Univ. Computing Co.*, 504 F.2d at 539. And the court in *In re TXCO*, added that "[w]here a trade secret has not been destroyed and the plaintiff is unable to prove a specific injury, the accepted approach to damages measures the value of the misappropriated trade secrets to the defendant." *In re TXCO Res., Inc.*, 475 B.R. at 825.

Defendants then try to claim that "[u]nder Texas law unjust enrichment is the defendants' actual profits resulting from the use of the trade secret," citing *Southwestern Energy Production Company v. Berry-Helfand*, 491 S.W.3d at 711. However, that case, like others before it, also supports Plaintiffs' position. While the *Southwestern Energy* court recognizes "actual profits" as one measure of recovery, that court also explains that "[v]alue to the defendant may be measured by the defendant's actual profits resulting from the use or disclosure of the trade secret (unjust enrichment), the value a reasonably prudent investor would have paid for the trade secret, or development costs that were saved." *Id*. Indeed, the court continued:

> But lack of certainty does not preclude recovery. ("Where the damages are uncertain, however, we do not feel that the uncertainty should preclude recovery; the plaintiff should be afforded every opportunity to prove damages once the misappropriation is shown."). The fact finder must have sufficient evidence to determine the value a reasonably prudent investor would pay for the trade secret, and to meet that standard, the plaintiff need only demonstrate "the extent of damages as a matter of just and reasonable inference," even if the extent is only an approximation. (internal citations omitted). *Id*. at 711-712.

Professor Johnson's calculations more than satisfy this standard.

6

**D. Professor Johnson's Methodology Is Sound.**

Defendants next argue that Professor Johnson's methodology of using market-value-per-user is "merely ipse dixit."[6] Defendants again demonstrate their lack of knowledge of economics and valuation through this baseless assertion. Multiples based valuations are standard economic and valuation metrics.[7] A common example is that of commercial office buildings, which are often viewed on a price-per-square-foot basis, even though the market value or price of the building is the discounted future free cash flows. Moreover, in some sectors or industries of the economy, it is common to estimate the value per user or subscriber. This valuation method is frequently used in the cable TV industry, the cellular phone service industry, and for web-based companies such as Facebook, Twitter, and LinkedIn, as well as Rigzone and Oilpro. Furthermore, Professor Johnson did not make up a value-per-user approach as a measure of appropriate damages for this case. It has been used in the real world for years to value companies outside of litigation.[8]

Moreover, Defendants' own documents disprove their argument, and demonstrate that Professor Johnson's valuations are modest in comparison with Defendants' own projections. For example, a post "downturn in the oil and gas industry" presentation given by Oilpro specifically estimated the company's future value as the sum of the number of projected members multiplied by "$100 per user," which Oilpro

---

[6] *Id.* at 26.
[7] *See* Ex. 1 at 93:1-3; 93:12-94:18.
[8] *See* Roberts Dep (Ex. 3) at 203:23-204:16; PwC Valuation Index (Ex. 4) at 6 ("There are, however, some alternative value metrics which we can look at when PE breaks down. For example, in Figure 4 we compare the 'value per user' of social media companies versus telecoms operators and broadcasters.").

7

observes was the "market value of a LinkedIn User."[9] Indeed, David Kent assumed that Oilpro's "market-value-per-user" would surpass LinkedIn: "We are going to be twice that[.]" So, for Defendants to now suggest that Professor Johnson's market-value-per-user approach is unreliable is both ironic and wrong.

In addition to claiming that Professor Johnson's methodology of calculating a market-value-per-user to determine the value of the stolen resumes is flawed, in a series of supplementary attacks of Professor Johnson's methodology (sections C.2.-C.6.), Defendants cite (literally) zero cases to support these "arguments." They have attempted to attack his opinions from multiple angles, while not providing a single legal basis for why they would possibly be used to exclude his testimony. At best, some of Defendants' arguments could be used to cross Professor Johnson at trial. Really, though, they are nothing but noise.

**E. Investment Decisions Speak Louder Than Words, Especially When the Investor Does Not Want To Be Sued For Fraudulent Transfer.**

After performing considerable diligence on the prospects of Kent's new business, Jonathan Fairbanks (via "JBF Family Trust") invested $3 million of his family's money in exchange for a 15% stake in Oilpro. Basic math reveals that Fairbanks' investment assumed that Oilpro was worth $20 million. Professor Johnson uses information related to this consummated transaction as one of the many data points he considered when conducting his analysis.

---

[9] See 2016 Oilpro Presentation (Ex. 5).

For background, Fairbanks is a sophisticated investor. He is the co-founder of Global Energy Capital whose "investing partners in GEC are top university endowments, not-for-profit foundations, family offices and sovereign wealth funds in the United States, Norway and Singapore."[10] Now, Defendants argue that Professor Johnson's consideration of Fairbanks' and Kent's consummated transaction was inappropriate. In support of this theory, Defendants offer an affidavit executed by Mr. Fairbanks in which he disclaims his own analysis and asserts that it should not be relied upon. Defendants and Fairbanks now claim that Fairbanks created his model "as a negotiating tool" to "show Kent the value that his investment would bring to Kent's company."[11] What Defendants (and Fairbanks) want this Court to believe is that this sophisticated investor created a model that turns investment theory on its head: he wanted to pay more for less. These claims strike Plaintiffs as disingenuous, especially because Fairbanks has a significant motive to help defend against Plaintiffs' claims.[12] But, to combine two common refrains, actions speak louder than words, and money talks. The contrast

---

[10] *See* www.globalenergycapital.com.
[11] ECF 232 at 31, 37.
[12] While Fairbanks did invest $3 million in Oilpro, he never lost a penny of his investment. Indeed, soon after David Kent's arrest, he, through his then attorney, reached out to Fairbanks: "David asked me to assure you that he will make it right financially to you." *See* 03/30/16 Email (Ex. 6). And for once, David Kent was good for his word; he bought Fairbank's interest in Oilpro in late 2016, after it had collapsed, for the full $3 million original purchase price. *See* Fairbanks Stock Purchase Agreement (Ex. 7) at 1478-1497. Given that these funds were sent to Fairbanks after the collapse of Oilpro, and after the filing of this litigation, a very strong argument could be made that if the jury were to award damages in excess of Kent's ability to pay, Fairbanks would be liable for returning up to $3 million to satisfy any excess judgment. Indeed, during negotiations, Kent emailed Fairbanks and explained that = "fraudulent conveyance (sic) is a problem" during their negotiations. *See* 9/6/16 Email (Ex. 8) at Fairbanks 158. Moreover, days prior to the consummation of the "sale" of his Oilpro stake back to Kent, Fairbanks apparently received sufficient "comfort on the insolvency issues (Fraudulent conveyance)" to consummate the "sale" several days later. *See* 11/9/16 Email (Ex. 9) at Fairbanks 1288.

between Fairbanks' post litigation words and pre-litigation actions only underscores the fact that Professor Johnson's consideration of Fairbanks' analysis goes to weight, not admissibility.

### F. Professor Johnson's Opinion Is Prejudicial *Because It Is Probative.*

Apparently realizing that their prior arguments are either unsupported by the facts of this case, or the controlling law in this jurisdiction, Defendants close their attack by trotting out the shopworn "unduly prejudicial" argument. After devoting pages to an extended rant about Professor Johnson's methodology, including complaints about his modeling of discounted cash flow and use of a contested discount rate, Defendants end their motion by arguing that Professor Johnson's opinions offer "nothing beyond the understanding and experience of the average citizen" and that it's simply "just all math."[13] Their argument, however, does not add up. Plaintiffs readily conceded that Professor Johnson's analysis and testimony will be damaging to the Defendants; after all, that is the point. However, under Federal Rule of Evidence 403, "'damage to a defendant's case is not a basis for excluding probative evidence,' because '[e]vidence that is highly probative invariably will be prejudicial to the defense.'" *U.S. v. Wallace*, 124 Fed. Appx. 165, 167 (4th Cir. 2005); citing *U.S. v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998).

---

[13] ECF 232 at 43.

## IV. CONCLUSION

In light of the above, Plaintiffs respectfully request that the Court deny Defendants Motion to Strike Plaintiffs' Expert Shane Johnson.

Respectfully submitted,

**JORDAN, LYNCH & CANCIENNE PLLC**

By: *s/Walter Lynch*
   **Walter Lynch**
   State Bar No. 24046330
   Federal I.D. No. 965265
   **Amir Halevy**
   State Bar No. 24065356
   Federal I.D. No. 1259956
   **Joseph ("Jeb") W. Golinkin II**
   State Bar No. 24087596
   Federal I.D. No. 2515657
   1980 Post Oak Blvd., Ste. 2300
   Houston, Texas 77056
   713-955-4020 (Telephone)
   713-955-9644 (Fax)
   wlynch@jlcfirm.com
   ahalevy@jlcfirm.com
   jgolinkin@jlcfirm.com

   ATTORNEYS FOR PLAINTIFFS DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of November, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all counsel of record in this case.

>    */s/ Jeb Golinkin*
>    Joseph W. Golinkin II

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC.,<br><br>     *Plaintiffs*,<br> v.<br>DAVID W. KENT, JR., SINGLE INTEGRATED OPERATIONS PORTAL, INC. D/B/A OILPRO AND OILPRO.COM, ESTEVAN DUFRIN, MATTHEW KENT, BRYAN ROBINS, JEREMY ANTONINI, AND JOHN DOES NOS 1-10,<br>     *Defendants.* | C.A. NO.: 16-cv-01670 |

## **PROPOSED ORDER**

Defendants' Motion to Strike Plaintiffs' Expert Shane Johnson is **Denied**.

---

    The Honorable Nancy K. Johnson
    United States Magistrate Judge

13