# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| DHI Group, Inc. f/k/a Dice Holdings Inc. and RIGZONE.com, Inc.,<br>          Plaintiffs,<br><br>          vs.<br><br>David W. Kent, Jr., Single Integrated Operations Portal, Inc. d/b/a Oilpro, et al.,<br>          Defendants. | |
| Single Integrated Operations Portal, Inc. d/b/a Oilpro and OILPRO.com,<br>          Counter-Plaintiff,<br><br>          vs.<br><br>DHI Group, Inc. f/k/a Dice Holdings Inc. and RIGZONE.com, Inc.,<br>          Counter-Defendants. | Civil Action Number: 16-cv-01670 |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' AFFIRMATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

FOLEY GARDERE
FOLEY & LARDNER LLP

James G. Munisteri
Texas Bar No. 14667380
Marla T. Poirot
Texas Bar No. 00794736
1000 Louisiana, Suite 2000
Houston, Texas 77002-2099
Telephone: (713) 276-5500
Facsimile: (713) 276-5555
jmunisteri@foley.com
mpoirot@foley.com

Sara Ann Brown
Texas Bar No. 24075773
2021 McKinney, Suite 1600
Dallas, Texas 75201-3340
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
sabrown@foley.com

ATTORNEYS FOR DEFENDANTS

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ 3

Summary of Argument ........................................................................................... 4

Background Facts .................................................................................................... 5

Arguments and Authorities .................................................................................... 8

    A.    The Rigzone resume database is not a "trade secret" protected by TUTSA. ......... 8

        1.    TUTSA, not the SPA, determines whether the resumes are Rigzone's trade secret. ................................................................. 9

        2.    The SPA does not support Plaintiffs' argument that the Rigzone resume database is a trade secret. .............................................. 9

            a.    The SPA does not include the Rigzone resume database in its definition of "trade secrets." .................................... 10

            b.    The SPA does not establish that Plaintiffs took reasonable efforts to keep the Rigzone resume database secret ..................... 11

        3.    The Rigzone resume database is not a "compilation" protected under TUTSA .................................................................... 12

            a.    Kent did not access or acquire the resume database and Plaintiffs do not argue that the individual resumes are trade secrets. ........................................................................ 12

            b.    The resume database is not a compilation protected under TUTSA. ....................................................................... 13

            c.    Rigzone took no measures to maintain the secrecy of the resume database. .................................................................. 17

    B.    The vice-principal theory does not apply .......................................... 20

Conclusion ............................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*ADT LLC v. Capital Connect, Inc.*,
  3:15-CV-2252-G, 2017 WL 1426302 (N.D. Tex. Apr. 21, 2017)..........................................22

*Am. Paper & Packaging Products, Inc. v. Kirgan*,
  183 Cal. App. 3d 1318 (Ct. App. 1986)..............................................................14, 16

*Baxter & Associates, L.L.C. v. D & D Elevators, Inc.*,
  05-16-00330-CV, 2017 WL 604043 (Tex. App.—Dallas Feb. 15, 2017, no pet.)..................20

*Brigham Young Univ. v. Pfizer, Inc.*,
  861 F. Supp. 2d 1320 (D. Utah 2012)..................................................................14

*Calisi v. Unified Fin. Srvs, LLC*,
  232 Ariz. 103, 302 P.3d 628 (Ct. App. 2013)..........................................................16

*EMC Mortg. Corp. v. Jones*,
  252 S.W.3d 857 (Tex. App.—Dallas 2008, no pet.)....................................................22

*Guy Carpenter & Co., Inc. v. Provenzale*,
  334 F.3d 459 (5th Cir. 2003) ...........................................................................10

*Jackson v. Hammer*,
  274 Ill. App. 3d 59, 653 N.E.2d 809 (1995) ..........................................................18

*Lamont v. Vaquillas Energy Lopeno Ltd., LLP*,
  421 S.W.3d 198 (Tex. App.—San Antonio 2013, pet. denied) ...............................21

*McClain v. State*,
  269 S.W.3d 191 (Tex. App.—Texarkana 2008, no pet.) ......................................21

*Mobil Oil Corp. v. Ellender*,
  968 S.W.2d 917 (Tex. 1998)............................................................................22

*Numed, Inc. v. McNutt*,
  724 S.W.2d 432 (Tex. App.—Fort Worth 1987, no writ) ......................................21

*Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*,
  13 F. Supp. 3d 465 (E.D. Pa. 2014) ..................................................................14

*Smartcomm License Services LLC v. Palmieri*,
  No. CA-CV 16-0265, 2018 WL 326510, at *6 (Ariz. Ct. App. Jan. 9, 2018).........................21

*Uhlig LLC v. Shirley*,
  6:08-CV-01208-JMC, 2012 WL 2923242 (D.S.C. July 17, 2012)...................................17, 19

*United States v. Nosal*,
  844 F.3d 1024 (9th Cir. 2016), cert denied, 138 S. Ct. 314, 199 L. Ed. 2d 207
  (2017)..............................................................................................14, 15

*Vianet Group PLC v. Tap Acquisition, Inc.*,
  No. 3:14-CV-3601-B, 2016 WL 4368302 (N.D. Tex. Aug. 16, 2016)...................................21

Defendant David W. Kent, Jr. ("Kent") and Single Integrated Operations Portal, Inc. d/b/a Oilpro and Oilpro.com ("Oilpro" and, collectively with Kent, "Defendants") respond to the Affirmative Motion for Partial Summary Judgment filed by Plaintiffs DHI Group, Inc. f/k/a Dice Holdings Inc. ("DHI") and RIGZONE.com, Inc. ("Rigzone" and, collectively with DHI, "Plaintiffs") (DE 227).

## SUMMARY OF ARGUMENT

Before this lawsuit was filed, no one at DHI or Rigzone referred to the Rigzone resume database as a trade secret or treated it like a trade secret. Instead, they gave that database to a third party, without compensation or a non-disclosure agreement; allowed customers unlimited access to and downloads of resumes; permitted both customers and employees access to a download-to-excel feature that allowed individuals to download thousands of resumes at a time; gave an employee a server with the complete copy of the resume database, without instructions to delete the contents or requiring a non-disclosure agreement; allowed all employees to have unmonitored access to the resume database; and required neither customers, vendors, nor employees to sign non-disclosure agreements regarding the resume database.

Faced with the realization that any one of these facts would  condemn their trade secret claim, Plaintiffs attempt to paper over their shortcomings by dusting off a Stock Purchase Agreement and relying on its definition of "trade secret" buried deep in an agreement more than one hundred pages long. But Plaintiffs ignore the critical point: no one considered the resume database a trade secret, at the time that the parties executed the Stock Purchase Agreement. Nor was the resume database treated as a trade secret at the time. It is the nature of the information and the secrecy surrounding that information, that trigger trade secret protection. And even if the Stock Purchase Agreement's definition governed and the resume database fell within its scope, it could only potentially bind David Kent—not Oilpro, which was formed more than a year after the agreement was signed.

As argued in Defendants' motion for summary judgment, the evidence in this case negates the existence of a trade secret as a matter of law. It is the Defendants that are entitled to summary judgment on Plaintiffs' TUTSA claim. But to defeat Plaintiffs' motion for summary judgment, the Defendants need only show that there is a material disputed fact regarding whether the resume database is a trade secret. Defendants have plainly raised evidence that disputes (or outright negates) the existence of a trade secret.

## BACKGROUND FACTS

Rather than repeating the statement of facts Defendants have set out elsewhere,[1] Defendants will focus on the facts relevant to this motion: that is, whether the resume database is a trade secret.

Rigzone is a website primarily used by professionals in the oil and gas industry to search for jobs. Rigzone provides news, a company directory, oil and gas events, an equipment marketplace, and a job board.[2] As part of the Rigzone website, candidates searching for jobs upload their resumes to Rigzone, who stores those resumes.[3] Rigzone then sells companies and recruiters subscriptions that allow them to download resumes and post jobs.[4] Rigzone does not review the resumes in the database; apply algorithms to the database to help recruiters or companies identify qualified candidates; or otherwise edit the content created and uploaded by job seekers.[5] The resume database was not stored on a separate server[6] and was not encrypted.[7]

---

[1]  *See* DE 231at 8; DE 323 at 9.

[2]  DE 233, Ex. H [Declaration of David W. Kent, Jr.] ¶2.

[3]  DE 233, Ex. H [Declaration of David W. Kent, Jr.] ¶2.

[4]  Ex. T [Deposition of Michael Durney] at 54:25-55:07.

[5]  Ex. Y [Deposition of Estevan Dufrin] at 121:18-122:01; 125:04-13; 126:17-23; 127:22-128:03.

[6]  DE 233, Ex. J [Deposition of Chad Norville] at 155:01-06.

[7]  DE 233, Ex. H [Declaration of David W. Kent, Jr.] ¶¶6-7; DE 233, Ex. J [Deposition of Chad Norville] at 198:17-20.

No one at DHI or Rigzone ever referred to the resume database as a trade secret until after this lawsuit was filed; indeed, DHI's CEO, CFO, and the head of mergers and acquisitions, as well as the President of Rigzone, all testified that they had never heard anyone refer to the resume database as a trade secret.[8] They did not treat the resume database as a trade secret, either. The only security that Rigzone applied to the resume database were the measures that it took to protect the website, in general. But these measures to protect against unknown third-party access are meaningless in the face of wide-spread disclosure and unmonitored access granted to Rigzone employees,[9] customers, vendors,[10] and DHI affiliates.

Rigzone never identified the resume database as a trade secret in a non-disclosure agreement[11] and did not require employees,[12] customers, vendors, or DHI affiliates to sign such an agreement before accessing the resume database.[13] Rigzone allowed some customers unlimited access and unlimited downloads;[14] and for certain periods of time, allowed customers to download thousands of resumes to an excel file, at one time.[15]

Employees were given no guidelines regarding the disclosure of the resume database,[16] were permitted to access the resume database on personal devices;[17] and were not even required

---

[8]   Ex. O [Declaration of Bud Montang] ¶¶ 9 – 10; DE 233, Ex. J [Deposition of Chad Norville] at 52:23-25; DE 233, Ex. E [Deposition of Michael Durney] at 227:14-227:21; *see also* DE 233, Ex. A [Deposition of Jeremy Antonini] at 103:24-104:03;

[9]   DE 233, Ex. J [Deposition of Chad Norville] at 158:02-05.

[10]   DE 233, Ex. J [Deposition of Chad Norville] at at 167:24-168:03.

[11]   DE 233, Ex. J [Deposition of Chad Norville] at 171:07-12.

[12]   DE 233, Ex. D [Deposition of Estevan Dufrin] 126:22-129:25.

[13]   DE 233, Ex. N-6 [Rigzone's January 13, 2016 Contract with Petronas]; DE 233, Ex. J [Deposition of Chad Norville] at 165:12-14; 166:25-167:05, 175:18-176:13.

[14]   DE 233, Ex. C [Deposition of Bryan Robins] at 59:16-59:18.

[15]   DE 233, Ex. C [Deposition of Bryan Robins] at 59:06-59:09; DE 233, Ex. A [Deposition of Jeremy Antonini] at 141:03-15; DE 233, Ex. J [Deposition of Chad Norville] 212:06-15; 216:24-217:24.

[16]   DE 233, Ex. J [Deposition of Chad Norville] at 156:01-19 .

[17]   DE 233, Ex. J [Deposition of Chad Norville] at 205:06-10.

to return resume data or access credentials when they left their employment with Rigzone.[18] In fact, Rigzone allowed one employee (Jeremy Antonini) to take the server containing the entire Rigzone resume database without requiring him to delete the data or sign a non-disclosure agreement.[19] And in another similar instance, Rigzone handed over a copy of the entire database to another company affiliated with DHI, WorkDigital, Inc., without receiving compensation or requiring that company to sign a non-disclosure agreement.[20]

Plaintiffs' generosity in sharing the resume database is exacerbated by the fact that they did not monitor access to the resume database;[21] did not mark the resumes as trade secrets or confidential,[22] even though they did add confidentiality stamps to other information (such as monthly business reports);[23] and there was nothing on the website, that notified a person viewing or downloading resumes, that the Plaintiffs considered this information to be their trade secrets.[24] Given the already diverse universe permitted to access and download information from the resume database, the failure to monitor the database or notify users that Rigzone considered the information to be its trade secret essentially ensured that the database was not secret.

And the supposed "secret backdoor"? Two publicly reachable webpages that allowed users to download resumes without entering a password.[25] These were not a secret and were features of

---

[18]   DE 233, Ex. J [Deposition of Chad Norville] at 186:04-08.

[19]   DE 233, Ex. A [Deposition of Jeremy Antonini] at 144:10-148:06; 148:20-149:25.

[20]   Ex. R-4 [April 13, 2015, Email from Megan Henderson]. Here, Rigzone provides a copy of the database to WorkDigital, which Plaintiffs have insisted in filings with this court, is a separate and distinct entity from Rigzone and DHI. *See* DE 228 at 17.

[21]   DE 233, Ex. J [Deposition of Chad Norville] at 167:24-168:03.

[22]   DE 233, Ex. J [Deposition of Chad Norville] at  138:20-23; 140:25-141:06.

[23]   DE 233, Ex. N-7 [Rigzone September 2013 Monthly Business Review] at DHI_0001422.

[24]   DE 233, Ex. J [Deposition of Chad Norville] at 138:04-23.

[25]   DE 233, Ex. J [Deposition of Chad Norville] at 198:17-199:05; 248:07-10;

the website, not a bug.[26] Indeed, five Rigzone employees wrote and revised the software code creating those webpages. David Kent was not one of these five individuals.[27] When Rigzone learned of David Kent's access, it did not immediately close these publically accessible pages.[28]

## ARGUMENTS AND AUTHORITIES

**A.    The Rigzone resume database is not a "trade secret" protected by TUTSA.**

To establish a TUTSA claim, Plaintiffs must show that (1) they owned a trade secret, (2) defendant misappropriated the trade secret, and (3) the misappropriation caused injury. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 134A.002(1),(3), (6) & 134A.004(a). Plaintiffs' trade secret claim cannot clear the first hurdle because it cannot show that the information at issue—the resume database—is a trade secret. TUTSA requires information to meet the following definition, to be subject to its protections:

> information, including a formula, pattern, compilation, program, device, method, technique, process, financial data, or list of actual or potential customers or suppliers, that: (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002(6). Plaintiffs make no effort to establish the elements under TUTSA, relying instead on the terms of the SPA. But the SPA does not supplant Section 134A.002(6) and the evidence shows that resume database does not qualify as a trade secret.

---

[26]   DE 233, Ex. A [Deposition of Jeremy Antonini] at 118:14-118:20; DE 233, Ex. J-52 [Confluence Timeline] at DHI_0024616.

[27]   DE 233, Ex. A [Deposition of Jeremy Antonini] 115:16-117:18. These individuals included David Wuensch, Antonini, Michael Hobley, John Hanson, and Norville. DE 233, Ex. B-14 [Mandiant Report], App. 000046-47.

[28]   DE 233, Ex. J-52 [Confluence Timeline] at DHI_0024616.

       1.     *TUTSA, not the SPA, determines whether the resumes are Rigzone's trade secret.*

Plaintiffs rely solely on the SPA to establish that the resumes constitute a trade secret. At best, the SPA is one piece of evidence to be considered in determining whether the resumes are a trade secret. And this is supported by the cases cited by Plaintiffs in their motion.

In *Williams Cons. I, Ltd. v. Smith,* the former-employee defendant had signed an agreement that "explicitly acknowledge[d] that the customer lists [were] trade secrets and confidential" but that alone was not dispositive of the issue. The Court returned to the Texas common law test for determining "whether a customer list is a trade secret: (1) what steps, if any, an employer has taken to maintain the confidentiality of a customer list; (2) whether a departing employee acknowledges that the customer list is confidential; and (3) whether the content of the list is readily ascertainable." 4:08-CV-766, 2009 WL 10698215, *12 – *13 (S.D. Tex. Oct. 19, 2009), report and recommendation adopted, 4:08-CV-766, 2009 WL 10698262 (S.D. Tex. Nov. 19, 2009) (citing *Guy Carpenter & Co., Inc. v. Provenzale,* 334 F.3d 459, 467 (5th Cir. 2003). The Court required the plaintiff to establish each element. *Id.; see also Guy Carpenter,* 334 F.3d at 468 ("even though [plaintiff] took steps to protect its customer list and [defendant] signed a contract stating the customer list was confidential, we conclude the customer list was not a trade secret because it was readily ascertainable").

       2.     *The SPA does not support Plaintiffs' argument that the Rigzone resume database is a trade secret.*

Even if the SPA, standing alone, *could* establish that the resumes were protected as trade secrets by TUTSA, it would not: the SPA's definitions do not include the resume database. Plaintiffs rely on the SPA in two respects, citing the "trade secret" definition and a representation and warranty related to such "trade secrets." Docket No. 227 at 17 – 18. Neither establish that the resume database is a trade secret, subject to a misappropriation claim under TUTSA.

a.      The SPA does not include the Rigzone resume database in its definition of "trade secrets."

The SPA contains the following definition of "trade secrets":

> "Trade Secrets" shall mean any trade secrets or other proprietary and confidential information including unpatented inventions, invention disclosures, technical data, financial data, Personal Information, customer lists, business production, or marketing plans, know-how, formulae, methods (whether or not patentable), designs, processes, procedures, algorithms, analyses, proposals, source code, object code, and data collections.[29]

Plaintiffs rely on the identification of "Personal Information" in the trade secret definition as the hook that drags the resume database into this definition. However, "Personal Information" is defined as follows:

> "Personal Information" all information or data associated with individual Persons, including customers and employees, that is collected by the Company in the course of its operations.[30]

But Rigzone's "customers" are its subscribers and advertisers.[31] Job seekers who upload their resumes are not Rigzone's customers.[32] Plaintiffs' internal presentations regarding the potential acquisition of Rigzone make this distinction clear,[33] and was also recognized in the Marshall & Stevens valuation.[34]

Moreover, the Rigzone executive that led DHI's acquisition of Rigzone and was involved in the negotiations of the SPA has testified that he "did not intend or believe that the Rigzone resume database was included within the SPA's definition of 'trade secret'" and that "[b]oth today

---

[29]   DE 233, Ex. E-7 [Stock Purchase Agreement], App. 000177.

[30]   DE 233, Ex. E-7 [Stock Purchase Agreement], App. 000175.

[31]   Ex. O [Declaration of Bud Montang] ¶10.

[32]   Ex. O [Declaration of Bud Montang] ¶10.

[33]   Ex. R-3 [July 22, 2010 Presentation] at DHI_0007635 – 7636.

[34]   DE 233, Ex. L-95.C [August 11, 2010 Summary Appraisal Report of the Acquired Assets of Rigzone.com, Inc.], App. 758 (noting that Rigzone's customer relationships were "segmented into three buckets—Advertising, Career Center and Data Services" and valuing the "job seeker database" separately).

and at the time of the Rigzone acquisition, I understood 'Personal Information' to refer to employee or customer information that would generally be considered the type of information protected from disclosure. I did not (and do not) understand 'Personal Information' to include the Rigzone resume database."[35] And contrary to the testimony Plaintiffs plucked from its context,[36] Kent testified at his deposition that he *did not* consider Rigzone's database to be its proprietary information, when he owned Rigzone, because "we shared it with customers and recruiters."[37]

> b.   <u>The SPA does not establish that Plaintiffs took reasonable efforts to keep the Rigzone resume database secret.</u>

Plaintiffs also rely on the SPA to show that the Rigzone resume database was protected, citing to Section 3.20(c) of the SPA:

> The Company has taken all necessary and otherwise reasonable steps to protect and preserve the confidentiality of all of its Trade Secrets and all use by, or disclosure to, any Person of such Trade Secrets has been pursuant to the terms of a valid, written confidentiality agreement with such Person that is legally enforceable by the Company. Neither the Company, its employees, nor any other agents or contractors in the course of working on the Company's behalf has breached any contracts of non-disclosure or confidentiality.[38]

But this representation says nothing about the protection of the resume database, because it was not included in the definition of a "Trade Secret." Even if the resume database were a "Trade Secret" referenced in this rep and warranty (which it is not), this would only be evidence regarding the measures up until August 2010 and would not evidence Plaintiffs' treatment of the resume database *after* the Rigzone acquisition. As discussed below, Plaintiffs did not take reasonable measures to protect the resume database.

---

[35]   Ex. O [Declaration of Bud Montang] ¶¶ 9 – 10.

[36]   DE 227 at 11.

[37]   Ex. U [Deposition of David Kent] 209:12 – 19.

[38]   DE 233, Ex. E-7 [Stock Purchase Agreement], App. 000136.

3. *The Rigzone resume database is not a "compilation" protected under TUTSA.*

Plaintiffs argue that because compilations *can* be trade secrets, that the resume database *is* a trade secret, without addressing what makes a compilation a trade secret or showing that the compilation is, in fact, what the Defendants took.

TUTSA has two requirements, the information must: "(A) derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) [be] the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Tex. Civ. Prac. Rem. Code Section 134A.002. Aside from conclusory statements and reference to the SPA, Plaintiffs make no effort to establish either of these elements and fail to meet even their initial burden under Rule 56. As set forth in Defendants' motion for summary judgment, the evidence establishes that the resume database is not—as a matter of law—a trade secret under TUTSA. But at the very least, the evidence creates a material question of fact precluding summary judgment in Plaintiffs' favor on this issue.

a. <u>Kent did not access or acquire the resume database and Plaintiffs do not argue that the individual resumes are trade secrets.</u>

Plaintiffs argue that the resume database constitutes a trade secret but this would only matter if Kent had acquired the resume database. It is undisputed that he did not—he accessed only individual resumes.[39] Plaintiffs seek to prove a trade secret that is not the information they allege was misappropriated. TUTSA requires a trade secret be misappropriated, and Plaintiffs simply fail to even argue that the individual resumes that Kent acquired—as opposed to the resume database itself—were trade secrets. For this reason alone, the Court should deny Plaintiffs motion for summary judgment.

---

[39]   DE 233, Ex. N-3 [Expert Report of Trent Livingston] at 5, ¶13; DE 233, Ex. J [Deposition of Chad Norville] at 248:11-13; DE 233, Ex. H [Declaration of David Kent] at App. 000510.

b.   <u>The resume database is not a compilation protected under TUTSA.</u>

Job seekers—not Plaintiffs—create and upload resumes to Rigzone.com.[40] Rigzone only provides a place (the Rigzone website) for members to do so. Thus, the proposed trade secret, here, is a group of resumes authored by individuals outside of Rigzone and uploaded by those same individuals. Further, Rigzone customers around the world are permitted to access these resumes without a nondisclosure agreement. And within Rigzone, the resumes were never treated as trade secrets or restricted with security measures. In short, this group of resumes is the antithesis of a trade secret.

Generally, courts considering compilations have noted two significant factors: (1) uniqueness of the information to be considered a trade secret and (2) effort put into compiling the trade secret. *United States v. Nosal*, 844 F.3d 1024, 1043 (9th Cir. 2016), cert denied, 138 S. Ct. 314, 199 L. Ed. 2d 207 (2017) (noting that the information at issue was the unique, "customized product of a massive database"); *Brigham Young Univ. v. Pfizer, Inc.*, 861 F. Supp. 2d 1320, 1323–24 (D. Utah 2012) ("Simply pointing to a large amount of information and claiming it is secret will not do. Rather, the plaintiff must explain how the combination of elements is sufficiently different, or special, to merit protection."); *Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 13 F. Supp. 3d 465, 474 (E.D. Pa. 2014) ("The rationale for protecting compilations as trade secrets is that the act of compiling entails the investment of time and resources; it is that investment the law seeks to protect."); *Am. Paper & Packaging Products, Inc. v. Kirgan*, 183 Cal. App. 3d 1318, 1326, (Ct. App. 1986) (noting that the shipping information for which the party alleging a trade secret sought protection for was "readily ascertainable to other persons in the shipping business" and that "all the competitors have secured the same information that appellant claims and, in all likelihood, did so in the same manner as appellant").

Information compiled from public sources, without more, is not a trade secret. In *United States v. Nosal* the Ninth Circuit analyzed whether source lists constituted a trade secret under the

---

[40]   DE 233, Ex. J, [Deposition of Chad Norville] at 46:22-47:01.

Economic Espionage Act. 844 F.3d at 1043. Korn/Ferry's core asset was an internal database of information on over one million executives, including resumes, contact information, employment history, and salaries. *Id.* at 1030. To fill a position, Korn/Ferry would compile a list of potential candidates, which was derived by running queries in the database to generate a list of candidates. *Id.* Old source lists were used to speed up the process in similar searches. *Id.* Nosal, the defendant, downloaded source lists when working to launch a competitor. *Id.* at 1031. Nosal argued that the source lists were "composed largely, if not entirely, of public information and therefore couldn't possibly be trade secrets." *Id.* at 1042. The court found that the source lists, which were made up of information from public, non-public, and quasi-public information, constituted trade secrets. *Id.* at 1030, 1042. "Each source list was the result of a query run through a propriety algorithm that generates a custom subset of possible candidates, culled from a database of over one million executives." *Id.* The source lists "were not unwashed, public-domain lists of all financial executives in the United States, nor otherwise related to a search that could be readily completed using public sources." *Id.* Further, the creation of the Korn/Ferry database involved the input of social scientists and was not a mere collection of resumes. The court found that the nature and value of the trade secret "stemmed from the unique integration, compilation, cultivation, and sorting of, and the aggressive protections applied to the [] database." *Id.* at 1042.

The purported trade secret at issue here is a collection of resumes. The Rigzone information did not include salaries or other non-public information. Nor was the resume collection any type of customized list as in *Nosal*,[41] the product of social scientists or intellectual property development specialists.[42] While the Korn/Ferry source lists constituted carefully culled and customized information, the information accessed by Defendants was a group of unprotected resumes uploaded by individuals without any effort by Rigzone.

---

[41] *See* DE 233, Ex. J [Deposition of Chad Norville] at 248:11-13.

[42] DE 233, Ex. D [Deposition of Estevan Dufrin] at 126:17-126:23.

In *Kirgan* a California appellate court considered whether lists of customers who needed shipping supplies constituted a trade secret. 183 Cal. App. 3d 1318, 1326, 228 Cal. Rptr. 713, 717 (Ct. App. 1986). The court noted that "[w]hile the information sought to be protected here, that is lists of customers who operate manufacturing concerns and who need shipping supplies to ship their products to market, may not be generally known to the public, they certainly would be known or readily ascertainable to other persons in the shipping business." *Id.* The court further noted that the compilation process, which consisted of driving through manufacturing areas and making lists of companies to call,  was "neither sophisticated nor difficult nor particularly time consuming." *Id.* Additionally, the court stated that competitors had all secured the same information and likely did so in the same manner. *Id.* Ultimately, the court found that such information was not a trade secret. *Id.*

The information here is even less secretive than the lists in *Kirgan*. The preparation and loading of the resumes entailed no effort by Plaintiffs. Jobseekers themselves uploaded their resume.[43] While the information was gathered over a long period of time, this did not involve the input or effort of Plaintiffs.[44] Rigzone's president, Norville, admitted that no person at Rigzone codes information in any sort of database as resumes are uploaded.[45] Efforts recognized in cases when the court found a compilation are significantly greater than simply building a website and passively allowing members to upload their information. *See Calisi v. Unified Fin. Srvs, LLC,* 232 Ariz. 103, 108, 302 P.3d 628, 633 (Ct. App. 2013)  ("The record is completely silent regarding the cost, time, frequency, and success rate of UFS's direct mail advertising or its use of any other marketing method, such as "cold calling," tax seminars, or financial planning programs. Simply put, UFS failed to present any evidence that it had expended substantial effort to develop its

---

[43]  DE 233, Ex. J [Deposition of Chad Norville] at 46:22-47:01.

[44]  DE 233, Ex. J [Deposition of Chad Norville] at 76:12-79:02.

[45]  DE 233, Ex. J [Deposition of Chad Norville] at 223:15-18.

customers and any personal information about them in a way that its competitors could not duplicate.").

Further, Plaintiffs have done nothing to establish that this information differs from that of Plaintiffs' competitors. Quite the opposite. Plaintiffs' own expert has acknowledged that the resumes are not unique. Johnson refers in his report to Plaintiffs' purchase of OilCareers, a company based in the United Kingdom.[46] Johnson notes, that this UK company, although consisting of primarily resumes for UK based oil and gas professionals, had an 18% overlap with the members of Rigzone, even though Rigzone was a U.S.-based company.[47] Johnson further notes that OilCareers had 1.5 million members.[48] Given that there was an 18% overlap, 270,000 of the OilCareers members were also members of Rigzone.[49]

Rigzone's own President, Norville, admitted that Plaintiffs do not even guarantee the accuracy of the resumes.[50] Norville testified that Rigzone has "no control over the quality, safety, legality, truth, or accuracy of the job listings or the resumes/CVs."[51] The terms and conditions likewise, confirm the same.[52]

Another court has noted that noted "[a] compilation trade secret is, generally, not an amorphous collection of information. Instead, the compilation must work together to embody a definite methodology, process, technique, or strategy." *Uhlig LLC v. Shirley*, 6:08-CV-01208-JMC, 2012 WL 2923242, at *5 (D.S.C. July 17, 2012). Here, Defendants accessed only individual resumes.[53] Defendants did not access the database that had search features and tables with more

---

[46]   DE 233, Ex. G-1 [Expert Report of Shane Johnson] at 7.

[47]   DE 233, Ex. G-1 [Expert Report of Shane Johnson] at 7.

[48]   DE 233, Ex. G-1 [Expert Report of Shane Johnson] at 7.

[49]   DE 233, Ex. G-1 [Expert Report of Shane Johnson] at 7.

[50]   DE 233, Ex. J [Deposition of Chad Norville] at 78:22-79:09.

[51]   DE 233, Ex. J [Deposition of Chad Norville] at 78:22-79:09.

[52]   DE 233, Ex. J-46 [Rigzone's Terms and Conditions].

[53]   DE 233, Ex. N-3 [Expert Report of Trent Livingston] at 5, ¶13.

cohesive information, but only accessed the publicly-reachable web page.[54] There is no methodology, process, technique, or strategy at issue here.

           c.      <u>Rigzone took no measures to maintain the secrecy of the resume database.</u>

Under TUTSA the definition of a "trade secret" requires that "the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret." TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002. "Reasonableness will vary based on the size of the business and the importance of the trade secret." John F. Cleavland, Jr., 2017 TEXAS TRADE SECRETS UPDATE, Institute for Law and Technology: Conference on Intellectual Property Law, November 13-14, 2017. The more important the trade secret is, the more closely that secret should be guarded. *Id.* Additionally, "the determination of what steps are reasonably necessary to protect information is different for a large company than for a small one." *Jackson v. Hammer*, 274 Ill. App. 3d 59, 67, 653 N.E.2d 809, 815 (1995).

Here, the Plaintiffs will be held to a high standard, commensurate with their sophistication and the alleged importance of the trade secret.[55] Rigzone has offices in numerous countries. Rigzone has offices world-wide[56] and DHI is a publicly traded company with more than 500 employees and revenues that exceed $100 million per year.[57] When asked about the importance of the resume database, Rigzone's president testified: "On a scale of one to ten, I'd give it a ten."[58] But despite this alleged importance and the resources of a large corporation, Plaintiffs took virtually no steps to protect the resume database and in fact affirmatively disclosed it far and wide. It is incredible that Plaintiffs continue to pursue this trade secret claim, when their pre-litigation conduct so definitively waived any right to trade secret protection.

---

[54]    DE 233, Ex. J [Deposition of Chad Norville] at 248:11-13; DE 233, Ex. H [Declaration of David Kent] at App. 000510.

[55]    DE 233, Ex. J [Deposition of Chad Norville] at 26:8-27:21.

[56]    DE 233, Ex. J [Deposition of Chad Norville] at 26:8-27:21.

[57]    DE 233, Ex. J [Deposition of Chad Norville] at 28:6-10; 30:02-30:17.

[58]    DE 233, Ex. J [Deposition of Chad Norville] at 53:08-17.

Turning first to the protections that Plaintiffs took with respect to employee access to the database, *Williams*, a case cited by Plaintiffs, is instructive:

> Plaintiff has provided evidence that it took several steps to maintain the confidentiality of its customer lists. Each of Plaintiff's **salespeople only had access to his own customer list**, including the material costs, labor costs, specific pricing, pricing discounts, accounts receivable, amount of purchases, specifications and constructions, and other information that the salesperson generated for his customers alone. The information on the computer system was protected; a salesperson should not have been able to run reports on the customers of other salespersons or even see the customer lists of other salespersons. **The only employees with authorization to enter the system and run reports for all customers were the general manager** and "potentially" the sales manager. Plaintiff also maintained oversight by **tracking the reports salespersons viewed or printed out.**

*Id.* at *12 (emphasis added). Every factor that *Williams* identifies is absent from the Plaintiffs' conduct here. The evidence is undisputed that all Rigzone employees had access to all resumes in the database,[59] were not required to sign non-disclosure agreements,[60] and Rigzone did not track employees access to those resumes. Plaintiffs allowed an employee to take a server with the entire resume database on it, without requiring the employee to delete the resumes! And this laxity extended to third parties: Rigzone's subscribers (who were not required to sign a non-disclosure agreement or acknowledge that the resumes were Rigzone's trade secrets)[61] also had access to all resumes in the database and at least for some periods of time, could download an excel file with all—or at least thousands—of the resumes.[62]

*Baxter & Associates, L.L.C. v. D & D Elevators, Inc.*, 05-16-00330-CV, 2017 WL 604043, (Tex. App.—Dallas Feb. 15, 2017, no pet.), is also on point. In that case, the Dallas Court of

---

[59]   DE 233, Ex. J [Deposition of Chad Norville] at 53:08-17.

[60]   DE 233, Ex. D [Deposition of Estevan Dufrin] at 126:22-129:25; DE 233, Ex. J [Deposition of Chad Norville] at 166:21-24.

[61]   Ex. 233, Ex. N-6 [Rigzone's January 13, 2016 Contract with Petronas].

[62]   DE 233, Ex. C [Deposition of Bryan Robins] at 59:06-09; DE 233, Ex. A [Deposition of Jeremy Antonini] at 141:03-15; DE 233, Ex. J [Deposition of Chad Norville] at 212:06-15; 216:24-217:24.

Appeals found that the plaintiff-employer had not taken reasonable steps to protect its alleged trade secrets, based on the following facts:

1)   Employees worked for years without being asked to sign a "noncompetition agreement";

2)   Employees who refused to sign the "noncompetition agreement" remained employed even after they refused to sign;

3)   The alleged trade secret data was not encrypted or protected by a monitoring system or tracking software; and

4)   The documents in question were not labeled as confidential or proprietary.

*Id.* at *10. Rigzone and DHI treated their alleged trade secret with less regard than the employer in *Baxter*. Plaintiffs did not require employees to sign non-disclosure agreements;[63] did not encrypt the resume database;[64] took no effort to mark the resume database or even inform employees that Rigzone considered it a trade secret;[65] and literally gave the entire resume database away without a non-disclosure agreement or any instructions regarding the protection of that information.[66] Combined with the fact that the database had never been referred to as a trade secret and employees had never been instructed to treat it as such, the resume database simply cannot be considered a trade secret, in the face of these facts.

But the most perhaps the most damning facts relate to Plaintiffs' third-party disclosures of the database. Information that may be discovered by anyone does not constitute a trade secret. *Numed, Inc. v. McNutt*, 724 S.W.2d 432, 435 (Tex. App.—Fort Worth 1987, no writ). Texas courts "refuse to extend trade secret protection when the material sought to be protected has been publicly disclosed." *Lamont v. Vaquillas Energy Lopeno Ltd., LLP*, 421 S.W.3d 198, 210 (Tex. App.—San

---

[63]   DE 233, Ex. D [Deposition of Estevan Dufrin] at 126:22-129:25; DE 233, Ex. J [Deposition of Chad Norville] at 166:21-24.

[64]   DE 233, Ex. H [Declaration of David W. Kent, Jr.] ¶¶6-7; DE 233, Ex. J [Deposition of Chad Norville] at 198:17-20.

[65]   DE 233, Ex. J [Deposition of Chad Norville] at 138:04-23, 156:01-13.

[66]   DE 233, Ex. A [Deposition of Jeremy Antonini] at 144:10-148:06; 148:20-149:25.

Antonio 2013, pet. denied) (internal quotations omitted*); see also Vianet Group PLC v. Tap Acquisition, Inc.*, No. 3:14-CV-3601-B, 2016 WL 4368302, at *20 (N.D. Tex. Aug. 16, 2016); *McClain v. State*, 269 S.W.3d 191, 197 (Tex. App.—Texarkana 2008, no pet.); *Smartcomm License Services LLC v. Palmieri*, No. CA-CV 16-0265, 2018 WL 326510, at *6 (Ariz. Ct. App. Jan. 9, 2018) (interpreting the Arizona Uniform Trade Secret Act).

Here, Rigzone handed over the entire database to another company without compensation or a non-disclosure agreement,[67] granted unlimited access to customers and vendors, including the ability to download large quantities of resumes at one time,[68] without securing a non-disclosure agreement,[69] monitoring or tracking third parties with access to the resume database,[70] or in any way ensuring that the customer understood that Rigzone considered the resume database a trade secret. The fact of the matter is Plaintiffs only began claiming the resume database was a trade secret during the pendency of this lawsuit.[71]

The paucity of security measures (if any) taken by a multi-national, public company to protect Rigzone's supposed most important trade secret demonstrates that the resume database cannot be a trade secret as a matter of law. At the very least, Defendants have shown that a question of fact exist, precluding Plaintiffs' request for summary judgment.

## B.     The vice-principal theory does not apply.

As discussed above, it is TUTSA—not the SPA—that governs whether the Rigzone resume database is a trade secret and, in any event, the SPA's trade secret definition does not include the resume database. But even if this were not the case, Oilpro did not sign the SPA and did not even exist when the SPA was executed on August 11, 2010. The vice-principal theory is not a time

---

[67]  Ex. R-4 [April 13, 2015, Email from Megan Henderson].

[68]  DE 233, Ex. C [Deposition of Bryan Robins] at 59:06-09; DE 233, Ex. A [Deposition of Jeremy Antonini] at 141:03-15; DE 233, Ex. J [Deposition of Chad Norville] at 212:06-15; 216:24-217:24.

[69]  DE 233, Ex. N-6 [Rigzone's January 13, 2016 Contract with Petronas].

[70]  DE 233, Ex. J [Deposition of Chad Norville] at at 167:24-168:03.

[71]  DE 233, Ex. J [Deposition of Chad Norville] at 52:23-25.

machine that permits Plaintiffs to retroactively bind Oilpro to the terms of the SPA. In fact, the vice-principal theory has no application to this case at all: it is a doctrine that attributes direct liability to a corporation for gross negligence, such that the corporation may be held liable for punitive damages. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998); *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 875 (Tex. App.—Dallas 2008, no pet.); *ADT LLC v. Capital Connect, Inc.*, 3:15-CV-2252-G, 2017 WL 1426302, at *9 (N.D. Tex. Apr. 21, 2017) (same). This doctrine does not allow a plaintiff to impute pre-formation conduct for purposes of liability. Even if the SPA were sufficient to establish liability as to Defendant Kent, it would not be sufficient to establish Oilpro's liability.

## CONCLUSION

Defendants request that the Court deny Plaintiffs' Affirmative Motion for Partial Summary Judgment and grant them any such further relief to which they have shown themselves justly entitled.

Respectfully submitted,

**FOLEY GARDERE**
 **FOLEY & LARDNER LLP**

*/s/ James G. Munisteri*

James G. Munisteri
Texas Bar No. 14667380
Marla T. Poirot
Texas Bar No. 00794736
1000 Louisiana, Suite 2000
Houston, Texas 77002-2099
Telephone: (713) 276-5500
Facsimile: (713) 276-5555
jmunisteri@foley.com
mpoirot@foley.com

Sara Ann Brown
Texas Bar No. 24075773
2021 McKinney, Suite 1600
Dallas, Texas 75201-3340
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
sabrown@foley.com

**ATTORNEYS FOR DEFENDANT/
COUNTER-PLAINTIFF, SINGLE
INTEGRATED OPERATIONS PORTAL,
INC. D/B/A OILPRO AND
OILPRO.COM AND DAVID W. KENT,
JR.**

## CERTIFICATE OF SERVICE

I certify that on November 16, 2018, a copy of the forgoing was served via email to the following:

Walter Lynch
Amir Halevy
Jeb Golinkin
JORDAN, LYNCH & CANCIENNE PLLC
1980 Post Oak Blvd., Suite 2300
Houston, Texas 77056
wlynch@jlcfirm.com
ahavely@jlcfirm.com
jgolinkin@jlcfirm.com

**Counsel for Plaintiffs DHI Group, Inc. f/k/a Dice Holdings, Inc. and Rigzone.com, Inc.**


_/s/ James G. Munisteri_
James G. Munisteri