IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC., <br><br> *Plaintiffs,* <br> v. <br> DAVID W. KENT, JR., SINGLE INTEGRATED OPERATIONS PORTAL, INC. D/B/A OILPRO AND OILPRO.COM, ET AL., <br><br> *Defendants.* | C.A. NO.: 16-cv-01670 |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON OILPRO'S COUNTERCLAIMS**

Plaintiffs DHI Group, Inc. ("DHI") and Rigzone.com, Inc. D/B/A Rigzone and Rigzone.com submit this brief Reply in Support of its Motion for Summary Judgment on Oilpro's Counterclaims.

### I.    SUMMARY OF NEW INFORMATION

In their Motion for Summary Judgment, Plaintiffs put forward archived copies of Oilpro's home page and Site Map which prove that Oilpro did not display, reference, or link to its Terms and Conditions ("T&Cs") *anywhere* on the Oilpro homepage or even on the Oilpro.com Site Map.[1] In response, Oilpro attaches no visual proof that the cited archives are not accurate, or any screenshots, mockups, or other pictures of its own website that reference or link to its T&Cs. Instead, Oilpro offers the sworn declaration of

---

[1] ECF 228 at 10-11.

convicted felon and Oilpro's sole founder and shareholder David Kent in which he swears that Oilpro prominently linked to its T&Cs on the "sidebar navigation." Oilpro's own documents categorically refute Kent's unqualified representations to this Court.

## II.     ARGUMENT AND AUTHORITIES

### A.     Oilpro Failed to Post Its Terms And Conditions.

*1.     Plaintiffs Could Not Produce What They Neither Possessed Nor Controlled.*

Oilpro argues that the Court should disregard the publicly available archives of Oilpro's website captured by the Internet Archive Project (more known as the "Wayback Machine") because Plaintiffs did not produce the "screenshots" in discovery. Oilpro identifies no Request for Production that sought such screenshots, but even if it had, Plaintiffs still could not have produced them because Plaintiffs did not create or maintain the archives of the website they cite in their Motion and did not have custody or control of that information.

Oilpro also argues that the Court should not consider the contents of its own website because it is "unauthenticated hearsay" and because they did not have an opportunity to review the archives for accuracy. Oilpro created the website, so the notion that it is surprised to learn about what its website contained (or did not contain) strains credibility.

2. *Kent's Declaration Contains Materially False Statements.*

Oilpro also contends that the referenced Wayback Machine archives do not contain "the side navigation bar that was available on Oilpro's website (which contained a link to the terms and conditions)."[2] The only evidence Oilpro offers in support of this statement is a declaration in which David Kent swears that the "archived versions of the website do not include the side bar navigation that was part of the website when it was live, where a link to the Terms and Conditions was prominent."[3]

Plaintiffs cannot fathom how Kent and Oilpro felt comfortable submitting this declaration because Kent's assertion is demonstrably untrue. The Oilpro home page archived by the Wayback Machine on July 21, 2015 includes the "sidebar" Kent claims the Wayback Machine did not capture, but it does not reference or link to Oilpro's T&Cs.[4] The sidebar is also visible on a full capture of Oilpro's home page from October 1, 2015 available at another publicly available third-party website.[5] And if that is not enough, *another* third-party website maintains full captures of Oilpro's home page from September 2015[6] and December 2015.[7] There is no link to Oilpro's T&Cs *anywhere* on these archived copies of Oilpro's website.

Even Oilpro's own documents show Kent is not telling the truth. Below are two images. The image on the left is taken from of a screenshot Oilpro included in one of its

---

[2] ECF 237 at 13.
[3] ECF 244, Ex. Q at ¶ 9.
[4] https://web.archive.org/web/20150721010435/http:/oilpro.com:80/.
[5] https://app.crayon.co/inspire/page/16986452/.
[6] https://image3.owler.com/12059130-1441361002751.png.
[7] https://image2.owler.com/12059130-1449321989020.png.

3

own presentations.[8] Oilpro produced a grainy image, but it clearly shows the same "sidebar navigation" as the image on the right taken from the July 21, 2015 archive of Oilpro maintained by the Wayback Machine[9]:



The Wayback Machine and Oilpro's own documents make clear that Oilpro's entire argument against Plaintiffs' Motion for Summary Judgment is based on a sworn representation that is false.[10] "A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is plainly

---

[8] *See* Profuse Networks Presentation (Ex. 14) at Oilpro_0013076.
[9] *See* https://web.archive.org/web/20150721010435/http:/oilpro.com:80/. The "12 more" menu can be expanded and Terms and Conditions" is not included in this drop down menu.
[10] Oilpro argues that the law requires this Court to ignore this reality because Plaintiffs did not proffer an affidavit of an Internet Archive employee to authenticate the Wayback Machine documents. Like Kent's sworn representation to this Court, this too is false. Federal district courts have repeatedly overruled this objection and taken judicial notice of the authenticity of Wayback Machine documents. *See, e.g., E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 967 (D. Minn. 2018); *Marten Transp., Ltd. v. Plattform Advert., Inc.*, No. 14-2464-JWL, 2016 WL 1718862, at *3 (D. Kan. Apr. 29, 2016); *Juniper Networks, Inc. v. Shipley*, 394 Fed.Appx. 713, at *1 (Fed. Cir. 2010) (unpub. op.); *Erickson v. Nebraska Machinery Co.*, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015); *Pond Guy, Inc. v. Aquascape Designs, Inc.*, 2014 WL 2863871, at *4 (E.D. Mich. June 24, 2014); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 2013 WL 6869410, at *4 n.65 (S.D.N.Y. Dec. 30, 2013), *vacated in part for other reasons by* 2015 WL 9777725 (S.D.N.Y. Dec. 7, 2015); *Martins v. 3PD, Inc.*, 2013 WL 1320454, at *16 n.8 (D. Mass. Mar. 28, 2013)). The Court should do the same here and take judicial notice of the fact that the T&Cs were not referenced or linked to on either the Oilpro home page or the Site Map during the relevant period here.

to the contrary." *Berthelot v. Am. Postal Workers Union, Local 185*, No. CIV.A. 4:10-0018, 2012 WL 289869, at *4 (S.D. Tex. Jan. 31, 2012) (granting summary judgment where writings flatly contradicted sworn declaration); *California Sportfishing Prot. All. v. River City Waste Recyclers, LLC*, 205 F. Supp. 3d 1128, 1153 (E.D. Cal. 2016) ("However, like the statements in the Wilson declaration, merely saying that '[e]very updated SWPPP, every year, included an updated map which Mr. Wilson produced,' does not make it so on summary judgment.").

> 3. *Plaintiffs Cannot Be Bound by Terms and Conditions That Were Either Not Published or Hidden from the Public.*

The lack of the T&Cs from either the Oilpro homepage or its Site Map is fatal to Oilpro's T&C based claims. "Whether there was notice of the existence of additional contract terms presented on a webpage depends heavily on whether the design and content of that webpage rendered the existence of terms reasonably conspicuous." *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2nd Cir. 2016). The omission of any reference to the T&Cs from Oilpro's home page renders it not reasonably conspicuous. But even if Plaintiffs had been *extra* cautious and gone to Oilpro's Site Map, they would not have found the T&Cs there either. According to Oilpro's own website, the Site Map is designed to make important parts of the site easy to find: "sometimes you just wanna get somewhere without all the flashiness. We hope this page will help you get where you want to go in a hurry."[11] Even on this "roadmap" to all the parts of the website, Oilpro did not link to its T&Cs during the allegedly actionable conduct.[12]

---

[11] ECF 228 at 11; https://web.archive.org/web/20150723043850/http://oilpro.com:80/sitemap.
[12] *Id.*

5

Oilpro cites cases suggesting that, in some situations, sophisticated parties can be charged with constructive knowledge of the content of another company's website. And indeed, if Oilpro had placed its terms and conditions on either its homepage, or on its Site Map, Oilpro might have a valid argument. But the evidence in this case establishes that had Plaintiffs gone to Oilpro's home page, they would not have found anything. Nor would they have found anything on Oilpro's Site Map until *after* the period of the alleged scraping. These omissions are crucial and distinguish this case from every single constructive notice browsewrap case Oilpro cites: in each of those cases, the Court either assumed or the evidence established that the T&Cs at issue were posted on *the home page and/or* the defendant had received a cease and desist letter specifically calling their attention to the T&Cs at issue. Here, Plaintiffs did not receive a letter and "when terms are linked in obscure sections of a webpage that users are unlikely to see, courts will refuse to find constructive notice." *Nicosia*, 834 F.3d at 233. In other words, it does not matter how sophisticated a party may be; no one can be bound by contractual provisions that either do not exist or are hidden.

**B.      Oilpro's Tortious Interference Claim Also Fails.**

In its Motion, Plaintiffs argued that Oilpro has offered insufficient evidence to survive summary judgment on Oilpro's tortious interference claim. In response, Oilpro cites evidence that established that Oilpro tried to get a company called Progressive as a customer, that Progressive accepted a free trial, and that a Progressive representative forwarded David Kent a screenshot containing "a list of Rigzone resume search results

6

with the Oilpro logo right next to it."[13] Oilpro fails to offer *any* evidence to suggest that Plaintiffs "acted with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct," or the "existence of an independently tortious or unlawful act by the defendant that prevented the relationship from occurring." This is fatal to Oilpro's tortious interference claims. *Specialties of Mex. Inc. v. Masterfoods USA*, Civil Action No. L–09–88, 2010 WL 2488031, at *10 (S.D. Tex. June 14, 2010).

### III. CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court enter summary judgment in their favor and against Kent and Oilpro on Oilpro's remaining counterclaims.

---

[13] ECF 244; Exs. S and V.

Respectfully submitted,

**JORDAN, LYNCH & CANCIENNE PLLC**

By: *s/ Walter Lynch*
    **Walter Lynch**
    State Bar No. 24046330
    Federal ID No. 965265
    **Amir Halevy**
    State Bar No. 24065356
    Federal ID No. 1259956
    **Joseph ("Jeb") W. Golinkin II**
    State Bar No. 24087596
    Federal ID No. 2515657
    1980 Post Oak Blvd., Ste. 2300
    Houston, Texas 77056
    713-955-4020 (Telephone)
    713-955-9644 (Fax)
    wlynch@jlcfirm.com
    ahalevy@jlcfirm.com
    jgolinkin@jlcfirm.com

    ATTORNEYS FOR PLAINTIFFS DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC.

## CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the foregoing document has been served by ECF on all counsel of record on this 26th day of November, 2019.

    */s/ Jeb Golinkin*
    Jeb Golinkin