IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC., <br><br> *Plaintiffs,* <br> v. <br> DAVID W. KENT, JR., SINGLE INTEGRATED OPERATIONS PORTAL, INC. D/B/A OILPRO AND OILPRO.COM, ET AL., <br><br> *Defendants.* | C.A. NO.: 16-cv-01670 |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR AFFIRMATIVE MOTION FOR PARTIAL SUMMARY JUDGEMENT**

Plaintiffs file this brief Reply in Support of their Affirmative Motion for Partial Summary Judgment.[1]

## I.    INTRODUCTION

Most of Defendants' Response to Plaintiffs' Motion for Partial Summary Judgement[2] is copied and pasted directly from Oilpro's Motion for Summary Judgment.[3] The only "new" arguments are those which relate to the Stock Purchase Agreement ("SPA") Kent executed when sold Rigzone to DHI. Simply put, Defendants' Motion completely ignores David Kent's own testimony and contractual promises. These admissions by Kent—who was the sole owner and shareholder of Rigzone and

---

[1] ECF 227.
[2] ECF 239.
[3] Defendants hereby incorporate its Response to Defendants' Motion for Summary Judgment (ECF 240) by reference.

who admitted in open Court that he was operating on Oilpro's behalf when he stole back the information he had just sold for $51 million—foreclose Defendants from disputing that the contents of the Resume Database from which Kent stole 796,000 resumes are trade secrets as a matter of law.

## II. DISCUSSION

**A. Kent's Own Admissions Conclusively Establish That Plaintiffs Are Entitled Summary Judgment.**

In their Response, Defendants mock Plaintiffs for "dusting off a Stock Purchase Agreement and relying on its definition of 'trade secret' buried deep in an agreement more than one hundred pages long."[4] Defendants further assert that "[a]t best, the SPA is one piece of evidence to be considered in determining whether the resumes are a trade secret."[5] In support of this assertion, Defendants cite *Williams Cons. I Williams Cons. I, Ltd. v. Smith*, 4:08-CV-766, 2009 WL 10698215, *12 – *13 (S.D. Tex. Oct. 19, 2009), report and recommendation adopted, 4:08-CV-766, 2009 WL 10698262 (S.D. Tex. Nov. 19, 2009). David Kent is nothing like the defendant in that case. There, the defendant was a former employee who was being presented with the contents of a confidentiality agreement in which he acknowledged that customer lists were trade secrets and confidential. That employee, however, was just that: an employee. He was not the boss, the founder, or the sole owner of his former company. David Kent was all three. That employee was not personally responsible for all of the policies that may or may not have been in place to protect the confidentiality of the customer lists. David Kent was.

---

[4] ECF 239.
[5] *Id.* at 9.

That employee did not negotiate the terms of the disputed agreement. David Kent did. Finally, and perhaps most importantly, that employee did not sell the customer list to his former employer for over $51 million based on his personal guarantee that he had maintained the confidentiality of that customer list.

David Kent is different than the garden variety employee who walks out with a few documents. Kent stole hundreds of thousands of resumes. And of course, he did so *after* he personally received $51 million in exchange for Rigzone's resume data base and the promises and assurances from which he now seeks to distance himself. At the time of the sale to DHI, David Kent owned and controlled Rigzone. When he sold Rigzone to DHI, Kent owned every single share of Rigzone, and he was personally in charge of the security measures when he sold Rigzone.

Further, the evidence unambiguously and indisputably establishes that Kent personally warranted that Rigzone "has taken all necessary and otherwise reasonable steps to protect steps and preserve the confidentiality of all of its Trade Secrets."[6] Furthermore, Kent testified that (1) the contents of Rigzone's Resume Database are "Trade Secrets" as defined by the SPA[7]; (2) his representation to DHI in the SPA that Rigzone took reasonable steps to protect the confidentiality of its Trade Secrets—including the contents of the Rigzone Resume Database—was true when he signed the SPA[8]; (3) Rigzone "took *all* reasonable steps to protect the website"[9]; or (4) that the "backdoor" URLs he later used to steal Rigzone's trade secret information existed when

---

[6] ECF 227; Ex. 1 at p.14, Section 3.20(c); ECF 227; Ex. 4 at pp. 205:23-206:2, 211:18-213:4.
[7] ECF 227; Ex. 4 at pp. 207:1-208:9.
[8] *Id.* at p. 213:5-7.
[9] *Id.* at p. 213:13-14 (emphasis added).

3

he sold Rigzone to DHI.[10] These admissions, coupled Kent's own testimony that DHI actually took steps to *improve* Rigzone's security means that Kent's own concessions and admissions preclude either he or Oilpro from disputing the fact that the contents of the Resume Database is a trade secret.

**B.     What Bud Montang Says Does Not Matter.**

In addition to running away from David Kent's own words and statements, Defendants offer a sworn declaration executed by Bud Montang. At the outset, what Bud Montang has to say about the SPA is irrelevant. Montang did not own a single share of Rigzone when Kent sold it to Rigzone. He did not sign the SPA. He did not warrant (or have the authority to warrant) that Rigzone had taken reasonable measures to protect its trade secrets. He was not involved in establishing, and was not asked to consult on, the confidentiality policy. In sum, what he has to say about the meaning of the SPA is irrelevant.

However, Defendants once again attempt to mislead this Court. Defendants attempt to paint Montang as an independent former DHI employee who "worked for [DHI] from February 2002 until September 2012.[11] Indeed, they go so far as having Montang swear, "under the penalty of perjury," that the appended copy of his LinkedIn profile "accurately reflects the positions that I have held since receiving my MBA."[12] But Montang's proffered LinkedIn profile is incomplete. Curiously, Montang, and Defendants, somehow forgot to mention that less than three weeks after leaving DHI in

---

[10] *Id.* at p. 213:15-21.
[11] ECF 244; Ex. O at ¶ 2.
[12] *Id.*

4

September 2012, Montang was hired by David Kent on October 15, 2012 to work at the company that became Oilpro.[13] Or that he received a salary of $115,000 per year, a $20,000 signing bonus, and stock options.[14] Or, that when Oilpro was negotiating the purchase of the website called "Oil and Gas People" in the Spring of 2014, the draft Stock Purchase Agreement for that transaction, in the Notices section (10.05), directed any notice to the "Buyer" to be sent to Montang's attention at Oilpro's address.[15] Montang is not an independent observer; he has been bought and paid for by David Kent.

### III. CONCLUSION

Based on the above, Plaintiffs respectfully request that the Court grant its Partial Motion for Summary Judgment.

---

[13] Montang Employment Agreement (Ex. 7) Employment Agreement at HOUVEN_253-268.
[14] *Id.*
[15] Draft Stock Purchase Agreement "Cleanup Comments" (Ex. 8) at Oilpro_11974.

Respectfully submitted,

**JORDAN, LYNCH & CANCIENNE PLLC**

By: *s/ Walter Lynch*
    **Walter Lynch**
    State Bar No. 24046330
    Federal ID No. 965265
    **Amir Halevy**
    State Bar No. 24065356
    Federal ID No. 1259956
    **Joseph ("Jeb") W. Golinkin II**
    State Bar No. 24087596
    Federal ID No. 2515657
    1980 Post Oak Blvd., Ste. 2300
    Houston, Texas 77056
    713-955-4020 (Telephone)
    713-955-9644 (Fax)
    wlynch@jlcfirm.com
    ahalevy@jlcfirm.com
    jgolinkin@jlcfirm.com

ATTORNEYS FOR PLAINTIFFS DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC.

**CERTIFICATE OF SERVICE**

    I certify that a true and correct copy of the foregoing document has been served by ECF on all counsel of record on this 26th day of November, 2019.

    */s/ Jeb Golinkin*
    Jeb Golinkin