IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC.,<br><br>        *Plaintiffs,*<br>v.<br>DAVID W. KENT, JR., SINGLE INTEGRATED OPERATIONS PORTAL, INC. D/B/A OILPRO AND OILPRO.COM, ET AL.,<br><br>        *Defendants.* | C.A. NO.: 16-cv-01670 |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE THE UNRELIABLE TESTIMONY OF DEFENDANTS' EXPERT TRENT LIVINGSTON**

Plaintiffs DHI Group, Inc. and Rigzone.com, Inc. (collectively, "Plaintiffs") submit this Reply in Support of Their Motion to Exclude the Unreliable Testimony of Defendants' Expert Trent Livingston.

**I.    ARGUMENT**

Defendants have gone to great lengths—including the presentation of a declaration from a previously undisclosed expert, Charles Platt[1]—in their attempt to shore up the unreliable testimony of Trent Livingston. The problem is that they have done

---

[1] It appears that Mr. Platt's declaration, without Defendants properly disclosing him previously, is being offered to bolster the opinions of Defendants' retained "structured data analytics" expert, Trent Livingston. Hiring an "expert" to declare that a challenged expert should be able to testify invites Plaintiffs to find their own expert to explain why both of Defendants' experts are wrong. That game could go on forever, which is not how the system is supposed to work. Livingston should stand or fall based on what he produced and what he has said, not based on what some other expert has said about him.

too little, too late. The most revealing action they have taken in response to Plaintiffs' motion to exclude Trent Livingston's testimony was their production of Livingston's *reconstructed* SQL queries. By producing them now, Defendants have tacitly admitted that they should have been produced in the first place.

Defendants needed to produce the SQL queries that Livingston used (and not simply reconstructed ones) with his report so that Plaintiffs could have analyzed them and had the opportunity to question him about them at his deposition. Without the actual queries Livingston used, Plaintiffs were left to guess if his queries followed the methodology he described in his report and asked to blindly accept that his alleged queries produced the results found in his report. As discussed in Plaintiffs' original Motion to Strike Livingston, Livingston's disclosed methodology was nothing more than a "black box." To claim that Plaintiffs could have had someone create their own queries and results and compare them to Livingston's results misses the point.

More importantly, it ignores the facts in this case, namely that the Federal Bureau of Investigation has previously estimated that over 110,000 Oilpro members joined Oilpro as a result of Defendants' illegal actions, and that Oilpro's own initial analysis, performed by David Kent's then friend and Chief Technology Officer, arrived at a very similar number. Plaintiffs are not required to engage their own expert to determine whether or not Livingston's methodology is reliable; that is the burden of the party proffering an expert. *See Sims v. Kia Motors of America, Inc.*, 839 F.3d 393, 400 (5th Cir. 2016) ("The proponent of expert testimony bears the burden of establishing the reliability of the expert's testimony."). The fact that Defendants have failed to prove that Livingston is

using reliable methodology does not shift the burden to Plaintiffs to prove that it is unreliable. Plaintiffs were entitled to assess his actual methodology, and not simply have to accept his black box conclusions.

Not surprisingly, from a cursory review of the late produced reconstructed queries, the need to check Livingston's work is more than a mere theoretical legal argument. The SQL queries produced by Livingston contain data and conclusions not described in his report and rely upon information not available in it, so even a "knowledgeable SQL professional" could not have replicated Livingston's results by following his methodology as Defendants repeatedly claim.

**A. Livingston's "Invited by Fictitious Profile" Step Was Not Reproducible.**

One of the steps described in Livingston's report, represented by Figure 4 on page 14, describes how he handled invitations to join OilPro sent from Fictitious Profiles. Livingston's report notes that there were four profiles for which OilPro would not claim members as legitimate if they were only invited to join by one of those fake members. However, the database identifiers for the four fake profiles are not publicly available, nor were they known to Plaintiffs' prior to Livingston's reconstructed SQL queries. Nowhere in the original report or any of the attachments to it were those four fictitious profiles identified. Those profiles first appeared when Defendants produced Livingston's reconstructed SQL queries in response to the motion to exclude him.[2] Therefore,

---

[2] *See* Reconstructed SQL Queries attached as Ex. A to Trent Livingston's November 14, 2018 Declaration at Defendants' Appendix pp. 1919-21. The Fictitious Profiles were identified as Invitor_IDs 630, 854603, 858799, and 869323, labeled as Holly Henderson, Heather Sullivan, Jennifer Green, and Sara Young respectively.

3

Defendants' oft-echoed claim that "any qualified expert [could] reproduce" his work with only his report[3] is simply not true. There is exactly zero chance any expert could have replicated Livingston's queries or results without knowing what the Fictitious Profiles were. Accordingly, since Defendants did not provide all the "facts and data" considered by Livingston to complete his analysis, he should be excluded. *See* FED. R. OF EVID. 702(b) ("the testimony is based on sufficient facts or data").

### B. Livingston's Results Were Not Reproducible, Even by Him.

Two of the conclusions Livingston provided in his report were for his determination of the members in the OilPro database and the number of unique emails taken from Rigzone by David Kent from Kent's thefts. In his report, Livingston, through his examination of "the OilPro database since its inception until [his] designated Cutoff Date," identified 645,358 OilPro Members.[4] Additionally, Livingston processed the email addresses from the Rigzone resumes stolen by Kent and concluded that "the actual total number of unique emails [was] 587,104."[5] However, neither 645,358 nor 587,104 appear anywhere in the results of the Reconstructed SQL Queries.[6] That means that even Livingston could not reproduce his own results. Because Livingston has failed to show that his analytical results were reliably reproducible, his conclusions related to his analysis of the OilPro database and David Kent's theft of Rigzone resumes should be

---

[3] *See* Trent Livingston's November 14, 2018 Declaration at paragraph 9 at Defendants' Appendix p. 1902; Defendants' Response at pp. 4, 7.
[4] Livingston Report at pp. 19-20.
[5] *Id.* at p. 26.
[6] *See* Reconstructed SQL Queries attached as Ex. A to Trent Livingston's November 14, 2018 Declaration at Defendants' Appendix pp. 1919-21.

excluded. *See Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (finding that an "expert's testimony must be reliable at each and every step or else it is inadmissible").

### C. Defendants Have Failed to Credibly Explain Why the Web Logs Were First Critical, Then Not.

Livingston should also be precluded from testifying because Defendants failed to adequately explain why—when it was necessary to say that the Web Logs were essential to Livingston's analysis in support of Defendants' attempt to compel the production of the Web Logs from Plaintiffs—the Web Logs were no longer essential to Livingston's analysis. Defendants should not be permitted to tell this Court one thing when it suits them on one day, then something completely different on another day, when it no longer suits them, without a coherent explanation. Importantly, Livingston did not qualify the Web Logs' necessity in his original declaration. He could have said, like Defendants try to say now, that if he received the Web Logs related to the first set of thefts, he would not need the Web Logs from the second, but that is not what he said. What he said was that without the Web Logs, his analysis would be too imprecise. Because Defendants' and Livingston's attempted explanation falls flat, he should be prevented from testifying, as according to him, his results are too imprecise "for Court testimony."

## II. CONCLUSION

The bottom line is that Livingston's methodology was a complete black box at the time of his report. Defendants desperately attempt to add some additional information, but it is too little, and comes much too late. Defendants have failed to establish that

Livingston's methodology is reliable, and all their hand-wringing and finger pointing does not eliminate their burden. Considering the above, Plaintiffs respectfully request that the Court exclude the testimony of Trent Livingston and prohibit any of Defendants' experts from referencing or relying on conclusions drawn by Livingston.

    Respectfully submitted,

    **JORDAN, LYNCH & CANCIENNE PLLC**

By: *s/ Walter Lynch*
    **Walter Lynch**
    State Bar No. 24046330
    Federal ID No. 965265
    **Amir Halevy**
    State Bar No. 24065356
    Federal ID No. 1259956
    **Joseph ("Jeb") W. Golinkin II**
    State Bar No. 24087596
    Federal ID No. 2515657
    1980 Post Oak Blvd., Ste. 2300
    Houston, Texas 77056
    713-955-4020 (Telephone)
    713-955-9644 (Fax)
    wlynch@jlcfirm.com
    ahalevy@jlcfirm.com
    jgolinkin@jlcfirm.com

    ATTORNEYS FOR PLAINTIFFS DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC.

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 26h day of November, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all counsel of record in this case.

    */s/ Jeb Golinkin*
    Joseph W. Golinkin II