THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DHI Group, Inc. f/k/a Dice Holdings Inc. and RIGZONE.com, Inc., <br><br> Plaintiffs, <br><br> vs. <br><br> David W. Kent, Jr., Single Integrated Operations Portal, Inc. d/b/a Oilpro and OILPRO.com, Estevan Dufrin, Matthew Kent, Bryan Robins, Jeremy Antonini, and John Does Nos. 1-10, <br><br> Defendants. | Civil Action Number: 16-cv-01670 |
| Single Integrated Operations Portal, Inc. d/b/a Oilpro and OILPRO.com, <br><br> Counter-Plaintiff, <br><br> vs. <br><br> DHI Group, Inc. f/k/a Dice Holdings Inc. and RIGZONE.com, Inc., <br><br> Counter-Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

Single Integrated Operations Portal, Inc. d/b/a Oilpro and OILPRO.com ("Oilpro") and David W. Kent, Jr. ("Kent" and collectively with Oilpro "Defendants") file this reply in support of Defendants' Motion for Summary Judgment. Contemporaneously with this reply, Defendants are filing a motion for leave for an extension of the page limits for this reply.

**A.     TUTSA preempts Plaintiffs' state-law claims.**

Plaintiffs rely on *AMID, Inc. v. Medic Alert Foundation U.S., Inc.*, 241 F. Supp. 3d 788 (S.D. Tex. 2017), to avoid preemption of their misappropriation of confidential information,

breach of fiduciary duty, and Texas Harmful Access by Computer Act claims.[1] But *AMID* does not represent the majority view on the issue,[2] and even that case holds that a claim only avoids preemption "if the plaintiff is able to show the claim is based on facts unrelated to the misappropriation of the trade secret." *Id.* at 825 (quoting *360 Mortgage Group, LLC v. Homebridge Financial Servs., Inc.*, No. A–14–CA–847–SS, 2016 WL 900577, at *6 – 7 (W.D. Tex. March 2, 2016)).

Other courts have questioned *AMID,* concluding: "given the purpose behind TUTSA's preemption provision and the number of cases across the country applying Uniform Trade Secrets Act preemption and finding to the contrary, the Court finds that a breach of fiduciary claim based only on the improper taking of confidential information is preempted by TUTSA." *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, 1:17-CV-444-RP, 2018 WL 315753, at *4 (W.D. Tex. Jan. 5, 2018).

Here, Plaintiffs' misappropriation of confidential information, breach of fiduciary duty, and Texas Harmful Access by Computer Act claims are all based on the same facts and are preempted by TUTSA.

---

[1] DE 240 at 7. Defendants argued that the Texas Theft Liability Claim was also preempted, and Plaintiffs have conceded that Defendants are entitled to summary judgment on that claim. DE 240 at 10.

[2] "Most courts considering this question have determined UTSA was intended to preempt all claims based upon the unauthorized use of information." *360 Mortgage Group, LLC v. Homebridge Financial Servs., Inc.*, No. A–14–CA–847–SS, 2016 WL 900577, at *8 (W.D. Tex. March 2, 2016); *see also New South Equipment Mats, LLC v. Keener*, 989 F. Supp. 2d 522, 534 (S.D. Miss. 2013) ("Most of the courts that have considered this issue hold that UTSA preemption extends to claims for the misappropriation of confidential or proprietary information that does not qualify as trade secrets."); *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) ("[T]he Court concludes that UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret."); *Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005) ("Because all claims stemming from the same acts as the alleged misappropriation are intended to be displaced, a claim can be displaced even if the information at issue is not a trade secret. Thus, a determination of whether the information at issue constitutes a trade secret under the DUTSA need not be addressed prior to making a determination of displacement."); *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 948–49 (W.D. Mich. 2003) ("[T]he Court concludes that the disputed status of information as a trade secret does not preclude a court from determining whether a claim or claims are displaced by the MUTSA."). This has been referred to by legal scholars in the field as the "majority approach." *See* Richard F. Dole, Jr., *Preemption of Other State Law by the Uniform Trade Secrets Act*, 17 SMU SCI. & TECH. L. REV. 95, 109 (2014) ("The majority approach preempts noncontractual legal claims protecting business information, whether or not the business information is a Uniform Act trade secret.").

**B.    Defendants are entitled to summary judgment on Plaintiffs' TUTSA claim.**

   1.    *Plaintiffs' resumes are not trade secrets.*

Defendants have already extensively briefed the reasons why the resume database is not a trade secret, including in Defendants' Response to Plaintiffs' Affirmative Motion for Partial Summary Judgment.[3] Rather than repeat that briefing here, Defendants refer the Court to such briefing and incorporate it herein by reference.

   2.    *Plaintiffs do not have a viable damages theory to support their TUTSA claim.*

Plaintiffs cite no cases that refute the long-standing principle that a party cannot recover the full value of a trade secret unless that trade secret was destroyed. *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 535 (5th Cir. 1974). Instead, Plaintiffs attempt to confuse the issue by conflating at least three distinct damage theories: (1) the value of the trade secret to the defendant; (2) the value a reasonably prudent investor would pay for the right to use the trade secret (i.e. a reasonable royalty); and (3) the total value of the misappropriated trade secret. Plaintiffs do not offer a damage model based on either the value of the trade secret to the defendant or the value a reasonably prudent investor would pay for the right to use the trade secret. Instead Plaintiffs proffer a damage model based on the total value of the trade secret, which is an inappropriate damage model because it is undisputed that Defendants did not disclose or otherwise destroy Plaintiffs trade secrets. *Id.* Without a viable damages theory, Plaintiffs' TUTSA claim fails.

First, the value of the trade secret to the defendant, as articulated by *In re TXCO Resources, Inc.*, 475 B.R. 781, 825 (Bankr. W.D. Tex. 2012), "is properly measured by the benefits, profits, or advantages gained by [the defendant] through the use of [the plaintiff's] trade secrets." *Id.* If the defendant did not profit by using the trade secret, then a reasonable royalty standard is used. *Id.* Here, Plaintiffs could have measured their damages according to the benefit, profits, or advantages gained by Defendants. Plaintiffs further could have calculated a reasonable royalty for the use of

---

[3] DE 239 at 8 – 19.

the trade secrets. Either of these damage models would have been an appropriate measure of damages based on the facts of this case. Plaintiffs, however, do not proffer a damage model based on the benefit to the Defendants nor a reasonable royalty.

Second, Plaintiffs rely on *Southwestern Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 710-11 (Tex. 2015), which states, "Damages in misappropriation cases can therefore take several forms, including…the value a reasonably prudent investor would have paid for the trade secret…." *Id.* Plaintiffs interpret this sentence in a vacuum to suggest that an appropriate measure of damages is the amount a reasonably prudent investor would pay ***for the complete purchase*** of the trade secrets. The context of the rest of the opinion and the cases on which *Southwestern* relies, however, make clear that the correct measure of damages is the value a reasonably prudent investor would pay for the ***right to use*** the trade secrets. Indeed, *Southwestern* discusses the amount-a-reasonably-prudent-investor-would-pay-for-the-trade-secret standard in the context of a reasonable-royalty calculation. *Id.* at 712. Although the jury charge uses the phrase "value of the trade secret", the charge required the jury to calculate a reasonable royalty based on the reasonable-royalty factors. *Id.* (discussing the reasonable royalty calculus in the jury charge). Footnote 8 further clarifies that "value of the trade secret" was used in lieu of "reasonable royalty" to avoid confusion with oil and gas royalties. *Id.* at n. 8.

The language "the value that a reasonably prudent investor would have paid for the trade secret" comes from the Fifth Circuit's opinion in *Bohnsack v. Varco, L.P.*, 668 F. 3d 262, 280 (5th Cir. 2012). In *Bohnsack*, the plaintiff invented a machine that cleaned drilling fluids more efficiently than standard processes. *Id.* at 266. Plaintiff negotiated a license agreement with defendant to develop and use plaintiff's machine. *Id.* at 270-71. Defendant eventually exploited plaintiff's idea to produce its own agitators that would have competed with plaintiff's product had it been produced on a large scale. *Id.* at 279-80. In calculating damages, the court looked at the initial license agreement to determine the value a reasonably prudent investor would pay not to ***buy*** the trade secret, but to ***use*** the trade secret. *Id.* at 280 (holding that the "jury had sufficient evidence

4

to infer that a reasonably prudent investor would have been willing to pay at least $600,000 for the rights *to use* the [trade secret]." (emphasis added)).

Finally, *Southwestern* relies heavily on both *Univ. Computing Co.* and *Precision Plating & Metal Finishing Inc.* The Texas Supreme Court could have, but did not, overrule *Univ. Computing Co.*'s prohibition against awarding the total value of the trade secret unless the trade secret has been destroyed. 491 S.W.3d at 710-13. The value a prudent investor would pay for the right to use the trade secret is equivalent to a reasonable royalty, as discussed in *Southwestern.* Again, a reasonable royalty would have been an appropriate measure of damages, but Plaintiff does not offer any evidence of a reasonable royalty.

Plaintiffs' expert proffers a damage model based on the total value of the trade secrets. The overwhelming weight of the authority, however, prohibits recovery for the total value of a trade secret unless defendant destroyed the trade secret through disclosure. *Univ. Computing Co. v. Lykes-Youngstown Corp.,* 504 F.2d 518 (5th Cir. 1974) and its progeny unambiguously hold:

> [T]he value of the secret to the plaintiff is an appropriate measure of damages only when the defendant has in some way destroyed the value of the secret. The most obvious way this is done is through publication, so that no secret remains. Where the plaintiff retains the use of the secret, as here, and where there has been no effective disclosure of the secret through publication the total value of the secret to the plaintiff is an inappropriate measure of damages.

504 F.2d at 535; *accord Avery Dennison Corp. v. Four Pillars Enter. Co.,* 45 Fed. Appx. 479, 486 (6th Cir. 2002) ("Where a trade secret has not been destroyed and where the plaintiff is unable to prove specific injury, courts measure the value of the secret to the defendant"); *Softel, Inc. v. Dragon Med. and Scientific Commc'ns, Inc.*, 118 F.3d 955, 969 (2nd Cir. 1997) (holding the total value of a trade secret is only an appropriate measure of damages when the trade secret was destroyed.); *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 926 F.Supp. 2d 935, 962 (S.D. Tex. 2013) (same); *Myriad Dev., Inc. v. Alltech, Inc.*, 817 F.Supp.2d 946, 970 n. 124 (W.D. Tex. 2011) (same); *Linkco, Inc. v. Fujitsu Ltd.*, 232 F.Supp.2d 182, 187 n. 8 (S.D.N.Y. 2002) (same); *In re TXCO Resources, Inc.*, 475 B.R. 781, 824 (Bankr. W.D. Tex. 2012) (same); *Ajaxo Inc. v. E*Trade Fin.*

*Corp.*, 187 Cal. App. 4th 1295, 1308 (2010) (same); *Grail Semiconductor, Inc. v. Mitsubishi Elec. & Elecs. USA, Inc.*, 225 Cal.App.4th 786, 795 (2014) (same); Tex. Pattern Jury Charge 115.55 (stating that the total value of a trade secret is "used when the defendant has deprived the plaintiff of the trade secret's use or destroyed its value, such as by publishing the trade secret so that no secret remains"); *see also Precision Plating & Metal Finishing Inc. v. Martin-Marietta Corp.*, 435 F.2d 1262, 1263 (5th Cir. 1970) (awarding value of the trade secret as damages because the trade secret was destroyed through public disclosure); *see also Infospan, Inc. v. Emirates NBD Bank PJSC*, Case No. SACV 11-1062 JVS, 2016 WL 8849699, at *13 (C.D. Cal. June 8, 2016) (finding that the plaintiff had to prove total destruction of the trade secret as a predicate to a damage expert's opinion on the total value of the trade secret).

Plaintiffs cite no case that overrules *Univ. Computing Co.* Indeed, the Fifth Circuit's prohibition against recovery of total value of a trade secret unless the trade secret is disclosed fits squarely into the TUTSA framework, which only allows a plaintiff to recover "*actual loss* caused by misappropriation and the unjust enrichment caused by misappropriation." TEX. CIV. PRAC. & REM. CODE ANN. § 134A.004 (emphasis added). Intuitively, the value of a trade secret does not represent a plaintiff's "actual loss" unless that trade secret has been destroyed through disclosure. Thus, TUTSA's limitation of damages to either actual loss or unjust enrichment necessitates the conclusion that recovery for the full value of a trade secret is inappropriate unless the trade secret has been destroyed through disclosure. *Univ. Computing Co.¸* 504 F.2d at 535. Here, Plaintiffs concede that their purported trade secret was not published or otherwise destroyed, which in turn invalidates Plaintiffs' total-value-of-trade-secrets damages model. There are several appropriate damage models Plaintiffs could have proffered, including their lost profits, the value to Defendants, the profits Defendants earned from the misappropriation, or a reasonable royalty. *Southwestern Energy Prod. Co.*, 491 S.W.3d at 710-11; *see also* Tex. Pattern Jury Charge 115.55. For example, Plaintiffs could have sought the diminution in value of the resume database to show their actual loss. *Id.* Plaintiffs elected, however, to seek the total value of the purported trade secret, a

damages theory that is unavailable to them. Thus, Plaintiffs are without a viable damages model, and therefore their TUTSA claim should be dismissed.

C.   **Plaintiffs cannot satisfy the elements of the Stored Communications Act.**

Plaintiffs' counsel correctly evaluated the merits of Plaintiffs' Stored Communications Act ("SCA") claim when he stated, in response to questions regarding whether resumes were kept as a temporary backup, that "if that's an element to one of our claims that is necessary, I'm probably just going to dismiss whatever claim that is."[4] Plaintiffs now cling to their SCA claim by arguing issues not raised in Defendants' Motion for Summary Judgment and re-writing court opinions interpreting the statute. First, Plaintiffs cite no evidence, and in fact there is no evidence, that Defendants accessed any information other than the resumes at issue. Therefore, the question turns on whether the accessed resumes were in "electronic storage." 18 U.S.C. § 2701(a). Under the SCA, there are two types of electronic storage:

> (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
>
> (B) any storage of such communication by an electronics communication service for purposes of backup protection of such communication. 18 U.S.C. § 2701(a)(1).

Plaintiffs argue that Rigzone.com is "similar to electronic bulletin boards and messaging systems."[5] An electronic bulletin board, however, does not satisfy the SCA's limited definition:

> [Subsection A] is specifically targeted at communications temporarily stored by electronic communications services incident to their transmission—for example, when an email service stores a message until the addressee downloads it.' By the same reasoning, messages posted to an 'electronic bulletin board' are not in 'electronic storage.' When a website user reads the messages posted to an electronic bulletin board, he is not reading materials that are 'waiting to be transferred to the final destination.'

---

[4]   *See* DE 233-1, App. 634 [Ex. J (Deposition of Chad Norville) at 250:19-22].

[5]   DE 240 at 16.

7

*Cobra Pipeline Co., Ltd. V. Gas Natural, Inc.*, 132 F.Supp. 3d 945, 950 (N.D. Ohio 2015) (internal citations omitted).

Perhaps recognizing that they do not meet the first definition of "electronic storage" under the SCA, Plaintiffs rewrite the Ninth Circuit's opinion in *Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004) in a desperate attempt to argue that Rigzone.com stores communications for purposes of backup. The plaintiff in *Theofel*, however, was an internet service provider who hosted backup electronic documents for its end users. By its own admission, Rigzone.com is an "electronic bulletin board[] and messaging system[]." Rigzone.com and an internet service provider could not be more dissimilar.

Further, Plaintiffs have no evidence that there was an original copy and a backup copy, and that Defendants accessed the backup copy. *Theofel* itself recognizes that there have to be at least two copies of something for one to be stored "for purposes of backup protection." 359 F.3d at 1076 ("[T]he lifespan of a backup is necessarily tied to that of the underlying message. Where the underlying message has expired in the normal course, any copy is no longer performing any backup function. An ISP that kept permanent copies of temporary messages could not fairly be described as "backing up" those messages.") The plain meaning of the word "backup" itself "necessarily presupposes the existence of another copy...." *Jennings v. Jennings*, 736 S.E.2d 242, 245 (S.C. 2012); *see Oxford English Dictionary*, "Backup" ("A stand-by, reserve.... [I]n computing, (the making of) a duplicate copy of a disc, file, etc., for use in case of loss or corruption of the original").

Reinforcing that conclusion, the defendant must have accessed the data *while* it was being stored for purposes of backup protection. In *Cobra Pipeline*, the court held that even if the copies in question were being stored for backup purposes, the defendant did not violate the SCA because it did not access the backup copies. Rather, it "accessed the primary means for accessing the data, the user-facing web portal. Any data viewed through that portal was not being kept as a backup." *Cobra Pipeline Co. v. Gas Nat., Inc.*, 132 F. Supp. 3d 945, 952 (N.D. Ohio 2015).

Here, the Defendants did not access any backup copy. Instead, they accessed the "main ... website." 132 F. Supp. 3d at 951. Even if that was not legitimate, it did not violate the SCA. *Id*. In

any event, Plaintiffs have no evidence that Defendants accessed a stored "backup" copy, only that it was collecting resumes and that Defendants accessed the primary copy of said resumes (which Plaintiffs themselves make available to third-parties). That does not constitute a violation of the SCA. *See also Combier v. Portelos*, No. 17-CV-2239 (MKB), 2018 WL 3302182, at *12 (E.D.N.Y. July 5, 2018) (applying same rationale).

**D. RICO**

   *1.   There is no evidence of "a pattern of racketeering activity."*

A "pattern of racketeering activity" requires a plaintiff to establish "predicate offenses," as enumerated in the RICO statute. 18 U.S.C. § 1961(1). To prove a pattern of racketeering activity, a plaintiff "must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 236-39 (1989)

Plaintiffs have failed to establish the threshold requirement of predicate acts upon which they can establish a pattern of racketeering activity. Plaintiffs conflate violations of the Stored Communications Act and acts of wire fraud in attempt to save their RICO claims.[6] But violation of the SCA is not a RICO predicate offense, s*ee* 18 U.S.C. § 1961(1), and "[a]ny act that does not fall within the purview of RICO's definition of predicate offenses is not a 'racketeering activity' for the purposes of a RICO violation." *Joe N. Pratt Ins. v. Doane*, CIV.A. V-07-07, 2008 WL 819011, at *3 (S.D. Tex. Mar. 20, 2008).[7] In "the context of mail or wire fraud, the plaintiff must demonstrate that the predicate acts consisted of making false or fraudulent representations calculated to deceive." *LSC Towers, LLC v. LG Preston Campbell, LLC*, 3:17-CV-00625-M, 2018 WL 1156563, at *2 (N.D. Tex. Mar. 5, 2018); *Verde Minerals, LLC v. Burlington Res. Oil & Gas Co., LP*, CV 2:16-463, 2017 WL 9535076, at *10 (S.D. Tex. June 30, 2017) ("to invoke mail or wire

---

[6]  DE 240 at 25 ("Kent committed 796,000 separate violations of the Stored Communications Act/acts of Wire Fraud").

[7]  CFAA violations are also not provided for in section 1961(1)'s list of predicate offenses. *Joe N. Pratt,* 2008 WL 819011 at *8.

fraud, a plaintiff must articulate some "false or fraudulent misrepresentation").[8] Plaintiffs do not allege any false or fraudulent representations by the Defendants in connection with their RICO claims. Accordingly, there is no evidence to support any predicate acts. Without predicate acts, there can be no "continuity of racketeering activity" and Defendants are entitled to summary judgment on Plaintiffs' RICO claims.

### 2. *There is no evidence of RICO injury.*

The only potential "predicate act" that Plaintiffs refer to is wire fraud. But in addition to Plaintiffs' failure to submit any evidence of wire fraud, Plaintiffs fail to establish RICO damages. Civil RICO claims "require[ ] a causal connection between the predicate mail or wire fraud and a plaintiff's injury that includes 'but for' and 'proximate' causation." *Summit Props. Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556, 558 (5th Cir. 2000). But Plaintiffs only point to the damages allegedly suffered as a result of alleged trade secret misappropriation.[9] There is no evidence to show that any trade secret damages have a causal connection to any predicate acts. Accordingly, because Plaintiffs have failed to show RICO injury, Defendants are entitled to summary judgment on Plaintiffs RICO claims.

---

[8] The federal wire-fraud statute reads:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire ... communication *in interstate or foreign commerce,* any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

*Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988) (quoting 18 U.S.C. § 1343).

[9] DE 240 at 26.

Respectfully submitted,

**FOLEY GARDERE**
**FOLEY & LARDNER LLP**

*/s/ James G. Munisteri*
_____
James G. Munisteri
Texas Bar No. 14667380
Marla T. Poirot
Texas Bar No. 00794736
1000 Louisiana, Suite 2000
Houston, Texas 77002-2099
Telephone: (713) 276-5500
Facsimile: (713) 276-5555
jmunisteri@foley.com
mpoirot@foley.com

Sara Ann Brown
Texas Bar No. 24075773
2021 McKinney, Suite 1600
Dallas, Texas 75201-3340
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
sabrown@foley.com

**ATTORNEYS FOR DEFENDANT/ COUNTER-PLAINTIFF, SINGLE INTE- GRATED OPERATIONS PORTAL, INC. D/B/A OILPRO AND OILPRO.COM AND DAVID W. KENT, JR.**