# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| DHI Group, Inc. f/k/a Dice Holdings Inc. and RIGZONE.com, Inc., | |
| Plaintiffs, | |
| vs. | |
| David W. Kent, Jr., Single Integrated Operations Portal, Inc. d/b/a Oilpro, et al., | |
| Defendants. | Civil Action Number: 16-cv-01670 |
| Single Integrated Operations Portal, Inc. d/b/a Oilpro and OILPRO.com, | |
| Counter-Plaintiff, | |
| vs. | |
| DHI Group, Inc. f/k/a Dice Holdings Inc. and RIGZONE.com, Inc., | |
| Counter-Defendants. | |

## OBJECTION TO MAGISTRATE JUDGE'S ORDER ON MOTION TO EXCLUDE

James G. Munisteri
Texas Bar No. 14667380
Sara Ann Brown
Texas Bar No. 24075773
Foley Gardere
1000 Louisiana, Suite 2000
Houston, Texas 77002-2099
Telephone: (713) 276-5500
Facsimile: (713) 276-5555
jmunisteri@foley.com
sabrown@foley.com

Harvey G. Brown, Jr.
Texas Bar No. 03130500
Lanier Law Firm
10940 W. Sam Houston Pkwy, N. Suite 100
Houston, Texas 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204
Harvey.Brown@LanierlLawFirm.com

**ATTORNEYS FOR DEFENDANT SINGLE INTEGRATED OPERATIONS PORTAL, INC. D/B/A OILPRO AND OILPRO.COM AND DAVID W. KENT, JR.**

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ................................................................................ 5

Nature of the Case .......................................................................................... 7

Procedural Background ................................................................................... 8

Standard of Review ...................................................................................... 14

Arguments and Authorities .......................................................................... 15

    A.   Disclosure under Rule 26(a)(2) and admissibility under Rule 702 and *Daubert* are separate inquiries. ............................................................ 16

        1.   The purpose of disclosure under Rule 26(a)(2) is to put the opposing side on notice of the expert's opinions. ....................................... 16

        2.   Experts may provide additional explanations of their opinions in response to a Daubert motion. ...................................................... 16

    B.   The Order errs in considering the completeness of Defendants' disclosure, in its consideration of Plaintiffs' Rule 702 motion. .................................... 18

    C.   The Order also errs in concluding that Defendants' disclosure is incomplete under Rule 26. ...................................................................................... 19

    D.   Finally, the Order errs in awarding sanctions. ......................................... 21

Conclusion ................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Allgood v. Gen. Motors Corp.*
  2006 WL 2669337, at *4 – 5 (S.D. Ind. Sept. 18, 2006) ........................................ 17

*Amaya v. City of San Antonio*
  2014 WL 3919569, at *2 (W.D. Tex. Aug. 11, 2014) .......................................... 14

*BP Expl. & Prod. Inc. v. Cashman Equip. Corp.*
  2016 WL 1732756, at *2 (S.D. Tex. Apr. 29, 2016) ............................................. 14

*Cook v. Rockwell Intern. Corp.*
  580 F. Supp. 2d 1071, 1122 (D. Colo. 2006)...................................................... 17

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
   509 U.S. 579, 596 (1993).......................................................................... 5

*Goldin v. Bartholow*
  166 F.3d 710, 722-23  (5th Cir. 1999) ........................................................ 21

*Hileman v. Rouse Properties, Inc.*
  2017 WL 2989200, at *6 (E.D. Tex. May 30, 2017)............................................. 16

*Ihde v. HME, Inc.*
  2017 WL 3267798, at *2 (E.D. Tex. Aug. 1, 2017) ............................................. 15

*In re Fluidmaster, Inc., Water Connector Components Products Liab. Litig.*
  2017 WL 1196990, at *16 (N.D. Ill. Mar. 31, 2017)............................................. 17

*In re Washington Mut. Mortg. Backed Sec. Litig.*
  2012 WL 2995046, at *7 (W.D. Wash. July 23, 2012) ......................................... 17

*Johnson v. Arkema, Inc.*
  685 F.3d 452, 459 (5th Cir. 2012) ............................................................. 16

*Kenyon Intern. Emergency Services, Inc. v. Malcolm*
  2013 WL 2489928, at *6 (5th Cir. May 14, 2013) ............................................. 21

*Kumho Tire Co. v. Carmichael*
  526 U.S. 137, 149 (1999)....................................................................... 16

*Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*
  86 F.3d 464, 468 (5th Cir. 1996) .............................................................. 21

*Perez Librado v. M.S. Carriers, Inc.*
  2004 WL 1490304, at *10 (N.D. Tex. June 30, 2004) .......................................... 16

*Pillar Panama, S.A. v. DeLape*
　　326 Fed. Appx. 740, 744 (5th Cir. 2009) ................................................................ 21

*Robinson v. D.C.*
　　75 F. Supp. 3d 190, 195 (D.D.C. 2014) ................................................................ 16

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*
　　73 F.3d 546, 571 (5th Cir. 1996) ......................................................................... 15

*Smiley v. Hologic, Inc.*
　　2016 WL 5242958, at *1 (S.D. Cal. Sept. 22, 2016) .............................................. 17

*United States v. 14.38 Acres of Land, More or Less Sit. In Leflore County, Miss.*
　　80 F.3d 1074, 1077 (5th Cir. 1996) ..................................................................... 18

*Walsh v. Chez*
　　583 F.3d 990, 994 (7th Cir. 2009 ........................................................................ 16

*Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health*
　　2012 WL 12951705, at *2 (E.D. Wash. May 18, 2012) ......................................... 16

## Rules

28 U.S.C. § 636(b)(1)(A) ........................................................................................ 14

FED. R. CIV. P. 26(a)(2)(B) ............................................................................. 5, 14, 16

Federal Rule of Civil Procedure 72(a) ..................................................................... 14

Federal Rules of Evidence 702, 703 and 705 ........................................................... 14

Single Integrated Operations Portal, Inc. d/b/a Oilpro and OILPRO.com ("Oilpro") and David W. Kent, Jr. ("Kent" and collectively with Oilpro "Defendants") object to Magistrate Judge Johnson's March 22, 2019 order (Docket No. 259), ordering Defendants to pay attorneys' fees incurred by Plaintiffs DHI Group, Inc. f/k/a Dice Holdings Inc. and Rigzone.com, Inc. ("Plaintiffs") in filing their Motion to Exclude the Unreliable Testimony of Defendants' Expert Trent Livingston, brought under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 596 (1993) (the "Order").[1]

## SUMMARY OF ARGUMENT

Defendants recognize that most discovery disputes can and should be resolved by the parties or the magistrate judge. This Court has enough to do without being dragged into the weeds on discovery issues. However, these circumstances—and the uncontested evidence—compel Defendants to seek this Court's review. The Order adopts Plaintiffs' improper amalgamation of the standards for *disclosure* of expert testimony under Rule 26(a)(2)(b) and the *admissibility* of such testimony under Rule 702. The motion to exclude challenges the admissibility of Livingston's testimony under Rule 702 and makes no mention of Rule 26(a)(2)(b); yet the Court sanctioned Defendants for alleged expert disclosure deficiencies. The Order clearly erred by conflating these two rules.

Defendants request that the Court disentangle the disclosure and admissibility standards and reverse the Order. Specifically, Defendants request that the Court reverse the Order's conclusion that Trent Livingston's 36-page expert report, which contained a detailed description of his methodology, was deficient because it did not include SQL search queries (defined below) and instead presented the methodology by textual description and graphics, depicting the type of questions he was seeking to answer at the various steps of his analysis. But whether the methodology should have been presented through SQL queries under Fed. R. Civ. P. 26(a)(2)(B)

---

[1]   Defendants filed combined appendices containing the exhibits in support of their summary judgment briefing, as well as the motions and responses to *Daubert* motions, which were filed at the same time. *See* SEALED Docket Nos. 233, 244, and 252. Because those appendices are voluminous, Defendants have re-filed copies of the relevant exhibits with this objection as Appendix A (newly filed documents filed with this motion are included as Appendix B).

is irrelevant under F.R.E. 702. As confirmed in the prayer for relief, the only question raised by Plaintiffs' motion to exclude is whether Livingston's testimony is admissible. And even if Rule 26(a)(2)(B) were at issue, the Order is clearly erroneous: the uncontroverted evidence at the hearing demonstrates that experts in the structured database analytics industry describe their methodology just as Livingston's report did, rather than recording each search term and key stroke made when using the database.

Incredibly, despite having numerous employees capable of reviewing Livingston's report (and having designated five non-retained experts to testify regarding such analysis),[2] Plaintiffs never argue that Livingston's conclusions are *wrong* and they offer utterly no evidence (*e.g.,* testimony from a structured database expert) that an expert in this field could not replicate or test Livingston's methodology or that an expert would need anything more than the Livingston report.   The only "evidence" presented by Plaintiffs are the frequent and unsupported protestations of Plaintiffs' counsel that *counsel* cannot test Livingston's analysis. Judge Johnson erred in relying on these complaints, instead of the uncontroverted testimony filed by the parties in connection with the Rule 702 motion, including declarations from both Livingston and the independent expert Defendants retained to review the expert report. Both testified that Livingston's report disclosed his methodology as is customary in their industry and that the methodology is testable.[3]

Thus, the Order errs by failing to consider Plaintiffs' motion to exclude under Rule 702's standard and converting it, in effect, to a motion for sanctions, and by concluding that Livingston's disclosure did not satisfy Rule 26(a)(2)(B). Defendants request that this Court reverse the Order's ruling that SQL queries "should have been produced at the time of the report and therefore it was deficient at that time"[4] and set aside the order imposing monetary sanctions against the Defendants.

---

[2]   Appendix A, Ex. N-10 (App. 001246 – 1250). Although each of these non-retained experts is designated to testify regarding the number of HTTP requests received from Oilpro and the number of resumes from which member information was "misappropriated", DHI has not produced a single query regarding their analysis. That failure speaks volumes about whether queries are needed for testing.

[3]   Appendix A, Ex. P  ¶9 (App. 1902), ¶16 (App. 1905), Ex. Z ¶¶25 – 39 (App. 1989 – 1992).

[4]   Appendix B, Ex. 1 (Transcript of March 21, 2019 Hearing) 51:4 – 6.

## NATURE OF THE CASE

This case arises from Defendant Kent's access of a DHI website and copying of resumes. The full facts of this case are set forth elsewhere and a lengthy recitation is unnecessary for purposes of this appeal; so Defendants will only provide a brief overview.

Kent owned Rigzone, which operated an internet "job board" that connected job seekers to employers in the oil and gas industry, until it was purchased by DHI in 2010. Following this acquisition and the expiration of Kent's consulting agreement and non-compete restrictions, Kent launched a new website—Oilpro.com—that, like Rigzone, allowed employers in the oil and gas industry to post their jobs. But, unlike Rigzone, Oilpro was also a social networking site, helping its members stay informed on the latest industry news and connecting them with other oil and gas opportunities. The Oilpro website launched in October 2013, and Kent quickly hired employees to (among other things) market and grow Oilpro's membership and develop relationships with the companies and businesses who paid to advertise on the website.

In the midst of this growth, in early 2014, Kent foolishly copied resumes from the Rigzone website by using a little known but publicly available URL,[5] and then used email addresses from the resumes to invite some of those individuals to join Oilpro. DHI's employees quickly discovered this activity and identified Kent as the likely culprit. Around May 2014, DHI reported Kent to the FBI and then cooperated with the FBI and prosecutors for nearly 20 months.

Kent was arrested almost two years later on March 31, 2016. In the criminal case, Kent admitted that he was wrong, entered into a plea that resulted in orders requiring payment of over $6M (including $3.3M in restitution paid *to DHI*), and he has now served a one year prison sentence. Meanwhile, in August 2017, the once-thriving Oilpro was shuttered after losing its bid to survive the ordeal.  Kent lost all of his approximately $6M investment in Oilpro.

And yet this case drags its weary length before the Court. Plaintiffs seek to wring as much from Kent as possible, on top of what has already been achieved: the multi-million-dollar

---

[5]   Defendants vigorously deny that any of the resume information Kent accessed constitutes Plaintiffs' confidential or trade secret information.

restitution, prison sentence, and extinguished competition, in a case where Plaintiffs' executives admit they lost no revenue, lost no customers, and experienced no disruption to their website.

Without question, Kent regrets copying resumes from DHI's website. But Defendants should only have to pay DHI the damages it can prove it suffered as a result of this access: no more, no less. Plaintiffs contend that they suffered nearly $21M in damages from the misappropriation and can also recover $10M from Defendants in unjust enrichment damages. Defendants, on the other hand, contend that Plaintiffs' damages are far, far less than the $3.3M already paid to DHI and nothing more is owed.

The cornerstone of DHI's damages claim is the number of new members that Oilpro obtained *as a result* of Kent's wrongful conduct (i.e. causation). Defendants retained Trent Livingston, a data analytics expert with over 20 years of structured data analytics, software development, and electronic discovery experience, to review web logs, databases, and other information and answer this fundamental question. Plaintiffs' damages theory depends on keeping Livingston's testimony from the jury, and they have filed a series of motions to do just that.

## PROCEDURAL BACKGROUND

Plaintiffs filed two motions regarding Livingston: a motion to strike under Rules 26(a)(2) and 37[6] and a motion to exclude under FRE 702 and *Daubert*. Both were heard at the March 21, 2019 hearing. On the first motion (the motion to strike), Judge Johnson declined to strike Livingston but ordered Defendants to produce additional documents.[7] Defendants only object to

---

[6] Two weeks after Defendants served their Rule 26(a)(2)(B) disclosure and provided Plaintiffs with Livingston's 36-page expert report, Plaintiffs moved to strike Livingston's designation under Rule 37(c)(1). According to the Plaintiffs, Livingston's designation had to be stricken because his report (1) was untimely and (2) disclosed that Livingston relied on documents that—while produced before or contemporaneously with the report—had been previously withheld under unchallenged privilege objections. Notably, Plaintiffs did not argue that Livingston's report was insufficient or incomplete under Rule 26(a)(2)(B), and Plaintiffs took Livingston's deposition on September 18, 2019 (Docket No. 224-1).

[7] At the March 21, 2019 hearing, Judge Johnson rejected Plaintiffs' timeliness argument and refused to strike Livingston's designation. Judge Johnson also concluded, however, that Defendants' had delayed production of certain materials reviewed by Livingston and thereby waived attorney-client and work-product privileges on separate analyses conducted by Kent and Jeremy Antonini in 2016. Judge Johnson ordered Defendants to produce those analyses and "any other document that bears on the subject matter of those documents within five (5) days." Judge Johnson also ruled that the "late-produced materials/databases may not be relied upon or used

the rulings on the second motion (the motion to exclude)—specifically, the finding that Livingston's report was deficient when served and its order for sanctions.

Livingston's report includes a 13-page explanation of his methodology, incorporating charts that complement his descriptive explanation of how Livingston filtered the databases to determine the number of Oilpro members who joined as a result of the disputed conduct. For example:

27. Using the OilPro Date Created and comparing it to the Web Log's Earliest Date Accessed for a Rigzone Resume ID with an email value equal to an OilPro User, First Possession of the User Information, by either OilPro or Rigzone, can be clearly established where data overlap occurs, as illustrated in Figure 1.

28. Where the Web Log's Earliest Date Accessed for a Resume ID is greater than the Create Date of the matched OilPro Member's Create Date, First Possession of that particular User. is assigned to OilPro. In contrast, if the Web Log's Earliest Date Accessed is less than or equal to the matched OilPro Member's Create Date, First Possession of that particular User is assigned to Rigzone. This provides benefit to Rigzone, as credit is assigned for First Possession of data when the Web Log's Earliest Date Accessed is equal to the OilPro Member's Create Date.[8]



Figure 1. Create Date Comparison Logic to Identify First Possession

Livingston even addresses how he was able to conduct his analysis without the complete production of Web Logs, which Plaintiffs withheld from production:

---

in any way by any of the Defendants' witnesses" and to "the extent that Livingston had access to these files . . . he must be able to recreate his report and opinions without any use or reference to them." Docket No. 259 at 3. Defendants disagree with Judge Johnson's conclusion regarding the timing of production of documents provided to Livingston but are mindful of the legal threshold for setting aside a magistrate's order and the desirability of resolving discovery disputes at the magistrate level. Accordingly, Defendants do not appeal that ruling.

[8]    Appendix A, (Ex. N-10, App. 000941 – 942).

36. In order to determine which emails correlated to each of the Rounds of Access, the Resume IDs were identified for each Round of Access via the Web Logs. Given that Web Logs were only available at the time of this report for the First Round of Access, the Resume IDs were extracted from the Web Logs produced by Mandiant. Any remaining Resume IDs not identified as part of the First Round of Access via the Web Logs were subsequently assigned as belonging to the Second Round of Access, as illustrated in Figure 5.[9]



Figure 5. Assignment of Resume IDs to Rounds of Access

In October 2018, after taking Livingston's deposition, Plaintiffs moved to exclude his testimony under Rule 702 and *Daubert*, claiming that Livingston's report only explained his methodology in "layperson's terms" rather than providing the specific "SQL queries" Livingston used in his analysis.[10] And—despite the fact that Figure 5 and Paragraph 36 of Livingston's report expressly addressed how he completed his analysis without Plaintiffs' web logs for the second round of access—Plaintiffs argued that because Plaintiffs had withheld these web logs "Livingston's analysis cannot be trusted[,]"[11] but make no attempt to explain why the methodology in Figure 5 and Paragraph 36 is unreliable.

To understand Plaintiffs' SQL Query argument requires some background. SQL stands for Structured Query Language. SQL is used to synthesize and manipulate large amounts of data stored in relational databases. A SQL query allows a user to pull limited information from these databases. For example, in a hypothetical database about people born in New England, a user could pull information to answer this question: "Who are the people who have red hair in Massachusetts and were born in 2003 organized in alphabetical order?" The methodology is the logic of selecting the names from the group of persons in Massachusetts, with restrictions on hair

---

[9]     Appendix A, (Ex. N-3 at App. 000945 – 946).

[10]    Docket No. 226 at 8.

[11]    Docket No. 226 at 13 – 14.

color and birth date. To implement the methodology a person with expertise in structured database would type in a query along the following lines:

```
SELECT
    first_name,
    last_name
FROM
    people_massachusetts
WHERE
    hair_color = "red"
AND
    birth_date BETWEEN '2003-01-01' AND '2003-12-31'
GROUP BY
    last_name[12]
```

These queries are similar to the Boolean terms and connectors that lawyers use on Westlaw and LexisNexis.

Plaintiffs bypassed the appropriate motion to obtain additional discovery: a motion to compel, filed after the parties first conferred and attempted to resolve the issue. Plaintiffs never requested the SQL queries and never conferred with Defendants' counsel about production of the queries. Rather, Plaintiffs waited and then later filed their motion to exclude, complaining—unsupported by any evidence—that without the queries Livingston's "analysis is nothing more than 'a black box into which data is fed at one end and from which an answer emerges at the other[,]'"[13] and that Livingstton's description of his methodology in "layperson's terms" precluded testing of his analysis.[14]

In response and out of an abundance of caution, Livingston reproduced the SQL queries and attached them to a supplemental declaration.[15] As a result, in addition to the 13-page description and graphics as shown above, within a month of first raising the issue, Plaintiffs had each of the queries. For example:

---

[12] https://blog.hubspot.com/marketing/sql-tutorial-introduction

[13] Docket No. 226 at 8 (quoting *Lawrence v. Raymond Corp.,* No. 3:09-cv-1067, 2011 WL 3418324, at *7 (N.D. Ohio Aug. 4, 2011).

[14] Docket No. 226 at 10.

[15] The queries were reconstructed because they are not documents that exist on a computer. After a data analytics expert enters the query, the computer goes to the next query. There is no record of the query unless the expert takes a screen shot after each step or creates a document solely for the purpose of recording queries.

```
/*** FINAL COUNT ***/

SELECT     count(distinct Master_Email) as Total_RZ_Users_R1
FROM OILPRO_DB.dbo.Master_OilPro_Analysis
where      Date_Joined is not null
and   Date_Created >= Earliest_Date_Accessed
and   round_identifier = 'Round One Access'
and        isnull(Is_Organic, 0) = 0
and   Is_Soft_Member = 0

-- ROUND 1 NON-ORGANICS 14519

SELECT     count(distinct Master_Email) as Total_RZ_Users_R2
FROM OILPRO_DB.dbo.Master_OilPro_Analysis
where      Date_Joined is not null
and   Date_Created >= Earliest_Date_Accessed
and   round_identifier = 'Round Two Access'
and        isnull(Is_Organic, 0) = 0
and   Is_Soft_Member = 0

-- ROUND 2 NON-ORGANICS 6386

-- SELECT 14519 + 6386 = 20905 Total NON-ORGANICS R1 & R2
```

Livingston's  supplemental declaration explained that the report's description of his methodology in the report "is consistent with how experts in this particular field ordinarily describe their methodology"[16] and "any reasonably qualified professional" could use the methodology as set forth in his report, to replicate the analysis.[17] Livingston further explained that the SQL queries are not necessary (or even a recommended starting place) for such analysis.[18] Plaintiffs, although they have five designated experts plus other employees capable of this analysis, offered no evidence to the contrary.[19]

To rebut Plaintiffs new argument, Defendants also retained an independent expert in this industry, Charles Platt, to review Livingston's report.[20] Platt testified that "the Livingston Report

---

[16]   Appendix A, Exhibit P ¶9 (App. 1902-03).

[17]   Appendix A, Exhibit P ¶15 (App. 1905).

[18]   Appendix A, Exhibit P ¶10 (App. 1903). Continuing the comparison to Westlaw research searches: while it is certainly *possible* to attach the precise searches run in Westlaw to a research project; standard operating procedure is simply to describe the searches (*e.g.,* "cases regarding TUTSA in the Fifth Circuit, in the last year"), and another lawyer would not need the exact search query to recreate the results.

[19]   Appendix A, Exhibit N-10 (App. 1246 – 1250).

[20]   Platt has twenty-nine years of experience "in information technology, relational database technology, digital forensics and electronic-discovery" and has a "bachelor's degree in Computer Information Systems and a master's degree in Management of Secure Information Systems." SEALED Docket No. 244 at 93 (Ex. Z at App. 1983).

includes sufficient explanation and detail for an expert versed in data analysis to replicate Mr. Livingston's work" and determine the accuracy of his analysis.[21] Specifically:

> While true that the Livingston Report does not contain SQL code, the report thoroughly describes the methodology and logic applied by Mr. Livingston to arrive at his results – which are the facts and data that a structured data expert would need to replicate his results.[22]

Platt explained that describing his methodology as Livingston did (rather than providing SQL queries), is preferable and customary because database platforms will vary from expert to expert (including platforms such as "Microsoft SQL Server or Oracle, to cloud providers such as Amazon Aurora or Google Cloud SQL, to MySQL") and queries drafted for one platform may be unreliable if run directly in another platform.[23] According to Platt, another obstacle to sharing code, as proposed by Plaintiffs, are database architecture variations: "[m]inor differences can cause the commands to be unreliable or to fail outright."[24] "To alleviate this potential for error," Platt explains, "data analysts and experts will describe the logical process they followed rather than producing the specific code used. The description of the logical processes is generally referred to as their methodology."[25]

Again, Plaintiffs offered no evidence to the contrary from their five designated database experts or from any of their other employees familiar with database searching. Instead, they argued: "Defendants needed to produce the SQL queries that Livingston used . . . with his report so that Plaintiffs could have analyzed them and had the opportunity to question him about them at his deposition."[26] But Plaintiffs offered no evidence that the queries were needed to conduct an analysis or that Plaintiffs even tried to replicate Livingston's methodology. As a result, the

---

[21]   Appendix A (Ex. Z ¶6 at App. 1984).

[22]   Appendix A (Ex. Z (Ex. Z ¶25 at 1989).

[23]   Appendix A (Ex. Z (Ex. Z ¶27 at 1989).

[24]   Appendix A (Ex. Z (Ex. Z ¶28 at 1989).

[25]   Appendix A (Ex. Z (Ex. Z ¶28 at 1989).

[26]   Docket No. 248 at 2.

uncontroverted evidence shows that Plaintiffs had everything they needed to test Livingston's analysis—they simply chose not to do it.

The magistrate's ruling (1) concluded that in "responsive briefing, Livingston has substantially bolstered his opinions" and his earlier report was deficient, (2) ordered that "Plaintiffs may redepose Livingston based on the supplementation of his methodology[,]" and (3) issued monetary sanctions against Defendants because "Livingston's report and earlier deposition were missing critical explanations of his methodology," ordering Defendants to pay Plaintiffs' attorneys fees "for filing their Motion to Exclude the Testimony of Livingston."[27] Finally, the Order states: if "after taking the deposition of Livingston, Plaintiffs still believe that Livingston's methodology should be excludable as unreliable, they shall so move within fourteen days from the date of the deposition."[28] Defendants object to the finding that Livingston's report was deficient when served and to the resulting sanctions awarded. Defendants do not object to producing Livingston for a second deposition.  However, Plaintiffs have confirmed that they do not plan to depose Livingston again.[29]

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(a), the district court must consider timely objections to a magistrate judge's order on a nondispositive matter and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." *See also* 28 U.S.C. § 636(b)(1)(A). "The district court reviews the magistrate judge's legal conclusions *de novo*." *BP Expl. & Prod. Inc. v. Cashman Equip. Corp.*, CIV. A. H-13-3046, 2016 WL 1732756, at *2 (S.D. Tex. Apr. 29, 2016).

---

[27]   Docket No. 259 at 3.

[28]   *Id.*

[29]   Appendix B (Ex. 2).

## ARGUMENTS AND AUTHORITIES

Expert witness testimony is governed by both Federal Rule of Civil Procedure 26(a)(2) and Federal Rules of Evidence 702, 703 and 705. *Amaya v. City of San Antonio,* 5:12-CV-00574-DAE, 2014 WL 3919569, at *2 (W.D. Tex. Aug. 11, 2014). These rules may sometimes work in tandem but the analyses are separate — "Rule 26(a)(2) outlines the procedural requirements of disclosure, while Rules 702, 703, and 705 address the qualifications of the expert witness and the substance of the testimony." *Id.*

On the first page of the motion to exclude, Plaintiffs properly distinguish between the "separate" motion to strike "based on significant procedural and discovery issues" under Rule 37(c)[30] and the "independent and alternative" motion to exclude based on Rule 702 and *Daubert*.[31] But thereafter, Plaintiffs blur this line at every opportunity, knitting together a heightened and incorrect *Daubert* standard, with an analysis focused only on the expert report, as it exists at the time of the Rule 26(a)(2)(B) disclosure.[32]

The Order incorporates this conflated analysis, granting the Rule 702 motion "in part" on the grounds that the queries "should have been produced at the time of the report and therefore it was deficient at the time" and sanctioning Defendants for the omission. These rulings apply the wrong legal standard and clearly err in their factual determinations because the uncontested evidentiary record from database experts proves that specific SQL queries are not necessary to test or replicate Livingston's analysis and that Livingston's report described its methodology in the manner customarily used by database experts. To understand these errors, the first step is to disentangle Rule 26(a)(2)(B) issues from the Rule 702 issues.

---

[30]   Docket No. 226 at 4 n. 1; Docket No. 215 at 16 – 17.

[31]   Docket No. 226 at 4 n.1.

[32]   *See, e.g.,* Docket No. 248 at 2 ("Defendants needed to produce the SQL queries that Livingston used . . . with his report so that Plaintiffs could have analyzed them and had the opportunity to question him about them at his deposition.").

In their reply in support of the motion to exclude, Plaintiffs state as "discussed in Plaintiffs' original Motion to Strike Livingston, Livingston's disclosed methodology was nothing more than a 'black box.'"*Id.* However, the words "black box" appear nowhere in the motion to strike and was not an argument raised in the motion to strike.

**A.      Disclosure under Rule 26(a)(2) and admissibility under Rule 702 and *Daubert* are separate inquiries.**

> *1.      The purpose of disclosure under Rule 26(a)(2) is to put the opposing side on notice of the expert's opinions.*

"In the Fifth Circuit, an expert report must be 'detailed and complete' when submitted under Rule 26(a)(2)(B) to 'avoid the disclosure of 'sketchy and vague' expert information.'" *Ihde v. HME, Inc.*, 4:15-CV-00585-CAN, 2017 WL 3267798, at *2 (E.D. Tex. Aug. 1, 2017) (quoting *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996)). "This requirement allows parties to prepare effectively for cross examination of expert witnesses and, if necessary, to arrange for testimony by additional expert witnesses." *Id.* (citing FED. R. CIV. P. 26(a)(2)(B) advisory committee's note to 1993 amendments); *see also Perez Librado v. M.S. Carriers, Inc.*, CIV.A.3:02-CV-2095-D, 2004 WL 1490304, at *10 (N.D. Tex. June 30, 2004) (same); *Hileman v. Rouse Properties, Inc.*, 416CV00455ALMCAN, 2017 WL 2989200, at *6 (E.D. Tex. May 30, 2017) (same).

The "expert report is not the end of the road, but a means of providing adequate notice to the other side to enable it to challenge the expert's opinions and prepare to put on expert testimony of its own." *Robinson v. D.C.*, 75 F. Supp. 3d 190, 195 (D.D.C. 2014) (internal quotations omitted). "The purpose of these reports is not to replicate every word that the expert might say on the stand. It is instead to convey the substance of the expert's opinion (along with the other background information required by Rule 26(a)(2)(B)) so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary." *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009).

> *2.      Experts may provide additional explanations of their opinions in response to a* Daubert *motion.*

"Rule 702 assigns the district judge a gatekeeping role to ensure that [expert] testimony is both reliable and relevant." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (internal quotation marks omitted); *Daubert*, 509 U.S. at  592-93; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (applying *Daubert* to non-scientific experts).

In determining the admissibility of expert testimony under *Daubert,* courts are not limited to an expert's disclosure or even the expert's deposition. *Daubert* challenges are frequently

resolved on the basis of testimony by experts at an evidentiary hearing. This includes testimony from experts retained by the parties for the sole purpose of testifying during the *Daubert* proceedings. *See, e.g., Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health,* CV-09-3032-EFS, 2012 WL 12951705, at *2 (E.D. Wash. May 18, 2012) ("Under the plain meaning of these provisions, a party is not required to disclose the identity of or submit a report from an expert witness used to support a *Daubert* motion if it does not intend to call that expert as a witness at trial."); *Smiley v. Hologic, Inc.*, 16CV158-WQH-MDD, 2016 WL 5242958, at *1 (S.D. Cal. Sept. 22, 2016) ("only expert witnesses who may testify at trial must be identified and provide reports").

Consistent with this procedure, Defendants' response attached a declaration from a second structured database analyst, Charles Platt, who testified that Livingston's report adequately disclosed its methodology so a database professional could replicate and test the methodology. Platt also testified that Livingston's use of textual description rather than the queries is typical and preferred.

Defendants' response also attached a supplemental declaration from Livingston. "[C]larifying declarations from experts are [also] a routine part of *Daubert* motions[.]" *In re Fluidmaster, Inc., Water Connector Components Products Liab. Litig.*, 14-CV-5696, 2017 WL 1196990, at *16 (N.D. Ill. Mar. 31, 2017); *see also In re Washington Mut. Mortg. Backed Sec. Litig.*, C09-37 MJP, 2012 WL 2995046, at *7 (W.D. Wash. July 23, 2012) ("The Court finds the use of the declarations to respond to the *Daubert* motions to be proper. The additional declarations from Holt and Cowan largely respond to the *Daubert* motion. They explain the technical arguments made by Defendants' expert and assist the Court in understanding the thrust of Defendants' motion."). Supplemental declarations are often necessary because while an "expert report should be sufficiently complete as to include the substance of what the expert is expected to give in direct testimony, and the reasons for such testimony," no requirement exists "that such disclosures cover any and every objection or criticism of which an opposing party might conceivably complain." *Allgood v. Gen. Motors Corp.*, 102CV1077DFHTAB, 2006 WL 2669337, at *4 – 5 (S.D. Ind. Sept. 18, 2006). An "expert need not stand mute in response to an

opposing party's *Daubert* motion. Otherwise, if the expert needed to anticipate and rebut every possible criticism, expert witness practice would become even more expensive and unwieldy." *Id.*

The Fifth Circuit instructs that "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore County, Miss.,* 80 F.3d 1074, 1077 (5th Cir. 1996) (internal quotations omitted).

In *Cook v. Rockwell Intern. Corp.*, 580 F. Supp. 2d 1071, 1122 (D. Colo. 2006), a party opposing an expert raised arguments much like DHI does here. In *Cook* the moving party argued that an opposing expert "must be able to fully 'verify' the correctness of an expert's work before it can be admitted" and that where "an expert has failed to document his work and make it available for review . . . courts have consistently excluded such testimony under *Daubert." Id.* at 1123. Both of these arguments were rejected by the Court, which pointed out that Rule 702 does not require for a party to indisputably show that it is correct in order to establish reliability and that the cases cited regarding failure to document were Rule 26(a)(2)(B) cases—not Rule 702 cases. *Id.*

**B.     The Order errs in considering the completeness of Defendants' disclosure, in its consideration of Plaintiffs' Rule 702 motion.**

The foundational error in the Order is its consideration of the completeness of Livingston's expert report. Under Rule 702 the Court views the record as a whole, including supplemental declarations and testimony responsive to issues raised in the motion to exclude. The Court ultimately reserved the question of the admissibility of Livingston's testimony for a later date, concluding that Livingston's supplemental declarations should have been produced with his report and awarding sanctions because "Livingston's report and earlier deposition were missing critical explanations of his methodology raising credible claims to their unreliability."[33] The Order does not identify the "critical explanations" that were missing but the only new

---

[33]   Docket No. 259 at 3. The Order's reference to Livingston's deposition is misplaced because Livingston was not asked to explain further his queries or to reconstruct them at the time of his deposition.

information were the SQL queries. As discussed below, this information did not provide any new information to the Plaintiffs and, at best, is additional granular detail unnecessary for a database professional to test Livingston's methodology. It is perfectly proper for such information to be submitted with a response to a Rule 702 motion.

The Plaintiffs' argument—which the Order adopts—is essentially that if an expert does not produce an encyclopedic report that documents in meticulous detail every step taken in an analysis, no matter the standard practices that apply to such analysis, the testimony must be excluded under Rule 702.

Livingston's report alone satisfies the required inquiry under Rule 702, demonstrating that Livingston's testimony is based on his professional experience and that he applied "the same level of intellectual rigor that characterizes" the practice of experts in the structured database analysis. In response to Plaintiffs' complaints, Defendants submitted additional evidence confirming that Livingston's methodology complied with the customary practice in the industry for describing the methodology of database analysis and then even provided the granular detail that Plaintiffs demanded. But this information was not required by Rule 26, and its submission is consistent with routine procedure under Rule 702.

## C.    The Order also errs in concluding that Defendants' disclosure is incomplete under Rule 26.

Even if this Court were to conclude that the Order properly considered the completeness of Livingston's Rule 26 disclosure, the Order should be set aside because Livingston's report complied with Rule 26(a)(2)(B). Livingston's report includes all information required by Rule 26(a)(2)(B):

| Rule 26(a)(2)(B) Requirement | Location in Livingston's Report |
| --- | --- |
| (i) a complete statement of all opinions the witness will express and the basis and reasons for them; | Conclusions: ¶¶ 63 – 65 (App. 000960 – 961)<br><br>Methodology: ¶¶ 8 – 62 (App. 000935 – 959) |
| (ii) the facts or data considered by the witness in forming them; | ¶6 (App. 000933 – 934); Appendix A (App. 000962). |
| (iii) any exhibits that will be used to summarize or support them; | Table 1 (App. 000938); Table 2 (App. 000948); Table 3 (App. 000949); Table 4 (App. 000950); Table 6 (App. 000953); Table 7 (App. 000954); Table 8 (App. 000955); Table 9 (App. 000958).<br><br>Figure 1 (App. 000941); Figure 2 (App. 000943); |

| | |
|---|---|
| | Figure 3 (App. 000944); Figure 4 (App. 000945); Figure 5 (App. 000946); Figure 6 (App. 000952)[34] |
| (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; | ¶4 (App. 000933); Exhibit A (App. 000968 – 973). |
| (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and | Exhibit A (App. 000970-971). |
| (vi) a statement of the compensation to be paid for the study and testimony in the case. | ¶3 (App. 000932) |

Livingston's report sufficed amply for Plaintiffs to "prepare effectively for cross examination of expert witnesses and, if necessary, to arrange for testimony by additional expert witnesses." *Ihde,* 2017 WL 3267798 at *2.

Plaintiffs argue that the report must be so detailed that Plaintiffs' counsel can check the experts' work, without the need to retain or rely on their own expert.[35] Footnote 22 of the motion to exclude is illustrative: "Plaintiffs anticipate that Defendants will suggest that Plaintiffs should have hired their own database expert to follow Mr. Livingston's methodology . . . . If presented, this would be a frivolous argument."[36] The Plaintiffs are simply wrong. Plaintiffs ignore that in cases involving matters outside the common knowledge of jurors (like structured data analytics), cases frequently involve a "battle of the experts" in which each side's expert reviews the other side's expert.[37] Expert reports disclose opinions and methodology; they are not meant to be textbooks that teach the lawyers everything they would need to know in order to complete the analysis themselves. *See, e.g., Cook,* 580 F. Supp. at 1122. Even when a party does not designate a testifying expert, the Federal Rules allow for the retention of consulting experts that review and educate counsel for cross-examination and *Daubert* motions.

The purpose of the expert report is to allow the opposing party "to arrange for testimony by additional expert witnesses." *Ihde,* 2017 WL 3267798 at *2. Plaintiffs want to turn the rule on

---

[34]   Figures 2 – 4 and 6 were also provided in a native excel file, provided with Livingston's report as Exhibit C.

[35]   Docket No. 226 at 11.

[36]   Docket No. 226 at 11.

[37]   According to Westlaw, there are 1342 federal cases that have used the phrase "battle of the experts."

its head and require expert reports to be manuals that allow the opposing side to avoid the need for designating an expert!

The most flawed part of Plaintiffs' argument is that they would need to retain new experts. Not so. Plaintiffs designated five non-retained experts to testify on database analysis issues.[38]  But instead of having those non-retained experts examine Livingston's analysis and identify any methodological flaw or opine on its accuracy, Plaintiffs rely on contrived blindness, claiming—without evidence or testimony from these non-retained experts or anyone else—that Livingston did not provide sufficient information.

The uncontroverted evidence shows Livingston's methodology description suffices for a structured data expert to test his opinions and that experts would not customarily disclose SQL queries (which were nevertheless produced to the Plaintiffs within a month of when they were first requested),[39] Livingston's report satisfied Rule 26(a)(2)(B).

**D.      Finally, the Order errs in awarding sanctions.**

If the Court reverses the ruling regarding SQL queries, the sanctions award must necessarily be reversed. However, even if the Court were to affirm the ruling regarding the SQL queries, the Court should still reverse the portion of the Order imposing monetary sanctions. There is no factual basis for these sanctions, there is no statutory authority for these sanctions, and they exceed the Court's inherent authority.

Plaintiffs filed a motion to exclude under Rule 702, which provides no avenue for the imposition of sanctions and attorneys' fees. It appears that Judge Johnson was relying on the Court's inherent powers, but there are no factual findings to support such an order.

"The imposition of sanctions using inherent powers must be accompanied by a specific finding of bad faith. . . . The court must find that the very temple of justice has been defiled by the sanctioned party's conduct." *Goldin v. Bartholow*, 166 F.3d 710, 722-23  (5th Cir. 1999); *see also Pillar Panama, S.A. v. DeLape*, 326 Fed. Appx. 740, 744 (5th Cir. 2009) (same). And the

---

[38]     Appendix A, (Ex. N-10 at App. 001247).

[39]     Appendix A, (Ex. P at App. 1901 – 1906); Appendix A, (Ex. Z at pp. 1983 – 1993).

Fifth Circuit "look[s] skeptically on the imposition of sanctions *sua sponte* 'without explanation as to why [a particular sanction] was necessary to accomplish the court's legitimate ... purpose." *Kenyon Intern. Emergency Services, Inc. v. Malcolm*, 12-20306, 2013 WL 2489928, at *6 (5th Cir. May 14, 2013) (quoting *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 468 (5th Cir. 1996)).

The Order contains no finding that Defendants acted in bad faith (which would be untrue) when they did not produce the SQL queries with Livingston's report.[40] In fact, the uncontroverted evidentiary record shows just the opposite: Shortly after Plaintiffs first raised the SQL queries as an issue, Defendants had the SQL queries re-created and produced. Plaintiffs never conferred with Defendants about the whereabouts of the SQL queries or the ability to produce them, and they should not be rewarded for laying behind the log.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court set aside the Magistrate Judge's March 22, 2019 order, insofar as it found that the Defendants' designation of Trent Livingston as a testifying expert did not comply with the applicable disclosure requirements and issued sanctions against the Defendants for this omission. Defendants further request any such further relief to which they have shown themselves justly entitled.

---

[40]   The SQL queries did not then exists to produce. They are like working notes and were not retained, as a customary.

Respectfully submitted,

*/s/ James G. Munisteri*
James G. Munisteri
Texas Bar No. 14667380
Marla T. Poirot
Texas Bar No. 00794736
FOLEY GARDERE
FOLEY & LARDNER LLP
1000 Louisiana, Suite 2000
Houston, Texas 77002-2099
Telephone: (713) 276-5500
Facsimile: (713) 276-5555
jmunisteri@foley.com
mpoirot@foley.com

Sara Ann Brown
Texas Bar No. 24075773
2021 McKinney, Suite 1600
Dallas, Texas 75201-3340
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
sabrown@foley.com

and

Harvey G. Brown, Jr.
Texas Bar No. 03130500
LANIER LAW FIRM
10940 W. Sam Houston Pkwy, N. Suite 100
Houston, Texas 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204
Harvey.Brown@LanierlLawFirm.com

**ATTORNEYS FOR DEFENDANT/
COUNTER-PLAINTIFF, SINGLE
INTEGRATED OPERATIONS PORTAL,
INC. D/B/A OILPRO AND
OILPRO.COM AND DAVID W. KENT,
JR.**

## CERTIFICATE OF SERVICE

I certify that on April 5, 2019 copy of the forgoing was served via email to the following:

Walter Lynch
Amir Halevy
Jeb Golinkin
JORDAN, LYNCH & CANCIENNE PLLC
1980 Post Oak Blvd., Suite 2300
Houston, Texas 77056
wlynch@jlcfirm.com
ahavely@jlcfirm.com
jgolinkin@jlcfirm.com

**Counsel for Plaintiffs DHI Group, Inc. f/k/a**
**Dice Holdings, Inc. and Rigzone.com, Inc.**

_____
Sara Ann Brown