# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| DHI Group, Inc. f/k/a Dice Holdings Inc. and RIGZONE.com, Inc., <br>                    Plaintiffs, <br><br> vs. <br><br> David W. Kent, Jr., Single Integrated Operations Portal, Inc. d/b/a Oilpro, et al., <br>                    Defendants. <br><br><hr><br> Single Integrated Operations Portal, Inc. d/b/a Oilpro and OILPRO.com, <br>                    Counter-Plaintiff, <br><br> vs. <br><br> DHI Group, Inc. f/k/a Dice Holdings Inc. and RIGZONE.com, Inc., <br>                    Counter-Defendants. | Civil Action Number: 16-cv-01670 |

## RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MOTION TO EXCLUDE

Single Integrated Operations Portal, Inc. d/b/a Oilpro and OILPRO.com ("Oilpro") and David W. Kent, Jr. ("Kent" and collectively with Oilpro "Defendants") respond to the Plaintiffs' Supplement to Their Motion to Exclude Trent Livingston, filed by Plaintiffs DHI Group, Inc. f/k/a Dice Holdings Inc. and Rigzone.com, Inc. ("Plaintiffs").[1]

## SUMMARY OF ARGUMENT

The Court's February 22, 2019 order (the "Order") expressly recognizes that Livingston may testify if his report does not rely on, or can be recreated without, the Excluded Documents

---

[1] Docket No. 266.

(defined below).[2] Livingston has repeatedly testified that his analysis does not rely on the Excluded Documents and is in fact independent of them.[3]

To determine how many new members Oilpro received from the email addresses obtained from Rigzone, Livingston required information from both the Plaintiffs and Defendants. From Defendants, Livingston required information regarding Oilpro's members; this information was contained in Oilpro's database—"Oilpro.bak" file[4]—and Plaintiffs concede that this information was timely produced.[5] The other information *essential* to Livingston's analysis came from the Plaintiffs (Rigzone's weblogs) and the Government (the list of emails copied from Rigzone's website).[6] The Excluded Documents are not among these essential files.

Plaintiffs, however, reject any notion that Livingston's analysis can stand. Livingston has already seen the Excluded Documents, Plaintiffs argue, and he cannot erase his memory! It does not matter that Livingston's only mention of the Excluded Documents at his September 2018 deposition reveals an independent review of the data and evidence in this case. Plaintiffs argue that by looking at the documents, Livingston received "external guidance" and forever tainted his analysis.[7] Having refused their opportunity to challenge the reliability of Livingston's testimony, Plaintiffs nevertheless demand he be barred from testifying because he referenced the Excluded Documents at one point in his September 2018 deposition. This is Plaintiffs third attempt to keep Livingston from the jury for procedural reasons, without challenging the underlying data or conclusions of Livingston's analysis (and despite receiving an opportunity for a second deposition).

---

[2] Docket No. 259 at 3.

[3] Ex. 1 ¶¶ 7-8, 13-18 (App. 4-5).

[4] Ex. 1-A ¶3 (App. 9); Ex. 1-E ¶12 (App. 49).

[5] Docket No. 264 -2 at 22 (21:17-22:25).

[6] Ex. 1-A ¶3 (App. 9); Ex. 1-E ¶12 (App. 49).

[7] Plaintiffs have had Livingston's queries for more than six months and have had David Kent's queries (as reflected in the Excluded Documents) for 10 months. Despite their frequent complaints, Plaintiffs have submitted no evidence that Livingston merely mimicked Kent's evidence.

Defendants respectfully request that the Court deny Plaintiffs' motion to exclude because (a) the supplement to the motion to exclude was not authorized by the Order; (b) the Excluded Documents are not relied upon by, nor necessary for, the "Invited by Fictitious Profile Step" in Livingston's analysis; and (c) Plaintiffs have known about the Fictitious Profiles—and that Oilpro used them to send invites to email addresses obtained from Rigzone—since at least September 2016.

## ARGUMENTS AND AUTHORITIES

### A.  Plaintiffs' supplement was not authorized by the Order.

The Order provides that "[i]f, *after taking the deposition of Livingston*, Plaintiffs still believe that Livingston's methodology should be excludable as unreliable, they shall so move within fourteen days from the date of the deposition."[8] Plaintiffs did not take the second deposition because they were not prejudiced by any tardy production of documents by the Defendants. The bottom line is that, despite having had Livingston's report since early last July, Plaintiffs cannot challenge the reliability of Livingston's testimony (or even offer an alternative analysis). This is procedural gamesmanship. The Order provides that Plaintiffs could reurge their motion to exclude *after* taking Livingston's deposition. They did not do so and Plaintiffs supplement was not authorized by the Order.

### B.  The Excluded Documents are not necessary to the Invited by Fictitious Profile Step.

*1.  The Order provides that Livingston's conclusions cannot use or rely on the Excluded Documents.*

The Order held that eight documents identified in Appendix A to Trent Livingston's report "may not be relied upon or used in any way by any of the Defendants' witnesses[.]" Docket No. 259 at 2. Those eight documents are:

1. Oilpro Member Activity by Month,
2. Oilpro Members by Source,

---

[8]  Docket No. 259 at 3 (emphasis added).

3

3. Report - 111k Incorrect,

4. Report Member Sources,

5. Report Members Pvs Revenue by Month,

6. Step 2 - Create Source Tables,

7. Step 3 - Never Emailed Before, and

8. Step 4 - Load Member Source Table (collectively, the "Excluded Documents").[9]

The Order further provides: "[t]o the extent that Livingston had access to these files, it is ORDERED he must be able to recreate his report and opinions without any use or reference to them."[10] Plaintiffs argue that it does not matter whether the Excluded Documents contain data or information necessary for the analysis or if Livingston can recreate the report. Having looked at the Excluded Documents, Livingston's testimony is forever barred.[11]

### 2. *Livingston's did not use or rely on the Excluded Documents in reaching his conclusions.*

Livingston submitted a declaration, dated July 30, 2018, in support of Defendants' Response to Plaintiffs' Motion to Strike the Improper Rebuttal Expert Report of Trent Livingston.[12] In that declaration, Livingston testified that he "reviewed but did not use [the Excluded Documents] to form [his] conclusions regarding the specific number of resumes accessed and the specific number of members converted."[13] Livingston reviewed Plaintiffs supplement and specifically reaffirms that he did not and is not relying on the Excluded Documents.[14]

---

[9] *Id.*

[10] *Id.* at 3.

[11] Docket No. 266 at 7 (rejecting any hypothetical argument that Livingston "can create a 'new' report without again 'looking' at the excluded documents because "he has already done so [looked at the Excluded Documents] to prepare his original report").

[12] Docket No. 216.

[13] Docket No. 216-26 at 2 ¶6.

[14] Ex. 1 ¶¶ 7-8, 13-18 (App. 4-5).

4

Nevertheless, Plaintiffs claim—without explanation—that "Livingston cannot recreate his analysis without reliance, directly or indirectly, on the Excluded Documents." Docket No. 266 at 7. The Supplement points to only one paragraph (and its supporting figure) of Livingston's report that they claim relies on the Excluded Documents:

> 34. OilPro also sent individual invites to Soft Profiles that originated from the Rounds of Access. To do this OilPro used four (4) "Fictitious Profiles" to invite Soft Profiles to join OilPro. These Fictitious Profiles were often specifically used to invite those Soft Profiles that had been created as a result of the Rigzone Rounds of Access. If an OilPro Member was found to have been invited by one of these Fictitious Profiles, but were not found to have accepted an invite from another non-fictitious OilPro Member, Rigzone was assigned credit for this Member as illustrated in **Figure 4.**



Figure 4. Invited by Fictitious Profile

(the "Invited by Fictitious Profile Step").

Plaintiffs' cite testimony from Livingston's deposition that he learned about the Fictitious Profiles from Kent, after noticing that Kent's SQL Queries identified four specific inviters and

asking Kent the relevance of these profiles.[15] Immediately after citing this testimony, Plaintiffs conclude that this "establishes he used the excluded materials to perform his analysis."[16] Plaintiffs' position appears to be that merely seeing the information in the Excluded Documents is disqualifying, no matter whether that same information is available from independent and unobjectionable sources.

The only knowledge he required in order to complete the Invited by Fictitious Profile Step, Livingston testifies, was "that (a) Oilpro used four Fictitious Profiles to invite those Soft Profiles that had been created as a result of the Rounds of Access, and (b) that the Fictitious Profiles bore the names: Holly Henderson, Jennifer Green, Heather Sullivan, and Sara Young."[17] The Excluded Documents are not necessary to understanding how Oilpro used the Fictitious Profiles and the names of the four profiles were available in many places other than the Excluded Documents.

> 3. *Other documents reviewed by Livingston in preparing his report provided all information necessary for the Invited by Fictitious Profile Step.*

As an initial matter, the testimony that Plaintiffs rely on demonstrates the futility of their supplement. Livingston testified that he learned about the four inviters from "the Step 1 and Step 2 SQL files I cite in my appendix"[18] and he confirms in his declaration that "Step 1 – Readme.docx" (Oilpro__0008684) (the "Step 1 File"), caused him to inquire further about these profiles.[19] The Step 1 File **is not an Excluded Document.**

Moreover, Livingston reviewed the transcript of David Kent's November 20, 2017 deposition before serving his report.[20] Kent testified at length at this deposition about the Fictitious Profiles and Oilpro's use of them:

---

[15] Docket No. 266 at 5.

[16] Docket No. 266 at 6.

[17] Ex. 1 ¶ 13 (App. 6).

[18] Docket No. 266 at 5 (quoting Livingston's deposition).

[19] Ex. 1 ¶ 12 (App. 6) (noting that the file states "Any member sent a customized invitation that was not Holly, Heather, Jennifer, or Sara is a good invite").

[20] Ex. 1 ¶ 16 (App. 6); Docket No. 216-19 at 31.

6

Q. Holly Henderson. She's not a real person either?

A. No, she is not.

Q. Who created Holly Henderson?

A. I did.

Q. And the goal of Holly Henderson was to use her as the inviter for persons to join Oilpro. Correct?

A. That is correct.

Q. And that would include the names and emails that you obtained from Rigzone's database without authorization. Correct?

A. **Holly Henderson invited emails from resumes that I downloaded from Rigzone**.

Q. And Holly Henderson was created in October 2013?

A. I don't remember precisely when she was created, but she -- that sounds about right. I mean, she couldn't have been created on Oilpro before then.

Q. And you started using her in October 2013.Correct?

A. Yes.

Q. At the same time that you started the unauthorized access of Rigzone's database. Correct?

A. **I used Holly to invite Rigzone related resumes in October of 2013, that's correct**.[21]

\*\*\*\*

Q. Who's **Heather Sullivan**?

A. Same type of persona as Holly.

Q. What was Heather's fake background that was created?

A. I don't recall her background.

Q. And **Jennifer Green**, is she another one?

A. She is.

Q. And then **Sara Young**, is she another one?

A. She is.[22]

---

[21] Ex. 1-D at 171:16 - 172:17 (App. 26 – 27) (objections omitted).

[22] Ex. 1-D at 173:9 – 173:17 (App. 28).

David Kent's deposition testimony explained how the Fictitious Profiles were used and what names were assigned to those profiles. This testimony provides everything necessary to complete the Invited by Fictitious Profile Step.[23] As discussed in Section C below, this information was also available in a multitude of documents produced by both sides in this litigation more than a year before Livingston produced his report.

### C. Plaintiffs knew everything necessary for the Invited by Fictitious Profiles Step years before Defendants served Livingston's report.

Excluding Livingston's testimony because he mentioned the Excluded Documents in discussing the Invited by Fictitious Profiles Step, would be especially unwarranted under the circumstances. Plaintiffs knew about the Fictitious Profiles (and how they were used) *years* before Livingston served his expert report.

#### 1. *Plaintiffs first learned about Jennifer Green in July 2015.*

On July 20, 2015, Plaintiffs' employee, Princepreet Chana, received an email invitation to join Oilpro from Jennifer Green.[24] Plaintiffs immediately suspected that David Kent had obtained Chana's email address by copying it from Rigzone's website and expressed skepticism about the invite itself, noting it "is *supposedly* coming from a recruiter at Amec Foster Wheeler named Jennifer Green."[25] Indeed, just four days later, Plaintiffs sent this invitation to the Department of Justice, noting that this was a "significant recent development."[26]

#### 2. *Plaintiffs knew about all four Fictitious Profiles before discovery began in the case.*

On September 2, 2016, as soon as discovery opened in this case, Plaintiffs served requests for production seeking, among other things, all communications and documents related to "any Oilpro or Virtual Bench employee named Holly Henderson, Oilpro online account associated with

---

[23] Ex. 1 ¶ 16 (App. 6).

[24] Ex. 2-D (App. 95).

[25] Ex. 2-D (App. 94).

[26] Ex. 2-D (App. 93).

8

Holly Henderson, and/or fictional person named or referred to as Holly Henderson."[27] Identical requests were sent for documents and communications related to Heather Sullivan, Jennifer Green, and Sara Young.[28]

At the same time, Plaintiffs sought copies of a "Google Chat conversation dated April 2, 2014 between David Kent (david@oilpro.com) and Estevan Dufrin (estevan@oilpro.com), in which David Kent asks, "is Holly sending more today?" (i.e., sending invitations to join Oilpro).[29] Plaintiffs also sought copies of "January 29, 2016 emails between Laura Bumby (laura@oilpro.com) and Estevan Dufrin (estevan@oilpro.com) with the subject line 'Holly Log-Ins.'"[30]

These discovery requests regarding the Fictitious Profiles were served nearly two years before Livingston served his expert report. Not only were Plaintiffs not prejudiced by any review of the Excluded Files in connection with the Invited by Fictitious Profile step, it would be surprising if Plaintiffs themselves do not attempt to illicit testimony about Holly Henderson, Jennifer Green, Sara Young, and Heather Sullivan and how those profiles were used to send invitations to emails obtained from Rigzone. Livingston's analysis simply took into account the evidence developed in this case—including by the Plaintiffs—in order to determine the number of members Oilpro received from the email addresses obtained from Rigzone.[31]

> 3. *By May 2017, Defendants produced nearly a thousand documents regarding the four Fictitious Profiles and confirmed how they were used.*

By April 2017, Oilpro had produced over 860 documents regarding the four Fictitious Profiles.[32] On May 30, 2017, Kent responded to an interrogatory requesting that he identify "all

---

[27] Ex. 2-A RFP 50 (App. 72).

[28] Ex. 2-A RFPs 51-56 (App. 72-73).

[29] Ex. 2-B RFP 28 (App. 77).

[30] Ex. 2-B RFP 51 (App. 78).

[31] Indeed, it is important to note that if Livingston did not include the Invited by Fictitious Profile Step, the number of converted members would decrease.

[32] Ex. 2 ¶ 8 (App. 68).

fictitious accounts and/or persons created to solicit, contact, and/or correspond with potential users and members of Oilpro.com." Kent answered that the "accounts opened under a pseudonym by Oilpro's employees" were "Holly Henderson, Heather Sullivan, Jennifer Green, and Sarah Young."[33]

## CONCLUSION

Livingston did not rely on any Excluded Documents for the Invited by Fictitious Profile Step and nothing in those documents were necessary to his conclusions. Plaintiffs argue that "the analysis Livingston performed using the excluded material cannot be ignored or skipped" but there is not a shred of evidence that he performed any analysis "using the excluded material." The only insight that Livingston could have gleaned from the Excluded Documents (that Oilpro sent invitations to the Rigzone emails from the Fictitious Profiles) is also found in hundreds of other documents and was known to the Plaintiffs for years before Livingston's report.

Accordingly, Defendants respectfully request that the Court deny Plaintiffs' motion to exclude Livingston and grant them any such further relief to which they have shown themselves justly entitled.

---

[33] Ex. B – May 30, 2017 Kent's Amended Interrogatory Responses. ROG 9.

Respectfully submitted,

**FOLEY GARDERE**
 **FOLEY & LARDNER LLP**

/s/ JSM

James G. Munisteri, Texas Bar No. 14667380
Marla T. Poirot, Texas Bar No. 00794736
1000 Louisiana, Suite 2000
Houston, Texas 77002-2099
Telephone: (713) 276-5500
Facsimile: (713) 276-5555
jmunisteri@foley.com
mpoirot@foley.com

Sara Ann Brown, Texas Bar No. 24075773
2021 McKinney, Suite 1600
Dallas, Texas 75201-3340
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
sabrown@foley.com

and

Harvey G. Brown, Jr., Texas Bar No. 03130500
Lanier Law Firm
10940 W. Sam Houston Pkwy, N. Suite 100
Houston, Texas 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204
Harvey.Brown@LanierlLawFirm.com

**ATTORNEYS FOR DEFENDANTS**