IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DHI Group, Inc. f/k/a Dice Holdings Inc. and RIGZONE.com, Inc., | |
| Plaintiffs, | |
| vs. | |
| David W. Kent, Jr., Single Integrated Operations Portal, Inc. d/b/a Oilpro, et. al., | |
| Defendants. | Civil Action No. 16-1670 |
| Single Integrated Operations Portal, Inc. d/b/a Oilpro and OILPRO.com, | |
| Counter-Plaintiff, | |
| vs. | |
| DHI Group, Inc. f/k/a Dice Holdings Inc. and RIGZONE.com, Inc., | |
| Counter-Defendants. | |

**Defendants' Motion for Judgment Under Rule 50(a)
or Dismissal Under Rule 12**

# Table of Contents

Table of Contents.................................................................................................... i

Table of Authorities ............................................................................................... ii

Summary of Relief Requested .............................................................................. 1

Argument ................................................................................................................... 1

I.     The Court should enter judgment on Plaintiffs' RICO claim. .......................... 1

       A.     Plaintiffs did not prove any RICO injury. ................................................. 2

       B.     Plaintiffs did not prove a pattern of racketeering activity. ......................... 4

       C.     Kent was not conducting Oilpro's affairs when discussing a potential sale. ................................................................................................. 6

II.    The Court should enter judgment on Plaintiffs' TUTSA claim. ......................... 7

       A.     The résumé database was not "secret."....................................................... 7

       B.     Plaintiffs did not prove any damages that TUTSA authorizes. ................. 9

              1.     No "actual loss."................................................................................. 10

              2.     No "unjust enrichment." ................................................................... 12

III.   The Court should enter judgment on Plaintiffs' common-law misappropriation claim.............................................................................................14

IV.    The Court should enter judgment on Plaintiffs' fiduciary duty claim................16

V.     At a minimum, the Court should enter judgment against DHI on the misappropriation-based claims. ....................................................................................17

VI.    The Court should grant judgment as a matter of law on additional grounds..........................................................................................................................18

Certificate of Conference...........................................................................................22

Certificate of Service...................................................................................................22

# Table of Authorities

**Page(s)**

## <u>Cases</u>

*AMID, Inc. v. Medic Alert Foundation United States, Inc.*,
  241 F. Supp. 3d 788 (S.D. Tex. 2017) (Rosenthal, J.) .................................................. 15

*Argo Data Res. Corp. v. Shagrithaya*,
  380 S.W.3d 249 (Tex. App.— Dallas 2012, pet. denied) ............................................ 18

*C&M Oilfield Rentals, LLC v. Location Illuminator Techs., LLC*,
  No. PE:18-CV-00039-DC-DF, 2020 WL 5745833 (W.D. Tex. Aug. 3, 2020) ....... 15

*Conry v. Daugherty*,
  No. 10-4599, 2011 WL 4807892 (E.D. La. Oct. 11, 2011) ......................................... 5

*Gen. Insulation Co. v. King*,
  No. 14-08-00633-CV, 2010 WL 307952 (Tex. App.—Houston
  [14th Dist.] Jan. 26, 2010, no pet) (mem. op.) ............................................... 14

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989) .......................................................................................... 4, 5

*Lexmark Int'l Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ................................................................................................ 4

*Lipin Enters., Inc. v. Lee*,
  625 F. Supp. 1098 (N.D. Ill. 1985), *aff'd*, 803 F.2d 322 (7th Cir. 1986) ..................... 7

*Lipin Enters. Inc. v. Lee*,
  803 F.2d 322 (7th Cir. 1986) ............................................................................. 4, 5

*Marriott Bros. v. Gage*,
  911 F.2d 1105 (5th Cir. 1990) .............................................................................. 2

*In re MasterCard Int'l Inc.*,
  313 F.3d 257 (5th Cir. 2002) ............................................................................... 2

*Morgan v. Bank of Waukegan*,
  804 F.2d 970 (7th Cir. 1986) .............................................................................. 5

*Numed, Inc. v. McNutt,*
 724 S.W.2d 432 (Tex. App.—Fort Worth 1987, no writ) ............................................. 9

*Precision Plating & Metal Finishing, Inc. v. Martin-Marietta Corp.,*
 435 F.2d 1262 (5th Cir. 1970) ..................................................................................... 11

*Puga v. RCX Solutions, Inc.,*
 922 F.3d 285 (5th Cir. 2019) ....................................................................................... 15

*Sever v. Alaska Pulp Corp.,*
 978 F.2d 1529 (9th Cir. 1992) ....................................................................................... 5

*Sneed v. Webre,*
 465 S.W.3d 169 (Tex. 2015) ........................................................................................ 18

*SP Midtown Ltd. v. Urban Storage L.P.,*
 No. 14-07-00717-CV, 2008 WL 1991747 (Tex. App.—Houston [14th
 Dist.] May 8, 2008, pet. denied) (mem. op.) ................................................................ 14

*Steves & Sons, Inc. v. JELD-WEN, Inc.,*
 No. 3:16-CV-545, 2018 WL 1796293 (E.D. Va. Apr. 16, 2018) ................................ 15

*Stewart & Stevenson Servs., Inc. v. Serv-Tech, Inc.,*
 879 S.W.2d 89 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ....................... 14

*Summit Props. Inc. v. Hoechst Celanese Corp.,*
 214 F.3d 556 (5th Cir. 2000), *overruled on other grounds by St. Germain v.*
 *Howard,* 556 F.3d 261 (5th Cir. 2009) ......................................................................... 2

*Super Starr Int'l, LLC v. Fresh Tex Produce, LLC,*
 531 S.W.3d 829 (Tex. App.—Corpus Christi 2017, no pet.) ................................. 16, 17

*Sw. Energy Prod. Co. v. Berry-Helfand,*
 491 S.W.3d 699 (Tex. 2016) .................................................................................. 10, 13

*Tellis v. U.S. Fid. & Guar. Co.,*
 826 F.2d 477 (7th Cir. 1986) ........................................................................................ 5

*Texas Transland, LLC v. Davidson, Inc.,*
 No. 7:19-cv-00129-O, 2020 WL 1275883 (N.D. Tex. Mar. 17, 2020)
 (O'Connor, J.) ............................................................................................................... 16

*TMRJ Holdings, Inc. v. Inhance Technologies, LLC,*
 540 S.W.3d 202 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ................................ 13

*United States v. Mandel*,
 591 F.2d 1347 (4th Cir. 1979), *aff'd on reh'g*, 602 F.3d 653 ......................................... 6, 7

*Univ. Computing Co. v. Lykes-Youngstown Corp.*,
 504 F.2d 518 (5th Cir. 1974) ....................................................................................... 10

*Verde Minerals, LLC v. Burlington Res. Oil & Gas Co.*,
 No. 2:16-cv-463, 2017 WL 9535076 (S.D. Tex. June 30, 2017) ................................... 3

*W. Texas Nat. Bank v. FEC Holdings, LP*,
 No. MO-11-CV-086, 2013 WL 2158658 (W.D. Tex. May 17, 2013) ......................... 5

*Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*,
 920 F.3d 958 (5th Cir. 2019) ......................................................................................... 2

*Wellogix, Inc. v. Accenture, L.L.P.*,
 716 F.3d 867 (5th Cir. 2013) ....................................................................................... 11

*Wingate v. Hajdik*,
 795 S.W.2d 717, 719 (Tex. 1990) ................................................................................. 18

## Statutes

18 U.S.C. § 1030 ................................................................................................................. 19

18 U.S.C. § 1030(A)(5)(A) ................................................................................................. 20

18 U.S.C. § 1962 ............................................................................................................. 2, 19

18 U.S.C. § 1962(c) ........................................................................................................... 2, 6

18 U.S.C. § 1962(d) ............................................................................................................. 20

18 U.S.C. § 1964(c) ........................................................................................................... 2, 3

Tex. Civ. Prac. & Rem. Code § 41.011 ............................................................................. 19

Tex. Civ. Prac. & Rem. Code §§ 134.001 *et seq.* ............................................................. 20

Tex. Civ. Prac. & Rem. Code § 134A.002(3) ..................................................................... 7

Tex. Civ. Prac. & Rem. Code § 134A.002(6)(B) ............................................................ 7, 9

Tex. Civ. Prac. & Rem. Code § 134A.004(a) ........................................................... 7, 9, 10, 12

Tex. Civ. Prac. & Rem. Code § 134A.007(a) ........................................................ 15

Tex. Civ. Prac. & Rem. Code §§ 143.001 *et seq.* ............................................... 20

**<u>Other Authorities</u>**

Acts 2013, 83rd Leg., R.S., Ch. 10 (S.B. 953), § 1, eff. Sept. 1, 2013 ................................ 7

Acts 2017, 85th Leg., R.S., Ch. 37 (H.B. 1995), §§ 6-7, eff. Sept. 1, 2017 ...................... 7

State Bar of Tex., Texas Pattern Jury Charge 115.55 cmt. (2018) ................................... 10

## Summary of Relief Requested

Defendants, David W. Kent, Jr. and Single Integrated Operations Portal, Inc., respectfully request that the Court grant judgment as a matter of law under Rule 50(a) or dismissal under Rules 12(b)(6) and 12(h)(2)(C) on the following claims:

(1) RICO, because under RICO jurisprudence (1) Plaintiffs were not "injured," (2) there was no "pattern," and (3) Kent did not "conduct or participate";

(2) TUTSA, because (1) Rigzone's résumé database was not a "trade secret" and (2) there is no evidence of any recoverable actual loss or unjust enrichment;

(3) common-law misappropriation, which is preempted by TUTSA;

(4) breach of fiduciary duty, because (1) this claim is preempted by TUTSA and (2) there is no evidence of recoverable lost profits;

(5) misappropriation-based claims asserted by DHI, which did not own the résumés that Kent allegedly misappropriated; and

(6) all other claims as set forth below.

## Argument

## I.     The Court should enter judgment on Plaintiffs' RICO claim.

The Court should grant judgment as a matter of law on Plaintiffs' RICO claim instead of submitting this convoluted and baseless theory—requiring 12 pages of confusing questions and instructions—to the jury.[1]

---

[1] Doc. 290-7 (proposed jury charge) at 31-42.

Plaintiffs seek damages under 18 U.S.C. § 1964(c) as a "person *injured* in his business or property by reason of a violation of section 1962."[2] Under 18 U.S.C. § 1962(c), it is unlawful "to *conduct or participate,* directly or indirectly, in the conduct of [an] enterprise's affairs through a *pattern* of racketeering activity."[3] Here, under RICO jurisprudence (1) Plaintiffs were not "injured," (2) there was no "pattern," and (3) Kent did not "conduct or participate."

### A.   Plaintiffs did not prove any RICO injury.

Plaintiffs allege that the "racketeering activity" (or "predicate act")[4] is wire fraud.[5] Thus, they must prove they were injured by wire fraud—not any other complained-of act.[6] The predicate act must be both the "but-for" and the proximate cause.[7]

Plaintiffs allege that Kent committed wire fraud against Rigzone by accessing résumés.[8] But wire fraud requires a "false or fraudulent misrepresentation."[9] Kent did not access résumés by making false misrepresentations; he simply typed widely shared

---

[2] 18 U.S.C. § 1964(c) (emphasis added).

[3] 18 U.S.C. § 1962(c) (emphasis added).

[4] *See Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019).

[5] Doc. 290-7 (proposed jury charge) at 34 ("'Racketeering activity' is an act that violates the federal wire fraud statute.").

[6] The "causal nexus between *the alleged predicate acts* and the defendant's injury must be direct: it is not sufficient that the injury alleged is simply the result of an unlawful act connected to the operation of the alleged RICO enterprise, or in furtherance of its goals." *Marriott Bros. v. Gage*, 911 F.2d 1105, 1108 (5th Cir. 1990) (emphasis added).

[7] *Summit Props. Inc. v. Hoechst Celanese Corp.,* 214 F.3d 556, 560 (5th Cir. 2000), *overruled on other grounds by St. Germain v. Howard*, 556 F.3d 261 (5th Cir. 2009).

[8] Doc. 290-7 (proposed jury charge) at 35.

[9] *In re MasterCard Int'l Inc.*, 313 F.3d 257, 263 (5th Cir. 2002).

web addresses into his internet browser.[10] Thus, Rigzone's alleged damages did not result from a RICO predicate act.

With regard to DHI, Plaintiffs allege that false representations were made when "David Kent emailed figures and charts describing the growth in membership and number of resumes in the Oilpro members database,"[11] allegedly "with the goal of causing DHI Group to purchase Oilpro at an inflated price."[12] But this goal was never achieved. DHI already suspected Kent and was assisting the FBI in its investigation,[13] so no one relied on misrepresentations by Kent,[14] and DHI never purchased Oilpro. As a result, DHI was not "injured in its business of property," as 18 U.S.C. § 1964(c) requires. This exact question was posed to DHI's CEO, Michael Durney, at trial:

> Q.   Was there ever any damage of property or business of DHI or Rigzone related to these sale—to the discussions of a sale that never occurred?
>
> A.   No, because we never completed it.[15]

---

[10] Transcript of Jury Trial, Nov. 13, 2020, at 58 (Kent) (Exhibit B).

[11] Doc. 236 at 32 ¶ 114.

[12] Doc. 236 at 31 ¶ 110.

[13] Transcript of Jury Trial, Nov. 13, 2020, at 27 (Kent) (Exhibit B); Transcript of Jury Trial, Mar. 15, 2021 (Durney); Doc. 278 at 38 ("Plaintiffs agree that they first contacted the FBI about the unauthorized access to their resume database in May 2014.").

[14] Transcript of Jury Trial, Mar. 17, 2021 (Roberts). While RICO does not require that the plaintiff itself relied, a RICO plaintiff "cannot prevail without showing that someone relied on the defendant's fraud, because, without reliance by someone, the plaintiff cannot show that it was injured 'by reason of' the alleged racketeering activity." *Verde Minerals, LLC v. Burlington Res. Oil & Gas Co.*, No. 2:16-cv-463, 2017 WL 9535076, at *12 (S.D. Tex. June 30, 2017).

[15] Transcript of Jury Trial, Mar. 15, 2021 (Durney).

In the absence of any injury caused by a predicate act, the Court should grant judgment as a matter of law under Rule 50(a). Moreover, because Plaintiffs cannot prove an injury or causation, they lack federal statutory standing, so their claims are also subject to dismissal under Rules 12(b)(6) and 12(h)(2)(C).[16]

### B.    Plaintiffs did not prove a pattern of racketeering activity.

Plaintiffs also failed to prove a cognizable pattern of racketeering activity. "Congress was concerned in RICO with long-term criminal conduct."[17] "To establish a RICO pattern it must . . . be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity."[18]

There is no continuing pattern here. The only act that occurred more than once—accessing résumés—was not wire fraud. As discussed above, Kent accessed résumés by typing web addresses into a browser, not making misstatements.

Even if accessing résumés could somehow be deemed wire fraud, there would be no continuing pattern. *First,* a continuing pattern cannot be established even by multiple acts of wire fraud, if those acts are "designed to defraud one victim, [DHI], on one occasion, the [attempted] sale of [Oilpro]."[19] The Seventh Circuit so held in a widely cited case involving "12 acts of mail fraud in furtherance of a scheme to induce plaintiff

---

[16] *See Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

[17] *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989).

[18] *Id.* at 241 (emphasis in original).

[19] *Lipin Enters. Inc. v. Lee*, 803 F.2d 322, 324 (7th Cir. 1986).

to buy an auto leasing company for more money than it was worth.[20] "[M]ultiple acts of mail fraud in furtherance of a single episode of fraud involving one victim and relating to one basic transaction cannot constitute the necessary pattern."[21]

*Second,* "[a] pattern is not formed by 'sporadic activity,'" and a person is not subject to RICO liability "simply for committing two widely separated and isolated criminal offenses."[22] That is precisely what Plaintiffs allege here: two rounds of access, occurring well over a year apart. As courts in the Fifth Circuit have held, this is insufficient.[23] Nor can Plaintiffs inflate the number of acts by characterizing each accessed résumé as an independent act.[24]

*Third*, there was no "open-ended continuity," which includes "a specific threat of repetition extending indefinitely into the future."[25]   Plaintiffs allege that the wire fraud "would have continued indefinitely had it not fortuitously been ended" when they

---

[20] *Id.* at 323-24.

[21] *Tellis v. U.S. Fid. & Guar. Co.*, 826 F.2d 477, 478 (7th Cir. 1986); *see also Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535-36 (9th Cir. 1992) (dismissing a RICO claim where there was no pattern because the plaintiff was the only victim of the alleged scheme).

[22] *H.J. Inc.*, 492 U.S. at 239.

[23] *W. Texas Nat. Bank v. FEC Holdings, LP*, No. MO-11-CV-086, 2013 WL 2158658, at *7 (W.D. Tex. May 17, 2013) (no continuity where the predicate acts occurred in October 2006, September 2008, December 2008, and March 2009); *Conry v. Daugherty*, No. 10-4599, 2011 WL 4807892, at *2 (E.D. La. Oct. 11, 2011) (no continuity where the predicate acts occurred between January and April 2007 and between September 2010 and January 2011).

[24] *Morgan v. Bank of Waukegan*, 804 F.2d 970, 976 (7th Cir. 1986) ("The mere fact that the complexity of the transaction generates numerous pieces of paper and hence a greater number of possible fraudulent acts does not make these predicate acts ongoing over a period of time so as to constitute separate transactions that are distinct in time and place.").

[25] *H.J. Inc.*, 492 U.S. at 242.

discovered Kent was accessing résumés.[26] But that supposition contradicts the entire premise of Plaintiffs' RICO theory, which is that Kent's "scheme was designed to increase Oilpro's member base . . . with the goal of causing DHI Group to purchase Oilpro at an inflated price" in 2015.[27] The alleged wire fraud would have come to a definite end no matter what—whether the alleged scheme had been detected and failed, or whether it had succeeded and resulted in a 2015 sale.

### C.   Kent was not conducting Oilpro's affairs when discussing a potential sale.

Plaintiffs' RICO claim also fails because Kent did not "*conduct or participate* . . . in the conduct of [the] enterprise's affairs through a pattern of racketeering activity."[28] As explained above, the alleged racketeering activity is wire fraud, which requires a false misrepresentation, and the only alleged act involving a fraudulent misrepresentation occurred when Kent discussed selling Oilpro to DHI. "[The] transfer of an interest in a business is the antithesis of operating it."[29] As the Fourth Circuit has explained, "while Congress specifically outlawed the acquisition of a business through a pattern of racketeering activity it did not specifically proscribe the transfer of an interest in an enterprise."[30] Thus, "the simple transfer of an ownership interest in that business does

---

[26] Doc. 236 at 33 ¶ 116.

[27] Doc. 236 at 31 ¶ 110.

[28] 18 U.S.C. § 1962(c) (emphasis added).

[29] *United States v. Mandel*, 591 F.2d 1347, 1376 (4th Cir. 1979), *aff'd on reh'g*, 602 F.3d 653.

[30] *Id.*

not constitute the conduct of the business through a pattern of racketeering activity even if the transfer is part of an alleged payoff in a mail fraud scheme."[31] The Court should grant judgment as a matter of law on Plaintiffs' RICO claim.

## II.    The Court should enter judgment on Plaintiffs' TUTSA claim.

### A.    The résumé database was not "secret."

To recover damages under TUTSA, a plaintiff must prove "misappropriation," which means the acquisition or disclosure of a "trade secret."[32] Information does not qualify as a "trade secret" under the TUTSA version applicable here unless it "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."[33]

Rigzone made no significant efforts to keep its résumé database secret. Rigzone's president, Chad Norville, candidly admitted that Rigzone had no rules or guidelines against disclosing the résumé database outside the company, no guidelines on handling trade secrets, no consequences for employees who disclosed trade secrets, no policy requiring employees to return data from the résumé database when leaving the company, and no requirement that Rigzone customers acknowledge that the résumé

---

[31] *Id.*; *see also Lipin Enters., Inc. v. Lee*, 625 F. Supp. 1098, 1100 (N.D. Ill. 1985), *aff'd*, 803 F.2d 322 (7th Cir. 1986) ("The simple transfer of Lee's stock in the companies does not in itself constitute the conduct of the business through a pattern of racketeering activity even if the transfer is part of an alleged mail fraud scheme.").

[32] Tex. Civ. Prac. & Rem. Code §§ 134A.002(3), 134A.004(a). DHI previously alleged that its internet search techniques and Google analytics data were trade secrets, but those TUTSA claims were disposed of on summary judgment. (Doc. 278 at 22; Doc. 279 at 2.)

[33] *Id.* § 134A.002(6)(B). This motion refers to the version of TUTSA that was in effect when this action was filed. *See* Acts 2013, 83rd Leg., R.S., Ch. 10 (S.B. 953), § 1, eff. Sept. 1, 2013. TUTSA was amended in 2017, but the 2017 amendment "applies only to an action that commences on or after the effective date of this Act." Acts 2017, 85th Leg., R.S., Ch. 37 (H.B. 1995), §§ 6-7, eff. Sept. 1, 2017.

database is a trade secret.[34] Similarly, DHI's CEO, Michael Durney, admitted that Rigzone did not prohibit employees from disclosing the résumé database outside the company, no policy that the résumé database was confidential, and no guidelines on handling trade secrets.[35] Durney acknowledged that access to trade secrets is limited internally, as Rigzone did with its software code—yet every single Rigzone employee had access to the résumé database.[36] When the résumé database was transferred to a new computer server, no security measures were taken—the old server was not removed, cleaned, or sent to a secure location.[37] Rigzone technology officer Jeremy Antonini simply took the résumé database home, with Rigzone's permission, and kept it as his personal property.[38] Norville and Durney further confirmed that there are no documents identifying the résumé database as a "trade secret."[39] Until Plaintiffs decided to sue, no one at Rigzone or DHI ever referred to the résumé database as a "trade secret."[40]

Instead of taking measures to keep the résumé database secret, Rigzone did just the opposite, voluntarily selling or giving access to "thousands of people," including

---

[34] Transcript of Jury Trial, Nov. 13, 2020, at 230, 233-34 (Norville) (Exhibit B).

[35] Transcript of Jury Trial, Mar. 15, 2021 (Durney).

[36] Transcript of Jury Trial, Mar. 15, 2021 (Durney).

[37] Transcript of Jury Trial, Mar. 15, 2021 (Durney); *see also id.* (Antonini).

[38] Transcript of Jury Trial, Mar. 15, 2021.

[39] Transcript of Jury Trial, Nov. 13, 2020, at 228 (Norville) (Exhibit B); Transcript of Jury Trial, Mar. 15, 2021 (Durney).

[40] Transcript of Jury Trial, Nov. 13, 2020, at 228 (Norville) (Exhibit B); Transcript of Jury Trial, Mar. 15, 2021 (Durney); Transcript of Jury Trial, Mar. 17, 2021 (Montang).

"[e]very employee and every customer that ever subscribed to the system."[41] Rigzone even sold subscriptions to companies allowing an *unlimited* number of employees to access *unlimited* résumés.[42] In fact, anyone who paid the subscription price "could just click download to Excel and get the—all the résumés."[43]

Information that a company shares with customers is not secret, so it cannot be a trade secret.[44] Without a trade secret, Plaintiffs have no TUTSA claim.

### B.   Plaintiffs did not prove any damages that TUTSA authorizes.

There is also an independent ground on which the Court should enter judgment on Plaintiffs' TUTSA claim. Under TUTSA, a plaintiff may recover "actual loss" or "unjust enrichment."[45] Plaintiffs did not prove, or even attempt to prove, either one.

---

[41] Transcript of Jury Trial, Nov. 13, 2020, at 61-62, 64 (Kent) (Exhibit B).

[42] Transcript of Jury Trial, Nov. 13, 2020, at 61-62, 64, 233 (Kent and Norville) (Exhibit B); Transcript of Jury Trial, Mar. 15, 2021 (Durney); Transcript of Jury Trial, March 16, 2021 (Antonini); Transcript of Jury Trial, Mar. 17, 2021 (Montang).

[43] Transcript of Jury Trial, Nov. 13, 2020, at 65 (Kent) (Exhibit B); Transcript of Jury Trial, March 16, 2021 (Antonini).

[44] Tex. Civ. Prac. & Rem. Code § 134A.002(6)(B); *see also Numed, Inc. v. McNutt*, 724 S.W.2d 432, 435 (Tex. App.—Fort Worth 1987, no writ) ("The evidence reflects much of the information Numed wishes to protect is not secret. Instead, it is contained in the contracts distributed to Numed's customers, which in turn may be discovered by anyone.").

[45] Tex. Civ. Prac. & Rem. Code § 134A.004(a). In lieu of either "actual loss" or "unjust enrichment," in some circumstances a TUTSA plaintiff may recover a "reasonable royalty," *id.*, but Plaintiffs do not seek a royalty here. (Doc. 290-7 at 25.)

### 1.   No "actual loss."

The first category of TUTSA damages is "actual loss caused by misappropriation."[46] Actual loss "is usually measured by lost profits."[47] Here, Plaintiffs do not even allege that the alleged misappropriation caused any "actual loss" or any "lost profits." Plaintiffs did not lose any revenue, suffer any lost profits, lose any members, lose any résumés, lose any data, or incur any out-of-pocket expenses.[48]

Plaintiffs take the position that "[w]hether we lost revenue or not is, quite frankly, irrelevant."[49] Instead of proving an "actual loss" as TUTSA requires, Plaintiffs propose to prove the "value that a reasonably prudent investor would have paid for the trade secret" before the misappropriation.[50] But as the Fifth Circuit has explained, the amount an investor might have paid "is an appropriate measure of damages *only* when the defendant has in some way destroyed the value of the secret."[51] A total loss in value was the key fact in *Precision Plating*, the Fifth Circuit case that originated the "reasonably prudent investor" standard, where the defendant "made such public disclosure of the

---

[46] Tex. Civ. Prac. & Rem. Code § 134A.004(a).

[47] *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 711 (Tex. 2016).

[48] Transcript of Jury Trial, Nov. 13, 2020, at 46-48 (Kent) (Exhibit B); Transcript of Jury Trial, Mar. 15, 2021 (Durney).

[49] Transcript of Jury Trial, Nov. 13, 2020, at 47 (Exhibit B).

[50] Doc. 290-7 (proposed jury charge) at 25.

[51] *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 535 (5th Cir. 1974) (emphasis added). For example, "[the hypothetical-investor] measure of damages is used when the defendant has deprived the plaintiff of the trade secret's use or destroyed its value, such as by publishing the trade secret so that no secret remains." State Bar of Tex., Texas Pattern Jury Charge 115.55 cmt. (2018).

- 10 -

[secret] process as to amount to a complete destruction of the value of the process."[52] Similarly, in the *Wellogix* case "'the total value of [the plaintiff company] went to zero' after the alleged misappropriation."[53]

It makes sense to limit the "reasonably prudent investor" standard to cases in which the post-misappropriation value is zero. A plaintiff's actual loss equals the market value before the alleged misappropriation, minus the market value afterward:[54]

> Pre-Misappropriation Value – Post-Appropriation Value = Actual Loss

Thus, if the pre-misappropriation value is $100 and the post-misappropriation value is zero, the pre-misappropriation value ($100) is an accurate measure of the actual loss ($100). In contrast, if the trade secret retains some value, the post-misappropriation value ($100) is not an accurate measure of the actual loss (which is less than $100).

Here, Plaintiffs do not contend that the value of Rigzone or its résumé database dropped to zero. After the alleged misappropriation, Rigzone continued to use and profit from its résumé database.[55] Neither Plaintiffs' disclosures nor their expert witness's report mention any decrease in value at all, and Plaintiffs agreed to a limine order precluding evidence of decreased value.[56] Accordingly, the amount an investor

---

[52] *Precision Plating & Metal Finishing, Inc. v. Martin-Marietta Corp.*, 435 F.2d 1262, 1263-64 (5th Cir. 1970).

[53] *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 880 (5th Cir. 2013).

[54] *See id.*

[55] Transcript of Jury Trial, Mar. 15, 2021 (Durney).

[56] Doc. 290-9 at 4 (Defendants' motion in limine #6); Doc. 300 at 4-5 (Plaintiffs' agreement).

might have paid before the alleged misappropriation is not a measure of any "actual loss" recoverable under TUTSA. There is no evidence of a recoverable "actual loss."

### 2. No "unjust enrichment."

Just as there is no evidence of "actual loss," there is no evidence of "unjust enrichment" recoverable under TUTSA.[57] Kent "never received a single dollar from the copying of résumés,"[58] and neither did Oilpro.[59] Although Oilpro gained members, those members paid no fee.[60] Indeed, Kent never made any money from Oilpro at all:

> Q.   Do you know how much, personally—do you have personal knowledge of how much, generally, in revenue, in 2014, Oilpro was able to generate in revenue?
>
> A.   A bit over $500,000.
>
> Q.   And what were the losses—what was the total loss in 2014?
>
> A.   It was a million dollars plus.
>
> Q.   In 2015, do you have a sense of the revenues, or do you have knowledge of the revenues in 2015 for Oilpro?
>
> A.   Yes.
>
> Q.   How much?
>
> A.   Approximately 1.1 to 1.2 million.
>
> Q.   How much was the loss in 2015?

---

[57] Tex. Civ. Prac. & Rem. Code § 134A.004(a).

[58] Transcript of Jury Trial, Nov. 13, 2020, at 51 (Kent) (Exhibit B).

[59] Transcript of Jury Trial, Mar.16, 2021 (Antonini).

[60] Transcript of Jury Trial, Nov. 13, 2020, at 55 (Kent) (Exhibit B).

A.     Many—I think—I believe it was many millions.

Q.     Was there ever a month where Oilpro made money?

A.     No.

THE COURT:     So as a nonbusiness person, how'd you keep going?

THE WITNESS:     I was investing my own dollars into the business.[61]

In the end, Oilpro went out of business. It had no value, Kent could not sell it, and he never recovered any of his investment.[62]

Although Oilpro hemorrhaged cash during its short lifetime, Plaintiffs contend it received a temporary bump in value from the addition of members whose emails were obtained from Rigzone résumés. Even if that had been proven, the hypothetical temporary bump provided zero benefit to Kent, who never received a penny from operating or selling the failed company. Under Texas law, the term "unjust enrichment" does not encompass hypothetical, unrealized value; it means "the defendant's *actual* profits resulting from the use or disclosure of the trade secret."[63] Numerous courts have held that "unjust enrichment" is limited to a defendant's actual gains and excludes projected, potential, or unrealized gains.[64] The hypothetical temporary bump in value

---

[61] Transcript of Jury Trial, Nov. 13, 2020, at 160-61 (Kent) (Exhibit B).

[62] Transcript of Jury Trial, Nov. 13, 2020, at 51 (Kent) (Exhibit B).

[63] *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 711 (Tex. 2016) (emphasis added); *see also TMRJ Holdings, Inc. v. Inhance Technologies, LLC*, 540 S.W.3d 202, 209 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (authorizing, in a TUTSA case, the recovery of "the defendant's unjust enrichment, that is, its *actual* profits from the use of the secret") (emphasis added).

[64] *See* Doc. 334 (Defendants' Brief on TUTSA Measure of Damages) at 7-8 (collecting cases).

was never realized by Kent, did not "enrich" Kent in any sense of the word, and does not amount to "unjust enrichment" under TUTSA.[65] In the absence of recoverable TUTSA damages—or any evidence that the résumé database was a "trade secret"—the Court should grant judgment as a matter of law.

## III.   The Court should enter judgment on Plaintiffs' common-law misappropriation claim.

Plaintiffs cannot evade TUTSA's requirements by asserting common-law misappropriation. Even before TUTSA was enacted, Texas law did not recognize a claim for misappropriating "confidential information" that is not a trade secret:

> [The plaintiff] argues a claim of misappropriation of confidential information can survive even if the information does not constitute a trade secret. We disagree. There is no cause of action for misappropriation of confidential information that is not either secret, or at least substantially secret.[66]

---

[65] Nor have Plaintiffs proven any costs that Kent saved by not having to develop a purported trade secret. There is no mention of costs avoided in Plaintiffs' disclosures or their expert's report, and Plaintiffs agreed to a limine order precluding the introduction of evidence regarding costs avoided. Doc. 290-9 at 4 (Defendants' motion in limine #6); Doc. 300 at 4-5 (Plaintiffs' agreement).

[66] *SP Midtown Ltd. v. Urban Storage L.P.*, No. 14-07-00717-CV, 2008 WL 1991747, at *5 n.5 (Tex. App.—Houston [14th Dist.] May 8, 2008, pet. denied) (mem. op.). Occasionally, confusion on this point arose because "[some] courts refer[red] to 'misappropriation of confidential information'" even though "there is no cause of action for misappropriation of confidential information that is not either secret or at least substantially secret." *Gen. Insulation Co. v. King*, No. 14-08-00633-CV, 2010 WL 307952, at *5 (Tex. App.—Houston [14th Dist.] Jan. 26, 2010, no pet.) (mem. op.). But even courts that referred to "confidential information" cited the elements for a trade-secret claim, because secrecy has always been an "essential element" of any misappropriation claim. *Stewart & Stevenson Servs., Inc. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 99 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

To the extent Plaintiffs' common-law misappropriation claim relates to information that is not a trade secret, it fails under Texas law.[67]

Moreover, when TUTSA was enacted in 2013, it "displace[d] conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret."[68] This provision has been construed broadly to encompass all claims for misappropriation of confidential information, whether the information qualifies as a trade secret or not.[69] Either way, "Texas courts interpret TUTSA as preempting claims based on the alleged improper taking of confidential business information."[70] The Court should grant judgment as a matter of law under Rule 50(a).[71]

---

[67] The court primarily discussed a common-law claim for unfair competition by misappropriation, rather than misappropriation of confidential information, in *AMID, Inc. v. Medic Alert Foundation United States, Inc.*, 241 F. Supp. 3d 788, 825-27 (S.D. Tex. 2017) (Rosenthal, J.). *AMID* should not be interpreted to imply that Texas recognizes a claim for misappropriation of confidential information that is not a trade secret, which would be a misstatement of Texas law. In any event, *AMID* correctly recognizes that TUTSA preempts a claim based on the same facts as a trade-secret claim, such as Plaintiffs' common-law misappropriation claim here. *Id.* at 825-26.

[68] Tex. Civ. Prac. & Rem. Code § 134A.007(a).

[69] *C&M Oilfield Rentals, LLC v. Location Illuminator Techs., LLC*, No. PE:18-CV-00039-DC-DF, 2020 WL 5745833, at *8 (W.D. Tex. Aug. 3, 2020), *report and recommendation adopted*, No. P:18-CV-039-DC, 2020 WL 7012008 (W.D. Tex. Sept. 30, 2020); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, No. 3:16-CV-545, 2018 WL 1796293, at *13-14 (E.D. Va. Apr. 16, 2018) (discussing TUTSA specifically and the Uniform Trade Secrets Act generally).

[70] *C&M Oilfield Rentals*, 2020 WL 5745833, at *8.

[71] While Rule 50(a) refers to claims lacking a sufficient evidentiary basis, the Court may also grant a Rule 50(a) motion on purely legal grounds. *See, e.g., Puga v. RCX Solutions, Inc.*, 922 F.3d 285, 290 (5th Cir. 2019). Alternatively, the Court should dismiss Plaintiffs' common-law misappropriation claim under Rule 12(b)(6), as it is authorized to do during trial by Rule 12(h)(2)(C).

## IV.    The Court should enter judgment on Plaintiffs' fiduciary duty claim.

Plaintiffs also assert a third misappropriation-based claim, alleging that Kent owed a fiduciary duty "to maintain in confidence all confidential and proprietary trade secret information" and breached this alleged duty by "acquiring confidential and proprietary information for use in his new enterprise, Oilpro" in order "to serve the interests of himself and the company he formed to compete with Rigzone."[72]

TUTSA preempts this claim as well. Recently, a federal district court held that TUTSA preempted a claim that the defendant owed "a fiduciary duty to maintain the Trade Secrets and use the same only for the benefit of" the plaintiff and breached that duty by using the information "for its own unauthorized use and benefit and in a manner calculated to harm" the plaintiff.[73] Because "the 'gravamen' of [the plaintiff's fiduciary-duty claim] 'duplicates' its trade-secret-misappropriation claim . . . [it is] preempted."[74] Similarly, a Texas court held that TUTSA preempted a claim alleging that "by using confidential and proprietary information owned by the [plaintiff company] against the interests of the [plaintiff company] . . . the [defendants] are engaging in serious breaches of their fiduciary duty."[75] Because the defendants could not have committed the complained-of acts "without the use of the alleged trade secrets," the

---

[72] Doc. 236 at 52-53.

[73] *Texas Transland, LLC v. Davidson, Inc.,* No. 7:19-cv-00129-O, 2020 WL 1275883, *3 (N.D. Tex. Mar. 17, 2020) (O'Connor, J.).

[74] *Id.*

[75] *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC,* 531 S.W.3d 829, 843 (Tex. App.—Corpus Christi 2017, no pet.).

fiduciary-duty claim "duplicate[d] [the] alleged violation of the Texas Uniform Trade Secrets Act" and was preempted.[76] The same is true here, and the Court should grant judgment as a matter of law under Rule 50(a)[77] on Plaintiffs' fiduciary-duty claim.

This claim also fails because Plaintiffs seek to recover a single category of damages for breach of fiduciary duty—lost profits.[78] As discussed above, Plaintiffs have not alleged, must less proven, that Plaintiffs suffered any lost profits, lost revenue, lost members, lost résumés, lost data, or out-of-pocket expenses.[79] The Court should grant judgment as a matter of law for this reason as well.

## V.   At a minimum, the Court should enter judgment against DHI on the misappropriation-based claims.

If not barred for the reasons above, the claims based on misappropriation of the résumés—the TUTSA, misappropriation, and fiduciary-duty claims—may be brought only by Rigzone, not DHI. Before the misappropriation, Kent sold Rigzone's stock, not its assets, to DHI.[80] Therefore, the entity that owned the résumé database has always been Rigzone, not DHI.[81]

---

[76] *Id.*

[77] TUTSA preemption is a proper basis for judgment under Rule 50(a). Alternatively, the Court should dismiss the fiduciary-duty claim on this basis under Rules 12(b)(6) and 12(h)(2)(C).

[78] Doc. 290-7 at 29.

[79] Transcript of Jury Trial, Nov. 13, 2020, at 46-48 (Kent) (Exhibit B); Transcript of Jury Trial, Mar. 15, 2021 (Durney).

[80] Transcript of Jury Trial, Nov. 13, 2020, at 92, 106 (Exhibit B).

[81] *E.g.*, Doc. 236 at 12 (complaint); DX39 (Rigzone's terms and conditions, state that "The Site, including all pages within and all code related thereto, is the property of Rigzone.com, Inc."); Transcript of Jury Trial, Nov. 13, 2020, at 105 (testimony that Rigzone, not DHI, owned "the résumé file cabinet"), 107.

This precludes DHI from recovering under any theory for the alleged misappropriation of the résumés or résumé database, for the reasons the Texas Supreme Court explained in *Wingate v. Hajdik*. In *Wingate*, as in this case, the sole shareholder of a corporation sued a former shareholder for misappropriating the corporation's assets.[82] The court rejected the claim of the sole owner, holding that the claim "indisputably belongs to [the corporation], and [its current owner] is not entitled to recover personally."[83] Thus, "shareholders . . . cannot recover personally for misappropriation of corporate assets."[84] The Court should grant judgment as a matter of law against DHI.

## VI.   The Court should grant judgment as a matter of law on additional grounds.

1.   There is no legal basis or legally sufficient evidentiary basis for finding Kent liable for a violation of RICO. In particular, there is no basis for a finding that Kent conducted or participated, directly or indirectly, in the conduct of any RICO enterprise's affairs through any pattern of any racketeering activity, or otherwise violated 18 U.S.C. § 1962. There is no legal basis or legally sufficient evidentiary basis to support a finding that any violation of 18 U.S.C. § 1962 proximately caused any damages recoverable under 18 U.S.C. § 1964 or supports any other remedy.

---

[82] 795 S.W.2d 717, 719 (Tex. 1990)

[83] *Id*.; *see also Sneed v. Webre*, 465 S.W.3d 169, 188 (Tex. 2015) ("shareholders have no individual or direct claims for injuries to the corporation").

[84] *Argo Data Res. Corp. v. Shagrithaya*, 380 S.W.3d 249, 272 (Tex. App.— Dallas 2012, pet. denied).

2.      There is no legal basis, legally sufficient evidentiary basis, or clear and convincing evidence to support a finding that Kent misappropriated a trade secret, that any misappropriation proximately caused recoverable damages or supports any other remedy, that any misappropriation was willful or malicious, or that exemplary damages are recoverable under Tex. Civ. Prac. & Rem. Code ch. 41 or otherwise.

3.      There is no legal basis, legally sufficient evidentiary basis, or clear and convincing evidence to support a finding that Kent misappropriated confidential information, that any appropriation proximately caused recoverable damages or supports any other remedy, that any breach was willful or malicious, or that exemplary damages are recoverable under Tex. Civ. Prac. & Rem. Code ch. 41 or otherwise.

4.      There is no legal basis, legally sufficient evidentiary basis, or clear and convincing evidence to support a finding that Kent owed or breached a fiduciary duty, that any such breach caused recoverable damages, that any breach was willful or malicious, or that exemplary damages are recoverable under Tex. Civ. Prac. & Rem. Code ch. 41 or otherwise.

5.      There is no legal basis or legally sufficient evidentiary basis for a finding that Kent violated the Computer Fraud and Abuse Act (CFAA), including 18 U.S.C. § 1030. There is no basis to support a finding that Kent intentionally accessed a computer owned by Plaintiffs; that Kent knowingly, with the intent to defraud, accessed a computer owned by Plaintiffs; that Plaintiffs' computer was a protected computer; that Kent accessed the protected computer without authorization or in a manner

exceeding authorized access; that Kent thereby obtained information from the protected computer; or that Plaintiffs suffered loss of at least $5,000 as a result of Kent's actions. Further, there is no basis that could support a finding of impairment to the integrity or availability of data, a program, a system, or information; interruption of service; or costs Plaintiffs incurred before or after June 10, 2014 to investigate or respond to the unauthorized access. There is no basis that any CFAA violation caused any recoverable damages.

6.      The Court should grant judgment as a matter of law on claims that Plaintiffs have abandoned, including (1) their CFAA claim under 18 U.S.C. § 1030(A)(5)(A), (2) their RICO claim under 18 U.S.C. § 1962(d), and (3) their Texas Harmful Access by Computer Act claim under Tex. Civ. Prac. & Rem. Code §§ 143.001 *et seq.*[85] The Court should grant judgment as a matter of law on Plaintiffs' Texas Theft Liability Act claim under Tex. Civ. Prac. & Rem. Code §§ 134.001 *et seq.*, as Plaintiffs have agreed that summary judgment was proper on this claim.[86]

## Request for Relief

Defendants respectfully request that the Court grant judgment as a matter of law under Rule 50(a), or alternatively dismissal under Rules 12(b)(6) and 12(h)(2)(C).

---

[85] *Compare* Doc. 236 (first amended complaint) *with* Doc. 290-7 (joint jury charge).
[86] Doc. 278 at 23-24; Doc. 279.

Defendants further request that the Court award costs and attorneys' fees against DHI and Rigzone, jointly and severally, in favor of Defendants.

Respectfully submitted,

**FOLEY & LARDNER LLP**

*/s/ James G. Munisteri*
James G. Munisteri
Texas Bar No. 14667380
S.D. Tex. Bar No. 7294
1000 Louisiana, Suite 2000
Houston, Texas 77002-2099
jmunisteri@foley.com
Tel: 713.276.5500
Fax: 713.276.5555

Sara Ann Brown
Texas Bar No. 24075773
2021 McKinney, Suite 1600
Dallas, Texas 75201-3340
sabrown@foley.com

and

**HAYNES AND BOONE, LLP**

Lynne Liberato
Texas Bar No. 00000075
S.D. Tex. Bar No. 3072
Kent Rutter
Texas Bar No. 00797364
S.D. Tex. Bar No. 20519
1221 McKinney, Suite 2100
Houston, Texas 77010-2007
lynne.liberato@haynesboone.com
kent.rutter@haynesboone.com
Tel: 713.547.2000
Fax: 713.547.2600

**Attorneys for Defendants**

## Certificate of Conference

I certify that I conferred with counsel for the plaintiffs regarding the relief this motion requests, and the parties are opposed to the relief requested.

*/s/ James G. Munisteri*
James G. Munisteri

## Certificate of Service

I certify that on March 17, 2021, I electronically filed the foregoing with the Clerk of court using the CM/ECF system, which will send notification of this filing to all counsel of record in this case.

*/s/ James G. Munisteri*
James G. Munisteri