IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC., | |
| *Plaintiffs,* | Civil Action No. 16-1670 |
| v. | |
| DAVID W. KENT, JR., SINGLE INTEGRATED OPERATIONS PORTAL, INC. D/B/A OILPRO AND OILPRO.COM, ET AL., | |
| *Defendants.* | |

# Joint Jury Instructions and Interrogatories

Plaintiffs proposed submissions are highlighted in Blue and Defendants in Green.  Agreed submissions are not highlighted.

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

1

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

## I.    General Instructions

### A.    Burden of Proof

Unless otherwise instructed, you must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so.

In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider

the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In some questions, you will be asked to answer from clear and convincing evidence. By this is meant the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.[1]

### B.    Calling Witnesses

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

### C.    Objections and Rulings of the Court

During the course of the trial, you may have heard counsel make objections to evidence. It is the duty of the attorneys on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. You should not draw any

---

[1] Texas Pattern Jury Charge 111.1 (2016).

inference against an attorney or the attorney's client because that attorney has made an objection.

If I overruled an objection and permitted evidence to be admitted over the objection, my ruling on any objection is not, and should not be considered by you to be, any indication of an opinion by me regarding the weight, effect, or probative value of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of the evidence.

If I sustained an objection to a question or to the introduction of other evidence, you must disregard the question entirely and may draw no inference from the wording of the question, nor speculate regarding what the witness might have said if the witness had been permitted to answer or regarding the content of any document not admitted.

### D.    Witness Testimony

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

4

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

### E.    Expert Witnesses

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

### F.    Consideration of the Evidence

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony, exhibits, stipulated facts, and judicially noticed facts as you feel are justified in the light of common experience. In other words, you may make deductions and

reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

### G.    Juror Notes

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the

notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

## II.    Cautionary Instruction on Damages

You should not interpret the fact that I have given instructions about damages as an indication in any way that I believe that damages should be awarded in this case. It is your task first to decide whether a party is liable. I am instructing you on damages only so that you will have guidance in the event you decide that a party is liable and that damages therefore could be awarded against that party.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

## III.    Instructions on Deliberations

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the

other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

As judges of the facts, you must decide this case based solely on evidence presented here within the four walls of this courtroom. This means that during deliberations you must not conduct any independent research about this case, the topics involved in the case, or the individuals or corporations mentioned. In other words, you are prohibited from consulting dictionaries or reference materials; searching the internet, web sites, or blogs; or using any other electronic tools to obtain information to help you decide the case.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as telephone, cell phone, smart phone, iPhone, Blackberry, or computer. You may not use the internet, or internet service, or any text or instant messaging service, nor communicate or use in

any way any internet chat room, blog, or website such as Facebook, MySpace, LinkedIn, YouTube, or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations. I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the court has given you regarding your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the marshal, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you may, but are not required to, talk with anyone about the case unless the court orders otherwise.

**IV.    No Risk of Double Recovery.**

10

You have heard some discussion of criminal restitution being paid in this case. The goals of paying and methods of calculating criminal restitution are different from damages obligations under civil law. The Court will make a determination after a damages finding, if any, how the payment of criminal restitution may reduce any award of damages. Accordingly, there is no risk that Plaintiffs will recover for the same injury twice. You are instructed not to consider the payment of criminal restitution when evaluating any of the questions you will consider.

## Definitions

1.  "Rigzone" means plaintiff Rigzone.com, Inc.

2.  "DHI" means plaintiff DHI Group, Inc.

3.   "David Kent" means defendant David W. Kent.

4.  "Oilpro" means defendant Single Integrated Operations Portal, Inc., which is doing business as Oilpro and Oilpro.com.

5.  "Plaintiffs" means DHI and Rigzone.

## Question 1a
### (*Trade Secret Ownership*)

Did Plaintiffs own a trade secret in the compilation of resumes and related information in the Rigzone Resume Database?[2]

Did Rigzone own a trade secret in the resumes in Rigzone's resume database?[3]

"Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, process, financial data, or list of actual or potential customers or suppliers that ---

- derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

- is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Even a sale of all the stock in a corporation does not constitute a sale

---

[2] Texas Pattern Jury Charge 111.1 (2016); *Six Dimensions, Inc. v. Perficient, Inc. and Lynn Brading,* 4:17-cv-02680 (SDTX), ECF No. 221 at p. 8.
[3] Texas Pattern Jury Charge 111.1 (2016).

of the corporation's assets.[4] Therefore, a corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary.[5]

In order for a compilation to constitute a trade secret, the compilation must be more than a mere collection of information. Instead, the compilation must work together to embody a definite methodology, process, technique, or strategy.[6]

*Answer "Yes" or "No."*

Answer: _____

---

[4] *Engel v. Teleprompter Corp.*, 703 F.2d 127, 131 (5th Cir. 1983); *Docudata Recs. Mgmt. Servs., Inc. v. Wieser*, 966 S.W.2d 192, 197 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).

[5] *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003).

[6] *Uhlig LLC v. Shirley*, No. 08-cv-01208, 2012 WL 2923242, at *5 (D.S.C. July 17, 2012).

*If you answered "Yes" to Question 1a, then answer the following question. Otherwise, do not answer the following question.*

## Question 1b
### (*Trade Secret Misappropriation*)

Did David Kent misappropriate a trade secret owned by DHI or Rigzone? Rigzone's trade secret?

To find misappropriation of a trade secret, you must find that David Kent—

- Acquired the trade secret, and that David Kent knew or had reason to know that the trade secret was acquired by improper means; or

- Disclosed or used the trade secret without Plaintiffs' Rigzone's express or implied consent, and that David Kent used improper means to acquire knowledge of the trade secret; or

- Disclosed or used the trade secret without Plaintiffs' Rigzone's express or implied consent, and that David Kent, at the time of the disclosure or use, knew or had reason to know that his knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

An employee may use general knowledge, skills, and experience obtained through previous employment to compete with the former

15

employer. A former employee, however, may not use confidential or proprietary information acquired during the employment relationship in a manner adverse to his or her former employer.[7]

"Improper means" is include theft; misrepresentation; breach or inducement of a or breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret.[8]

*Answer "Yes" or "No".*

Answer: _____

---

[7] Texas Pattern Jury Charge 111.2 (2016).
[8] Texas Pattern Jury Charge 111.2 (2016).

*If you answered "Yes" to Question 1b, then answer the following Questions. Otherwise, do not answer the following Questions.*

## **Question No. 1c**
### **(*Trade Secret Damages*)**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiffs for their Rigzone for its damages, if any, proximately caused by the misappropriation, if any?

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him or her would have foreseen that the event, or similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

You shall not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any.[9]

Consider the following elements of damages, if any, and none other.

---

[9] Texas Pattern Jury Charge 115.54 cmt. (2018). Defendants expect to withdraw this instruction upon stipulation that the two elements of damages in this question are alternatives on which an election of remedies will be required.

17

Do not add any amount for interest on damages, if any.

A.    The value that a reasonably prudent investor would have paid for the trade secret.[10]

Defendants object to any measure based on a "reasonably prudent investor." Defendants request: "Rigzone's lost profits caused by the misappropriation."[11] If the Court does give a "reasonably prudent investor" instruction, Defendants request: "If David Kent deprived Rigzone of the trade secret's use or destroyed its value, answer with the value that a reasonably prudent investor would have paid for the trade secret at the time of the misappropriation.[12]

*Answer in dollars and cents, if any.*

Answer:    _____

B.    The value of the unjust enrichment to David Kent.[13]

Profits that David Kent earned from the misappropriation.[14]

*Answer in dollars and cents, if any.*

Answer:    _____

---

[10] *DHI Grp., Inc. v. Kent*, 397 F. Supp. 3d 904, 932 (S.D. Tex. 2019); *Matter of Mandel*, 720 F. App'x 186, 190–91 (5th Cir. 2018); *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 879 (5th Cir. 2013); *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 710–11 (Tex. 2016); *University Computing Company. v. Lykes-Youngstown Corporation*, 504 F.2d 518, 535 (5th Cir. 1974).

[11] Texas Pattern Jury Charge 115.55 (2018).

[12] Texas Pattern Jury Charge 115.55 (2018) cmt. on "Hypothetical Sale."

[13] *DHI Grp., Inc. v. Kent*, 397 F. Supp. 3d 904, 932 (S.D. Tex. 2019); *Matter of Mandel*, 720 F. App'x 186, 190–91 (5th Cir. 2018); *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 879 (5th Cir. 2013); *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 710–11 (Tex. 2016); *University Computing Company. v. Lykes-Youngstown Corporation*, 504 F.2d 518, 535 (5th Cir. 1974).

[14] Texas Pattern Jury Charge 115.55 (2018).

*If you answered "Yes" to Questions 1a and 1b, then answer Question No. 1d. Otherwise, do not answer Question No. 1d.*

### Question No. 1d
### *(Willful and Malicious Misappropriation)*

Do you find by clear and convincing evidence that the harm to Plaintiffs Rigzone resulted from the willful and malicious misappropriation of trade secrets by David Kent?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malicious" means a specific intent by David Kent to cause substantial injury or harm to Rigzone.[15]

*Answer "Yes" or "No."*

Answer: _____

---

[15] Tex. Civ. Prac. & Rem. Code § 41.001(7).

## Question 2a
### *(Breach of Fiduciary Duty)*

Did David Kent breach his fiduciary duty to Rigzone by using confidential or proprietary[16] information he acquired during his employment at Rigzone.com in a manner that was adverse to Rigzone?

Following his employment, an ex-employee has a fiduciary duty that forbids the employee from using confidential or proprietary[17] information acquired during the relationship in a manner adverse to the employer.

*Answer "Yes" or "No."* _____.

---

[16] Texas Pattern Jury Charge (2016) at 111.2.
[17] Texas Pattern Jury Charge (2016) at 111.2.

*If you answered "Yes" to Question 2a, then answer Question 2b. If you answered "No" to Question 2a, then do not answer Question 2b.*

## Question 2b
### *(Fiduciary Duty Damages)*

What sum of money, if paid now in cash, would fairly and reasonably compensate Rigzone for its damages, if any, that were proximately caused by the conduct found in Question 2a?

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.[18]

Consider the following elements of damages, if any, and none other.

Lost profits that were a natural, probable, and foreseeable consequence of David Kent's failure to comply.

*Answer in dollars and cents, if any.*

---

[18] Texas Pattern Jury Charge 100.13 (2018).

21

Answer: _____

### Question 3a
### *(RICO Liability)*

Did David Kent operate or manage an interest in an enterprise through a pattern of racketeering activity?

*Answer "Yes" or "No."* _____.

Plaintiffs [Defendants' position is that "Plaintiffs" should be changed to "Rigzone" throughout this question] assert(s) a claim against David Kent for allegedly violating the Racketeer Influenced and Corrupt Organizations Act, commonly known as "RICO."

Although RICO uses the term "racketeer," "racketeering," and "corrupt organizations," Congress did not mean that Plaintiffs must prove that David Kent is a "racketeer" or a member of what is commonly referred to as "organized crime" in order to recover damages.

To show that David Kent violated RICO, Plaintiffs must prove each of the following four facts[19] elements by a preponderance of the evidence:

First, you must find the existence of an enterprise.

---

[19] 11th Circuit Pattern Jury Instruction 7.3 (modified to change "five facts" to "four facts," as one of the facts is undisputed).

Second, you must find that David Kent was employed by or associated with the alleged enterprise.

Third, you must find that David Kent participated, either directly or indirectly, in the conduct of the affairs of the enterprise.

Fourth, you must find that David Kent participated through a pattern of racketeering activity.

Now I'll provide you with some additional instructions to apply as you consider the facts that Plaintiffs must prove.[20]

For the first element, Plaintiffs must prove the existence of an enterprise.[21]

An "enterprise" may consist of an individual, partnership, corporation, association, or other legal entity.

An "enterprise" doesn't have to be a legal entity. It can be an association of persons or entities. The association between the enterprise's members might be loose or informal. But the enterprise must have at least a purpose, relationships among those associated with the enterprise, and a duration sufficient to permit those associates to pursue the enterprise's

---

[20] 11th Circuit Pattern Jury Instruction 7.3.
[21] 11th Circuit Pattern Jury Instruction 7.3.

purpose.[22]

The alleged scheme need not actually succeed in defrauding anyone.

An enterprise may also be any group of individuals associated in fact although not a legal entity.[23] Proof that an entity has a legal existence, such as a corporation or partnership, satisfies the definition of an enterprise.[24]

In this case, the enterprise is alleged to be Oilpro and its employees.

For the second element, Plaintiffs must prove that David Kent was employed by or associated with the alleged enterprise. The requirement that David Kent be "employed by or associated with" the enterprise means he must have some minimal association with the alleged enterprise. David Kent must know something about the alleged enterprise's activities as they relate to the racketeering activities.

For the third element, Plaintiffs must also prove by a preponderance of the evidence that David Kent "participated, directly or indirectly, in the conduct of the affairs of the enterprise." To prove this, Plaintiffs must show

---

[22] 11th Circuit Pattern Jury Instruction 7.3.
[23] *DHI Grp., Inc. v. Kent*, 397 F. Supp. 3d 904, 927 (S.D. Tex. 2019) ("Kent is a distinct legal entity from Oilpro and through their association, they form an "enterprise" under RICO.").
[24] *Id.*

24

that David Kent actively conducted or participated in conducting the affairs of the alleged enterprise through a pattern of racketeering activity. David Kent doesn't need to participate in, or be aware of, all of the enterprise's activities. It's sufficient if David Kent conducted or participated in the conduct of some of the enterprise's activities through a pattern of racketeering activity.

For the fourth element, Plaintiffs must prove that David Kent participated in the conduct of the enterprise's affairs through a pattern of racketeering activity. "Racketeering activity" is an act that violates the federal wire fraud statute. I'll explain the law about this statute to help you determine whether Plaintiffs proved by a preponderance of the evidence that David Kent violated this statute. An act of "racketeering activity" is also called a "predicate act."

A "pattern of racketeering activity" means that David Kent committed at least two distinct acts of wire fraud. But by itself, proof of two or more acts of wire fraud doesn't establish a pattern under RICO.

In order to establish that wire fraud has been committed for the purpose of this case, Plaintiffs must show by a preponderance of the evidence that:

- That David Kent knowingly created devised a scheme to defraud, that is, a scheme to defraud Plaintiffs by:

  1. Using the internet to copy resumes from Rigzone's resume database; or

  2. Using the internet to repeatedly access Rigzone's Google Analytics Data; or

  3. Using the internet to email DHI representatives about the growth and finances of Oilpro so as to induce DHI to purchase Oilpro.

- That the scheme to defraud employed false material misrepresentations;[25] and

- That David Kent acted with the specific intent to defraud.

A "scheme to defraud" means any plan, pattern, or course of action intended to deprive another of money or property or bring about some financial gain to the person engaged in the scheme. The scheme need not actually succeed in defrauding anyone.[26]

A "specific intent to defraud" means a conscious, knowing intent to

---

[25] 5th Circuit Criminal Pattern Jury Charge; *In re MasterCard Int'l Inc.*, 313 F.3d 257, 263 & n.23 (5th Cir. 2002) (quoting *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993)) ("an element of a RICO mail fraud claim is 'a scheme to defraud my means of false or fraudulent misrepresentation'").

[26] 5th Circuit Criminal Pattern Jury Charge.

deceive or cheat someone.

A representation or pretense[27] is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation or pretense would also be "false" if it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with the intent to defraud.

A representation or pretense[28] is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

It is not necessary that Plaintiffs[29] To find that David Kent committed wire fraud, Plaintiffs do not have to prove all of the details concerning the precise nature of the scheme. It is also not necessary that Plaintiffs[30] Plaintiffs also do not have to prove that the information in the emails David Kent sent to representatives of DHI was itself false or fraudulent, or that the use of the internet was intended as the specific or exclusive means of accomplishing the alleged fraud. What must be proved is that David Kent's use of the

---

[27] *Id.*
[28] 5th Circuit Criminal PJC (2019) at 2.57.
[29] 5th Circuit Criminal PJC (2019) at 2.57.
[30] 5th Circuit Criminal PJC (2019) at 2.57.

internet was closely related to the scheme because David Kent used the internet in an attempt to execute or carry out the scheme.

Each separate use of the internet in furtherance of a scheme to defraud by means of false or fraudulent pretenses, or false or fraudulent representations constitutes a separate offense.[31]

To prove a pattern of predicate acts, Plaintiffs must show that the acts were related to one another and to the enterprise. Two or more acts of racketeering activity that aren't related don't establish a pattern of racketeering activity under RICO. Predicate acts are "related" to one another if they have the same or similar purposes, results, participants, victims, or methods. Predicate acts are also related if they have common distinguishing characteristics and aren't isolated events.

To be related, the predicate acts don't have to be the same kind of acts. For example, the acts may comprise different kinds of wire fraud.

To make up a pattern of racketeering activity, David Kent's alleged

---

[31] 5th Circuit Criminal PJC (2019) at 2.57; *Morgan v. Bank of Waukegan*, 804 F.2d 970, 976 (7th Cir. 1986) ("The mere fact that the complexity of the transaction generates numerous pieces of paper and hence a greater number of possible fraudulent acts does not make these predicate acts ongoing over a period of time so as to constitute separate transactions that are distinct in time and place.").

acts of wire fraud must demonstrate continuity. Continuity can be demonstrated in two basic ways. The first is to demonstrate related acts of wire fraud extending over a substantial period of time. The second is to show conduct that doesn't occur over a substantial period of time but, by its nature, is likely to be repeated into the future. A pattern is not formed by sporadic activity.[32] Further, continuity cannot be established even by multiple acts of wire fraud, if those acts are designed to defraud one victim on one occasion.[33]

Again, "racketeering activity" means an act that violates the wire fraud statute. But you can't consider just any racketeering act David Kent allegedly committed in violation of one of these statutes as bearing on whether David Kent has committed two or more predicate acts as a pattern of racketeering activity.  To determine if there is a pattern of racketeering activity, you must consider only those specific racketeering acts Plaintiffs allege against David Kent. And you can't find that David Kent engaged in a "pattern of racketeering activity" unless you unanimously agree on which of the alleged

---

[32] *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 239 (1989).

[33] *Lipin Enters. Inc. v. Lee,* 803 F.2d 322, 324 (7th Cir. 1986); *see also Sever v. Alaska Pulp Corp.,* 978 F.2d 1529, 1535-36 (9th Cir. 1992).

predicate acts, if any, make up the pattern.

So it's insufficient if you don't all agree to the finding of what two or more predicate acts David Kent committed. Some of you can't find that the predicate acts are A, B, and C and the rest of you find that the predicate acts are X, Y, and B. Put another way, you can't find that David Kent has engaged in a pattern of racketeering activity unless you find (1) a "pattern" of predicate acts, and (2) that Plaintiffs have proved by a preponderance of the evidence that David Kent committed each of the two or more predicate acts that you find make up that pattern.

A person doesn't violate RICO just by associating with or being employed by an otherwise lawful enterprise if others conduct the enterprise's affairs through a pattern of racketeering activity in which the person isn't personally engaged.

*If you answered "Yes" to Question 3a, then answer Question 3b. Otherwise, do not answer Question 3b.*

### Question No. 3b
### *(RICO Damages)*

What is the amount of damages, if any, that you find was proximately caused to Rigzone by David Kent's copying of resumes from Rigzone's resume database?

If you find that David Kent violated RICO, you must decide whether that violation caused an injury to Plaintiffs Rigzone. The damages that Plaintiffs Rigzone may recover are those caused by the predicate acts constituting the pattern of racketeering activity if they injure Plaintiffs or their Rigzone in[34] its business or property. It isn't necessary that every predicate act caused damage to Plaintiffs Rigzone. But Plaintiffs Rigzone can only recover damages caused by predicate acts that are part of the pattern of racketeering activity.

*Answer in dollars and cents, if any.*

Answer: _____

---

[34] 18 U.S.C. § 1964(c) ("Any person injured *in* his business or property by reason of a violation of section 1962 . . . may sue . . . .") (emphasis added).

## Question No. 4a
### *(Misappropriation of Confidential Information)*

Did David Kent misappropriate Plaintiffs' Rigzone's confidential information?

To prove David Kent misappropriated confidential information, Plaintiffs Rigzone must show:

- The existence of confidential information that is either secret or substantially secret[35];

- Breach of a confidential relationship or improper discovery of confidential information; and

- Use of the confidential information without Plaintiffs' authorization.

*Answer "Yes" Or "No."*

Answer:_____

---

[35] *Stewart v. Stevenson Servs., Inc. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 99 (Tex. App. 1994, no writ).

32

*If you answered "Yes" to Question 4a, then answer the following Question. Otherwise, do not answer the following Question.*

### **Question No. 4b**
***(Misappropriation Damages)***

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiffs Rigzone for their its damages, if any, proximately caused by misappropriation, if any?

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him or her would have foreseen that the event, or similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Consider the following elements of damages, if any, and none other.

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

Do not award any amounts for damages resulting from conduct that occurred prior to June 10, 2014.

The value that a reasonably prudent investor would have paid for the confidential information.

Defendants object to any measure based on a "reasonably prudent investor." If this question is submitted, Defendants request the following element of damages: "Rigzone's lost profits caused by the misappropriation."[36] Alternatively, Defendants request "If David Kent deprived Rigzone of the trade secret's use or destroyed its value, answer with the value that a reasonably prudent investor would have paid for the trade secret at the time of the misappropriation.[37]

*Answer in dollars and cents, if any.*

Answer: _____

---

[36] Texas Pattern Jury Charge 115.55 (2018).
[37] Texas Pattern Jury Charge 115.55 (2018) cmt. on "Hypothetical Sale."

## Question 5a
### *(CFAA – 18 USC Section 1030(a)(2)(C))*

Did David Kent violate Section 1030(a)(2)(C) of the CFAA?

In order to prevail, Plaintiffs Rigzone must prove:

- David Kent intentionally accessed a computer owned by Plaintiffs Rigzone;

- Plaintiffs' Rigzone's computer was a protected computer;

- David Kent accessed the protected computer without authorization or in a manner exceeding authorized access;

- David Kent thereby obtained information from the protected computer; and

- Plaintiffs Rigzone suffered loss of at least $5,000 as a result of David Kent's actions.

"Computer" and "computer system" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar

device;

"Protected computer" means a computer that is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States.

"Without authorization" means without permission or power to use the computer for any purpose granted by an authority.

"Exceeds authorized access" means to access a computer without authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter.

"Intent to defraud" means an intent to deceive or cheat.

"Loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

"Person" means any individual, firm, corporation, educational institution, financial institution, governmental entity, or legal or other entity.

*Answer "Yes" or "No."* _____

36

## Question 5b
### *(CFAA – 18 USC Section 1030(a)(4))*

Did David Kent violate Section 1030(a)(4) of the CFAA?

In order to prevail, Plaintiffs Rigzone must prove:

- David Kent knowingly, with the intent to defraud, accessed a computer owned by Plaintiffs Rigzone;

- Plaintiffs' Rigzone's computer was a protected computer;

- David Kent accessed the protected computer without authorization or in a manner exceeding authorized access;

- David Kent thereby obtained information from the protected computer; and

- Plaintiffs Rigzone suffered loss of at least $5,000 as a result of David Kent's actions.

"Computer" and "computer system" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar

device;

"Protected computer" means a computer that is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States.

"Without authorization" means without permission or power to use the computer for any purpose granted by an authority.

"Exceeds authorized access" means to access a computer with authorization and to use such access to obtain or alter information in the computer that the assessor is not entitled so to obtain or alter.

"Intent to defraud" means an intent to deceive or cheat.

"Loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

"Person" means any individual, firm, corporation, educational institution, financial institution, governmental entity, or legal or other entity. *Answer "Yes" or "No."* _____.

*If you answered "Yes" to Question 5a and/or Question 5b, then answer the following question. Otherwise, do not answer Question 5c.*

## Question 5c
### (CFAA Damages)

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiffs Rigzone for their its damage or loss, if any, by reason of such conduct?

"Costs incurred in responding to David Kent's conduct" means costs attributable to identifying and correctly technology problems resulting from David Kent's conduct. Such costs do not include any costs associated with assisting the government with its investigation or prosecution of that conduct.[38]

Consider the following elements of damages, and none other.

Do not add any amount for interest on damages, if any.

Do not award any amounts for damages resulting from any conduct that occurred prior to June 10, 2014.

Answer separately in dollars and cents for damages, if any.

(a)    Any reasonable cost of remediating any impairment to the integrity or

---

[38] *U.S. v. Schuster*, 467 F.3d 614, 620 (7th Cir. 2006); *U.S. v. Middleton*, 231 F.3d 1207, 1213 (9th Cir. 2000).

availability of data, a program, a system, or information.

Answer: $_____

(b)  Any reasonable costs that Plaintiffs Rigzone incurred in responding to David Kent's conduct; in conducting a damage assessment; or in restoring the program, data, system, or information to its condition prior to David Kent's conduct.

Answer: $_____

(c)  Any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

Answer: $_____

*Answer the following question only if you answered "Yes" to Question 1d* OR Question 2a[39]. *Otherwise, do not answer the following question.*

### Question No. 6
### *(Exemplary Damages)*

What sum of money, if any, if paid now in cash, should be assessed against David Kent and awarded to Plaintiffs Rigzone as exemplary damages, if any, for the conduct found in response to Question 1d and/or 2a? "Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are-

- The nature of the wrong.

- The character of the conduct involved.

- The degree of culpability of David Kent.

- The situation and sensibilities of the parties concerned.

- The extent to which David Kent's conduct offends a public sense of justice and propriety.

In answering this question, you may consider that David Kent has

---

[39] *Manges v. Guerra*, 673 S.W.2d 180, 184 (Tex. 1984) ("[I]n addition to equitable relief, the plaintiff may also recover actual and exemplary damages caused by the fiduciary's breach.")

41

previously paid criminal restitution to Plaintiffs in the amount of $3,292,800.00.

*Answer in dollars and cents, if any.*

Answer: _____

### Oilpro/Kent claims and defenses

### Oilpro Question No. 7a
### *(CFAA – 18 USC § 1030(g): liability)*

Did Plaintiffs do any of the following and, as a result, cause damage or loss to Oilpro that, during any one-year period, aggregated at least $5,000 in value?

"Damage" means any impairment to the integrity or availability of data, a program, a system, or information.

"Loss" means any reasonable cost to Oilpro of responding to an offense, conducting a damage assessment, and of restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, costs incurred, or any other consequential damages incurred because of interruption of service.

(a)    obtain information from any computer used in interstate commerce by, without authorization, intentionally accessing the computer, or exceeding authorized access to that computer?[40]

*Answer "Yes" or "No."*

---

[40] 18 U.S.C. § 1030(a)(2)(C).

43

Answer: _____

(b)    knowingly, and with an intent to defraud, further the intended fraud and obtain anything of value by either accessing a computer used in interstate commerce, or exceeding authorized access to that computer?[41]

*Answer "Yes" or "No."*

Answer: _____


Did DHI violate Section 1030(a)(2)(C) of the CFAA?

In order to prevail against DHI, Oilpro must prove:

- DHI intentionally accessed a computer owned by Oilpro;

- Oilpro's computer was a protected computer;

- DHI accessed the protected computer without authorization or in a manner exceeding authorized access on or before June 16, 2015 by violating Oilpro's written Terms and Conditions[42];

- DHI thereby obtained information from the protected computer; and;

---

[41] 18 U.S.C. § 1030(a)(4).

[42] Oilpro's Second Amended Counterclaims (ECF 63) at Paragraphs 27-28, 39-42.

44

- Oilpro suffered loss of at least $5,000 as a result of David Kent's actions.

"Computer" and "computer system" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device;

"Protected computer" means a computer that is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States.

"Without authorization" means without permission or power to use the computer for any purpose granted by an authority.

"Exceeds authorized access" means to access a computer without authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter.

"Intent to defraud" means an intent to deceive or cheat.

"Loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

"Person" means any individual, firm, corporation, educational institution, financial institution, governmental entity, or legal or other entity.

*Answer "Yes" or "No."* _____.

*Answer the following question only if you answered "Yes" to Question 7a. Otherwise, do not answer the following question.*

<u>**Oilpro Question No. 7b**</u>
*(CFAA – 18 USC § 1030(g): damages)*

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Oilpro for its damage or loss, if any, by reason of such conduct?

Consider the following elements of damages, and none other.

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

(a)    Any reasonable cost Oilpro incurred in responding to Plaintiffs' conduct; in conducting a damage assessment; or in restoring the data, program, system, or information to its condition prior to Plaintiffs' conduct.

Answer: $_____

## Oilpro Question No. 8a
### *(Contract: Existence)*

When Plaintiffs used automated means to obtain members' information from Oilpro's website, did Plaintiffs have actual or constructive knowledge of the that Oilpro website's terms and conditions[43] prohibiting scraping of publicly available profile information?[44]

Plaintiffs had constructive knowledge of the terms and conditions if the Oilpro website gave Plaintiffs reasonable notice of those terms and conditions[45] on or before of June 16, 2015.[46]

*Answer "Yes" or "No."*

Answer: _____

(i)    Did the Oilpro Terms and Conditions prohibit scraping of publicly available information on or before June 16, 2015?

*Answer "Yes" or "No." _____.*

*If you answered "No," skip to Question 9a.*

(ii)    Did the Oilpro website contain a link to its Terms and Conditions on

---

[43] CouponCabin LLC v. Savings.com, Inc., No. 2:14-CV-39-TLS, 2016 WL 3181826, at *7 (N.D. Ind. June 8, 2016) ("Browsewrap agreements [are] enforceable when a user has actual or constructive knowledge of the website's terms and conditions").

[44] Oilpro's Second Amended Counterclaims (ECF 63) at Paragraphs 27, 28, 50-56.

[45] *Sgouros v. TransUnion Corp.*, No. 14 C 1850, 2015 WL 507584, at *6 (N.D. Ill. Feb. 5, 2015) ("When there is no evidence that users had actual knowledge of the terms at issue, the validity of a Browsewrap contract hinges on whether a website provided reasonable notice of the terms of the contract . . . .").

[46] Oilpro's Second Amended Counterclaims (ECF 63) at Paragraphs 27, 28, 50-56.

or before June 16, 2015?

*Answer "Yes" or "No."* _____.

*If you answered "No," skip to Question 9a.*

(iii)    Did DHI have constructive notice of Oilpro's Terms and Conditions on or before June 16, 2015?

DHI had constructive knowledge of the terms and conditions if the Oilpro website gave DHI reasonable notice of those terms and conditions on or before of June 16, 2015.

*Answer "Yes" or "No."* _____.

*If you answered "No," skip to Question 8a.*

*Answer the following question only if you answered "Yes" to Question 8a. Otherwise, do not answer the following question.*

### Oilpro Question No. 8b
***(Contract: Liability)***

Did Plaintiffs fail to comply with the Oilpro website terms and conditions?[47]

Did DHI violate Oilpro's Terms and Conditions on or before June 16, 2015 by scraping publicly available information from the Oilpro website?[48]

*Answer "Yes" or "No."* _____

---

[47] Texas Pattern Jury Charge 101.2 (2018).
[48] Oilpro's Second Amended Counterclaims (ECF 63) at Paragraphs 27, 28, 50-56.

*Answer the following question only if you answered "Yes" to Question 8b. Otherwise, do not answer the following question.*

## Oilpro Question No. 8c
### *(Contract: Damages)*

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Oilpro for its damages, if any, that resulted from such failure to comply?

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

(a)    Lost profits proven with reasonable certainty:

Answer: $_____

(b)    The reasonable costs of investigating and remediating any harm to the Oilpro website and computer system:

Answer: $_____

(c)    The value of the resumes Plaintiffs scraped from the Oilpro website:

Answer: $_____

51

## Oilpro Question No. 9a
### *(Unfair Competition - Misappropriation: Liability)*

Did Rigzone or DHI engage in unfair competition with Oilpro?

Unfair competition occurred if:

(a)    Oilpro, through extensive time, labor, skill, and money, had created a product—either tangible or intangible—that provided some commercial advantage;

(b)    Plaintiffs used the product in competition with Oilpro and thereby gained a special advantage in that competition (i.e., a "free ride") because Plaintiffs were burdened with little or none of the expense Oilpro incurred; and

(c)    Oilpro suffered commercial damage as a result.

*Answer "Yes" or "No" as to each of the following:*

Rigzone:    _____

DHI:    _____

*Answer the following question only if you answered "Yes" to Question 9a as to Rigzone and/or DHI. Otherwise, do not answer the following question.*

<u>**Oilpro Question No. 9b**</u>
***(Unfair Competition - Misappropriation: Damages)***

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Oilpro for its damages, if any, that were proximately caused by such conduct?

Consider the following elements of damages, if any, and none other.

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

(a)    Lost profits proven with reasonable certainty:

Answer:    $_____

(b)    Oilpro's costs in developing the product:[49]

Answer:    $_____

(c)    Plaintiffs' profits, attributable to Plaintiffs' use of the product.[50]

Answer:    $_____

---

[49] *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 842 (5th Cir. 2004)

[50] *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 801-02 (5th Cir. 2011) (measuring damages in Lanham Act case based on "profits on the Database that [the defendant] would not have been able to earn in the absence of the misrepresentations").

*Answer the following question only if you answered "Yes" to Question 9a as to Rigzone and/or DHI and awarded damages in response to Question 9b. Otherwise, do not answer the following question.*

### Oilpro Question No. 9c
*(Comparative Responsibility)*

For each person that you found caused or contributed to cause damages, find the percentage of responsibility attributable to each.

Assign percentages of responsibility only to those you found caused or contributed to cause the damages. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers.

The percentage of responsibility attributable to any one is not necessarily measured by the number of acts or omissions found.

(a)    DHI            _____%

(b)    Rigzone        _____%

*Answer this question as to Rigzone and/or DHI only if you answered "Yes" as to Rigzone and/or DHI in response to Question No. 9a. Otherwise, do not answer this question.*

### Oilpro Question No. 9d
*(Misappropriation: Malice)*[51]

Do you find, by clear and convincing evidence, that the harm to Oilpro resulted from malice?

"Clear and convincing evidence" is the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means a specific intent by Plaintiffs to cause substantial injury or harm to Oilpro.

*Answer "Yes" or "No" as to each.*

Rigzone: _____

DHI: _____

---

[51] *U.S. Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217, 219-20, 223 (Tex. App.—Waco 1993, writ denied) (holding that "exemplary damages are recoverable for [unfair competition by] misappropriation" and affirming an award of exemplary damages for such claim).

*Answer this question as to Rigzone and/or DHI only if you answered "Yes" as to Rigzone and/or DHI in response to Question No. 9d. Otherwise, do not answer this question.*

## Oilpro Question No. 9d
### *(Unfair Competition - Misappropriation: Exemplary Damages)*

What sum of money, if any, if paid now in cash, should be assessed against Plaintiffs and awarded to Oilpro as exemplary damages, if any, for the conduct you found in response to Question No. 8c?

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are —

1.    The nature of the wrong.

2.    The character of the conduct involved.

3.    The degree of culpability of the plaintiff.

4.    The situation and sensibilities of the parties concerned.

5.    The extent to which such conduct offends a public sense of justice and propriety.

6.    The net worth of Rigzone or DHI.

*Answer in dollars and cents, if any, as to each.*

Rigzone:    $_____

56



DHI        $_____

Defendants did not include a claim for Exemplary Damages in their Second

Amended Counterclaims. *See* ECF 63 at Paragraphs 70-73).

**Oilpro Question No. 10**
*(TUTSA: Bad Faith)*

Did Rigzone and DHI act in bad faith in pursuing their claim for misappropriation of trade secrets?

"Bad faith" means to bring a claim for a dishonest, discriminatory, or malicious purpose.[52] Defendants do not believe a definition of "bad faith" is needed. If a definition is given, Defendants request the following: "Bad faith" means the claim was entirely baseless or specious and that the claim was taken in subjective bad faith or for other improper purposes."[53]

In answering this question, you may consider that David Kent has previously paid criminal restitution to Plaintiffs in the amount of $3,292,800.00.

*Answer "Yes" or "No" as to each of the following.*

Rigzone:     _____

DHI: _____

---

[52] *Performance Pulsation Control, Inc. v. Sigma Drilling Techs., LLC,* No. 05-17-01423-CV, 2018 WL 6599180, at *2 (Tex. App. Dec. 17, 2018) (citing *D Design Holdings, L.P. v. MMP Corp.,* 339 S.W.3d 195, 203 (Tex. App.—Dallas 2011, no pet.)).

[53] *Stockade Companies, LLC v. Kelly Rest. Grp., LLC,* No. A-17-CV-143 RP, 2018 WL 3018177, at *6 (W.D. Tex. June 15, 2018).