UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DHI Group, Inc., et al., <br><br> Plaintiffs, <br><br> vs. <br><br> David W. Kent, Jr., et al., <br><br> Defendants. | Civil Action No. 16-1670 |

## Oilpro and David W. Kent, Jr.'s Objections to Plaintiffs' Proposed Judgment

Defendants appreciate the Court allowing and considering additional briefing on the vital legal issues raised by Plaintiffs' proposed judgment. Given Mr. Kent's deteriorating health, it is personally very important to him and his family that these matters are resolved now, rather than on appeal.

The Court should enter judgment that Plaintiffs take nothing. After assuring the jury that there was no chance of a double recovery in the case, Plaintiffs now seek a *triple* recovery. Plaintiffs' arguments—most of which have been made for the first time within the past 24 hours—are meritless:

- David Kent's October 2017 restitution payment compensated for the same injury as the damages awarded by the Jury and therefore offsets the full damages amount.

- The one-satisfaction applies when there is one injury, regardless of the causes of action asserted.

- Any award of attorneys' fees is premature but Plaintiffs will not be entitled to any fees under RICO because the jury found they suffered no injury to their business or property.

- 1 -

**A. David Kent's restitution payment offsets all damages in the Jury's verdict.**

In October 2017, David Kent paid $3,292,800 in restitution to "the victim of the offense charged in Count One" in the criminal case against him:

> COUNT ONE
>
> (Fraud and Related Activity in Connection with Computers)
>
> The United States Attorney charges:
>
> 1. From at least in or about October 2013, up to and including at least in or about February 2016, in the Southern District of New York and elsewhere, DAVID W. KENT, the defendant, intentionally accessed a computer without authorization and exceeded authorized access and thereby obtained information from a protected computer, which offense was committed for purposes of commercial advantage and private financial gain, to wit, KENT accessed client information from the database of a website ("Website-1") owned by a company ("Company-1") without authorization for the purpose of increasing the membership of a website ("Website-2") owned by KENT.

Docket No. 381-2 at 1. "Website-1" as described in Count One is, of course, www.rigzone.com, which was owned by "Company-1": Plaintiff RIGZONE.COM, Inc. When David Kent paid restitution, that payment was intended to compensate the "victim" of the CFAA violation: Rigzone. **Exhibit 1** (Declaration of Dan Cogdell). To the extent there is any ambiguity as to who that is, it was created by Plaintiffs, who are now seizing on it in an attempt to recover multiple times for the same injury.

Prior to David Kent's sentencing, a victim statement was submitted on behalf of both Rigzone and DHI. Brian Campbell submitted the statement as

General Counsel and Vice President of Business and Legal Affairs for *both entities*, and he defined the two entities together as "DHI".



September 27, 2017

Re: *United States v. David Kent*, 16 cr 385 (DLC)
Victim Impact Statement — DHI Group, Inc.

Honorable Judge Denise L. Cote
Southern District of New York
United States District Court
500 Pearl Street, Rm. 1040
New York, New York 10007

Dear Judge Cote:

I am the General Counsel and Vice President of Business and Legal Affairs for DHI Group, Inc. and one of its subsidiaries, Rigzone.com, Inc. (together, "DHI") and write this Victim Impact Statement concerning defendant David Kent's ("Kent") criminal conduct and sentencing. As Vice President of Business and Legal Affairs, I have been responsible for many of the business activities impacted by Kent's illegal conduct.

**Exhibit 2**. Pursuant to the restitution order and final judgment in the criminal case, the restitution was submitted to the government and then distributed according to the orders. The final judgment found a "total loss" of $3,292,800 and ordered David Kent to pay that amount *in full*. The orders directed the payment to DHI Group, Inc., to Brian Campbell's attention:

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| DHI Group, Inc. | $3,292,800.00 | $3,292,800.00 | |
| ATTN: Brian P. Campbell, Vice President of Business and Legal Affairs and General Counsel | | | |
| 1040 Avenue of the Americas, 8th Floor | | | |
| New York, NY 10018 | | | |

**Exhibit 3** at 6. Of course, Brian Campbell told the Court and DOJ that he was acting as general counsel for both DHI and Rigzone.

Plaintiffs' contention that the restitution payment only applied to DHI's losses (and not Rigzone's) is disingenuous. In submissions to both the Court and DOJ, Plaintiffs' representatives stated that they were acting on behalf of both entities. In the summer of 2014, for example, the DOJ requested information regarding the "loss or harm sustained by **Rigzone**" and counsel responded on behalf of both DHI and Rigzone:

> -------- Original message --------
> From: Steven.Roosa@hklaw.com
> Date:07/02/2014 5:29 PM (GMT-05:00)
> To: Jordan.Loyd@ic.fbi.gov,Serrin.Turner@usdoj.gov
> Cc: Marc.Reisler@hklaw.com,Brian Campbell
> Subject: Dice Holdings - Confidential
>
> Serrin and Jordan,
>
> We wanted to follow up on our call regarding the unauthorized access of Rigzone's company data, because the client, Dice Holdings (Rigzone is the subsidiary) has done some further investigation and gotten answers to your follow-up questions posed during the call. First, as to your question of how much overlap exists between Oilpro and Rigzone's profile database following the theft of data, Dice Holdings has conducted a review of Oilpro's public-facing website, based on a sample of 21,000 job seeker profiles, and found an overlap of a whopping 46% of Oilpro's profiles with those of Rigzone. This surprised even us, and suggests that Oilpro would not be viable, absent the theft of data from Rigzone. Oilpro is reportedly valued at around $15MM.
>
> The second question you posed pertained to the extent of the loss or harm sustained by Rigzone, as a result of the theft. We believe the amount of harm, at the very least, to be in the millions of dollars. Dice Holdings paid $51.7MM for Rigzone in August 2010. Assuming David Kent or his

**Exhibit 4**. And in June 2016, counsel for DHI submitted information regarding losses on behalf of both entities:

> Re: **DHI Group, Inc.**
>
> Dear Andrew:
>
> Thank you for your e-mail. In response to your targeted requests for information, DHI Group, Inc. ("DHI") and Rigzone.com, Inc. ("Rigzone") submit the attached documents providing support for the specific categories of losses that you have identified in your email. We emphasize that these attachments do not reflect our "estimate of loss" or the total damages suffered as a result of the actions of David Kent, oilpro.com, and others. Instead, the information provided is merely intended to illustrate the types of costs that you have requested. DHI and Rigzone's monetary damages far exceed the amounts reflected in the attachments, and this submission does not address those amounts.

**Exhibit 5**.

Plaintiffs' efforts to blur the lines between DHI and Rigzone continued through trial. Indeed, during closing argument, Plaintiffs' counsel conceded that the *only* difference between the damages under TUTSA (where the jury

was asked only about **Rigzone's damages**) and misappropriation of confidential information (where the jury was asked to determine **Plaintiffs' damages**), was "a little twist" involving a date limitation. (3/25/2021 Trial Transcript [Rough] at 82:01 – 20) (explaining how to adjust Johnson's damages model, to account for the 2-year limitations period).

Plaintiffs proposed judgment would allow Plaintiffs a triple recovery: first through restitution and then by allowing each Plaintiff to recover damages for the same conduct and same harm, based on the jury's verdict. Texas does not allow a *double* recovery for one injury, much less a *triple* recovery. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991) ("The one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury"). The Court should not entertain Plaintiffs' attempt to recover three times for the same injury.

**B.   The restitution payment covers the damages assessed by the Jury.**

Plaintiffs cite no authority for the position that the restitution payment would only offset CFAA damages; there is no authority for this position. Under Texas law, whether the one-satisfaction rule applies is determined by the injury sustained—not the causes of action asserted. *AMX Enterprises, Inc. v. Bank One, N.A.*, 196 S.W.3d 202, 206 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 8 (Tex. 1991) ("There can be but one recovery for one injury, and the fact that more than one defendant may have caused the injury or that there may be more than one theory of liability, does not modify this rule").

Here, David Kent paid Plaintiffs for their single injury through restitution and this is the same injury that Plaintiffs submitted to the jury through Questions 1 (regarding TUTSA) and 4 (regarding misappropriation of confidential information). Plaintiffs cannot avoid the application of the offset

simply by telling the jury (as Plaintiffs did in closing argument) not to award any damages for the CFAA violations. (3/25/2021 Trial Transcript [rough] at 83:02 – 14).[1]

### C. DHI cannot recover on a misappropriation of trade secrets claim.

Plaintiffs argued repeatedly that a liability finding on the TUTSA claim would trigger preemption of Plaintiffs' misappropriation claim. For example, on March 17, 2021, counsel for Plaintiffs responded to the Court's inquiry about TUTSA preemption: "is anything preempted? How is that determined?" Plaintiffs stated: "It's argued to the jury. . . **if they find that there is a theft of trade secret, then the misappropriation of confidential information is preempted**." (Transcript of 3/17/2021 Trial 80:15 – 24). Nevertheless, Plaintiffs now claim that DHI can still recover on the misappropriation claim.

As an initial matter, Plaintiffs' common-law misappropriation claims fail regardless of whether the allegedly confidential information is a trade secret or not. *See* Docket No. 360 at 14-15. On the one hand, if the information is not a trade secret, no cause of action exists under Texas law: "There is no cause of action for misappropriation of confidential information that is not either secret, or substantially secret." *SP Midtown Ltd. v. Urban Storage L.P.*, No. 14-07-00717-CV, 2008 WL 1991747, at *5 n.5 (Tex. App.—Houston [14th Dist.] May 8, 2008, pet. denied) (mem. op.). On the other hand, if the information is a trade secret, any common-law claim is preempted by TUTSA, which "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Tex. Civ. Prac. & Rem. Code § 134A.007(a). "Regardless of whether [the] claim

---

[1] In addition, Plaintiffs miscalculate the amount of prejudgment interest because they apply the incorrect accrual date and/or do not stop the accrual of interest when Defendants made a settlement offer. Even after adding any prejudgment interest to the actual damages, that sum is still less than the restitution amount.

involves a trade secret of not," the claim fails. *C&M Oilfield Rentals, LLC v. Location Illuminator Techs., LLC*, No. PE:18-CV-00039-DC-DF, 2020 WL 5745833, at *8-9 (W.D. Tex. Aug. 3, 2020), *report and recommendation adopted*, No. P:18-CV-039-DC, 2020 WL 7012008 (W.D. Tex. Sept. 30, 2020).

Here, the jury found that the information is a trade secret. Question 1(a) asked: "Did Rigzone own a trade secret in Rigzone's resume database?" By answering "yes," the jury necessarily found that the resumes in the database were a trade secret. This finding, which Plaintiffs do not challenge, precludes any argument by either Plaintiff that the resumes are not secret and are therefore exempted from TUTSA preemption.

Further, Judge Rosenthal has held that TUTSA preempts a common-law claim unless "the plaintiff is able to show the claim is *based on facts unrelated to* the misappropriation of the trade secret." *AMID, Inc. v. Medic Alert Fdn. United States, Inc.*, 241 F. Supp. 3d 788, 825 (S.D. Tex. 2017) (quoting *360 Mortgage Grp., LLC v. Homebridge Fin. Servs., Inc.*, 2016 WL 900577, at *6-7 (W.D. Tex. March 2, 2016)) (emphasis added). "*The focus is on whether the facts* relied on to support the unfair-competition claim *differ* from those supporting the TUTSA claim." *Id*. at 826 (emphasis added).

As Plaintiffs have acknowledged, their common-law claim is essentially the same as—and certainly not *factually unrelated to*—information that was a trade secret. Plaintiffs told the jury that the TUTSA damages and the common-law misappropriation damages should be exactly the same—the value a reasonably prudent investor would pay—except for "a little twist" limiting the common-law damages to acts occurring after June 10, 2014. (3/25/2021 Trial Transcript [Rough] at 82:01 – 20).

It makes no difference whether, as Plaintiffs put it, "the jury was not presented with a question regarding DHI Group, Inc.'s possible ownership

interest in the trade secret." (Resp. at 7 n.1.) The relevant inquiry concerns the *nature* of the information, not its *owner*. *See* Tex. Civ. Prac. & Rem. Code § 134A.007(a) (displacing all "civil remedies for misappropriation of a trade secret"); *SP Midtown*, 2008 WL 1991747, at *5 n.5 (holding that no cause of action exists for "confidential information that is not either secret, or substantially secret"). Nor can Plaintiffs avoid preemption by referring to Google Analytics or "customer contract information." (Resp. at 7. n.1.) These allegations are not "based on facts unrelated to" the resumes. *AMID*, 241 F. Supp. 3d at 825. Further, there is zero evidence that any acts relating to Google Analytics or "customer contract information" caused any damages.

For the same reason, the Court should reject Plaintiffs' argument that the criminal restitution related to a statute (CFAA) rather than their common-law misappropriation claim. This argument is foreclosed by the one-satisfaction rule. *See AMX*, 196 S.W.3d at 206. Moreover, as discussed above, the relevant inquiry is not the legal theory, but whether the allegations are "based on facts unrelated to" the resumes. *Id.*

Despite this authority, Plaintiffs are attempting to use the separate corporate entities to recover twice for the same injury This is precisely the sort of inconsistent theories of relief that TUTSA was intended to prevent. TUTSA "was intended to prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret." *Super Starr Int'l, LLC v. Fresh Tex Produce LLC*, 531 S.W.3d 829, 843 (Tex. App.—Corpus Christi 2017, no. pet); Tex. Civ. Prac. & Rem. Code § 134A.007(a); *C&M Oilfield Rentals*, 2020 WL 5745833, at *8.[2]

---

[2] A more fulsome discussion of this preemption issue is included in *Defendants' Motion for Judgment Under Rule 50(a) or Dismissal Under Rule 12* (Docket No. 360 at 14-15) and the *Pre-Trial Brief of Oilpro and David Kent* (Docket No. 291 at 51 – 57).

### D. Plaintiffs cannot recover attorneys' fees under RICO, when it admittedly suffered no injury.

As an initial matter, whether any party is entitled to recover attorney's fees and costs in this matter is not a matter to be resolved in a final judgment. An award of attorney's fees—if any—is made pursuant to motion *after* entry of final judgment. Fed. R. Civ. P. 54(d)(2)(A) – (B) ("A claim for attorney's fees and related nontaxable expenses must be made by motion . . . filed no later than 14 days after the entry of judgment"). Any award of attorney's fees must be accompanied by findings of fact and conclusions of law, made pursuant to Rule 52(a). Fed. R. Civ. P. 54(d)(2)(C) ("The court must find the facts and state its conclusions of law as provided in Rule 52(a)"). Plaintiffs have not filed a motion for an award of attorneys' fees, the Court has not made any findings or conclusions, and the parties have not had the opportunity submit adversary submissions. Any determination of attorney's fees is premature.

Setting aside the procedural infirmities in Plaintiffs' request, Plaintiffs would not be entitled to recover attorney's fees in connection with their RICO claim. Under 18 U.S.C. §1964(c), "[a]ny person *injured in his business or property* by reason of a violation of section 1962" may recover "a reasonable attorney's fee[.]" But in response to Question 3b, the jury found that Plaintiffs *had not* suffered any injury in their business or property:

> **Question 3b**
> **(RICO Damages)**
>
> What is the amount of damages, if any, that you find was proximately caused by David Kent's copying of resumes from Rigzone's resume database?

> If you find that David Kent violated RICO, ==you must decide whether that violation caused an injury to Plaintiffs.== The damages that Plaintiffs may recover are those caused by the predicate acts constituting the pattern of racketeering activity if they injure Plaintiffs or their business or property. It isn't necessary that every predicate act caused damage to Plaintiffs. Plaintiffs can only recover damages caused by predicate acts that are part of the pattern of racketeering activity.
>
> *Answer in dollars and cents, if any.*
>
> Answer:  $ ==0==

Docket No. 377 at 27. Because the jury found that Plaintiffs *were not injured*, Plaintiffs cannot recover attorney's fees. The cases cited by Plaintiffs are inapposite—in all of those cases, the jury found that there was an injury to the plaintiffs but no damages were ultimately awarded due to settlement credits. But that is not the situation here. Here, the jury found that there was no injury to the Plaintiffs in the first place Under these circumstances, Plaintiffs are not entitled to attorneys' fees.

### E. Plaintiffs' proposed judgment includes extraneous argument, not properly included in a final judgment under the Federal rules.

Under the Federal rules, a judgment is required to be a "separate document—distinct from any opinion or memorandum—which provides the basis for the entry of judgment." *Bankers Tr. Co. v. Mallis*, 435 U.S. 381, 385, 98 S. Ct. 1117, 1120, 55 L. Ed. 2d 357 (1978). Defendants object to Plaintiffs' proposed judgment because it includes extraneous argument not properly included in a final judgment. In addition to the improper request for attorneys' fees under RICO, discussed immediately above, Defendants object to the inclusion of extraneous matters in Plaintiffs' proposed judgment, specifically, the recitation of the jury's verdict (on pages 1 – 4), *findings* regarding

prejudgment interest and attorneys' fees (pages 6 – 6), and the arguments found in footnotes 1 – 3.

Respectfully submitted,

**FOLEY & LARDNER LLP**

/s/ *James G. Munisteri*
James G. Munisteri
Texas Bar No. 14667380
S.D. Tex. Bar No. 7294
1000 Louisiana, Suite 2000
Houston, Texas 77002-2099
jmunisteri@foley.com
Tel: 713.276.5500
Fax: 713.276.5555

Sara Ann Brown
Texas Bar No. 24075773
2021 McKinney, Suite 1600
Dallas, Texas 75201-3340
sabrown@foley.com

and

**HAYNES AND BOONE LLP**

Lynne Liberato
Texas Bar No. 00000075
S.D. Tex. Bar No. 3072
Kent Rutter
Texas Bar No. 00797364
S.D. Tex. Bar No. 20519
1221 McKinney, Suite 2100
Houston, Texas 77010-2007
lynne.liberato@haynesboone.com
kent.rutter@haynesboone.com
Tel: 713.547.2000
Fax: 713.547.2600

**Attorneys for Defendants**