# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

DHI GROUP, INC. F/K/A DICE
HOLDINGS, INC. AND
RIGZONE.COM, INC.,

*Plaintiffs,*

v.

DAVID W. KENT, JR., SINGLE
INTEGRATED OPERATIONS
PORTAL, INC. D/B/A OILPRO
AND OILPRO.COM, ET AL.,
*Defendants.*

C.A: NO.: 16-cv-01670

## PLAINTIFFS' MOTION FOR AN AWARD OF STATUTORY ATTORNEYS' FEES, COSTS, AND PRE-JUDGMENT INTEREST AND POST-JUDGMENT INTEREST

Plaintiffs Rigzone.com, Inc. ("Rigzone") and DHI Group, Inc. ("DHI") (together, "Plaintiffs") respectfully submit this Motion for Statutory Attorney's Fees and Costs pursuant to this Court's Final Judgment, entered April 1, 2021[1] ("the Judgment") and Federal Rule of Civil Procedure 54(d)(2). For reasons set forth below, Plaintiffs request an award of attorneys' fees in the total amount of $2,240,208. Rigzone also seeks an award of costs in the

---

[1] ECF 385.

total amount of $58,205.63, as well as pre-judgment interest and post-judgment interest.

## PRELIMINARY STATEMENT

On March 26, 2021, a jury found that Defendant David Kent ("Kent') violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by engaging in a pattern of racketeering activity that included more than half a million acts of wire fraud committed over a three-year period. The verdict follows nearly five years of intense litigation involving extensive motions practice, numerous court conferences and hearings, voluminous discovery, and a nine-day trial conducted in the midst of the worst global pandemic since 1918.

"[A] person found in a private civil action to have *violated* RICO is liable for treble damages, costs, *and attorney's fees*." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 233 (1989) (emphasis added). Litigating a RICO case is an inherently costly endeavor. RICO is a complex statute that requires a prevailing plaintiff to prove that defendants repeatedly violated federal criminal laws over time in connection with the operation of an enterprise. As a result, few RICO claims are successful. Despite these challenges, Plaintiffs persuaded the jury Kent was liable for violating RICO by amassing and

presenting an extensive evidentiary record through documents, videos, fact witnesses, and expert testimony.

Because they succeeded on their RICO claim, Plaintiffs now seek—and are entitled to—their attorneys' fees incurred prosecuting that claim. 18 U.S.C. § 1964(c). David Kent will likely argue Plaintiffs cannot recover attorneys' fees because the jury did not award any compensatory damages for its RICO violations. But that is simply not the law.

Choices have consequences. David Kent committed hundreds of thousands of acts of wire fraud, yet he chose to proceed to trial instead of negotiating a settlement. This was a knowing, calculated gamble. It did not pay off. As a result, Plaintiffs are entitled to the attorneys' fees they incurred in prosecuting this successful RICO suit. 18 U.S.C. § 1964(c).

## BACKGROUND

In 2016, Plaintiffs sued David Kent for (among other things) Misappropriation of Trade Secrets, Breach of Fiduciary Duty; violating RICO; Misappropriation of Confidential Information; and violating the Computer Fraud and Abuse Act ("CFAA").[2] Oilpro countersued Plaintiffs

---

[2] ECF 1.

for violating the CFAA; Breach of Contract; and Unfair Competition by Misappropriation.[3]

After a nine-day jury trial, the jury returned its verdict in favor of Plaintiffs and against David Kent.[4] The jury found that David Kent misappropriated Rigzone's trade secrets; misappropriated Plaintiffs' confidential information; and violated RICO.[5] The jury awarded Rigzone $3,003,036.90 in damages for David Kent's theft of its trade secrets, DHI more than $2.5 million for DHI's theft of its confidential information,[6] but no compensatory damages for David Kent's RICO violation.[7]

On April 1, 2021, the Court entered Final Judgment in this case.[8] In it, the Court awarded Rigzone $3,003,036.90, as well as attorneys' fees, costs, and pre-judgment interest and post-judgment interest to be determined by submission under the Federal Rules of Civil Procedure.[9] Accordingly, Plaintiffs timely move for an award of attorneys' fees and costs within 14 days of entry of Judgment.

---

[3] ECF 17.
[4] ECF 377.
[5] *Id.*
[6] Rigzone's claim was preempted because it succeeded on its trade secret claim.
[7] ECF 377.
[8] ECF 385.
[9] *Id.*

4

## DISCUSSION

I.     **A Prevailing Plaintiff in a RICO Action is Entitled to Reasonable Attorneys' Fees.**

When a plaintiff prevails in a civil RICO action, the award of reasonable attorneys' fees is mandatory. 18 U.S.C. § 1964(c). The jury in this case found David Kent violated RICO by, among other things, using a program called "Hide My Ass" to gain access and improperly copy more than half a million of Rigzone's resumes, but the jury did not award any separate RICO damages.[10] Yet based on these same facts, the jury awarded Rigzone more than $3 million in damages for David Kent's theft of its trade secrets, and DHI more than $2.5 million for David Kent's theft of its confidential information.[11]

Plaintiffs anticipate that David Kent will argue that Plaintiffs cannot recover attorneys' fees under RICO because the jury did not award any compensatory damages specifically for this claim,[12] but the Fifth Circuit has repeatedly rejected that argument.

---

[10] ECF 377 at 19.

[11] *Id.*

[12] Various courts, including the Fifth Circuit, have reasoned in similar cases that the lack of a specific RICO or anti-trust award, in the context of a jury awarding damages on identical facts under different claims, can only be reconciled by the jury's desire to not allow double recovery, and that RICO damages are implied. *See Video Intern. Prod., Inc.,*

In *Ducote Jax Holdings LLC v. Bradley*, 335 F. App'x 392, 401 (5th Cir. 2009), the Fifth Circuit held that a plaintiff in a RICO action was entitled to its attorneys' fees under RICO even though the plaintiff did not obtain a judgment for any compensatory damages arising out of the defendants' violation of RICO. As part of its analysis, the Fifth Circuit observed that RICO's attorneys' fees provision is "essentially identical" to the Clayton Antitrust Act's attorneys' fees provision, and as a result, "[Fifth Circuit] precedent interpreting the essentially identical provision in the Clayton Act is instructive, if not controlling."[13] *Id.* at 402. The Fifth Circuit explicitly based its interpretation of RICO's fee shifting provision on its prior opinion

---

*v. Warner-Amex Cable Comm., Inc.*, 858 F.2d 1075, 1086 (5th Cir. 1988) (reversing zero damages award for antitrust claims because the "jury's lopsided apportionment of damages therefore makes us think it likely that the jury decided the total amount it wished to award and apportioned it among the theories, rather than awarding duplicative damages on each separate theory in approximately the same amount."); *see also Rosario v. Livaditis*, 963 F.2d 1013, 1021 (7th Cir. 1992) ("Both the RICO claims and the CFA claim were supported by identical facts; thus, it seems that the facts must support some actual damages award for the RICO claims"); *see also AIG Aviation, Inc., v. Boorom Aircraft, Inc.*, 142 F.3d 431, *4 (6th Cir. 1998) ("[S]ince the jury found that AIG was damaged, and since it carefully calculated those damages on the parallel state claims, it seems more likely that the jury calculated the full amount of the damages it considered appropriate and awarded all the damages on the state claims, awarding nothing on the RICO claims so as to prevent a double recovery.").

[13] "Even a cursory comparison of the two statutes reveals that the civil action provision of RICO was patterned after the Clayton Act."483 U.S. 143, 150 (1987); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985) ("The 'clearest current' in the legislative history of RICO 'is the reliance on the Clayton Act model.'").

in *Sciambra v. Graham News,* 892 F.2d 411, 415–16 (5th Cir. 1990) in which the Fifth Circuit held that "the actual recovery of compensatory damages [is] *irrelevant* to the recoverability of attorneys' fees" under the Clayton Antitrust Act's civil remedies provision." *Id.* (emphasis added). The holding was reaffirmed more recently in *Funeral Consumers Alliance, Inc., v. Service Corp. Intern.,* 695 F.3d 330, 340 (5th Cir. 2012) ("Attorneys' fees and costs are awarded even if an otherwise successful plaintiff is awarded no compensatory damages by the jury.").

Moreover, the award of attorneys' fees under RICO does not need to be proportionate or tied to monetary damages awards. *See, e.g., R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 542 (5th Cir. 1992) (abrogated in part) (rejecting defendants argument that rule of proportionality from awarding attorneys' fees in excess of the damages recovered in RICO cases); *see also Ducote Jax Holdings*, 335 F. App'x at 402 ("This Court has rejected a rule that the award of attorneys' fees should be proportional to the damage award in a civil RICO case.").

It is not an accident that RICO's attorneys' fees provision disproportionately punishes people like David Kent for the harm they cause their victims by violating RICO. "The whole purpose of fee-shifting statutes

is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." *See Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011) (emphasis original). That is because fee-shifting provisions, like the one in RICO, are designed "precisely to encourage individual plaintiffs to bring such suits." *Khanna v. Am. Exp. Co.*, No. 11 CIV. 6245 JSR, 2011 WL 6382603, at *4 (S.D.N.Y. Dec. 14, 2011). Indeed, these holdings are consistent with Congressional intent that RICO should be construed liberally to "effectuate [the statute's] remedial purposes." Pub. L. 91- 452, 84 Stat. 947, § 904(a). To effectuate RICO's remedial purposes here requires an award of attorneys' fees.

## II.    Plaintiffs are Entitled to their Lodestar as Reasonable Fees.

The calculation of reasonable attorney's fees involves a well-established two-step process. The first step requires "calculating a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). In support, parties typically submit an affidavit, time records, and evidence of prevailing market rates for similar services by similarly trained and experienced lawyers in the

8

relevant legal community. *See, e.g.*, *Szijjarto v. McCarrell*, No. CIV.A. H-11-4226, 2014 WL 555122, at *2 (S.D. Tex. Feb. 12, 2014).

The second step involves a discretionary decision by the district court as to whether to adjust the lodestar "upward or downward depending on the circumstances of the case." *Migis*, 135 F.3d at 1047.

Plaintiffs seek attorneys' fees of $2,240,208.[14] This total excludes $760,306 in fees that Plaintiffs do not seek to recover, including time billed defending against Defendants' Counter Claims, or time billed during the transition of the case from Plaintiffs' original counsel—Baker Botts—to Jordan, Lynch & Cancienne ("JLC"), or by attorneys and paralegals who did not assume major roles in the case.[15] Subject to these caveats—all of which benefit Defendants—this lodestar is the number of hours Plaintiffs' counsel expended on the litigation multiplied by the hourly rates of the individual participating attorneys.[16]

---

[14] Declaration of Walter Lynch (Ex. 1) at Paragraph 14. To the extent Defendants maintain either the hours expended or hourly rates of Plaintiffs' counsel are unreasonable, Plaintiffs will agree to accept whatever amounts Defendants billed their clients for their work related to this matter.

[15] *Id.*

[16] *Id.*

"There is a strong presumption that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may be properly considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010). No upward or downward adjustment under the *Johnson* factors, discussed later, is necessary in this case.

### A.    Plaintiffs' Lodestar[17]

Plaintiffs originally retained Baker Botts in 2016 as counsel in this case, and Plaintiffs filed their Original Complaint on June 10, 2016.[18] In early 2018, JLC took over as counsel of record for Plaintiffs.

Within the declaration of Walter Lynch is a chart detailing the JLC timekeepers that have worked on this matter, the amount of total time spent on this matter per timekeeper, each timekeeper's rate, and total fees per

---

[17] A prevailing plaintiff may not recover for hours devoted solely to claims against other parties. However, there is no duty to segregate the proposed fees when the original claims are too intertwined to differentiate effectively." *M.D. v. Abbott*, No. 2:11-CV-00084, 2020 WL 3972800, at *2 (S.D. Tex. July 14, 2020). Here, Plaintiffs' RICO claims was based (at least in part) on the same factual allegations as the rest of Plaintiffs' claims. Accordingly, it would be impossible to differentiate the time spent pursing (for example) Plaintiffs' misappropriation of trade secrets claim from the time spent pursuing its RICO claims, as both claims were explicitly based on David Kent's theft of Rigzone's resumes.
[18] Kevin Jacobs Declaration (Ex. 2).

timekeeper.[19] This chart was prepared from contemporaneous time records regularly prepared and maintained by JLC, and shows three JLC attorneys (each of whom were present for the entire trial) and two paralegals dedicated 3,486.7 hours to this matter for a total of $1,052,322.84 in fees.[20]

Mr. Lynch's declaration reveals that Plaintiffs' lodestar is *very* conservative. Plaintiffs do not seek to recover *any* fees related to defending Defendants' frivolous counterclaims, nor are Plaintiffs seeking to recover fees they incurred as a result of David Kent's fraudulent transfer of $3 million to one of his star witnesses in this case, Jonathan Fairbanks.[21] Moreover, in addition to the aforementioned deductions, Plaintiffs further reduced the "hours billed" by 10%.[22] The below chart shows the JLC time Plaintiffs do seek to recover:

---

[19] Declaration of Walter Lynch (Ex. 1).
[20] *Id.*
[21] Declaration of Walter Lynch (Ex. 1) at Paragraph 7.
[22] *Id.*

| Timekeeper | Hours Sought Recovered | Hourly Rate[23] | Time Value |
|---|---|---|---|
| Walter Lynch | 932.0 | $385 | $358,835.40 |
| Amir Halevy | 1043.7 | $298 | $311,031.54 |
| Jeb Golinkin | 1395.9 | $263 | $367,121.70 |
| Linda Baumgartner | 72.8 | $140 | $10,193.40 |
| Lauren Malinowski | 36.7 | $140 | $5,140.80 |
| **Totals** | **3486.71** | | **$1,052,322.84** |

The declaration of Kevin Jacobs contains a similar chart detailing the Baker Botts timekeepers who have worked on the matter, the amount of time spent on the matter, the average hourly rate for that time, and the total fees for that timekeeper.[24] This chart was prepared from contemporaneous time records regularly prepared and maintained by Baker Botts, and shows that Baker Botts lawyers and paralegals (for which Plaintiffs request fees)

---

[23] As stated above, the hourly rates in this chart reflect only 70% of JLC's then standard 2018 billing rates. Those rates did not functionally apply after 2018, when a billing cap that was part of the hybrid billing arrangement was met. Accordingly, the hourly rates used for calculating JLC's fees for time spent in 2019 and beyond could have been, at a minimum, JLC's full 2018 rates, which were $550 an hour for Walter Lynch, $425 an hour for Amir Halevy, $375 an hour for Jeb Golinkin, and $200 an hour for Linda Baumgartner (with Lauren Malinowski's standard billing rate as $150 an hour). Furthermore, those 2018 standard rates do not account for the periodic increases JLC has made for its timekeepers over time. The post-2018 hours that could have been billed at JLC's 2018 standard rates (at a minimum) for hours Plaintiffs seek recovery are 638.6 for Walter Lynch, 806.4 for Amir Halevy, 792.6 for Jeb Golinkin, 66.7 for Linda Baumgartner and 36.7 for Lauren Malinowski. If the Court uses JLC's 2018 standard rates for time billed after 2018, the fee award to Plaintiffs would increase by $299,288.32.

[24] Declaration of Kevin Jacobs (Ex. 2).

dedicated 2,880.5 hours to this matter for a total of $1,477,718 in fees, although Plaintiffs seek recovery of only $1,187,885 of those fees.[25]

## B. The Applicable *Johnson* Factors Demonstrate that Plaintiffs' Lodestar is Reasonable.

The Court may adjust the lodestar figure up or down based on the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 716 (5th Cir. 1974).[26] In this case, no adjustment is necessary.

### 1. This Litigation Required Significant Time and Labor.

Plaintiffs initiated this lawsuit more than five years ago.[27] Discovery was extensive and hard fought, and lasted for years. The parties collectively exchanged over two hundred discovery requests.[28] Plaintiffs produced 33,650 documents (192,909 pages) in response to Defendants' discovery

---

[25] *Id.* at Paragraph 13.

[26] The factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id*

[27] ECF 1.

[28] Declaration of Walter Lynch (Ex. 1) at Paragraph 5.

requests.[29] These documents were identified as responsive after analysis of 168,997 total documents.[30]

Separately, Plaintiffs reviewed and produced 1,185 documents (10,094 pages) from a third party, Cypress Data Defense.[31] Defendants produced 7,791 total documents, including 30,394 pages of "Oilpro" documents. Plaintiffs also reviewed an additional 1,311 documents produced by third parties in this case.[32]

Plaintiffs took or defended fourteen depositions in the case, deciding— because complete reports were provided—not to take the depositions of three of the four experts David Kent called to trial.[33] Defendant Oilpro served a corporate deposition notice on Plaintiffs that included twenty-four topics. Plaintiffs filed or opposed numerous motions filed by the parties during the case and participated in several hearings, before ultimately needing to try the case because all settlement discussions were unsuccessful.[34]

---

[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*

Plaintiffs presented their case during a nine-day jury trial that started on November 10, 2020 (with a pause after November 13, 2020 because of a COVID-19 outbreak), resuming on March 15, 2021 and ending on March 25, 2021.[35]

All of these activities required significant time and labor by themselves, but Defendants drove up the cost of this litigation through its litigation related conduct. A few examples of this conduct include:

- Asserting and subsequently withdrawing an assertion of privilege related to information material to the dispute at the heart of the case in a manner the Court deemed "for the purpose of gaining an advantage in litigation;"[36]

- Affirmatively using "privilege to selectively produce materials and to prevent [Plaintiffs] from challenging [its assertion of privilege;"[37]

- Covertly attempting to persuade this Court to revisit Judge Johnson and Judge Miller's rulings on Defendants' Motion for Summary Judgment by submitting its already rejected summary judgment arguments to this Court (in many cases copied and pasted from its motion for summary judgment) to this Court under a new title—"Motion to Simplify Issues for

---

[35] *Id.*

[36] ECF 259. As a result of Defendants' misconduct, the Court ordered Defendants to pay Plaintiffs' reasonable and necessary attorneys' fees associated with filing their Motion to Exclude Trent Livingston." *Id.* at 2. To the extent the Court denies Plaintiffs' request for attorneys' fees, Plaintiffs' remain entitled to these attorneys' fees pursuant to the Court's Order.

[37] *Id.*

Trial" immediately after Judge Miller transferred the case to this Court for trial; [38]

- Covertly attempting to persuade the Court to reverse Judge Johnson and Judge Miller's previous rulings with regard to Defendants' objections to Plaintiffs' damages expert's testimony by repackaging its previously rejected Motion to Strike Shane Johnson as a "Rule 104 Motion" on Shane Johnson;[39]

- Filing an "Emergency Motion to Compel"[40] the production of information the Court denied because Defendants' "emergency" motion sought information that "was never requested by any RFP" served [by Defendants]" before the end of discovery;[41]

- Forcing Plaintiffs to file a (successful) Motion to Enforce Scheduling Order;[42]

- Forcing Plaintiffs to prepare to cross examine six witnesses that were included on Defendants' Trial Witness List but were never called;[43]

- Filing 49 Motions in Limine (to which Plaintiffs had to respond);[44] and

- Listing 370 Exhibits (which Plaintiffs' counsel had to review to determine whether each was objectionable) on its Trial Exhibit List even though it only introduced *16* exhibits at trial.[45]

---

[38] *Compare* ECF 292 to ECF 231.

[39] *Compare* ECF 293 to ECF 232.

[40] ECF 205.

[41] ECF 211.

[42] *Id.*

[43] ECF 290-4. In contrast, Plaintiffs included 10 witnesses on its Trial Exhibit List, seven of which testified at trial. ECF 290-3.

[44] ECF 290-9.

[45] ECF 290-2; *see also* ECF 295.

These are but a few examples of the manner in which David Kent and his counsel made this case more expensive to litigate. Given this conduct, David Kent should direct any complaints he has about the time and labor Plaintiffs' counsel expended on this case to the parties responsible for driving up Plaintiffs' legal bills: Defendants' counsel.

2.      This Litigation Presented Novel and Difficult Questions.

At the end of the trial, the Court observed that this was one of the most complex commercial cases over which His Honor has presided during his distinguished career. The case's complexity stemmed from the fusion of Plaintiffs' technology heavy misappropriation of trade secrets and confidential information claims with RICO, with the latter theories forming the basis of Plaintiffs' RICO claims. This complexity—which is evident on the face of the jury charge—required and demanded skilled, experienced trial lawyers. Those skills have been reflected in the quality of work done by Plaintiffs' counsel since the inception of this case.

3.      Plaintiffs' Lawyers are Skilled Litigators.

The experience and skill of Plaintiffs' lawyers was necessary to adequately pursue Plaintiffs' claims against David Kent, an individual with vast resources, a seething grudge against Plaintiffs, and strong financial

incentives to shirk full responsibility for his actions. Plaintiffs' counsels' experience and skill ensured that only the necessary time and effort was spent on the litigation, and that at trial, Plaintiffs presented their case efficiently and in accordance with the parameters set forth by this Court. Plaintiffs' requested lodestar is reasonable compensation.

    4.    <u>JLC Was Precluded from Working on Other Matters.</u>

This factor refers to both available business that is foreclosed and the fact that counsel cannot work on other matters once employment is accepted. *Johnson,* 488 F. 2d at 718. By representing Plaintiffs in this matter, JLC was forced to forego other work or set that work aside in order to execute their responsibilities in this case.[46]

    5.    <u>The Customary Fee and Whether it is Contingent.</u>

JLC worked on this case under a mixed fee agreement, most of which made JLC's fees contingent upon its success.[47] "Reimbursing counsel from Plaintiffs' monetary recovery would both diminish the recovery plaintiffs were awarded and punish counsel for the extensive work they put into the case. Thus, the fact that counsel had a contingent fee arrangement with

---

[46] Declaration of Walter Lynch (Ex. 1) at Paragraph 6.
[47] *Id.*

plaintiffs does not warrant any reduction in the fee award requested."

*Phillips v. Mar. Ass'n, I.L.A. Loc. Pension Plan,* 198 F. Supp 2d. 838, 848 (E.D. Tex. 2002).

## III.   Plaintiffs are Entitled to Costs.

Unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise, a prevailing party is entitled to costs aside from attorneys' fees. FED. R. CIV. P. 54(d)(l). Pursuant to 28 U.S.C. §1920 ("Taxation of costs"), the costs a judge or clerk of a United States court may tax include: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; and (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828.

Subsequent to the 2008 amendment to § 1920(2), recovery of costs related to video depositions, i.e., "electronically recorded transcripts," are allowed if necessarily obtained for use in the case. *Eolas Technologies Inc. v.*

*Adobe Systems, Inc.* 891 F. Supp. 2d 803, 805 (E.D. Tex. 2012); *Beauty Mfg.*

*Solutions Corp. v. Ashland, Inc.,* 2012 WL 4341814, *8 (N.D. Tex. 2012). Section

1920(2) permits costs to be taxed for both printed and electronically recorded

transcripts of a deposition, so long as they are necessarily obtained for use

in the case. *Eolas,* 891 F. Supp. 2d at 805.

Plaintiffs request an award of $58,205.63 in taxable costs.[48] A complete

breakdown of the costs that make up this sum is included in the declaration

of Walter Lynch.[49] These costs were reasonable and necessary in pursuit of

the results obtained by Plaintiffs in this case.

Plaintiffs' requested costs fall within the following subsections of

Section 1920: (1) fees of the clerk and marshal; (2) fees for printed or

electronically recorded transcripts necessarily obtained for use in the case;

(3) fees and disbursements for printing and witnesses; and (4) fees for

exemplification and the costs of making copies of any materials where the

copies are necessarily obtained for use in the case. *See* 28 U.S.C. § 1920.

Whether something was "necessarily obtained for use in the case is a factual

---

[48] Declaration of Walter Lynch (Ex. 1) at Paragraph 18.
[49] *Id.*

20

determination to be made by the district court . . . " *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991).

## IV. Rigzone is Entitled to Pre-judgment Interest.

"Texas law on trade secret claims mandates the award of pre-judgment interest." *Matter of AmeriSciences, L.P.*, 781 F. App'x 298, 306–07 (5th Cir. 2019) (internal quotations omitted) (citing *Retractable Techs., Inc. v. Occupational & Med. Innovations, LTD.*, 6:08-CV-120, 2010 WL 3199624, at *4 (E.D. Tex. Aug. 11, 2010) and *Myriad Dev., Inc. v. Alltech, Inc.*, 817 F. Supp. 2d 946, 990 & n.253 (W.D. Tex. 2011)).

"Even if awarding pre-judgment interest was not mandatory, there is no dispute a district court can and usually *should* award pre-judgment interest for trade secret claims." *Id.* at 307. David Kent has not identified any cases that suggest an award of pre-judgment interest is not mandatory, nor has it identified any exceptional circumstances that would justify the Court declining to award pre-judgment interest in this trade secrets case. Accordingly, Rigzone is entitled to recover $721,551.61 in prejudgment interest from David Kent.[50]

---

[50] The prejudgment interest due Rigzone on the award of its trade secrets claim of $3,003,036.90 is calculated as simple interest at a rate of five percent (5%) per year

### V.      Rigzone is Entitled to Post-judgment Interest.

Rigzone is also entitled to post-judgment interest. "Federal law governs post-judgment interest." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010). "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a) (2006). "The matter is not discretionary." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d at 173. Accordingly, Rigzone requests an award of post-judgment interest.

### <u>CONCLUSION</u>

For reasons set out above, Plaintiffs requests an award of attorneys' fees in the total amount of $2,240,208. Rigzone additionally requests an award of taxable court costs in the total amount of $58,205.63, $721,551.61 in pre-judgment interest, and post-judgment interest.

---

beginning on June 10, 2016 (the day suit was filed) and ending on the day before the final judgment is signed (March 31, 2021). This results in $721,551.61 of prejudgment interest due to Rigzone.

Respectfully submitted,

**JORDAN, LYNCH & CANCIENNE PLLC**

By: _s/ Walter Lynch_

> **Walter Lynch**
> State Bar No. 24046330
> Federal I.D. No. 965265
> **Amir Halevy**
> State Bar No. 24065356
> Federal I.D. No. 1259956
> **Joseph ("Jeb") W. Golinkin II**
> State Bar No. 24087596
> Federal I.D. No. 2515657
> 1980 Post Oak Blvd., Ste. 2300
> Houston, Texas 77056
> 713-955-4020 (Telephone)
> wlynch@jlcfirm.com
> ahalevy@jlcfirm.com
> jgolinkin@jlcfirm.com

ATTORNEYS FOR PLAINTIFFS DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC.

23

## CERTIFICATE OF SERVICE

I hereby certify that on this April 14, 2021, I served all counsel of record with a copy of this Motion by the Court's electronic filing system.

/s/ Jeb Golinkin
Joseph W. Golinkin II

## CERTIFICATE OF CONFERENCE

I hereby certify that prior to filing this Motion, Plaintiffs conferred with Jay Munisteri and he indicated that David Kent opposes this request for attorneys' fees.

/s/ Walter Lynch
Walter Lynch