IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DHI Group, Inc., et al.,

v.                                        Civil Action No. 16-1670

David W. Kent, Jr., et al.

## DEFENDANTS' MOTION TO APPLY OFFSET AND FOR RELIEF UNDER RULES 50, 59, AND 60

Now that the jury has rendered its verdict, this Court's role under Texas law is to conduct an evidentiary hearing to determine whether Rigzone has already recovered or benefited through criminal restitution, in which case the restitution payment must be set off against the jury's award. At the evidentiary hearing, Defendants will offer testimony from the following witnesses, in addition to documentary evidence:

- **Ryan Patrick**, former U.S. Attorney for the Southern District of Texas, will testify about how federal prosecutors and probation officers must identify victims and fulfill their responsibilities in calculating and distributing restitution payments.

- **Dan Cogdell**, Kent's attorney in the criminal case, will testify about the restitution payment and identification of the victim in that case.

The hearing will provide the Court its first opportunity to hear critical evidence and question counsel about the operative issues—including whether Plaintiffs are bound by their admission in the joint pretrial order that Rigzone received the restitution, and whether the Texas one-satisfaction rule imposes a specific evidentiary burden on Rigzone that it cannot meet. Defendants move for application of the offset and for relief under Rules 50, 59, and 60, as follows.

## SUMMARY

Rigzone may not recover any damages for two independent reasons.

First, the jury award memorialized in the judgment should now be set off against the monetary restitution that Kent paid in the criminal proceeding. The offset is mandatory. Without it, Rigzone would be paid twice for the same injury—first through criminal restitution, and again through civil damages. That outcome would violate the one-satisfaction rule, which forbids more than one recovery for the same injury—regardless of whether the two recoveries are obtained under the same or different causes of action. Because the restitution and the judgment provide recovery for the same injury to Rigzone, Rigzone cannot recover both.

Rigzone cannot skirt the offset rules by arguing that only DHI recovered through the restitution. This assertion directly contradicts Rigzone's binding admission in the joint pretrial order that Kent "agreed to (and has now paid) DHI and Rigzone $3.3 million" in restitution. To the extent an evidentiary issue exists notwithstanding the joint pretrial order, the Texas Supreme Court has held that the court—not the jury—resolves evidentiary issues concerning the offset and may do so after verdict.

Here, the issues include whether, for purposes of the restitution process, there was (A) one victim, consisting of DHI and its wholly owned subsidiary Rigzone, that recovered $3,292,800.00, or (B) two separate victims, with only one (DHI) participating successfully and the other (Rigzone) cut out entirely of the restitution process, contrary to federal victim-rights law. The

evidence—and common sense—establish that there was just one victim for restitution purposes. That sole victim repeatedly identified itself, in the victim impact statement and elsewhere, as DHI and its subsidiary Rigzone acting jointly. Indeed, DHI would not have a $3.3 million loss independent of Rigzone. And even if DHI had recovered restitution apart from Rigzone, that would not defeat the offset. Under the Texas one-satisfaction rule, a payment to one party (such as DHI) offsets the damages awarded to a different party (such as Rigzone) that benefited from the payment.

The criminal restitution completely offsets the civil damages amount. Applying the offset would therefore moot the second point below, which is that Rigzone's claim under the Texas Uniform Trade Secret Act ("TUTSA") fails as a matter of law. At the charge conference, the Court correctly ruled that the proper inquiry under TUTSA was whether individual résumés—as opposed to a compilation of résumés—qualify as trade secrets. While Plaintiffs have argued (incorrectly) that compilations of résumés can be trade secrets, they have never even tried to argue that individual résumés can be trade secrets. Throughout trial, Plaintiffs indignantly rejected any insinuation that they might stoop to that untenable position, making the following promise: "No one on [Plaintiffs'] side of the case . . . will ever tell you that an individual résumé is entitled to legal protection as a trade secret." The Court should hold Plaintiffs to their promise. Résumés are not "trade secrets," as that term is defined in the jury charge and TUTSA, because Rigzone distributed them

widely instead of keeping them secret. The TUTSA claim would therefore fail even if Rigzone had proven any compensable damages measure—which, under the Texas pattern jury charge and Fifth Circuit precedent, Rigzone did not.

Because Rigzone is not entitled to recover any damages, the Court need not reach the remaining issues presented below, including whether the judgment should, at a bare minimum, be altered to specify that any award of damages is payable solely by Kent, and Plaintiffs take nothing on their claims against Oilpro.

## ARGUMENT

### I.     Texas law requires an evidentiary hearing and application of the offset.

The jury award memorialized in the judgment should now be offset (i.e. credited) against the monetary restitution that Kent paid in the criminal proceeding.[1] Rigzone has already recovered full restitution, and an award of civil damages for the same injury would amount to a double recovery in violation of the one-satisfaction rule and criminal restitution law. Rigzone cannot escape the offset by asserting—contrary to its admission in the joint pretrial order and the evidence—that the criminal restitution was paid only to DHI, the corporate parent that owned 100% of Rigzone's stock. If the Court does not reject that argument out of hand, an evidentiary hearing is required.

---

[1] Exhibit 14

**A.      The Court should conduct an evidentiary hearing.**

To the extent any genuine dispute exists regarding the offset, Defendants are entitled to an evidentiary hearing. *See Utts v. Short*, 81 S.W.3d 822, 828-29 (Tex. 2002).[2] At the hearing, the issues will be whether Rigzone and DHI recovered directly and jointly through the restitution payment and whether Rigzone otherwise benefited. *Id.*

In *Utts* the Texas Supreme Court explained the parties' shifting evidentiary burdens with regard to whether a payment to one party can reduce a recovery by a different party. First, when a defendant seeks a credit under the one-satisfaction rule against the plaintiff's damages, based on an earlier payment made to a different party, the defendant has the initial burden to offer evidence of the payment amount and evidence that the plaintiff received or benefited from the payment. *Id.* If the defendant does so, a presumption arises that the credit applies, and the burden shifts to the plaintiff to present evidence that it did not benefit from the earlier payment. *Id.* "If the plaintiff fails to satisfy this burden, then the defendant is entitled to a credit equal to the entire [payment] amount." *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 108 (Tex. 2018). Texas law requires this approach because "the plaintiff is in the best position to demonstrate why rendering judgment based on the jury's damages award would not amount to the plaintiff's double recovery." *Sky View*,

---

[2] *See also Nat'l Oil Well Varco, L.P. v. Sadagopan*, No. CV H-16-2261, 2018 WL 5778250, at *3 (S.D. Tex. Oct. 31, 2018) (Rosenthal, J.) (holding that this issue is governed by state law)

555 S.W.3d at 108 (cleaned up); *accord, e.g., Utts*, 81 S.W.3d at 329; *Nat'l Oil Well Varco*, 2018 WL 5778250, at *4.

Any genuine disputes require an evidentiary hearing. *See Utts*, 81 S.W.3d at 829; *Virlar v. Puente*, 613 S.W.3d 652, 697 (Tex. App.—San Antonio 2020, pet. filed). The evidentiary hearing is conducted by the court—not the jury— and can take place "after the jury has returned its verdict." *Utts*, 81 S.W.3d at 829; *accord Virlar*, 613 S.W.3d at 696. A "defendant's allegation that [the] plaintiffs benefited from another plaintiff's [receipt of payment] must be resolved in this manner because the trial court, not the jury, determines how a[n] [offsetting] credit applies as part of the trial court's function when it determines the judgment to render based on the jury's verdict." *Utts*, 81 S.W.3d at 829.

At issue in *Utts* was whether one defendant (Dr. Utts) was entitled to an offset against the damages awarded to one group of plaintiffs (the Short family), based on an earlier payment by a different defendant (HCA) to a different plaintiff (Walker). *Id.* at 830. The Texas Supreme Court held that a presumption arose in favor of the offset that could be overcome only if the plaintiffs proved they did not benefit from the earlier payment. *Id.* at 830. The case was remanded for an opportunity to present evidence to the trial court, with the instruction that "if the trial court determines that the Short family members have not overcome the presumption that Dr. Utts is entitled to apply

a[n] [offsetting] credit to each individual's recovery, the trial court should allow Dr. Utts [offsetting] credits." *Id.*

Similarly, in the *Virlar* case, the issue was whether two defendants (Virlar and Gonzaba) were entitled to a post-verdict offsetting credit under the one-satisfaction rule against the damages awarded to one plaintiff (Puente), based on an earlier payment by a different defendant (a hospital) to a different plaintiff (C.P.). The trial court denied the offset even though it "did not have an opportunity to make an evidentiary finding as to any benefit Puente obtained from C.P.'s [receipt of the earlier payment]." *Virlar*, 613 S.W.3d at 667, 696-67. The Texas court of appeals reversed and remanded with instructions "to conduct an evidentiary hearing on any benefit" to Puente. *Id.* at 697, 704.

An evidentiary hearing is likewise required here, to the extent any genuine dispute exists as to whether Rigzone recovered through or benefited from the restitution payment.

## B.  Rigzone recovered through the restitution payment.

### 1.  Rigzone admitted it recovered.

The Court should hold that Rigzone recovered restitution as a matter of law. Rigzone admitted in the statement of the case in the joint pretrial order that Kent "agreed to (and has now paid) DHI ***and Rigzone*** $3.3 million."[3] It

---

[3] Doc. 290 at 5 (emphasis added). Plaintiffs submitted this fact as the truth, objecting "subject to their Motions in Limine #5 & 6" only. *Id.*  In those motions, Plaintiffs argued that the restitution payment was irrelevant and too prejudicial to be mentioned to the jury.

may not assert the opposite now. "A joint pretrial order 'supersedes all pleadings and governs the issues and evidence to be presented.'" *Canatxx Energy Ventures, Inc. v. Gen. Elec. Capital Corp.*, No. 07-20522, 2008 WL 4601691, at *2 (5th Cir. Oct. 16, 2008) (quoting *McGehee v. Certainteed Corp.*, 101 F.3d 1078, 1080 (5th Cir. 1996)). Therefore, "an admission in a pre-trial order is a waiver of the assertion of a contrary position." *Id.* This rule is vital because the parties and the court conduct the entire trial in reliance of statements in the pretrial order. *See Martin v. Lee*, 378 F. App'x 393, 394-95 (5th Cir. 2010)

In *Canatxx* the jury awarded the plaintiff more than $136 million in damages for breach of fiduciary duty, fraud, unfair competition, and conspiracy. 2008 WL 4601691, at *1. After the verdict the defendant, General Electric Capital Corp. ("GECC"), argued that it was contractually released from all liability to the plaintiff because a contract provided that "GEPSI and its Affiliates shall incur no liability" and GECC was an Affiliate. *Id.* at *2. The district court denied GECC's motion on the ground that "GECC had provided no evidence that it was an affiliate of GEPSI." *Id.*

The Fifth Circuit reversed and rendered judgment that the plaintiff take nothing because the plaintiff had admitted the affiliation in the statement of the case in the joint pretrial order, which read: "[A]mong GE's businesses are a unit called GE Power and a unit called GE Capital. All the GE companies

---

Doc. 290-8 at 3-4. Plaintiffs never objected that the fact was untrue, as they belatedly argue now.

are part of the General Electric Corporation and they all work together toward enhancing GE Corporation's bottom line." *Id.* (cleaned up). The Fifth Circuit held that the plaintiff "thereby admitted that both GECC and GEPSI are either owned or controlled by General Electric Company ('GE'), and thus qualify as 'Affiliates.'" *Id.* The Fifth Circuit further explained that "[b]ecause the pre-trial order establishes GECC's affiliate status, there is no need to" consider additional evidence. *Id.* at *2 n.4.

Just as the plaintiff's admissions in the pretrial order foreclosed its later assertion to the contrary in *Canatxx*, Rigzone's admission in the pretrial order that Kent paid the full restitution amount of $3.3 million to "DHI and Rigzone" should foreclose it from now asserting otherwise.

### 2.  The evidence confirms Rigzone recovered.

Independently of Rigzone's admission, the evidence confirms that Rigzone directly recovered through the restitution payment or otherwise benefited.

Criminal restitution procedure provides the framework for understanding this evidence. At the request of the probation officer preparing the presentencing report ("PSR"), federal prosecutors have a responsibility to identify every victim and seek restitution for each of them. 18 U.S.C. § 3664(d)(1). The probation officer, before submitting the PSR to the court, must notify every identified victim of the amounts subject to and submitted for restitution and help each victim submit its claim. *Id.* § 3664(d)(2). The court must then order restitution to each victim for the full amount of its

losses. *Id.* § 3664(f)(1)(a); *see also* 18 U.S.C. § 3771(a)(6), (b)(1); Fed. R. Crim. P. 32(c)(1)(B), (d)(2)(B), (d)(2)(D); U.S. Dep't of Justice, Attorney General Guidelines for Victim and Witness Assistance 45–47 (2011 ed., rev. May 2012) (Ex. 6).

That is exactly what occurred here. When the Department of Justice ("DOJ") sought out victims, Rigzone and DHI stepped forward jointly, with shared counsel, seeking restitution for a single loss. Specifically, in 2014, counsel responded on behalf of DHI ***and Rigzone*** to the DOJ's request for information regarding the "loss or harm sustained by ***Rigzone***":[4]



In 2016, counsel again submitted loss information jointly on behalf of DHI ***and Rigzone***.[5]

---

[4] Exhibit 8 (Doc. 383-4) (emphasis and highlighting added). "Dice Holdings" in this email refers to Dice Holdings, Inc., known as DHI and later formally renamed DHI Group, Inc.

[5] Exhibit 9 (Doc. 383-5) (highlighting added).

> **Re:**   *DHI Group, Inc.*
>
> Dear Andrew:
>
> Thank you for your e-mail.  In response to your targeted requests for information, DHI Group, Inc. ("DHI") and Rigzone.com, Inc. ("Rigzone") submit the attached documents providing support for the specific categories of losses that you have identified in your email.  We emphasize that these attachments do not reflect our "estimate of loss" or the total damages suffered as a result of the actions of David Kent, oilpro.com, and others.  Instead, the information provided is merely intended to illustrate the types of costs that you have requested.  DHI and Rigzone's monetary damages far exceed the amounts reflected in the attachments, and this submission does not address those amounts.

For example, DHI and Rigzone reported a joint loss amount for employee costs that included employees of Rigzone (such as Chad Norville), employees of DHI (such as Michael Durney), and officers of both Rigzone and DHI (such as Brian Campbell)—without telling the DOJ who worked for whom.[6] DHI and Rigzone also reported a joint loss amount for candidate costs, which included Rigzone expenses, DHI expenses, and unspecified expenses.[7] And DHI and Rigzone reported a "DHI" expense based on a Rigzone expense.[8]

Following the lead of DHI and Rigzone, when the DOJ submitted a letter to the Southern District of New York about how it calculated restitution, it used the term "Victim-1" throughout the letter as a shorthand reference to DHI and Rigzone jointly, or at times interchangeably.[9] And the loss amounts that are the basis of the restitution are joint amounts, as provided by DHI and Rigzone.[10]

---

[6] *Id.* at 4.

[7] *Id.* at 5.

[8] *Id.* at 13.

[9] Exhibit 7 (Doc. 53 from SDNY); Exhibit 1.

[10] *Id.*

In addition, DHI and Rigzone jointly submitted a single victim impact statement to the court.[11] The statement was submitted by Brian Campbell, who specified that he was acting in the same capacity—General Counsel and Vice President of Business and Legal Affairs—for both DHI *and Rigzone.*[12] Of critical importance here, Campbell specified that he was using "DHI" as shorthand for both DHI *and Rigzone*:[13]



_____

[11] Exhibit 10 (Doc. 50-1 from SDNY).

[12] *Id.* at 1.

[13] *Id.* (highlighting added).

Thus, when Campbell informed the court about damages allegedly caused to "DHI," this reference encompassed DHI **_and Rigzone._**[14] When Campbell urged the court to order Kent "to repay every penny of the damages his actions imposed on DHI," this reference encompassed DHI **_and Rigzone._**[15] Campbell acted on behalf of both.[16]

It comes as no surprise, then, that the district court's final judgment and order of restitution, issued nine days later, directed Kent to forward payment to Campbell. Nor is it any surprise that the order included Campbell's physical address at DHI's office at 1040 Avenue of the Americas in New York—the same address that appears (as shown above) on Campbell's letterhead:[17]

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| DHI Group, Inc. | $3,292,800.00 | $3,292,800.00 | |
| ATTN: Brian P. Campbell, Vice President | | | |
| of Business and Legal Affairs and General | | | |
| Counsel | | | |
| 1040 Avenue of the Americas, 8th Floor | | | |
| New York, NY 10018 | | | |

---

[14] *Id.* at 3–4, 6.

[15] *Id.* at 6.

[16] Any suggestion now that Campbell, Rigzone's General Counsel, forgot to identify his client as a victim apart from DHI is nonsensical. At no time did Campbell claim that his client Rigzone was omitted from the restitution process.

[17] Exhibit 10 (SDNY Doc. 50-1); Exhibit 11 (SDNY Doc. 56) at 6 (highlighting added); *see also* Doc. 381-4.

The fact that Campbell physically offices at DHI does not, of course, change the fact that he holds the same position with DHI ***and Rigzone*** and acted in the criminal proceeding on behalf of both.[18]

Moreover, the restitution order directed that restitution be paid "to the victim of the offense charged in Count One,"[19] which reads as follows:[20]

> ## COUNT ONE
>
> **(Fraud and Related Activity in Connection with Computers)**
>
> The United States Attorney charges:
>
> 1.   From at least in or about October 2013, up to and including at least in or about February 2016, in the Southern District of New York and elsewhere, DAVID W. KENT, the defendant, intentionally accessed a computer without authorization and exceeded authorized access and thereby obtained information from a protected computer, which offense was committed for purposes of commercial advantage and private financial gain, to wit, KENT accessed client information from the database of a website ("Website-1") owned by a company ("Company-1") without authorization for the purpose of increasing the membership of a website ("Website-2") owned by KENT.

"Website-1" means rigzone.com, and "Company-1" means (or at the very least includes) Rigzone, the owner of rigzone.com and—as this Court determined[21]—the sole owner of the TUTSA claim arising from the access of

---

[18] Also telling is that the restitution order has a blank in the column entitled "Priority or Percentage", which is where the court would identify the percentage allocated to each of multiple victims. In this case there was only one victim (DHI and Rigzone jointly) because there was only one loss. As a result, no need existed to list a priority or percentage.

[19] Exhibit 12 (SDNY Doc. 55).

[20] Exhibit 13 (SDNY Doc. 38) (highlighting added).

[21] *Compare* Doc. 367 at 13 (proposed TUTSA questions) *with* Doc. 377 at 10 (TUTSA question in the Court's charge).

rigzone.com.[22] It was always understood that the restitution payment was intended to compensate Rigzone as the victim of the criminal violation, and that Rigzone was the intended recipient of the payment.[23] The lead Assistant U.S. Attorney on the criminal case recently conveyed to Dan Cogdell, Kent's counsel in the criminal case, that the victim was Rigzone.[24]

This evidence disproves Rigzone's post-verdict assertion that it was a stranger to the restitution process. Unlike in many civil contexts, where courts must carefully distinguish a parent company from its subsidiaries, no such rule exists in the context of criminal restitution. Thus, Rigzone and DHI acted as one throughout the restitution process, and the DOJ and the court treated them accordingly. In addition, Rule 60 of the Federal Rules of Criminal Procedure allows counsel to act as a victim's representative, as Campbell did here.

In this case as well, Rigzone and DHI acknowledged repeatedly over a period of years that the restitution payment would be applied against a recovery, without distinguishing between them. For example, at a 2018 hearing, Magistrate Judge Johnson responded to a comment regarding "whether the $3.3 million that has already been paid [in restitution] will be

---

[22] Exhibit 1; *see also* Doc. 383-2 at ¶¶ 2-3; DX39 (Rigzone's terms and conditions, stating that "The Site, including all pages within and all code related thereto, is the property of Rigzone.com, Inc.").

[23] Exhibit 1; *see also* Doc. 383-2 at ¶ 3.

[24] Exhibit 1.

an offset" by stating: "Of course it will."[25] Counsel for Plaintiffs concurred: "[W]e looked at it too and believe it would be as well."[26] Judge Johnson further explained: "[I]t's criminal restitution for this very conduct. To me that's an offset."[27] When Judge Johnson indicated that a motion may be necessary to resolve the offset issue, counsel for Defendants said that "[i]f we're agreed then . . . no need for me to raise that," and counsel for Plaintiffs responded, "You're right[.]"[28]

Rigzone's belated post-trial assertion that it was somehow cut out of any restitution presumes (contrary to its repeated representations and the evidence) that the DOJ failed to identify every victim, notwithstanding its obligation to do so under 18 U.S.C. § 3664(d)(1). It further presumes (contrary to Rigzone's representations and the evidence) that the court failed to award restitution to the victim, notwithstanding its obligation to do so under 18 U.S.C. § 3664(f)(1)(a)—and that the court impermissibly excluded Rigzone without any objection from Campbell, who personally attended the hearing at

---

[25] Doc. 197 at 40:21–42:07.

[26] *Id.*

[27] *Id.*

[28] *Id.*; *see also* Doc. 360-1 at 35:06–36:01 (argument from Plaintiffs that offset "becomes a level of double counting"); Doc. 360-2 at 162:19–163:11 (Plaintiffs' counsel: "It's subject to an offset."); Doc. 373 at 229 (argument from Plaintiffs, specifically regarding TUTSA, that "the only thing that [the restitution payment] number is actually used for and should be used for" is offsetting damages); Doc. 374 at 9:21–22 (argument from Plaintiffs that the jurors "understand that there won't be a double recovery. That's the instruction that needs to be given . . . .").

which the preliminary restitution order was announced on behalf of both of his clients.[29]

Finally, Rigzone's argument would open an enormous loophole that would allow any large enterprise to skirt restitution-offset rules by asking the court in the criminal action to pay restitution to the parent company for the subsidiary's losses, and then filing a civil action on behalf of the subsidiary. The law does not tolerate such a sham. *See, e.g.*, *T. L. James & Co., Inc. v. Statham*, 558 S.W.2d 865, 867 (Tex. 1977) (rejecting the plaintiff's attempt to avoid the one-satisfaction rule in a subsequent suit by not taking the money awarded to him in the first suit because "in legal contemplation [he] ha[d] been compensated for his injuries" and he "cannot free himself of application of these accepted rules by the strategy of not withdrawing the original judgment . . . while he pursues his suit" for a recovery again "in the hope that the second fact finder would find his damage to be greater"); *Virlar*, 613 S.W.3d at 695-97 (remanding for an evidentiary hearing to determine whether payment to a child only "was a 'sham' transaction to avoid" an offset of the parent's damages and allow the parent to obtain a double recovery).

## C.   Rigzone cannot recover twice for the same injury, even if the injurious act violated two statutes.

Nor can Rigzone escape the offset by arguing that the criminal restitution and civil damages arose under different statutes. Under Texas law, that is

---

[29] Exhibit 2 [Doc. 41 from SDNY] at 20.

irrelevant; what matters is that the criminal restitution and TUTSA recovery compensate for the same alleged injury.

"The one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991); *accord, e.g.*, *Nat'l Oil Well Varco*, 2018 WL 5778250, at *3–4. "[Texas Supreme Court] precedent makes clear that the question of whether the one-satisfaction rule applies relies not on the cause of action asserted by the plaintiff, but on whether the plaintiff has suffered a single, indivisible injury." *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 113 (Tex. 2018). Thus, the one-satisfaction "rule applies both when 'the defendants commit the same act as well as when defendants commit technically differing acts which result in a single injury.'" *Id.* at 107 (quoting *Stewart Title*, 822 S.W.2d at 7). For example, a plaintiff that had already recovered for breach of contract could not recover on its claims of conversion, negligence, tortious interference with contract, and money had and received, because all those claims were "predicated on one event" that "caused but a single injury to [the plaintiff]." *AMX Enters., Inc. v. Bank One, N.A.*, 196 S.W.3d 202, 206–07 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). It made no difference that breach of contract was "technically a different cause of action." *Id.* at 208. In this case the criminal restitution and TUTSA recovery

similarly arise from the same events—access of the résumés—and provide compensation based on the résumés' alleged value.[30]

The one-satisfaction rule is consistent with the Texas and federal restitution statutes. The Texas statute provides:

> Any amount recovered by a victim from a person ordered to pay restitution in a federal or state civil proceeding is reduced by any amount previously paid to the victim by the person under an order of restitution.

Tex. Code Crim. Proc. § 42.037(f)(2). Similarly, the federal Mandatory Victims Restoration Act ("MVRA") provides that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in . . . any Federal civil proceeding." 18 U.S.C. § 3664(j)(2). The Fifth Circuit has held that a criminal victim can be compensated only once for its loss—no more. *United States v. Sheinbaum*, 136 F.3d 443, 449 (5th Cir. 1998).[31]

For the reasons set forth above, the Court should conduct an evidentiary hearing, as required by Texas law to resolve any genuine issues regarding the

---

[30] *Compare* Doc. 377 at 14 (TUTSA damages based on the value of the résumés), *with* Doc. 384-1 (criminal restitution based on the value of the résumés).

[31] *See also, e.g.*, *United States v. Smathers*, 879 F.3d 453, 459 (2d Cir. 2018) ("The MVRA [federal Mandatory Victims Restoration Act] is interpreted as not authorizing a victim's recovery of more than the amount of its loss."); *United States v. Louper-Morris*, 672 F.3d 539, 566 (8th Cir. 2012) ("[T]he MVRA does not allow victims to obtain double recovery or a windfall through restitution.); *United States v. McDaniel*, 398 F.3d 540, 555 (6th Cir. 2005) ("[T]he restitution statutes do not permit victims to obtain multiple recoveries for the same loss.")

offset, and order that Rigzone take nothing under Federal Rules of Civil Procedure 50, 59(e), or 60.

## II. Alternatively, the Court should hold that Rigzone's TUTSA claim fails as a matter of law.

If the Court applies the offset, eliminating Rigzone's recovery, there is no need to consider any other issue. Alternatively, instead of addressing the offset, the Court could hold that Rigzone is not entitled to a TUTSA recovery in the first place because there was no trade secret, because there was no actual loss, or for both reasons.

## A. It is *undisputed* that the résumés are not "trade secrets."

At the charge conference, the Court considered whether the jury should be asked about ownership of a trade secret in "***the compilation of resumes*** and related information in the Rigzone Resume Database" (as Plaintiffs requested) or "***the resumes*** in Rigzone's resume database" (as Defendants requested).[32] The Court ruled that the proper inquiry was whether the "resumes" were trade secrets—not whether a "compilation of resumes" was a trade secret—and instructed the jury accordingly.[33] The Court's ruling was correct: Kent accessed individual résumés, not the entirety of any compilation or database of résumés.

The Court's ruling on the charge is fatal to Rigzone's TUTSA claim. Plaintiffs themselves have admitted repeatedly that individual résumés cannot

---

[32] Doc. 367 at 13 (emphasis added).
[33] Doc. 377 at 10.

conceivably qualify as trade secrets under TUTSA. In their opening argument, Plaintiffs told the jury:

> I want to tell you something right now. No one on my side of the case . . . will ever tell you that an individual résumé is entitled to legal protection as a trade secret. That's not how it works, and that's not what we're claiming.
>
> Instead, what we're saying is that the collection of résumés, the compilation of these résumés is . . . a trade secret.[34]

Twice during their closing argument, Plaintiffs reiterated that the alleged trade secret was not the individual résumés but the compilation.[35]

Plaintiffs conceded this point because they must. Mirroring TUTSA,[36] the jury charge defined a "trade secret" as information that:

> (A)  derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (B)  is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[37]

There is no legally sufficient evidentiary basis for finding that the résumés satisfy either element.

---

[34] Doc. 360-1 at 25–26.

[35] These comments are found on pages 55 and 74 of the rough draft of the March 25, 2021 trial transcript. A certified copy of that transcript will be submitted, once obtained.

[36] Tex. Civ. Prac. & Rem. Code § 134A.002(6). This motion refers to the version of TUTSA that was in effect when this action was filed. *See* Acts 2013, 83rd Leg., R.S., Ch. 10 (S.B. 953), § 1, eff. Sept. 1, 2013. TUTSA was amended in 2017, but the 2017 amendment "applies only to an action that commences on or after the effective date of this Act." Acts 2017, 85th Leg., R.S., Ch. 37 (H.B. 1995), §§ 6-7, eff. Sept. 1, 2017.

[37] Doc. 377 at 10.

With regard to element (A), not a single witness disputed that the résumés were "readily ascertainable by proper means by . . . other persons." To the contrary:

- Rigzone voluntarily sold or gave access to "thousands of people," including "[e]very employee and every customer that ever subscribed to the system."[38]

- Officers of Rigzone and DHI testified that Rigzone sold corporate subscriptions allowing access by *unlimited* employees and/or access to *unlimited* résumés.[39]

- Rigzone's officers further testified that subscribers could use Rigzone's "download to Excel" feature to access hundreds or thousands of résumés all at once.[40]

Nor was there any dispute that persons accessing the résumés could "obtain economic value from [their] disclosure or use." Employers could obtain economic value by hiring qualified candidates to conduct their business operations, and recruiters could obtain economic value by being paid to connect employers with candidates.[41]

With regard to element (B), Rigzone's president, Chad Norville, and DHI's CEO, Michael Durney, candidly admitted that Rigzone had no rules or guidelines against disclosing résumés outside the company, no guidelines on handling trade secrets, no consequences for employees who disclosed trade

---

[38] Doc. 360-2 at 61–62, 64.

[39] Doc. 360-2 at 233 (Chad Norville, President of Rigzone); Exhibit 3 at 74–77 (Norville); *id.* at 232 (Michael Durney, CEO of DHI); Exhibit 5 at 5 (Jeremy Antonini, technology officer at Rigzone); Exhibit 4 at 129 (Bud Montang, Director of Operations at Rigzone).

[40] Exhibit 3 at 80 (Norville); Exhibit 5 at 5 (Antonini).

[41] *E.g.*, Exhibit 3 at 71–72 (Norville).

secrets, no policy requiring employees to return résumés when leaving the company, and no requirement that Rigzone customers keep the résumés secret.[42] Only a select few employees had access to Rigzone's software code—which was a trade secret—yet every single Rigzone employee had access to the résumés.[43] When the résumés were transferred to a new computer server, no security measures were taken—the old server was not removed, cleaned, or sent to a secure location.[44] Rigzone technology officer Jeremy Antonini simply took the server home, with Rigzone's permission, and kept it as his personal property.[45] Until Plaintiffs decided to sue, no one at Rigzone or DHI ever referred to the résumé database or résumés as a "trade secret."[46]

In short, information that a company shares with customers is not secret, so it cannot constitute a trade secret. *See* Tex. Civ. Prac. & Rem. Code § 134A.002(6)(B); *Numed, Inc. v. McNutt*, 724 S.W.2d 432, 435 (Tex. App.—Fort Worth 1987, no writ) ("The evidence reflects much of the information Numed wishes to protect is not secret. Instead, it is contained in the contracts distributed to Numed's customers, which in turn may be discovered by anyone."). Because Rigzone had no trade secret, the Court should enter judgment as a matter of law under Rule 50(b) or alter the judgment under Rule 59(e) and order that Rigzone take nothing.

---

[42] Doc. 360-2 at 230, 233-34 (Norville); Exhibit 3 at 232 (Durney).

[43] Exhibit 3 at 108-09 (Norville).

[44] Exhibit 3 at 119-20 (Norville); Exhibit 5 at 5-6 (Antonini).

[45] Exhibit 3 at 119-20 (Norville); Exhibit 5 at 5-6 (Antonini).

[46] Exhibit 3 at 68-70 (Norville); *id.* at 232 (Durney); Exhibit 4 at 134 (Montang).

**B.     Rigzone has no TUTSA damages.**

Rigzone's trade secret claim fails not only because it had no trade secret, but also because there was no legally sufficient evidentiary basis to support an award of damages under any compensable measure. TUTSA provides that a plaintiff may recover (1) actual loss, (2) unjust enrichment, or (3) a reasonable royalty. Tex. Civ. Prac. & Rem. Code § 134A.004. Only actual loss is at issue here, because the jury found no unjust enrichment and Plaintiffs did not seek a royalty.

The pattern jury charge defines actual loss as "lost profits resulting from the misappropriation." State Bar of Tex., Tex. Pattern Jury Charge 115.55. Plaintiffs readily conceded that there were no lost profits.[47]

In lieu of a question regarding lost profits resulting from the misappropriation, Rigzone requested a question asking "[t]he value that a reasonably prudent investor would have paid for the trade secret," and the jury awarded damages under this measure.[48] But this "is an appropriate measure of damages ***only*** when the defendant has in some way destroyed the value of the secret." *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 535 (5th Cir. 1974) (emphasis added); *see also* State Bar of Tex., Tex. Pattern Jury Charge 115.55 cmt. (2018) (warning that this measure of damages is available only under the circumstances described in *Lykes-*

---

[47] Exhibit 3 at 120-21 (Norville), 224-28 (Durney); Exhibit 4 at 11 (Johnson), 99-100 (Roberts).
[48] Doc. 377 at 14.

*Youngstown*).[49] Plaintiffs did not allege (must less prove) that the value of Rigzone or its résumés declined at all (much less that their value was "destroyed"). Plaintiffs' witnesses candidly admitted that the alleged misappropriation caused no loss in value.[50] Plaintiffs even agreed to a limine order precluding evidence of decreased value.[51]

Because Plaintiffs conceded that Rigzone suffered neither lost profits nor a loss in value, the Court should enter judgment as a matter of law under Rule 50(b) or alter the judgment under Rule 59(e) and order that Rigzone take nothing. Alternatively, the Court should order a new trial using the proper measure of damages under Rule 59(a).[52]

---

[49] A total loss in value was the key fact in *Precision Plating*, the Fifth Circuit case that originated the "reasonably prudent investor" standard, where the defendant "made such public disclosure of the [secret] process as to amount to a complete destruction of the value of the process." *Precision Plating & Metal Finishing, Inc. v. Martin-Marietta Corp.*, 435 F.2d 1262, 1263-64 (5th Cir. 1970). The same occurred in the *Wellogix* case, where "'the total value of [the plaintiff company] went to zero' after the alleged misappropriation." *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 880 (5th Cir. 2013) (quoting testimony). The Fifth Circuit has explained that "[u]nder Wellogix . . . the correct inquiry is what the misappropriation did to the market value of the company." *In re Mandel*, 720 F. App'x 186, 192 (5th Cir. 2018). Similarly, in *Bohnsack*, the defendant's action of publishing the trade secret by filing a patent application "lowered the market value" of the plaintiff's invention, and the plaintiff "suffered lost revenues." *Bohnsack v. Varco LP*, 668 F.3d 262, 268-69, 276, 279-80 (5th Cir. 2012).

[50] Exhibit 3 at 121-23 (Norville), 217-18, 230-31 (Durney); Exhibit 4 at 11 (Johnson), 99-100 (Roberts).

[51] Doc. 290-9 at 4 (Defendants' mot. in limine #6); Doc. 300 at 4-5 (Plaintiffs' agreement).

[52] The proper measure of damages requested by Defendants was "Rigzone's lost profits caused by the misappropriation," or alternatively, "If David Kent deprived Rigzone of the trade secret's use or destroyed its value, answer with the value that a reasonably prudent investor would have paid for the trade secret at the time of the misappropriation." (Doc. 367 at 18.) At a minimum, the proper measure of damages would require the jury to find that an investor would have paid a particular amount at a particular time—specifically, "at the time of the misappropriation." State Bar of Tex., Tex. Pattern Jury Charge 115.55 cmt. (2018) (citing Fifth Circuit authority).

### III.   Alternatively, the payee of damages should be corrected.

Because Rigzone's recovery is eliminated by the offset, and because its TUTSA claim fails as a matter of law, there is no need for the Court to reach a final issue: whether the final judgment should be altered under Rule 59(e) or 60 to provide that (1) Rigzone recovers solely from Kent, and (2) Plaintiffs take nothing from Oilpro. The final judgment facially requires both Kent and Oilpro to pay damages because both parties are listed in the caption of the judgment, both parties are referred to collectively in the judgment, and the judgment does not state that one, but not the other, pays.[53] Plaintiffs agreed to entry of judgment under Federal Rule of Civil Procedure 50 as to Oilpro, prior to the Court's submission of questions and instructions to the jury.[54] Accordingly, the jury awarded the damages in the final judgment to Kent, not Oilpro.[55] This is yet another reason that the final judgment must be changed.

### IV.   Relief should also be granted on the grounds set forth below.

Defendants renew and incorporate each of the grounds for judgment set forth in their motion for judgment under Rule 50(a).[56] This includes the ground that Plaintiffs are not entitled to a recovery under their common-law misappropriation claims, because Texas does not recognize a cause of action for misappropriation of information that is not a trade secret, and TUTSA

---

[53] Doc. 385.

[54] Doc. 364; Doc. 374 at 13-14.

[55] Doc. 377 at 13-14.

[56] Doc. 360; Exhibit 4 at 69-86.

displaces any claim for misappropriation of a trade secret.[57] Moreover, there was no legally sufficient evidentiary basis that DHI owned the allegedly confidential information or to support an award of damages under any compensable measure, and the measure of damages submitted in the charge is not recoverable under Texas law. The Court should enter judgment for Defendants under Rule 50(b), alter or amend the judgment under Rule 59(e), grant relief from the judgment under Rule 60, or grant a new trial under Rule 59.

Defendants satisfied their initial burden to establish the offset, or alternatively are entitled to a hearing at which they may do so, and Rigzone has not shown that it neither received nor benefited from the restitution payment, which fully or partially offsets its damages. The Court should enter judgment as a matter of law under Rule 50, alter or amend the judgment under Rule 59(e), or grant relief from the judgment under Rule 60. In the alternative, Defendant requests a new trial under Rule 59 in which the jury is not erroneously instructed that "there is no risk that Plaintiffs will recover for the same injury twice."[58]

The testimony of Dr. Shane Johnson should have been excluded.[59] In the absence of this testimony, Defendants are entitled to judgment under Rule

---

[57] Tex. Civ. Prac. & Rem. Code § 134A.007; *SP Midtown Ltd. v. Urban Storage L.P.*, No. 14-07-00717-CV, 2008 WL 1991747, at *5 n.5 (Tex. App.—Houston [14th Dist.] May 8, 2008, pet. denied) (mem. op.).

[58] Doc. 377 at 8.

[59] *See* Doc. 232.

50(b), an altered or amended judgment under Rule 59(e), or relief from the judgment under Rule 60. Alternatively, Defendants are entitled to a new trial under Rule 59.

In the final alternative, Defendants request a new trial under Rule 59 on the ground that the Court erred by denying Defendants' initial motion for mistrial related to the recess between the first and second portions of the trial; Defendants' motion for a supplemental jury questionnaire or further voir dire to determine whether, after the recess, the jurors could adequately recall the testimony from before the recess; and Defendants' other motions for mistrial, including the motion for mistrial after the jury sent a question indicating that they could not, in fact, adequately recall Kent's testimony from before the recess.

Respectfully submitted,

**FOLEY & LARDNER LLP**

*/s/ James G. Munisteri*
James G. Munisteri
Texas Bar No. 14667380
S.D. Tex. Bar No. 7294
1000 Louisiana, Suite 2000
Houston, Texas 77002-2099
jmunisteri@foley.com
Tel: 713.276.5500
Fax: 713.276.5555

Sara Ann Brown
Texas Bar No. 24075773
2021 McKinney, Suite 1600
Dallas, Texas 75201-3340
sabrown@foley.com

**HAYNES AND BOONE, LLP**

Lynne Liberato
Texas Bar No. 00000075
S.D. Tex. Bar No. 3072
Ryan Patrick
Texas Bar No. 24049274
S.D. Tex. Bar No. 3006419
Kent Rutter
Texas Bar No. 00797364
S.D. Tex. Bar No. 20519
1221 McKinney, Suite 2100
Houston, Texas 77010-2007
lynne.liberato@haynesboone.com
ryan.patrick@haynesboone.com
kent.rutter@haynesboone.com
Tel: 713.547.2000
Fax: 713.547.2600

**Attorneys for Defendants**

**Certificate of Conference**

I certify that I conferred with counsel for Plaintiffs regarding the relief this motion requests, and Plaintiffs are opposed to the relief requested.

*/s/Kent Rutter*
Kent Rutter

**Certificate of Service**

I certify that on April 16, 2021, I electronically filed the foregoing with the Clerk of court using the CM/ECF system, which will send notification of this filing to all counsel of record in this case.

*/s/ Sara Ann Brown*
Sara Ann Brown