# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC., | |
| *Plaintiffs,* | Civil Action No. 16-1670 |
| v. | |
| DAVID W. KENT, JR., SINGLE INTEGRATED OPERATIONS PORTAL, INC. D/B/A OILPRO AND OILPRO.COM, ET AL., | |
| *Defendants.* | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

After entry of Final Judgment ordering that "Defendants take nothing," Defendants now demand nearly half a million dollars of attorneys' fees for defending against the preempted Texas Theft Liability Act ("TTLA") claim as well as costs for Oilpro as the "prevailing" party. Defendants' request for attorneys' fees is not allowed by the law, nor supported by competent evidence. Moreover, losing all claims does not make one a prevailing party. Defendants' Motion should be denied in its entirety.

## RELEVANT BACKGROUND

The TTLA was one of several claims brought against Defendants for David Kent's theft of Plaintiffs' resumes. In October 2018, Defendants filed a 56-page Motion for Summary Judgment.[1] In it, Defendants sought summary judgment on virtually all of Plaintiffs' claims, including Plaintiffs' TTLA claim.[2] Defendants sought summary judgment, among other reasons, on the basis that Plaintiffs' TTLA claim was preempted by TUTSA.[3] In response, Plaintiffs agreed. Judge Johnson found the claim was preempted.[4] Judge Miller subsequently adopted Judge Johnson's order "in full."[5] That marked the end of the line for Plaintiffs' preempted TTLA claim.[6]

Additionally, after Defendants' Rule 50 Motion, which essentially re-urged the same arguments raised in the Motion for Summary Judgment regarding the surviving claims was denied, Plaintiffs voluntarily dismissed Oilpro as a Defendant for strategic reasons, namely, that the evidence

---

[1] ECF 231.

[2] *Id.*

[3] *Id.* at 14 (citing ECF 103).

[4] ECF 278 at 23-24 ("Plaintiffs agree that summary judgment should be granted on their TTLA claim, but argue that the other claims are not preempted.").

[5] ECF 279 at 1 ("Accordingly, the M&R (Dkt. 278) is ADOPTED IN FULL.").

[6] Defendants concede this point by only seeking attorneys' fees through the filing of Plaintiffs' response to Defendants' motion for summary judgment.

established Oilpro went out of business in 2017 and had no money or assets

that belonged to anyone not named David Kent.

## DISCUSSION

Defendants now seek costs for Oilpro's trial "victory," and $450,546.95

in attorneys' fees related to its defense of Plaintiffs' TTLA claim. For reasons

set out below, Defendants' requests must be rejected.

## A.   Oilpro Lost.

Though Plaintiffs ran the table on Oilpro's counterclaims and secured

$5.5 million in total verdicts against Oilpro's Founder, President, and

exclusive owner, Oilpro boldly alleges it is entitled to court costs because

"no claims asserted against Oilpro were submitted to the jury."[7] Defendants'

artfully worded observation suggests this fact was the result of some great

legal triumph. In reality, the jury did not consider the claims against Oilpro

because Plaintiffs *chose* not to submit the claims to the jury.[8] In so doing,

Plaintiffs thwarted Defendants' counsel from attempting to persuade the

---

[7] ECF 386 at 2.
[8] The Court denied Defendants' Rule 50 Motion as to Oilpro at the end of Plaintiffs' case-in-chief. Plaintiffs subsequently voluntarily withdrew their claims against Oilpro.

jury to direct their damages award at David Kent's insolvent company, instead of (solvent) David Kent himself.

Ultimately, the threshold issue when determining whether a party is entitled to costs is "'whether the party, as a practical matter, has prevailed.'" *Kaepa, Inc. v. Achilles Corp.*, No. 98–50559, 2000 WL 729242, at *6 (5th Cir. May 17, 2000) (quoting *Schwartz v. Folloder*, 767 F.2d 125, 130 (5th Cir. 1985)). "The case must be viewed as a whole to determine" which party prevailed. *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 131 (5th Cir. 1983). Here, the jury found that Oilpro was (literally) a criminal enterprise and rejected all of its counterclaims.[9] Those findings only support one conclusion: Plaintiffs prevailed over Oilpro. As a result, Oilpro's request for costs should be denied.

## B.     Defendants Cannot Recover Attorneys' Fees.

Defendants seek to recover $450,546.95 in attorneys' fees they purport to have paid Foley Lardner ("Foley") and Blank Rome to defend against Plaintiffs' TTLA claim. This request must be denied because Defendants did not properly put Plaintiffs on notice that TTLA attorneys' fees would be

---

[9] ECF 377.

sought by them. Moreover, even if they had, they have not properly established the fees to which they would be entitled.

The Fifth Circuit has long recognized that as a general rule, for a party to be entitled to a claim for attorneys' fees, the party must have specifically pleaded for them. *See United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 765 (5th Cir. 1996) ("As a general rule, however, we find nothing inappropriate with requiring a party to put its adversaries on notice that attorneys' fees are at issue in a timely fashion or waive that claim."); *Romaguera v. Gegenheimer*, 162 F.3d 893, 895 (5th Cir. 1998) ("to be entitled to attorneys' fees, a party must . . . request attorneys' fees in its pleadings").[10] Recently, a court analyzing a claim for attorneys' fees under the TTLA recognized that "Texas courts have consistently found that a party seeking recovery of attorney's fees under the Theft Act [Texas Theft Liability Act] must file a pleading notifying the court and the opposing party of the party's *specific request* to be awarded fees under the Theft Act." *In re: RX Custom Homes, Inc.*, 2017 WL 2484850, *57 (Bankr. W.D. Tex. June 8, 2017) (emphasis

---

[10] While exceptions to the pleading requirement have been recognized, *see Solferini as Trustee of Corradi S.p.A. v. Corradi USA, Inc.*, No. 4:18-CV-00293, 2020 WL 5653961, (E.D. Tex. Sept. 23, 2020), none of the recognized exceptions apply here.

added) (citing multiple Texas cases holding that a failure to specifically plead for fees under the TTLA bars recovery of fees and costs).

This rule is, admittedly, not absolute. The "critical inquiry is whether the opposing party has been put on notice that attorneys' fees are *at issue*." *Hunt Development Group, L.P., v. Dick Corp.*, 2010 WL 116010153, *5 (W.D. Tex. 2010) (emphasis added) (internal quotation omitted). Defendants did not notify Plaintiffs or the Court they were seeking attorneys' fees related to their defense of the TTLA claim[11] until nearly a year and a half *after* Plaintiffs *agreed* Defendants were "entitled to summary judgment on that claim, Count XI of Plaintiffs' Complaint."[12] Had Defendants notified Plaintiffs of their intent to seek attorneys' fees under the TTLA in their answers (or

---

[11] Neither David Kent nor Oilpro timely asserted a claim for attorneys' fees under the TTLA. They also did not state their intent to seek attorneys' fees under the TTLA in their disclosures (expert or otherwise). Defendants' decision not to designate an expert on the issue further supports the denial of Defendants' attorneys' fee claim here. *See Amway Corp. v. BHIP Global, Inc.*, 2013 WL 2355525, *1 (E.D. Tex. 2013) (finding that, in addition to not pleading for attorneys' fees under the TTLA, the defendants' failure to designate an expert on the relevant attorneys' fees supported not awarding fees). They did, however, specifically plead for attorneys' fees under two other statutes (ECF 63 at 36 and 38), which should be interpreted as a conscious decision to forego those potential fees. *See Al-Saud v. Youtoo Media, L.P.*, 754 Fed. Appx. 246, 256 (5th Cir. 2018) ("But in the 'Attorneys' Fees' section, Al-Saud requests fees only under the Texas statute. Asking for fees under the statute without also invoking section 10 of the Facility Agreement could be interpreted as a conscious decision to forego them under the latter.").
[12] ECF 240 at 5.

otherwise),[13] Plaintiffs might have chosen to resist Defendants' arguments related to the TTLA in their Response to Defendants' Motion for Summary Judgment. But Defendants did not, so Plaintiffs saw no reasons to waste the Court's or the jury's time trying to prove damages on an insignificant claim. Plaintiffs reasonably relied on Defendants' pleadings when they made this decision, and any "notice" provided thereafter is necessarily too little, too late.

Defendants neither pleaded for attorneys' fees under the TTLA, nor were Plaintiffs on notice that such fees would be claimed until the filing of the Pretrial Order,[14] more than nine months after the TTLA claim was

---

[13] Oilpro's Answer to Original Complaint, filed July 15, 2016, did not plead for attorneys' fees under the TTLA. ECF 16. Although it did contain a general request for attorneys' fees, David Kent's Original Answer did not specifically plead for TTLA attorneys' fees. ECF 17. Oilpro's Amended Answer and Counterclaims for Injunctive Relief, filed on August 5, 2016, did not seek attorneys' fees. ECF 34. Indeed, Oilpro's first pleading that requests fees was its Second Amended Answer and Counterclaims, filed November 15, 2016. ECF 63. However, Oilpro made no request for attorneys' fees under TTLA; rather Oilpro specifically requested fees based on alleged copyright infringement under 17 U.S.C. § 505 and alleged trademark infringement under 15 U.S.C. § 1117. *Id.* at 36 & 38. Fatal to their request, those pleadings did not put Plaintiffs on notice that Defendants were seeking attorneys' fees under TTLA.

[14] Defendants' first filing that specifically requested fees under the TTLA was in the Pretrial Order, filed more than nine months *after* the claim had been removed from the case. ECF 290 at 16.

extinguished by Judge Johnson's Order. As a result, Defendants are barred from obtaining attorneys' fees and costs under the TTLA.[15]

## C.   Defendants are Not Entitled to the Fees They Seek.

Defendants demand $450,546.95 they claim to have spent defending against Plaintiffs' TTLA claim. Defendants base this request on the sworn testimony of their lawyer, Mr. Munisteri.[16] Mr. Munisteri claims "at least 15% of Foley's fees in the amount of $2,352,259.00 were incurred for legal services that were reasonable and necessarily related to the defense of the TTLA claim" and that "at least 10% of the Blank Rome fees in the amount of $977,081.00 were incurred for legal services that were reasonable and necessarily related to the defense of the TTLA claim."[17] As explained below,

---

[15] To the extent the Court excuses Defendants' failure to plead for attorneys' fees in their Answers, Plaintiffs should also be awarded attorneys' fees for their successful defense of Defendants' counterclaim for Breach of Contract under Texas Civil Practice & Remedies Code § 38.001. Like Defendants, Plaintiffs' answer includes a general request for attorneys' fees, but not a request specifically related to their defense of Defendants' Breach of Contract Claim. ECF 199 at p. 15. Applying the law discussed above, Plaintiffs have not heretofore sought to recover fees associated with this actual trial victory. But if the Court deems a general pleading of a right to recover attorneys' fees sufficient, Plaintiffs are entitled to recover all their fees associated with their defense of Defendants' counterclaims and would request the opportunity to amend their motion for attorneys fees and add evidence to that effect.

[16] ECF 386-2.

[17] *Id.* at Paragraphs 16-19.

Mr. Munisteri's fee estimate is not supported by competent evidence or common sense.

### 1. Defendants Request for Fees Fails for Lack of Evidence.

When seeking attorneys' fees, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The court must determine whether the hours expended by the prevailing party's counsel were "reasonably expended," both as to the total number of hours claimed and the specific hours claimed. *Condon v. Hunting Energy Services, L.P.*, Civ. A. No. H-04-3411, 2006 WL 2882857, at *2 (S.D. Tex. Oct. 4, 2006). The fee applicant bears the burden of showing that the hours claimed were reasonably expended. *Hensley*, 461 U.S. at 437.

Importantly, in cases—like this one—where some, but not all, fees may be recoverable, the Fifth Circuit requires the party seeking fees to segregate. *In re Alonzo*, 540 F. App'x 370, 373 (5th Cir. 2013) ("fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not") (quoting *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). Defendants did not do this. Instead, Mr. Munisteri simply plucked out of thin air a percentage of total

billings.

Defendants obliquely justify their failure to segregate fees on the grounds that Plaintiffs' TTLA claim is based on the same basic facts as many of their other claims. "[B]ut the exception [to the rule requiring parties seeking attorneys' fees to segregate their fees] requires more than a 'common set of underlying facts'[;] 'it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated.'" *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, No. 20-50271, 2021 WL 1100663, at *4 (5th Cir. Mar. 23, 2021) (quoting *Tony Gullo Motors I*, 212 S.W.3d at 313–14). Defendants' problem is that while the TTLA and TUTSA claims had "an underlying common set of facts" (David Kent's theft of Rigzone's resumes), there was no dispute as to these facts: David Kent admitted to all the conduct that formed the basis of Plaintiffs' factually related claims.

Put differently, Defendants spent no time or energy disproving the facts Plaintiffs' claims had in common. Instead, Defendants focused nearly all their time and efforts to argue, ultimately unsuccessfully, that the resumes were not a trade secret and that there were no damages. This is significant because Plaintiffs could not prevail on their TTLA claim unless

they proved a factual allegation unique to its TTLA claim. Specifically, Plaintiffs alleged David Kent engaged in the "common" and undisputed acts of stealing Plaintiffs' resumes and other confidential information but added the unique element that he did so "with the intent to deprive Plaintiffs' of their exclusive use."[18] Defendants' focused their entire factual defense of the TTLA claim on disproving their client acted with the intent to deprive. Indeed, the only merits-based argument Defendants' raised in their Motion for Summary Judgment on Plaintiffs' TTLA was that Plaintiffs failed to produce any evidence "Defendants deprived Plaintiffs of their use of their member information and Google Analytics Data."[19] Accordingly, the only fees that could be recoverable would be those related to Defendants' attempt to disprove that unique element.

### 2. *Defendants' Seek to Recover Unrecoverable Fees.*

An analysis of what is included in both Blank Rome's and Foley's bills reveals the unreasonableness of Defendants' request for $450,546.95 in attorneys' fees.

---

[18] ECF 231 at 18 (citing ECF 1).
[19] *Id.* at 19.

11

### a. Defendants Demand the Court Award Fees for Work Done in the Criminal Matter.

Defendants' request for $450,546.95 in attorneys' fees includes $97,708.10, representing 10% of the fees David Kent paid Blank Rome during the relevant period.[20] Yet the sponsor of the request acknowledges that Blank Rome worked on David Kent's *criminal* case.[21]  Additionally, Mr. Munisteri does not expressly claim to have reviewed Blank Rome's detailed time entries.

Moreover, Defendants also want to recover for criminal work done at Foley. Defendants ask for 15% of the $406,261 Kent paid to a criminal defense attorney—Marla Poirot Thompson[22]—for work she performed related to Kent's *criminal case*.[23] Defendants themselves acknowledge Poirot is a criminal law specialist, and documents the Court forced Defendants to

---

[20] Of course, Mr. Munisteri does not, and did not, work at Blank Rome, and thus did not supervise any of the work done by Blank Rome.

[21] *Id.* at Paragraph 20.

[22] Defendants do not attach Thompson-Poirot's biography, the first line of which states "Marla Poirot is a white-collar trial lawyer and investigator, representing both individual and corporate clients *in all facets of white-collar criminal matters*." https://poirotlaw.com/ (emphasis added).

[23] Poirot's biography speaks for itself.

produce show Poirot-Thompson primarily assisted Oilpro and Kent on his

*criminal* case.[24]

By including fees Defendants paid related to the criminal case in their

total billings baseline amount, Defendants are demanding David Kent's

victims subsidize the costs of his criminal defense. A request such as this

must fail.

> **b. Defendants Demand the Court Award Fees for Work Done by Corporate Attorneys, Bankruptcy Lawyers, and for Unrecoverable Paralegal Services.**

Defendants also seek to recover a portion of money they paid to

multiple timekeepers for work that had nothing to do with either the civil

case in general, or the TTLA claim in particular. Defendants seek to recover

attorneys' fees for services purportedly provided to David Kent and Oilpro

by 37 different timekeepers (27 at Foley, 10 at Blank Rome). Among these

timekeepers are bankruptcy lawyers, corporate mergers and acquisitions

lawyers, criminal defense attorneys, trademark/copyright lawyers, and IT

lawyers.  For example, Defendants seek to recover 15% of the money they

paid one of Mr. Munisteri's partners, Mr. Stevens—*a corporate oil and gas*

---

[24] The Poirot Emails (Ex. 1). The Court found Defendants waived their privilege by selectively invoking the privilege. ECF 259.

*attorney*—to draft and negotiate an agreement Kent used to fraudulently transfer $3 million to Jonathan Fairbanks.[25]

And Defendants' request for fees is not only based on unrelated work done by attorneys.  Indeed, Defendants also ask to be awarded a portion of the money they billed for clerical services. For example, Defendants demand they be reimbursed 15% of the $222,916.50 charged by one paralegal who "assist[ed] with organizing documents, discovery, and pleadings" and "assisted in preparing for depositions and preparing documents for court filings by organizing exhibits and preparing exhibit folders and appendices."[26] However, Defendants' attempt to collect for a portion for these fees by including them all in their total billings baseline amount is grossly improper because "purely clerical or secretarial tasks should not be billed at a paralegal rate, no matter who performs them." *Harris v. Fresenius Med. Care*, No. CIV A H-04-4807, 2007 WL 1341439, at *4 (S.D. Tex. May 4, 2007) (rejecting paralegal hours billed at less than half the rate Defendants were charged in this case).

---

[25] Ex. 2.
[26] ECF 386-1 at paragraph 13.

### c. Defendants Seek to Recover Fees for Prosecuting Unrelated Counterclaims.

Although they do not say so explicitly, Defendants seek an award of some portion of legal fees they paid their lawyers to prosecute Oilpro's counterclaims, all of which the jury rejected. These fees are not recoverable. As noted, fees do not have to be segregated where "the services rendered relate to (1) multiple claims arising out of the same facts or transaction and (2) the prosecution or defense entails proof or denial of the same facts, so as to render attorney's fees inseparable." *DP Sols., Inc. v. Rollins, Inc.*, 353 F. 3d 421, 434 (5th Cir. 2003). Oilpro's counterclaims—which were based on a company called Work Digital's alleged scraping of Oilpro's profiles—do not arise out of David Kent's theft of Rigzone's resumes and bear no relationship whatsoever to the TTLA claim. Defendants were therefore required to segregate the money spent preparing and prosecuting these claims.

These fees related to Defendants' counterclaims were not excluded from the total billings baseline amount, yet even a cursory review of the docket demonstrates Foley likely spent hundreds of hours and thousands of dollars preparing counterclaim specific pleadings, including (1) Oilpro's Original Counterclaims against Plaintiffs; (2) Oilpro's Response to Plaintiffs'

Motion to Dismiss Counterclaims; (3) Oilpro's Amended Counterclaims; (4) Oilpro's Response in Opposition to DHI's Motion to Dismiss Amended Counterclaims; (5) Oilpro's Response to DHI's Objections to Order Denying Motion to Dismiss Counterclaims; (6) Oilpro's Response to Plaintiffs' Motion to Compel Arbitration; and (7) Oilpro's Response to Plaintiffs' Objection to Judge Johnson's Order Denying Motion to Compel Arbitration. These are among the most substantive filings submitted by Defendants at any time in this case, and there is no rational basis to assert that they are related to the TTLA claim, yet Defendants do not exclude them.

### d. Defendants Seek to Recover Other Unreasonable Litigation Fees.

Defendants also seek to recover fees they incurred for work done that was sanctioned or strongly criticized. For example, Defendants' billings include filings related to responding to Plaintiffs' Motion to Strike Trent Livingston because Livingston's expert report did not comply with the Federal Rules of Civil Procedure.[27] Oilpro responded at length, first in a 30-page, 29-exhibit Response, then subsequently in a Sur-Reply and then a

---

[27] ECF 215.

"Supplement" to their Sur-Reply.[28] Judge Johnson partially granted Plaintiffs' Motion and, *sua sponte,* ordered Defendants to pay Plaintiffs' "reasonable attorneys' fees for filing their Motion to Exclude" based on her finding that Defendants' counsel acted in bad faith by improperly using privilege "for the purposes of gaining an advantage in the litigation."[29] Yet Defendants now ask the Court to award them 15% of money they paid to their lawyers to defend behavior the Court explicitly deemed worthy of sanction.

Likewise, Defendants did not segregate the time their lawyers spent filing an "Emergency Motion to Compel" and then a "Reply in Support of Emergency Motion to Compel."[30] Though they avoided sanctions for that filing, Judge Johnson summarily denied their Motion because Defendants *never served a request for production* seeking the documents they sought.[31]

---

[28] ECF Nos. 216, 222, and 224.

[29] ECF 259 ("Because Livingston's report and earlier deposition were missing critical explanations of his methodology raising credible claims to their unreliability, it is ORDERED that an award of attorneys fees is appropriate. Plaintiffs are awarded their reasonable attorneys' fees for filing their Motion to Exclude the Testimony of Livingston."). That tab is still outstanding, although Plaintiffs expect that amount to be subsumed in an award of RICO attorneys' fees.

[30] ECF Nos. 205, 210.

[31] ECF 205.

Under no circumstances is it reasonable that time spent filing frivolous discovery motions is related to defending the TTLA claim.

## D.     Alternatively, Defendants Are Entitled to no More Than $66,586.80 in Reasonable and Necessary Attorneys' Fees.

Defendants are not entitled to any TTLA attorneys' fees because they did not put Plaintiffs on notice that they would be sought prior to the claim disappearing. If, however, the Court determines that they are entitled to some fees, Plaintiffs suggest the Court consider a few relevant metrics:

- Plaintiffs' TTLA claim was one of 19 claims Plaintiffs asserted against Defendants' in their Original Complaint;[32]

- Plaintiffs' TTLA claim occupies seven paragraphs out of the 267 paragraphs in Plaintiffs' Original Complaint;[33]

- Neither Oilpro nor David Kent provided a substantive response to any of the allegations set out in the Original Complaint regarding the Texas Theft Liability Act in its Answer;[34]

- Out of the approximately 2700 pages of depositions taken in the case, only a little more than a page concerned the TTLA claim;

- Out of the 56 pages in Defendants' Motion for Summary Judgment, Defendants' devote roughly one total page to their discussion of their TTLA;[35]

---

[32] ECF 1.
[33] *Id.* at Paragraphs 197-203.
[34] ECF 17 at Paragraphs 197-203; ECF 63 at Paragraphs 197-203.
[35] ECF 231.

- Of the 50 cases cited in Defendants' Motion for Summary Judgment, only one related to Defendants' TTLA argument.

As the Court can see, Defendant's alleged "victory" on their TTLA claim took virtually no effort. At most, then, Defendants' efforts related to the TTLA claim actually represents only about 1-2% of the time recorded on the proffered bills, so any award of attorneys' fees should be capped at no more than $66,586.80.[36]

## CONCLUSION

For reasons set out above, Defendants' Rule 54 Motion for Fees and Costs should be denied in its entirety. Alternatively, Defendants should be awarded no more than $66,586.80 in reasonable and necessary attorneys' fees.

---

[36] This is 2% of the Foley fees ($2,352,259) plus the BR fees ($977,081) Defendants claim are the baseline for their requested award.

Respectfully Submitted,

JORDAN, LYNCH & CANCIENNE PLLC

By: /s/ *Walter Lynch*
   **Walter Lynch**
   State Bar No. 24046330
   Federal ID No. 965265
   **Amir Halevy**
   State Bar No. 24065356
   Federal ID No. 1259956
   **Joseph ("Jeb") W. Golinkin II**
   State Bar No. 24087596
   Federal ID No. 2515657
   1980 Post Oak Blvd., Ste. 2300
   Houston, Texas 77056
   713-955-4020 (Telephone)
   wlynch@jlcfirm.com
   ahalevy@jlcfirm.com
   jgolinkin@jlcfirm.com

## Certificate of Service

I certify that 21st day of April, I electronically filed the foregoing with the Clerk of court using the CM/ECF system, which will send notification of this filing to all counsel of record in this case.

/s/ *Jeb Golinkin*
Joseph W. Golinkin II

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| DHI GROUP, INC. F/K/A DICE HOLDINGS, INC. AND RIGZONE.COM, INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> DAVID W. KENT, JR., SINGLE INTEGRATED OPERATIONS PORTAL, INC. D/B/A OILPRO AND OILPRO.COM, ET AL., <br> *Defendants.* | Civil Action No. 16-1670 |

## PROPOSED ORDER

The Court **DENIES** David Kent and Single Integrated Operations Portal, Inc. d/b/a Oilpro and Oilpro.com's (together, Defendants") Motion for Attorney Fees (ECF 386).

Signed at Houston, TX on the _____ day of April, 2021.


_____
DAVID HITTNER
United States District Judge

21