IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DHI Group, Inc., et al.,

v.                                                    Civil Action No. 16-1670

David W. Kent, Jr., et al.

## DEFENDANTS' RESPONSE TO PLAINTIFFS' REQUEST FOR FEES AND COSTS

This Court should deny Plaintiffs' request for attorneys' fees under RICO (Doc. 387) and should award only costs and interest allowed by law.

The jury found that the RICO violations caused no injury or damage to Plaintiffs' business or property. For civil remedies, RICO requires injury.

Plaintiffs base their fee request on a false premise that misrepresents the cases they cite and ignores the jury verdict they asked this Court to adopt. The jury answered Question 3b with **zero** dollars, finding that the "predicate acts" constituting the "pattern of racketeering activity" did **not** injure Plaintiffs in their business or property, as the statute expressly requires. *See* 18 U.S.C. § 1964(c). No court has awarded, or should award, RICO attorneys' fees when the fact-finder found **no** injury to business or property. And the TUTSA finding is a separate claim with a different damage measure. Finally, as a matter of law, Plaintiffs may not recover both damages under TUTSA and fees under RICO—even if those alternative legal theories overlap.

This Court should award costs and interest, if any, according to law and after offsetting the fees and costs due to Defendants under the Texas Theft Liability Act (Doc. 386) and the restitution David Kent paid (Doc. 389).

- 1 -

## I.  Plaintiffs' request for RICO attorneys' fees lacks legal basis.

### A.  RICO attorneys' fees require RICO injury.

The false premise underlying Plaintiffs' argument is that the jury found a RICO injury that would entitle Plaintiffs to fees under the statute. Just the opposite occurred. In response to Question 3b, the question on RICO damages, the jury found **zero** dollars in damages (Doc. 377 at 27).

Plaintiffs' cases confirm that RICO's civil remedies provision, 18 U.S.C. § 1964(c), requires a finding of RICO injury as a condition to recovering attorneys' fees. Section 1964(c) authorizes recovery of damages and costs, "including a reasonable attorney's fee," for "any person injured in his business or property." As the Fifth Circuit explained in *Ducote Jax Holdings LLC v. Bradley*, 335 F. App'x 392 (5th Cir. 2009), section 1964(c) tracks the Clayton Act attorneys' fees provision—15 U.S.C. § 15(a)—pursuant to which "a plaintiff must demonstrate proof of a violation of antitrust laws ***and proof of injury.***" *Ducote Jax Holdings LLC v. Bradley*, 335 F. App'x 392, 402 (5th Cir. 2009) (emphasis added) (citing *Sciambra v. Graham News*, 892 F.2d 411 (5th Cir. 1990)); *see also Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 US 143, 150-52 (1987) (explaining that "the civil action provision of RICO was patterned after the Clayton Act" and noting "the similarities in purpose and structure between RICO and the Clayton Act").

That an attorneys' fees recovery under RICO requires a finding of RICO injury should be non-controversial. However, Plaintiffs cite cases where the fact-finder **did** find some amount of RICO injury (as opposed to $0, as here)

but then after crediting settlement sums paid by co-defendants the judgment awarded no net damages (Doc. 387 at 6-7 (citing *Ducote*, 335 F. App'x 392 and *Sciambra*, 892 F.2d 411)). In those cases the fact-finder found a RICO injury justifying the fee award. But those cases do not hold or even hint that a court may award fees when the fact-finder finds **no** RICO injury or damage.

No court has countenanced such an extraordinary reading of RICO. In *Ducote* the defendant's acts violating RICO caused plaintiffs an injury in the form of tax penalty, interest, and advisor expenses: "The district court found that plaintiffs were injured by Bradley's use or investment of racketeering proceeds into the RICO enterprise." 335 F. App'x at 399, 400, 402. On appeal the Fifth Circuit reduced the injury amount by $3,146,300. Then, as a result of settlement credits totaling $2,850,000, the net award was zero. Because the trial court **did** find an injury—i.e., the fact of damage—before applying the settlement credit, attorneys' fees were properly awarded.

In subsequent decisions, the Fifth Circuit confirmed this principle under the Clayton Act: recovery of Clayton Act attorneys' fees requires the plaintiff to "establish the fact of damage." *Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 336–37 (5th Cir. 2012) (quoting *Sciambra*, 892 F.2d at 415). Those cases do not hold that fees are authorized when a jury finds no injury.

In short, to recover RICO attorneys' fees, a plaintiff must secure a finding of RICO injury. Plaintiffs did not. Their request for fees re-writes RICO's civil remedy provision in 18 U.S.C. § 1964(c) and lacks a legal basis. The cases Plaintiffs cite had fact findings of injury, $4,994,200 in one case (*Ducote*) and

$271,896 in the other (*Sciambra*). And, to boot, *Ducote* and *Sciambra* state plainly that the plaintiff must demonstrate both a statutory violation "*and proof of injury.*"

### B.   There is no "implied" RICO injury.

In footnote 12 of their motion, Plaintiffs argue that the Court should imply RICO injury based on the jury's award of damages under TUTSA. There is no basis for this argument because (1) the RICO liability question [3a] did not require the jury to find a RICO injury, (2) the alleged TUTSA and RICO damages are not based on "identical facts," and (3) even if there were a conflict, it would not result in attorneys' fees.

#### 1.   *The responses to Questions 3a and 3b are consistent: the jury found no RICO injury.*

The jury's responses to Questions 3a and 3b are consistent—the jury found no RICO injury—and there is nothing to reconcile. Although the jury found zero dollars in response to Question 3b and thus found no RICO injury in response to that question, the jury did find RICO *liability* in response to Question 3a (Doc. 377 at 19, 27). But that liability finding does not constitute a finding of RICO *injury*, because injury was not a component of RICO liability as instructed in the jury charge (Doc. 377 at 19-26). Rather, the charge instructed that liability required a finding of "each of the following four facts" and a "scheme to defraud" in one of three ways—none of which included injury or damages (Doc. 377 at 19-20, 22-23). The charge instructed that the scheme

to defraud "need not actually succeed in defrauding anyone" (Doc. 377 at 23). So the finding of RICO liability did not find injury or damages.

The decision in *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992), cited by Plaintiffs, does not support their position. To begin with, the case addresses whether the court should grant a new trial on RICO damages, not whether a finding of $0 RICO damages can support an award of attorneys' fees under the statute. Moreover, injury was a component of the liability finding in that case. The court instructed the jury: "'Before you find for the plaintiffs you must also find that plaintiffs sustained an injury to business or property.'" The court of appeals also noted that "the jury was required to find that the class suffered an injury to business or property before finding D'or liable." *See id.* at 1020-21. This Court's charge does not include injury as a component of liability.

Rather, the present case is more like the decision in *General Leaseways, Inc. v. National Truck Leasing Ass'n*, No. 83 C 6731, 1986 WL 11368 (N.D. Ill. Oct. 2, 1986), *aff'd*, 830 F.2d 716 (7th Cir. 1987), wherein after the court issued a permanent injunction "a jury found for the plaintiff against the National Truck Leasing Association only and assessed damages in the sum of zero dollars." "The question," as the district court explained, was "whether a plaintiff who is the subject of a jury finding that no damages were incurred is a person injured in his business or property" under the Clayton Act, 15 U.S.C. § 15. The answer was "no" because "that statute clearly grants such a right to persons injured in their business or property by violations of the antitrust laws. The jury in this case has found that no such injury occurred." 1986 WL 11368, at *2.

2.    *The responses to Questions 1c and 3b are consistent: the alleged TUTSA and RICO damages are not based on "identical facts."*

Plaintiffs declare—contrary to the jury verdict—that "RICO damages are implied" in the separate jury findings that Rigzone incurred TUTSA damages and that Plaintiffs incurred common-law misappropriation damages. Plaintiffs assert that these separate findings award "damages on identical facts under different claims." Mtn. 5-7 & n.12. A review of the charge demonstrates that this is another argument based on a false premise and lacking legal foundation.

The TUTSA/misappropriation liability findings were not based on facts identical to those supporting the RICO liability finding. Under the jury charge submitted, RICO injury arises from facts separate and distinct from facts supporting TUTSA or misappropriation injury. In other words, under the charge the $0 damages finding for RICO can readily be reconciled with these other findings.

Disregarding a jury verdict based on jury findings that the court cannot reconcile is a drastic remedy with constitutional implications. "The Seventh Amendment requires that if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly." *Team Contractors*, 976 F.3d at 523 (concurring opinion) (quoting *Griffin v. Matherne*, 471 F.2d 911 (5th Cir. 1973)).

Under the charge as submitted, injury for TUTSA violations or common-law misappropriation can only arise from a narrow set of facts. Under either tort, damages were measured in the charge by "[t]he value that a reasonably prudent investor would have paid" for the Rigzone resumes (Doc. 377 at 14,

30). In suggesting to the jury how to answer these jury questions on damages, Rigzone argued that "the value of the resumes was $15.4 million" and did not ever claim any decline in value. The Plaintiffs even agreed to a limine order precluding evidence of decreased value of the resumes (Doc. 300 at 4-5). Multiple witnesses said there was no decline in value.

RICO injury, on the other hand, could arise from any one of three distinct sets of operative facts. In the jury charge, RICO injury was measured in terms of "damages . . . caused by David Kent's copying of resumes from Rigzone's resume database" but ""[t]he damages Plaintiffs may recover are those caused by the predicate acts constituting the pattern of racketeering activity," and the plaintiffs "can only recover damages caused by predicate acts that are part of the pattern of racketeering activity" (Doc. 377 at 27). As a result, damages for a RICO violation had to arise from one of multiple patterns of racketeering activity that the jury charge described to the jury.

The jury charge instructed as to three possible racketeering patterns: (1) copying the Rigzone resumes, (2) accessing the Rigzone Google Analytics data, or (3) emailing DHI representatives about Oilpro's growth and finances in order to induce DHI to purchase Oilpro (Doc. 377 at 22). Moreover, this Court instructed the jury that they had to all agree on what predicate acts formed the pattern of racketeering activity (Doc. 377 at 25). In answering zero dollars for RICO injury, the jury could properly have agreed that only the third option occurred—emailing DHI about Oilpro finances and growth to induce a purchase of Oilpro—and could properly have determined that those

predicate acts of racketeering activity did not result in "damages . . . caused by David Kent's copying of resumes from Rigzone's resume database" (Doc. 377 at 27). The same is equally true for accessing Google Analytics data.

Federal courts have long held that, if possible, jury answers are to be interpreted as consistent. "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962). "[T]he test to be applied . . . is whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted, even though the form of the issue or alternative selective answers prescribed by the judge may have been the likely cause of the difficulty and largely produced the apparent conflict." *Robroy Indus. Inc. v. Schwalbach*, 481 F. App'x 133, 136 (5th Cir. 2012) (quoting *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973)).

The present case is much like the Fifth Circuit case of *Foster v. Allstate Insurance Co.*, 239 F. App'x 52 (5th Cir. 2007), where the issue was whether the court could reconcile jury findings (1) that Allstate breached its contract and (2) that the plaintiffs suffered no monetary damages from that breach. The court of appeals noted that plaintiffs had argued three theories of how Allstate breached the contract, and that "the jury could well have found that Allstate's only breach of its contract was by failing to act timely in accepting or rejecting the [insurance] claim" while rejecting the two other theories of breach, and that the jury could plausibly have awarded the plaintiffs $0 in damages for

that one breach by "classifying it as only a technical violation of a state timing statute that produced no damage." *Id.* at 54–55.

Under this Court's charge in the present case, the jury could readily have reasoned similarly. The jury likely found a pattern of racketeering activity in Kent's attempt to sell Oilpro to DHI and then likely concluded (based upon testimony that no injury arose from this activity) that a finding of $0 damages was proper. In that way, the $0 damages finding is readily reconciled with the findings on TUTSA and misappropriation damages. Even if copying the resumes may have resulted in TUTSA damages regarding the resumes, emails attempting to sell Oilpro to DHI did not result in a RICO injury relating to the resumes. Durney—DHI's former CFO—confirmed this in his testimony:

> Q.   Was there ever any damage of property or business of DHI or Rigzone related to these sale -- to the discussions of a sale that never occurred?
>
> A.   No, because we never completed it.

(Tr. 202–03 [03-15-21]). The jury similarly could have reasoned that the predicate acts were accessing the Google Analytics but that this too caused no injury, especially since Plaintiffs' expert did not testify to any such damage and Plaintiffs' counsel did not even argue any. As Plaintiffs' counsel argued about RICO predicate acts: "The predicate acts here are the stealing of the – the Google Analytics data. It's not just the resumes. . . . It wasn't just the stealing of the resumes" (Tr. 86 [03-17-21]).

At any rate, Plaintiffs' argument comparing the TUTSA damages finding to the RICO $0 damages finding proves too much. If this Court had discretion to disregard the RICO $0 damages finding on the grounds that the jury found TUTSA damages based on the same facts, why doesn't this Court also have discretion to move in the opposite direction: disregard the TUTSA damages finding on the grounds that the jury found, in response to the RICO damages question, that the Plaintiffs incurred no loss with regard to the same conduct? The latter move is more logical: the TUTSA damages question must measure "actual loss" under TUTSA. Question 3b establishes that, whatever the jury was measuring in response to Question 1c, Plaintiffs had no "actual loss."

In short, the jury findings on TUTSA and misappropriation do not award "damages on identical facts" and cannot support RICO injury by implication. There is a reason this Court, at the Plaintiffs' agreement, submitted a measure of RICO injury tracking the statutory language in 18 U.S.C. § 1964(c)—i.e., "injury to business or property" (Doc. 377 at 27); the standard for RICO damages differs materially from what the Court charged as the measure of TUTSA and misappropriation damages. No authority exists for discarding the jury's RICO injury finding and replacing it with another finding using a different damages measure.

> 3. *Plaintiffs waived any complaint about the $0 RICO injury jury finding.*

Even if there were a conflict (either between Questions 3a and 3b or Questions 1c and 3b), the Court cannot award attorneys' fees: the conflict

would only be the basis for a new trial and Plaintiffs failed to object as required, before the jury was discharged.

To dodge holdings of the Fifth Circuit, Plaintiffs cite cases authorizing a *new trial* when a jury's $0 damages finding on one claim cannot be reconciled with the jury's damages finding on another claim, but where both claims involve an identical set of operative facts. Plaintiffs suggest that these "new trial" cases authorize a fee award. This argument is frivolous for two reasons.

First, none of the cases cited indicate that RICO fees are recoverable based on irreconcilable jury findings. The remedy for that problem—even in a RICO case—is not an award of RICO attorneys' fees but a new trial (and then only if error regarding the irreconcilable jury findings was properly preserved). *See Video Int'l Prod., Inc., v. Warner-Amex Cable Comm., Inc.*, 858 F.2d 1075, 1086 (5th Cir. 1988) (remanding for new trial); *Rosario v. Livaditis*, 963 F.2d 1013, 1021 (7th Cir. 1992) (same); *AIG Aviation Inc. v. Boorom Aircraft Inc.*, Nos. 96-1503, 96-1563, 96-1582, 1998 WL 69013 (6th Cir. Feb. 11, 1998) (same).

Second, Plaintiffs waived even this form of relief—i.e., remand for a new trial. Under Fifth Circuit law the jury here rendered a general verdict under Rule 49(b). *See Team Contractors LLC v. Waypoint Nola LLC*, 976 F.3d 509, 520 (5th Cir. 2020) (holding that "if the answers to written questions require jurors to apply the instructed law to their fact-findings, thereby fully explaining who prevails on all claims against a single defendant, and if relevant, the amount of any monetary award, that is sufficient for a Rule 49(b) verdict"). Under Rule 49 (b) "objections to alleged inconsistencies between a

general verdict and answers to verdict questions are waived if a party fails to object when the jury announces the verdict, while the jury is still empaneled." *Id.* at 515, 521 (citing *Montano v. Orange Cnty.*, 842 F.3d 865 (5th Cir. 2016)).

In this case, when this Court asked Plaintiffs if they had issues with the form of the verdict returned by the jury, Plaintiffs expressed none and did not complain of irreconcilable findings. Without objection, Plaintiffs asked this Court to render a judgment based on that verdict (Doc. 380).

### C.   Plaintiffs cannot recover damages under one cause of action and fees on another cause of action.

It does not matter whether the TUTSA claim and the RICO claim sought "damages on identical facts under different claims" (Mtn. 5-7 & n.12). Plaintiffs may not recover both damages under TUTSA and fees under RICO. "When a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief." *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988).

For example, in *The Gil Ramirez Group LLC v. Houston ISD*, No. 4:10–CV–04872, 2017 WL 201371 (S.D. Tex. Jan. 17, 2017), *aff'd*, 765 F. App'x 970 (5th Cir. 2019), the district court ruled that a plaintiff "may not obtain an award that incorporates elements from both a tortious interference theory and RICO, even if those elements appear non-duplicative." *Id.* at *2; *see Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 335-36 (5th Cir. 2008) (refusing to allow plaintiff "to receive both an attorney's fees award for contract breach

and profits disgorgement under the Lanham Act" because it "would constitute impermissible picking and choosing among damage elements arising under different theories of recovery").

Plaintiffs must elect one or the other theory of recovery. Their election to recover damages under TUTSA bars recovery under RICO.

## II.   The sum of $10,101.72 is the proper prejudgment interest.

If this Court awards Rigzone no damages, then Rigzone gets no interest. Under the verdict Rigzone should recover no damages because the restitution David Kent paid exceeds the amount of TUTSA damages the jury awarded plus interest through October 10, 2017, the date the restitution was paid. But if this Court reaffirms its final judgment awarding Rigzone $3,003,036.90, the Court should award pre-judgment interest of no more than $10,101.72.

No state statute authorizes prejudgment interest for the TUTSA claim, so only equitable pre-judgment interest—as authorized in *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex. 1998)—is pertinent.

*Johnson & Higgins* authorizes pre-judgment interest at the rate of post-judgment interest (but calculated as simple interest), and it begins accruing on the earlier of (1) 180 days after the date a defendant receives written notice of a claim, or (2) the date suit is filed. *Id.* at 529, 532. Because there was no prior notice of the claim, pre-judgment interest here would accrue beginning the date suit was filed: June 10, 2016 (Doc. 1).

This Court may take judicial notice that the federal post-judgment interest rate for a judgment entered April 1, 2021—as the judgment here—is 0.07%. *See* https://www.txs.uscourts.gov/page/post-judgment-interest-rates-2021.

This Court should calculate pre-judgment interest based upon the federal 0.07% post-judgment interest rate. *See Aguacates Seleccionados JBR USA LLC v. Bucks Fresh Produce, LLC*, No. 7:19-CV-338, 2020 WL 2193501, at *12 (S.D. Tex. May 6, 2020). *Johnson & Higgins* holds that the pre-judgment interest rate is the post-judgment interest rate (as simple interest). 962 S.W.2d at 532. This Court's judgment will bear post-judgment interest at a 0.07% rate. If calculated as 0.07% simple interest from June 10, 2016, the date the lawsuit was filed, until March 31, 2021, the day before this judgment was entered, the prejudgment interest on the sum of $3,003,036.90 is the sum of $10,101.72.

However, most courts have concluded that Texas' post-judgment interest rate applies. *See, e.g., Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 415 (5th Cir. 2011). The Texas state post-judgment interest rate is 5% per annum. *See* Tex. Fin. Code. § 304.003(c); *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 255 (Tex. 2008); https://www.occc.texas.gov/sites/default/files/uploads/credit-letters/03-23-21.pdf. If calculated as 5% simple interest from June 10, 2016, until March 31, 2021, prejudgment interest on the sum of $3,003,036.90 is the sum of $721,551.61.

### III.     Post-judgment interest of 0.07% is proper.

Should this Court's judgment award any amounts to either plaintiff, those amounts bear interest at 0.07% per annum pursuant to 28 U.S.C. § 1961. *See* https://www.txs.uscourts.gov/page/post-judgment-interest-rates-2021.

### IV.     This Court should strike the attorneys' fees affidavits or authorize discovery regarding the fees issue.

Plaintiffs' motion relies on two affidavits by attorneys not designated as experts—Walter Lynch and Kevin Jacobs (Doc. 387-1, 387-2). Defendants object to both affidavits. As a result, this Court should strike these affidavits and deny the request for fees. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *see Bradley v. United States*, 866 F.2d 120, 125 (5th Cir. 1989) (four-part test for determining whether to exclude witness not designated). Plaintiffs designated an expert witness to testify on the reasonableness of their fees and simply did not provide a report or a declaration from that expert (Doc. 290-3 at 6). Alternatively, if the Court declines to strike these affidavits, Defendants request the opportunity to depose these undesignated witnesses and thereafter submit a supplemental response to Plaintiffs' motion.

### V.     Taxation of costs is premature.

As this Court's Final Judgment notes, this Court has not yet determined which party is the "prevailing party" under Rule 54 and thus entitled to costs.

As a result, proceedings for the separate matter of *taxation* of costs is premature. The proper procedure is for this Court to issue a judgment that awards costs to the prevailing party, and then for the clerk to tax costs thereafter. *See* Fed. R. Civ. P. 54(d). Moreover, the local rules require a formal bill of costs. S.D. Tex. L.R. 54.2. Plaintiffs did not submit a formal bill of costs. Defendants object to having to spend time and expense objecting to a request for costs that will be moot if this Court determines that Defendants are the prevailing parties. In the alternative, Defendants ask this Court to set a briefing schedule for objecting to Plaintiffs' request for taxation of costs.

Should this Court construe this as a proper bill of costs, Defendants object to recovery of the $13,503.75 for services of an audio/video technician for use at trial. This expense is not recoverable under 28 U.S.C. § 1920.

## VI.    Request for relief.

Defendants David W. Kent Jr. and Single Integrated Operations Portal Inc. ask this Court to deny Plaintiffs' Motion for an Award of Statutory Attorneys' Fees, Costs, and Pre-Judgment Interest and Post-Judgment Interest (Doc. 387).

Respectfully submitted,

**FOLEY & LARDNER LLP**

*/s/ James G. Munisteri*

James G. Munisteri
Texas Bar No. 14667380
S.D. Tex. Bar No. 7294
1000 Louisiana, Suite 2000
Houston, Texas 77002-2099
jmunisteri@foley.com
Tel:    713.276.5500
Fax:    713.276.5555

Sara Ann Brown
Texas Bar No. 24075773
2021 McKinney, Suite 1600
Dallas, Texas 75201-3340
sabrown@foley.com

and

**HAYNES AND BOONE LLP**

Lynne Liberato
Texas Bar No. 00000075
S.D. Tex. Bar No. 3072
Kent Rutter
Texas Bar No. 00797364
S.D. Tex. Bar No. 20519
1221 McKinney, Suite 2100
Houston, Texas 77010-2007
lynne.liberato@haynesboone.com
kent.rutter@haynesboone.com
Tel:    713.547.2000
Fax:    713.547.2600

**Attorneys for Defendants**

## Certificate of Service

I certify that on April 16, 2021, I electronically filed the foregoing with the Clerk of court using the CM/ECF system, which will send notification of this filing to all counsel of record in this case.

*/s/ Sara Ann Brown*
_____

Sara Ann Brown
