# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

DHI GROUP, INC. F/K/A DICE
HOLDINGS, INC. AND
RIGZONE.COM, INC.,

*Plaintiffs,*

  v.

DAVID W. KENT, JR., SINGLE
INTEGRATED OPERATIONS
PORTAL, INC. D/B/A OILPRO
AND OILPRO.COM, ET AL.,

   *Defendants.*

Civil Action No. 16-1670

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO APPLY OFFSET AND RELIEF UNDER RULES 50, 59, AND 60

   In the wake of the jury's verdict, Defendants filed a Motion for Judgment and Application for Restitution Offset,[1] as well as a Reply in support of their Application for Restitution Offset.[2] In these filings, Defendants argued David Kent does not have to pay Rigzone.com, Inc. ("Rigzone") any of the $3,003,036.90 it was awarded by the jury because Kent previously paid criminal restitution to a *different company*, DHI Group, Inc. ("DHI").

---

[1] ECF 381.
[2] ECF 383.

The Court rejected Defendants' arguments and "order[ed] that final judgment be entered in favor of Plaintiff Rigzone.com, Inc. in the amount of $3,003,036.90."[3] This displeased Defendants, so they have essentially copied the arguments from their "Application for Restitution Offset" and pasted them into a "new" document they tellingly call a "Motion to Apply Offset." Defendants' Motion to Apply Offset and For Relief Under Rules 50, 59, and 60 ("Defendants' Motion") fails for the same reasons the Court denied Defendants' "Application for Restitution Offset": United States District Judge Denise Cote ordered David Kent to pay restitution to one company (and only one company): DHI. David Kent *did not pay restitution to Rigzone, nor has he ever been ordered to do so*.

Finally, Defendants' attempt to re-argue the legal validity of the trade secrets claim, including damages, as well as the other issues discussed in Defendants' Motion merely rehashes arguments rejected again and again throughout this litigation.[4] Defendants' Motion should be denied in its entirety.

---

[3] ECF 385.

[4] Defendants' arguments were rejected by Judge Johnson when she denied Defendants' Motion for Summary Judgment (ECF 278) and by Judge Miller when he adopted her order (ECF 279). They were also repeatedly rejected by this Court including the denial of

**ARGUMENT**

## I.     Defendants Procedural Arguments Fail.

Defendants do not contest that David Kent agreed to pay DHI restitution, nor do they claim that the restitution order or judgment in a criminal case entered against Kent includes the word "Rigzone." Defendants nevertheless maintain the Court must convene a hearing so that they can present inadmissible parol evidence they claim will show Rigzone is DHI's alter ego for restitution purposes. Defendants' legal arguments are preposterous, and their procedural demands are not supported by the law.

### a.  No Evidentiary Hearing is Required.

Defendants claim they are entitled to an evidentiary hearing because of a "genuine" dispute regarding the restitution offset. For this proposition, they cite *Utts v. Short*, 81 S.W.3d 822, 828-29 (Tex. 2002) and *Virlar v. Puente*, 613 S.W.3d 652, 697 (Tex. App.—San Antonio 2020, pet. filed). When reviewing the facts of both cases, as opposed to Defendants' selective interpretations, neither case supports their request.

---

Defendants' Rule 16 Motion to Simplify Issues for Trial (ECF 292) and denial of Defendants' Rule 50(a) Motion at the close of Plaintiffs' case (ECF 360).

Defendants assert that "[i]n *Utts* the Texas Supreme Court explained the parties' shifting evidentiary burdens with regard to whether a payment to one party can reduce a recovery by a different party."[5] Defendants make a similar assertion regarding *Virlar*.[6] Missing from Defendants' recitation is the fact that in both cases, a "genuine" dispute regarding benefit arose because defendants alleged, and provided evidence, that prior settlements were *sham* transactions, and that the non-settling plaintiffs actually received funds.[7] In *Utts*, in addition to other evidence, the defendant introduced a letter from the settling plaintiff to her counsel instructing them to distribute a portion of the prior settlement directly to family members involved in the second litigation which the court found sufficient to "demonstrate that the Short family members benefited" from the prior settlement with the hospital. *Utts*, 81 S.W.3d at 830. Similarly, in *Virlar*, defendants submitted the reporter's record from the prove-up hearing for the original settling

---

[5] ECF 389 at 5.

[6] *Id.* at 7.

[7] In *Utts*, members of the Short family sued Dr. Utts and the hospital for the post-operative death of Clifton Short. One member of the Short family, Ms. Walker, settled with the hospital and instructed her counsel to distribute the settlement funds to other members of the family. Soon thereafter, the other members of the family settled with the hospital for a de minimis amount. Two months later, Ms. Walker nonsuited, with prejudice, her claim against Dr. Utts leaving only the other family members as parties to the suit. *Utts*, 81 S.W.3d at 825. *Virlar* has a similar fact pattern. *Virlar*, 613 S.W.3d at 696.

plaintiff, a minor, that the court determined was sufficient to raise questions about the potential sham nature of the prior settlement. *Virlar*, 613 S.W.3d at 696.

Contrary to Defendants' assertions, no burden has shifted to Plaintiffs because Defendants have not provided any evidence that Rigzone received the restitution monies. *Utts*, 81 S.W.3d at 828 ("A defendant seeking a settlement credit has the burden to prove its right to such a credit."). The fact of the matter is they could not provide that evidence because it is not true. DHI received the benefit from the restitution payment, not Rigzone.[8] There is no *genuine* dispute. And no evidentiary hearing is required.

### b. Parol Evidence Rule Bars Defendants' Requests.

David Kent, through his prior criminal counsel, reached a plea agreement with the U.S. government. As part of that agreement, he agreed to pay $3,292,800 in restitution. That sum included $2,932,800 allocated to

---

[8] This fact is established through a review of DHI Group, Inc.'s post-restitution financial reporting. Specifically, DHI Group, Inc.'s 2017 10-K notes that the restitution payment was made to DHI Group, Inc. and the financial benefit was afforded only to DHI Group, Inc. and not to Rigzone.com, Inc. *See* DHI Group, Inc.'s 2017 10-K, at pg. 7 booking the restitution as part of DHI, Group, Inc.'s operating income (described on page 36 ("The gain was recorded as a component of operating income in the fourth quarter of 2017."); and not attributing it as any part of Rigzone.com, Inc.'s revenue shown on pg. 57 (https://www.sec.gov/Archives/edgar/data/1393883/000139388318000008/dhx10k2017.htm) (attached as Exhibit 1).

5

"the market value of the data that was unlawfully accessed and copied" and $360,000 allocated to the "costs associated with remediation and investigation of the offense."[9] Both the Order of Restitution, as well as the Criminal Judgment, unambiguously show that the monies were paid to DHI.[10]

Defendants try to get around the unambiguous language by claiming, *five* separate times, that Plaintiffs "admitted" in the Pretrial Order that Rigzone received restitution.[11] These bold unsupported assertions come

---

[9] *See* Ex. 7 to Defendants' Motion at page 3. Even if the Court were to find that the prior restitution award to DHI Group, Inc., should offset the damages awarded to a separate party, Rigzone.com, Inc., Defendants' repeated assertion that they are entitled to $3,292,800 in credit is inappropriate as it includes $360,000 specifically allocated to a claim for which Plaintiffs were not awarded damages which must be subtracted from that sum. *See Sky View at Las Palmas, LLC, v. Mendez*, 555 S.W.3d 101, 108 (Tex. 2018) ("A written settlement agreement that specifically allocates damages to each cause of action will satisfy" a plaintiff's burden to disprove double recovery.). This failure to acknowledge the reality of how the offset would be applied—if it did apply—to Rigzone.com, Inc.'s TUTSA award is wholly inexplicable since Plaintiffs have previously highlighted their error. *See* ECF 384 at page 5.

[10] The Order of Restitution, previously attached as Ex. 2 to Plaintiffs' Proposed Final Judgment (ECF 380), states that the monies were paid to "the victim of the offense charged in Count One: DHI Group, Inc." The Criminal Judgment, previously attached as Ex. 1 to ECF 380, states on page 5 that "[t]he defendant shall pay restitution in the amount of $3,292,800.00 to the victim set forth on page 6." On page 6, the "victim" is again identified as the DHI Group, Inc.

[11] Defendants claim that Plaintiffs made a judicial admission on this point, but "[a] statement made during the course of a lawsuit—even a statement made in a pleading filed with the court—should be considered a judicial admission only 'if it was made intentionally as a waiver, releasing the opponent from proof of fact.'" *Mays v. Dir., Office of Workers' Comp. Programs*, 938 F.3d 637, 647 (5th Cir. 2019) (internal quotations omitted). Plaintiffs never made a judicial admission as to which entity benefitted from the payment.

close to the line between zealous advocacy and something worse. Defendants are correct that the Pretrial Order includes a phrase that David Kent "agreed to (and has now paid) DHI and Rigzone $3.3 million . . .").[12] However, it was not agreed to by Plaintiffs. In fact, it was the *only* phrase in the 22-page Pretrial Order that was highlighted in green *because* Plaintiffs objected to it:[13]

Fraud and Abuse Act, agreed to (and has now paid) DHI and Rigzone $ 3.3 million, and served a one-year prison sentence.[1]

Moreover, in the section of the Pretrial Order that lists Defendants' "unresolved" questions of law, the offset is one of the disputed issues.[14] And finally, while the agreed upon "admissions of fact" include the inescapable fact that DHI and Rigzone are two distinct and separate entities, there is no mention of the restitution.[15] Contrary to Defendants' desperate attempt to

---

[12] ECF 290 at page 5.
[13] *Id.*
[14] *Id.* at page 18.
[15] *Id.* at page 14.

have the Court believe otherwise, Plaintiffs have never admitted Rigzone received restitution, because Rigzone did not.

Now Defendants demand that the Court hear from a former United States Attorney to educate this Court regarding criminal procedure and from Kent's former criminal counsel on his interpretation of the written agreements between David Kent and the government. Additionally, Defendants try to spin and offer their interpretation of various documents and communications that came prior to the plea agreement. But the Fifth Circuit has routinely held that such parol evidence cannot be considered when a written agreement is not ambiguous. *See e.g., United States v. Long*, 722 F.3d 257, 262 (5th Cir. 2013) ("Although circumstances surrounding the agreement's negotiations might indicate the intent of the parties, 'parol evidence is inadmissible to prove the meaning of an unambiguous plea agreement.'") (quoting *United States v. Ballis*, 28 F.3d 1399, 1410 (5th Cir. 1994)); *Xtria, LLC v. Tracking Sys. Inc.*, 345 Fed. Appx. 940, 942 (5th Cir. 2009) ("Only when an ambiguity exists may the court consider parol evidence to determine the parties' true intent."); *In re Conte*, 206 F.3d 536, 538 (5th Cir. 2000) ("We look to the language of the contract, unless ambiguous, to

determine the intention of the parties."). Here, the written document is not ambiguous, so parol evidence is not permitted.

A recent Fifth Circuit case is nearly directly on point. In *U.S. v. Brantley*, 816 Fed. Appx. 934 (5th Cir. 2020), the defendant argued that his restitution obligation should not have been his alone, but a joint and several obligation with his co-defendant. Like in this case, that criminal defendant contended that the parties had reached that understanding. *Id*. at 939. Like this case, defendant's former attorney submitted an affidavit regarding the "parties' intent." *Id.* Based on the precedent that "parol evidence is inadmissible to prove the meaning of an unambiguous plea agreement," the *Brantley* Court held that because the plea agreement did not define the restitution obligation as joint and several, "we need not look beyond the four corners of the document." *Id*. Neither does this Court.

Plaintiffs were not a party to the plea agreement. Kent and his then counsel negotiated the terms and the language with the government. Kent and his counsel agreed to the terms memorialized in the final documents. It was Kent's "duty to exercise ordinary care and reasonable diligence to protect [his] interests." *Christophe v. Parker Drilling Co.*, 329 F. Supp. 2d, 849, 852 (S.D. Tex. 2004). Under these circumstances, any suggestion that a

straightforward application of an unambiguous plea agreement would open an "enormous loophole" is baseless and illogical.[16] Any complaints should be directed to his former counsel. Defendants' request for this Court to consider parol evidence must be rejected.

## II.   Defendants' Misconstrue the "One Satisfaction" Rule.

At bottom, Defendants' entire argument regarding the restitution payment is based on the "one satisfaction rule." Defendants repeatedly claim that not applying a restitution payment to DHI to damages awarded to Rigzone would "violate" the rule. Defendants either misunderstand the rule or they are deliberately attempting to mislead the Court.

"Under the one satisfaction rule, *a plaintiff* is entitled to only one recovery for any damages suffered." *Crown Life Ins. Co. v. Casteel*, 22 S.W.2d 378, 390 (Tex. 2000) (emphasis added). "This rule applies when multiple defendants commit the same act as well as when defendants commit technically different acts that result in a single injury." *Id.* In other words, the one satisfaction rule is applicable to a single injury to an individual plaintiff.

---

[16] In fact, the proper outcome here, reflected in the Court's Final Judgment, has been nothing more than the direct application of an offset as supported by the restitution order and nothing like the attempted improper manipulations and sham settlements described in the *Utts*, *Virlar*, and *T.L. James* cases relied on by Kent. His "enormous loophole" is a fiction.

Defendants have cited no case law, barring sham agreements, where the rule has ever been applied to separate awards to separate plaintiffs. In fact, the cases cited by Defendants specifically refer to either "the plaintiff" or "a plaintiff," and not to "plaintiffs."[17]

There have always been two plaintiffs in this case: DHI, and Rigzone. Defendants acknowledged that fact in the Pretrial Order.[18] Defendants acknowledged that fact during trial.[19] This is important because a fundamental principle of American law is corporate separateness. *See e.g. Al Rushaid v. National Oilwell Varco, Inc.*, 757 F.3d 416, 423 (5th Cir. 2014) ("Imputing to a party the actions of its codefendants merely on the ground that the entities are jointly owned or controlled or share representation would contravene the fundamental principle of corporate separateness.") There is no basis to impute restitution paid to one party, DHI, to a different

---

[17] "[T]he fundamental consideration in applying the one-satisfaction rule is whether *the plaintiff* has suffered . . ." *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 107 (Tex. 2018) (emphasis added); "The one satisfaction rule applies to prevent *a plaintiff* from obtaining more than one recovery for the same injury." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991) (emphasis added).
[18] ECF 290 at page 14.
[19] "[W]e respect the boundaries between the Rigzone entity and the parent corporation." ECF 372 at 76:4-7 (Jury Trial Day 6 Transcript).

party, Rigzone. Defendants' reliance on the "one-satisfaction rule" is misplaced and must continue to be rejected.[20]

## III.   Defendants Alternative Arguments Merely Rehash Previously Rejected Arguments.

The balance of Defendants' Motion mostly rehashes arguments that this Court—and Judges Johnson and Miller previously—has already considered and rejected. The only arguments worth addressing are Defendants' suggestions that (1) because an individual resume is not a trade secret, then Rigzone's trade secret claim fails, and (2) there should be a new trial on damages.

As to the first, in their brief, Defendants inexplicably leave out the portion of the definition of a trade secret from Question 1a that explains that a compilation of information, as was the case here, can be a trade secret.[21] While it is true that Plaintiffs never suggested an individual resume was a trade secret, it is clear the jury concluded the collection of resumes, that

---

[20] Arguably, Defendants are the ones attempting to obtain double credit for the restitution paid to DHI. The jury found for Rigzone, for over $3 million for theft of trade secrets. The jury found for both Plaintiffs for over $2.5 million for misappropriation of confidential information. The TUTSA award to Rigzone preempts its misappropriation award but does not preempt the misappropriation award to DHI. Given the Court's ruling that DHI take nothing, Defendants have already received the benefit of the relevant $2,932,800 restitution credit and are essentially asking for it to be counted twice.
[21] ECF 377 at page 10.

compilation of information, stolen by Kent were indeed worthy of protection.

Second, as to Kent's suggestion that there should be a new trial on damages, although one is not necessary because the jury properly considered and awarded available damages supported by the evidence, if the Court were to order one, in some ways Plaintiffs would welcome the opportunity. Plaintiffs would welcome the opportunity to present to a jury the relevant facts as to what "a reasonably prudent investor would have paid for the trade secret" without any mention directly or indirectly of Mr. Kent's health condition or previous restitution payment. Quite frankly, Plaintiffs are confident that in a new trial, free from the prejudicial impact of Mr. Kent's health and counsel's statements related to the prior restitution, the damages award would likely be far greater than what has already been awarded to Rigzone here. However, because there should be no new trial on damages, Plaintiffs have accepted their regret.

As to all of Defendants other arguments, they have been thoroughly briefed, repeatedly.[22] All have been appropriately rejected, repeatedly.

---

[22] These same arguments have been made at multiple stages of these proceedings including Defendants' Motion for Summary Judgment (ECF 231), Defendants' Motion to

While Plaintiffs admittedly did not oppose Defendants' request for leave to exceed page limits, Plaintiffs do not wish to waste the Court's time by restating arguments in Plaintiffs' prior responses, and there have been many, on these issues. Enough ink has been wasted.

## CONCLUSION

For reasons set out above, Defendants' Motion to Apply Offset and For Relief Under Rules 50, 59, and 60 should be denied in its entirety.

---

Strike Shane Johnson (ECF 232), Defendants' Rule 16 Motion to Simplify Issues for Trial (ECF 292), Defendants' Rule 104 Motion on Johnson Testimony (ECF 293), Defendants' Brief on TUTSA Measure of Damages (ECF 334), Defendants' Rule 50(a) Motion (ECF 360), and multiple motions for mistrial.

Respectfully Submitted,

JORDAN, LYNCH & CANCIENNE PLLC

By: /s/ *Walter Lynch*
   **Walter Lynch**
   State Bar No. 24046330
   Federal ID No. 965265
   **Amir Halevy**
   State Bar No. 24065356
   Federal ID No. 1259956
   **Joseph ("Jeb") W. Golinkin II**
   State Bar No. 24087596
   Federal ID No. 2515657
   1980 Post Oak Blvd., Ste. 2300
   Houston, Texas 77056
   713-955-4020 (Telephone)
   wlynch@jlcfirm.com
   ahalevy@jlcfirm.com
   jgolinkin@jlcfirm.com

## Certificate of Service

I certify that April 26, 2021, I electronically filed the foregoing with the Clerk of court using the CM/ECF system, which will send notification of this filing to all counsel of record in this case.

/s/ *Jeb Golinkin*
Joseph W. Golinkin II

15