UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DHI Group, Inc., et al.,

vs.

David W. Kent, Jr., et al.,

Civil Action No. 16-1670

## DEFENDANTS' REPLY SUPPORTING TTLA FEES & OILPRO COSTS

The TTLA entitles Defendants to their attorneys' fees. They prevailed on the TTLA claim by summary judgment, and Plaintiffs had notice of Kent's fee request since July 2016 and of Oilpro's fee request since November 2016. Also, Plaintiffs' dismissal of Oilpro, after nearly five years of litigation seeking $20 million, entitles Oilpro to prevailing party status under Rule 54.

## I.   Oilpro is the "prevailing party" under Rule 54.

Plaintiffs concede that at trial they dismissed their claims against Oilpro "for strategic reasons" and "chose not to submit the claims to the jury" (Doc. 393 at 2, 3). This Court has awarded no judgment against Oilpro. That makes Oilpro a prevailing party under Rule 54 as to Plaintiffs' claims (Doc. 393 at 2). The only question is whether Oilpro's failure to recover on its counterclaims precludes this Court from considering Oilpro a prevailing party. As explained by authorities both parties have now cited, the answer is "no." Plaintiffs do not dispute that a party "need not prevail on all issues" to be deemed a prevailing party under Rule 54; that the case "must be viewed as a whole to determine

- 1 -

who is the prevailing party"; and that the question is whether the party, "as a practical matter, has prevailed" (Doc. 393 at 4 [citing case law]).

Plaintiffs do not dispute that the $27,923 Oilpro sought by counterclaims is miniscule when compared to the $20 million that the Plaintiffs sought from Oilpro as "the value of what was stolen" (Tr. 28 [11-12-20]). That disparity is dispositive. Oilpro's failure to obtain relief is of no consequence compared to Oilpro's potential liability. In dismissing claims against Oilpro, Plaintiffs conceded that the core issue in this case was theft of the alleged trade secrets. They argued that the counterclaims "do not arise out of David Kent's theft of Rigzone's resumes" (Doc. 393 at 15). Oilpro's counterclaims were essentially defensive: the defendants argued at closing that the claims "would not have been brought but for this lawsuit," and "we're not here because of this claim," and Plaintiffs agreed, describing the counterclaims as "an afterthought" and merely "attempt to mask the truth" with regard to Plaintiffs' claims.

## II.   Plaintiffs had notice of the request for TTLA fees.

In October 2018, at the time of summary judgment proceedings regarding the TTLA claim, Plaintiffs had been on notice for no less than two years that Defendants sought attorneys' fees.

First, Plaintiffs knew of their potential liability for TTLA fees, because in asserting that claim Plaintiffs themselves pleaded for an award of attorneys' fees under the TTLA's fee-shifting provision (Doc. 236 at 51 [¶ 203]). This case is thus like *Solferini v. Corradi USA Inc.*, No. 4:18-CV-00293, 2020 WL 5653961 (E.D. Tex. Sept. 23, 2020), where the district court noted: "Because

Trustee pursued a claim under [Texas Business & Commerce Code] Chapter 5, which has a fee-shifting provision, Trustee cannot say that it was surprised by Corradi USA's fee request under that same chapter when it ultimately prevailed. Accordingly, the Court finds that Trustee had notice that attorneys' fees were at issue." *Id.* at 5. In short, regardless whether Defendants pleaded a request for fees, Plaintiffs had fair notice of that possible liability if they lost.

Second, both Kent (in July 2016) and Oilpro (in November 2016) pleaded a request for attorneys' fees in their answers (Doc. 17 at 26; Doc. 63 at 40 [¶ 102]). Plaintiffs thus had notice of their potential liability two years before filing their summary judgment response (in November 2018) conceding that judgment against them on the TTLA claim was proper (Doc. 240).

Third, no rule or case requires that the defendant expressly tie a request for fees to a specific claim. *See, e.g., Easton v. Smitty's Supply, Inc.*, No. 4:15-cv-00640-O, 2017 WL 6816496, at *1 (N.D. Tex. Nov. 13, 2017) ("Defendant argues that because Plaintiff never argued for attorneys' fees under section 23:632, they cannot argue it now. . . . But Rule 9(g) merely requires a request for attorneys' fees in the pleadings and by timely filing a rule 54(d) following entry of judgment."). The Fifth Circuit requires mere notice that attorneys' fees are at issue in the case: "This is accomplished by specifically pleading for attorneys' fees in the complaint." *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 765 (5th Cir. 1996). That's what Defendants did in this case.

Fourth, on May 30, 2017, the defendants served a designation of an expert witness on attorneys' fees along with his report (Exhibit A). They were served

months before Plaintiffs' concession (in Nov. 2018) that the defendants "are entitled to summary judgment" on the TTLA claim (Doc. 240 at 10). The designation of an attorneys' fees expert signaled defendants' intent to recover.

### III.   Defendants prevailed on the TTLA claim.

Plaintiffs do not dispute that Defendants prevailed on the TTLA claim. Although the summary judgment ruling in late 2018 did not plainly dismiss the claim (Doc. 278 at 60-61; Doc. 279 at 2), it was certainly determined by final judgment after trial thru Plaintiffs' failure to seek or obtain jury findings regarding the claim. The claim having been determined against Plaintiffs on the merits, under the TTLA each defendant was thus a "person who prevails" as the statute requires. *See Arrow Marble, LLC v. Estate of Killion*, 441 S.W.3d 702, 706 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

### IV.   Defendants properly segregated the pertinent fees.

### A.   Substantial overlap existed between TTLA claim and other claims.

In complaining about segregation of the fees relating to the TTLA claim, Plaintiffs ignore their own pleadings and the summary judgment record.

First, the declaration of James Munisteri sets out what this Court can see from the pleadings: that Plaintiffs based their TTLA claim on the same set of operative facts on which Plaintiffs based their TUTSA and RICO claims.

Second, Defendants' defense of the TTLA claim was broader than what Plaintiffs how suggest. Defendants' summary judgment motion asserted three grounds for summary judgment on the TTLA claim: preemption, limitations,

and lack of proof that Defendants denied Plaintiffs use of their confidential information (Doc. 231 at 14-15, 18-19, 54). By no means did the defendants limit their defense to disproving whether Plaintiffs had been deprived of the use of their member information and Google Analytics data.

Third, Plaintiffs do not dispute the reasonableness of the hourly rates for the attorneys' and professionals as set out in Vogel's declaration (Doc. 386-1).

## B.   Defendants performed a proper segregation of fees.

Plaintiffs show they do not understand the proof offered on segregation. "'To meet a party's burden to segregate its attorney's fees, it is sufficient to submit to the fact-finder testimony from a party's attorney concerning the percentage of hours' related to claims for which fees are not recoverable." *ATOM Instrument Corp. v. Petroleum Analyzer Co.*, 969 F.3d 210, 216–17 (5th Cir. 2020) (quoting from *Berryman's S. Fork Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 202 (Tex. App.—Dallas 2013, pet. denied)). This Court may do the same in making its assessment of the proof. *See Transverse LLC v. Iowa Wireless Servs. LLC*, 992 F.3d 336 (5th Cir. 2021) (noting that court "can simply 'allocat[e] as a percentage of total fees the amount that likely would have been incurred even if the unrecoverable claims were not in the case'") (quoting *Bear Ranch LLC v. Heartbrand Beef, Inc.*, No. 6:12-CV-14, 2016 WL 1588312 (S.D. Tex. Apr. 20, 2016)).

Defendants did this. The Munisteri declaration states that he has personal knowledge "of the amount of attorney time related solely to the defense of

claims other than the TTLA as well as the amount of attorney time related to discrete legal services relating to defense of both the TTLA claim and other claims that the plaintiffs asserted" (Doc. 386-2 at ¶ 11). After reviewing billing statements for the pertinent time period, he "estimated the percentage of hours related to the claims for which fees are non-recoverable, i.e., hours related solely to defense of claims other than the TTLA claim, as opposed to discrete legal services relating to defense of both the TTLA claim and other claims Plaintiffs asserted based on the same injury and same operative facts" (Doc. 386-2 at ¶ 12). He estimated that "no more than . . . 85% of those fees related *solely to services necessary to defend Oilpro and Kent against other claims the plaintiffs asserted*; *solely to work on other matters involving Oilpro or Kent's interests*; or solely to assisting with *the criminal case against Kent*; or solely to claims that *did not involve the precise injury or operative facts which form the basis of the TTLA claim* . . . ; or solely to *counterclaims Oilpro asserted* herein; or otherwise *bore no reasonable relation to the discrete attorney legal services that were necessary to defend against the TTLA claim* herein" (Doc. 386-2 at ¶ 15 (emphasis added)).

In short, the Defendants' proof performs a proper segregation by carving out matters that Plaintiffs believe were improperly included in the 15% carve-out of matters necessarily related to defending the TTLA claim. Plaintiffs are wrong, then, to suggest that the 15% estimate includes work regarding Kent's criminal case; work on Oilpro counterclaims; work regarding corporate or bankruptcy matters; or work regarding other claims or defenses unrelated to

the TTLA claim. Munisteri's declaration expressly excludes those matters. Plaintiffs do not dispute his ability to provide a reasonable estimate.

Plaintiffs' specific critiques have no foundation, either. Marla Poirot has a criminal law specialty, but she was counsel of record in the civil lawsuit before this Court and appeared at multiple hearings. Her substantial work in this case is not properly excluded merely because she previously advised on criminal matters. Paralegals performed substantial work, but organizing documents, discovery, and pleadings in a case with this level of complexity constitutes not mere clerical work but assistance with preparation of core work product. The Vogel declaration attests to the substantial litigation experience of the members of Kent's defense team—and Plaintiffs offer no critique in that regard.

Moreover, Plaintiffs indirectly concede the legitimacy of the defendants' segregation. Although they argue that "Munisteri simply plucked out of thin air a percentage of total billings," they present a similar counterargument based on the same approach. They assert that "[a]t most, then, Defendants' efforts related to the TTLA claim actually represents only about 1-2% of the time recorded on the proffered bills, so any award of attorneys' fees should be capped at no more than $66,586.80" (Doc. 393 at 9-10, 19).

Plaintiffs assert that the defendants have failed to segregate fees on some unrelated discovery matters—e.g., a response to Plaintiffs' motion to strike Defendants' expert Livingston, and Defendants' motion to compel production of web logs (Doc. 393 at 16-18 [citing Docs. 205, 210, 215, 216, 222, 224]).

Plaintiffs provide no basis for concluding that Defendants included these matters in the 15% of services for which fees are requested, rather than having excluded them from the 85% of services for which fees are not requested. The Plaintiffs identification of these matters as somehow *implicitly* included within the 15% category is arbitrary and has no rational basis. Nothing in the proof or this Court's files suggest the reasonableness of such an inference.

Rather, the only rational conclusion is that Defendants' proof excludes such services. These matters concerned unjust enrichment, as Plaintiffs noted in arguing that "the issue to which Livingston devotes virtually all of his report" was the unjust enrichment issue of "the number of stolen Rigzone members who joined Oilpro as a result of Kent's misconduct" (Doc. 220 at 3). TUTSA authorizes recovery of damages measured by unjust enrichment, *see* Tex. Civ. Prac. & Rem. Code § 134A.004(a); the TTLA does not, authorizing recovery of "actual damages" only, Tex. Civ. Prac. & Rem. Code § 134.005(1). One may not recover unjust enrichment as "actual damages" under the TTLA. *See In re Mud King Prod. Inc.*, 514 B.R. 496, 521 (Bankr. S.D. Tex. 2014) (ruling that creditor, "having adequate legal remedies" under TTLA and other law, "may not claim unjust enrichment as a basis for damages in its proof of claim").

The Defendants' proof excluded "fees related solely to services necessary to defend Oilpro and Kent against other claims the plaintiffs asserted" or fees related "solely to claims that did not involve the precise injury or operative facts which form the basis of the TTLA claim" (Doc. 386-2 at ¶ 15). Consistent with Texas and Fifth Circuit case law on proof of segregation of

fees regarding unrelated attorney services, the Defendants' proof excluded the above matters, which related solely to the TUTSA claim by which a recovery in the form of unjust enrichment *was* available. Nothing suggests that these matters were within the 15% of services for which fees are properly awarded.

Respectfully submitted,

**FOLEY & LARDNER LLP**

*/s/ James G. Munisteri*

James G. Munisteri
Texas Bar No. 14667380
S.D. Tex. Bar No. 7294
1000 Louisiana, Suite 2000
Houston, Texas 77002-2099
jmunisteri@foley.com
Tel:      713.276.5500
Fax:      713.276.5555

Sara Ann Brown
Texas Bar No. 24075773
2021 McKinney, Suite 1600
Dallas, Texas 75201-3340
sabrown@foley.com

and

**HAYNES AND BOONE LLP**

Lynne Liberato
Texas Bar No. 00000075
S.D. Tex. Bar No. 3072
Kent Rutter
Texas Bar No. 00797364
S.D. Tex. Bar No. 20519
1221 McKinney, Suite 2100
Houston, Texas 77010-2007
lynne.liberato@haynesboone.com
kent.rutter@haynesboone.com
Tel:      713.547.2000
Fax:      713.547.2600

**Attorneys for Defendants**

- 10 -