IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DHI GROUP, INC. *and* RIGZONE.COM, INC., | § § § | |
| Plaintiffs, | § § § | |
| v. | § § | Civil Action No. H-16-1670 |
| DAVID W. KENT, JR. *and* SINGLE INTEGRATED OPERATIONS PORTAL, INC., | § § § § | |
| Defendants. | § § | |

## ORDER

Pending before the Court are Defendants' Rule 54 Motion for Fees and Costs (Document No. 386) and Plaintiffs' Motion for an Award of Statutory Attorneys' Fees, Costs, and Pre-Judgment Interest and Post-Judgment Interest (Document No. 387). Having considered the motions, submissions, and applicable law, the Court determines Defendants' motion should be denied and Plaintiffs' motion should be granted in part and denied in part.

## I. BACKGROUND

This case arises from the alleged misappropriation of trade secrets and proprietary information from www.rigzone.com (the "Rigzone Site"), an Internet website offering news and job-placement services in the energy industry. Plaintiffs DHI Group, Inc. ("DHI") and Rigzone.com, Inc. ("Rigzone") (collectively, "Plaintiffs") are businesses offering job-placement services in the energy industry.

Defendant David W. Kent, Jr. ("Kent") is an individual who allegedly formed both Rigzone and the Rigzone Site. In August 2010, DHI allegedly acquired Rigzone and the Rigzone Site from Kent for approximately $51,000,000.00. On September 30, 2011, Kent resigned from Rigzone. On October 1, 2013, Kent allegedly formed Defendant Single Integrated Operations Portal, Inc. ("Oilpro") and launched www.oilpro.com (the "Oilpro Site"), which allegedly competed with Plaintiffs and the Rigzone Site by, *inter alia*, offering networking services in the energy industry. Starting in October 2013, Plaintiffs allege Kent misappropriated confidential information—mainly resumes—from the Rigzone Site to benefit Kent and Oilpro (collectively, "Defendants"). In contrast, during 2015 and 2016, Oilpro alleges Plaintiffs misappropriated confidential information—mainly member information— from the Oilpro Site to benefit Plaintiffs.

Based on the foregoing, on June 10, 2016, Plaintiffs filed this lawsuit against Defendants. Plaintiffs asserted claims for: (1) violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"); (2) violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"); (3) violations of the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134.001 *et seq.* ("TUTSA"); (4) misappropriation of confidential information; (5) breach of fiduciary duty; (6) violations of the Stored Wire and Electronic Communications and Transactional Records Access Act, 18 U.S.C. §§ 2701(a)(1), 2707; (7) violations of the Texas Harmful Access by Computer Act, Tex. Civ. Prac.

& Rem. Code § 143.001 ("THACA"); and (8) violations of the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code §§ 134.001 *et seq.* ("TTLA"). Defendants asserted counterclaims for: (1) violations of the CFAA; (2) trespass to chattels; (3) breach of contract; (4) violations of the Digital Millennium Copyright Act; (5) copyright infringement; (6) misappropriation; (7) trademark infringement in violation of 15 U.S.C. § 1051; (8) trademark infringement under Texas common law; (9) violation of THACA; (10) unjust enrichment; and (11) interference with prospective business relations. On July 12, 2019, United States Magistrate Judge Nancy K. Johnson recommended the Court grant summary judgment on, *inter alia*, Plaintiffs' TTLA claim. On August 8, 2019, the Court adopted Magistrate Judge Johnson's recommendation. On November 10, 2020, the parties went to trial over the remaining claims. On November 24, 2020, the trial was continued. On March 15, 2021, the trial resumed. On March 19, 2021, Defendants moved to dismiss all claims against Oilpro and Plaintiffs agreed. The Court accordingly granted the motion. On March 26, 2021, the jury returned a verdict finding, *inter alia*, the following: Kent violated TUTSA; Rigzone would be fairly and reasonably compensated for the TUTSA violation by damages in the amount of $3,003,036.90; Kent violated RICO; Kent's RICO violation proximately caused $0 in damages to Plaintiffs; and Plaintiffs were not liable for any of Defendants' counterclaims. On April 14, 2021, Plaintiffs moved for attorneys' fees and costs. Also on April 14, 2021, Defendants moved for attorneys' fees and costs. On July 29, 2021, Defendants filed supplemental briefing

on the issue of attorneys' fees in response to an order from the Court. The Court addresses each motion in turn.

## II. LAW & ANALYSIS

### A.   *Plaintiffs' Motion*

Plaintiffs move for attorneys' fees, costs, pre-judgment interest, and post-judgment interest. Defendants contend Plaintiffs cannot recover attorneys' fees but do not dispute Plaintiffs are entitled to costs and interest. The Court addresses each in turn.

### 1.   *Plaintiffs' Motion for Attorneys' Fees*

Plaintiffs contend they are entitled to attorneys' fees because the jury found Kent violated RICO. Defendants contend Plaintiffs cannot recover attorneys' fees because they did not show the RICO violation caused an injury.

"Any person injured in his business or property by reason of a [RICO violation] . . . shall recover . . . the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). To establish an injury came about "by reason of" a RICO violation, a plaintiff must show the predicate violation was not only the but-for cause but also the proximate cause of the injury. *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). Although the term "injury" is not defined in the statute, courts consistently have held a showing of RICO injury requires a concrete financial loss. *See In re Taxable Mun. Bond Secs. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995)

(interpreting RICO injury to require "present, actual damages" for statutory standing purposes); *see also In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 804 F.3d 633, 638 (3d Cir. 2015); *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012). Beyond cases analyzing the statute itself, courts look to the similar attorneys' fees provision in the Clayton Antitrust Act, 15 U.S.C § 15(a), to guide their interpretation of the RICO fees provision. *See, e.g., Ducote Jax Holdings LLC v. Bradley*, 335 F. App'x 392, 402 (5th Cir. 2009) (per curiam) ("[T]his Court's precedent interpreting the essentially identical provision in the Clayton Act is instructive, if not controlling."). Although a party need not win compensatory damages to recover attorneys' fees under the Clayton Act, an award of fees does require plaintiff show both a statutory violation and "proof of injury." *Sciambra v. Graham News*, 892 F.2d 411, 415 (5th Cir. 1990). A tenuous and speculative relationship between the statutory violation and an alleged injury weigh against a damages award. *See Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 545–46 (1983). "[T]he fee applicant bears the burden of establishing entitlement to an award . . . ." *Hensley v. Eckhardt*, 461 U.S. 424, 437 (1983).

Although the jury found Kent had violated RICO, the answers to the jury questionnaire do not indicate whether they found Kent's RICO violation had injured

Plaintiffs in their business or property.[1] The jury questionnaire's damages question on the RICO claim reads: "What is the amount of damages, if any, that you find was proximately caused by David Kent's copying of resumes from Rigzone's resume database?"[2] The jury answered this question with damages in the amount of $0.[3] Plaintiffs contend the fact the jury returned a verdict in Plaintiffs' favor in the amount of $3,003,036.90 on the TUTSA claim and $2,506,350.00 on the misappropriation of confidential information claim indicate implied damages on the RICO claim.[4] However, the measure of damages for the TUTSA and misappropriation of confidential information claims are distinct from the RICO measure of damages. *Compare GlobeRanger Corp. v. Software AG USA, Inc.*, 836 F.3d 477, 499 (5th Cir. 2016) (discussing the different measures of damages allowed under TUTSA's "flexible and imaginative" approach to trade secret damages), *and Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 623–25 (S.D. Tex. 2011) (Rosenthal, C.J.) (discussing misappropriation of confidential information as an independent but overlapping cause of action with trade secret misappropriation),

---

[1] *See Jury Verdict,* Document No. 377 at 19–27.

[2] *See Jury Verdict,* Document No. 377 at 27.

[3] The Court also looked to the dictionary definitions of "injury" and "damages" to determine if the jury verdict logically required a finding as to whether Plaintiffs were injured by the RICO violation. *See damages*, Black's Law Dictionary (11th ed. 2019); *injury*, Black's Law Dictionary (11th ed. 2019). These definitions did not resolve the ambiguity.

[4] *See Jury Verdict,* Document No. 377 at 14, 30.

*with Gil Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist.*, 786 F.3d 400, 409–10 (5th Cir. 2015) (discussing the line of cases interpreting what can constitute damages under RICO). Further, the jurors were instructed "not [to] increase or reduce the amount in one answer because of [their] answer to any other question about damages," or to "speculate about what any party's ultimate recovery may" be, and that the "recovery will be determined by the court when it applies the law to [the jury's] answers."[5] Plaintiffs present no further proof of injury as to the RICO violation. The Court finds Plaintiffs have not shown they were injured in their business or property by Kent's RICO violation. Accordingly, Plaintiffs' motion is denied as to their request for attorneys' fees.

### 2.    *Plaintiffs' Motions for Costs*[6]

Plaintiffs move for taxation of costs, contending Rigzone is the prevailing party and is thus entitled under the Federal Rule of Civil Procedure 54(d)(1). Defendants contend Rigzone is not the prevailing party and instead Oilpro is the prevailing party and thus Oilpro is entitled to costs.

"Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to

---

[5] *Jury Verdict*, Document No. 377 at 7.

[6] Defendants contend Oilpro is entitled to costs because it is the prevailing party as to all claims asserted against it. Defendants further contend Kent and Oilpro are the prevailing parties under the TTLA claim. The Court addresses these contentions separately. *See* discussions *infra* Subparts II.B.1, II.B.2.

the prevailing party." Fed. R. Civ. P. 54(d)(1). "Rule 54(d)(1) contains a strong presumption that the prevailing party will be awarded costs." *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006). The prevailing party is prima facie entitled to costs and the denial of costs is in the nature of a penalty. *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985). Prevailing party is a legal term of art and defined as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001); *see prevailing party*, Black's Law Dictionary (11th ed. 2019). A party need only prevail on some claims, not all, to be regarded as prevailing. *Tempest Publ'g, Inc. v. Hacienda Recs. and Recording Studio, Inc.*, 141 F. Supp. 3d 712, 718 (S.D. Tex. 2015) (Rosenthal, C.J.). The case must be viewed as a whole to determine which party prevailed. *Aquatic Lodging, LLC v. Bayou Boys Boat Rental, LLC*, Civil Action No. H-10-4161, 2013 WL 12231334, at *2 (S.D. Tex. Nov. 6, 2013) (Hittner, J.) (citing *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 712 F.2d 128, 131 (5th Cir. 1983)). A party's audio/visual technical assistance is not included in the enumerated taxable costs. *See* 28 U.S.C. § 1920.

As discussed above, Rigzone was the only party in whose favor a judgment was entered and neither Defendant recovered on any counterclaim. The Court finds Rigzone is the prevailing party. Rigzone requests the following costs: (1) $400.00 for the filing fee; (2) $836.09 for hearing transcripts; (3) $15,122.00 for trial transcripts; (4) $21,095.12 for deposition transcripts; (5) $4,817.50 for deposition

videos; (6) $74.50 for the witness fee paid to Matthew Kent; (7) $13,503.75 for audio/visual technical assistance at trial; and (8) $2,366.67 for copies of papers used at hearings.[7] The Court further finds Rigzone cannot recover costs for its audio/visual technical assistance at trial. These costs, without the excluded audio/visual technical assistance cost, total $44,711.88. Accordingly, the Court grants Plaintiffs' motion as to $44,711.88.

3.    *Plaintiffs' Motion for Pre-Judgment Interest*

Plaintiffs contend they should be awarded $721,551.61 in pre-judgment interest. Although Defendants agree Plaintiffs should be awarded pre-judgment interest, they argue the appropriate amount is $10,101.72.

Under Texas trade secrets law pre-judgment interest on awards is mandatory. *See Matter of AmeriSciences, L.P.*, 781 F. App'x 298, 306–07 (5th Cir. 2019) (per curiam). "Prejudgment interest accrues at the rate for postjudgment interest and is computed as simple interest." *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 415 (5th Cir. 2011). The post-judgment interest rate in Texas is 5% per annum. Tex. Fin. Code § 304.003. The Court finds the interest accrued on the $3,003,036.90 judgment between June 10, 2016, the filing of this lawsuit, and March 31, 2021, the date of

---

[7] *See Plaintiffs' Motion for an Award of Statutory Attorneys' Fees, Costs, and Pre-Judgment Interest and Post-Judgment Interest*, Document No. 387, Exhibit 1 at 13–14 (*Declaration of Walter Lynch*).

the judgment, is $721,551.61. Accordingly, the Court grants Plaintiffs motion for pre-judgment interest in the amount of $721,551.61.

### 4.   Post-Judgment Interest

The parties agree Rigzone is entitled to post-judgment interest. "Federal law governs post-judgment interest." *Meaux Surface Prot., Inc. v. Fogelman*, 607 F.3d 161, 173 (5th Cir. 2010). "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "Such interest shall be calculated from the date of the entry of the judgment . . . ." *Id.* The Court finds post-judgment interest applies to the judgment in the amount of .07%. *See* United States District & Bankruptcy Court, Post-Judgment Interest Rates – 2021 (2021), https://www.txs.uscourts.gov/page/post-judgment-interest-rates-2021.

Accordingly, the Court grants Plaintiffs motion for post-judgment interest.

### B.   Defendants' Motion

The Court first addresses Oilpro's motion for costs as the prevailing party in the case, then Defendants' motion for attorneys' fees and costs as the prevailing party as to the TTLA claim.

1.     *Oilpro's Motion for Costs Under Federal Rule of Civil Procedure 54(d)*[8]

Defendants contend Oilpro was dismissed from the case and thus was the prevailing party and should be awarded costs. Plaintiffs contend Oilpro is not a prevailing party. The prevailing party is one in whose favor a judgment has been rendered, regardless of the amount of damages awarded. *Buckhannon*, 532 U.S. at 603. A party need only prevail on some claims to be regarded as the prevailing party, and the case must be viewed as a whole to determine prevailing party status. *Eastman Kodak*, 712 F.2d at 131; *Tempest Publ'g*, 141 F. Supp. 3d at 718. Plaintiffs voluntarily dismissed Oilpro as a Defendant. Plaintiffs allege their dismissal was based on the strategic reason Oilpro was bankrupt and had no assets. Rigzone is the only party in whose favor a judgment was entered in this case.[9] Neither Defendant prevailed on any of their counterclaims.[10] The Court finds, viewing the case as a whole, Oilpro is not the prevailing party. Accordingly, Oilpro's motion for costs is denied.

2.     *Defendants' Motion for Fees and Costs as to the TTLA Claim*

---

[8] In addition to Oilpro moving for costs as prevailing party in the case as whole, Defendants also move for costs specifically as to the TTLA claim. The motion for costs as to the TTLA claim is discussed *infra* Part II.B.2.

[9] *See Final Judgment*, Document No. 385.

[10] *See Jury Verdict*, Document No. 377 at 35–45.

11

Defendants contend they are the prevailing party as to Plaintiffs' TTLA claim and thus are entitled to costs and attorneys' fees related to those claims, requesting fees in the amount of $450,546.95. Plaintiffs contend Defendants are not entitled to fees as to the TTLA claim because Plaintiffs were not given notice of Defendants' intent to seek fees.

Parties who prevail on a TTLA claim are entitled to "court costs and reasonable and necessary attorney's fees." *See* Tex. Civ. Prac. & Rem. Code § 134.005(b). A party who defeats a TTLA claim, whether on the merits or for some other reason, is a prevailing party for the purposes of an award of costs and attorneys' fees related to the claim. *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 753 F. App'x 184, 191 (5th Cir. 2018) (per curiam); *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 148 (Tex. 2019). As a general rule, a party is required to put its adversaries on notice attorneys' fees are at issue as to a given claim. *See United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 765 (5th Cir. 1996) ("[W]e find nothing inappropriate with requiring a party to put its adversaries on notice that attorneys' fees are at issue in a timely fashion or waive that claim."). Such notice may take the form of specifically pleading for attorneys' fees in the complaint, but such specific pleading is not a requirement. *See id.*

Defendants prevailed against Plaintiffs' TTLA claim. *See DHI Grp., Inc. v. Kent*, 397 F. Supp. 3d 904, 928 (S.D. Tex. 2019) (Johnson, M.J.) ("[T]he court has recommended that Plaintiffs' . . . TTLA claims be dismissed . . . ."). Plaintiffs

12

themselves specifically raised the issue of attorneys' fees as to their TTLA claim in their pleadings.[11] Regardless of whether Defendants specifically raised the issue in their answer, the Court finds Plaintiffs were on notice that attorneys' fees were at issue as to the TTLA claim. Accordingly, the Court finds Defendants are the prevailing party as to the TTLA claim and are thus entitled to reasonable and necessary attorneys' fees on the TTLA claim.

> i.    *Attorneys' Fees as to the TTLA Claim*
>
> a.    *Segregation*

Plaintiffs contend Defendants insufficiently segregated their fees incurred litigating the TTLA claim and the unrecoverable fees incurred litigating other claims. Defendants contend the fees requested are for legal services rendered in service of claims so intertwined they need not be segregated.

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *ATOM Instrument Corp. v. Petroleum Analyzer Co.*, 969 F.3d 210, 216 (5th Cir. 2020) (internal citation omitted). "Texas law requires that if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Id.* (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006)) (cleaned up). However, an exception to the segregation requirement exists "when

---

[11] *Plaintiffs DHI Group, Inc.'s and Rigzone.com Inc.'s First Amended Complaint*, Document No. 236 at 51.

the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible." *Transverse, L.L.C. v. Iowa Wireless Svcs., L.L.C.*, 992 F.3d 336, 344 (5th Cir 2021). The intertwined exception requires not just a common set of underlying facts, but that the discrete legal services rendered advance both a recoverable and an unrecoverable claim. *Tony Gullo Motors*, 212 S.W.3d at 313–14. The question of the need to segregate attorneys' fees is a question of law. *ATOM*, 969 F.3d at 216–17. The extent to which certain claims can or cannot be segregated is a mixed question of fact and law and entitled to the same deferential review factual determinations are ordinarily given by appellate courts. *Id.*; *Bear Ranch, LLC v. Heartbrand Beef, Inc.*, Civil Action No. 6:12-CV-14, 2016 WL 1588312, at *4 (S.D. Tex. April 20, 2016) (Costa, Circuit J.). "To meet a party's burden to segregate its attorney's fees, it is sufficient to submit to the fact-finder testimony from a party's attorney concerning the percentage of hours related to claims for which fees are not recoverable." *ATOM*, 969 F.3d at 217.

This case involved more than two dozen claims and counterclaims at various points during the course of this litigation before Judge Johnson granted summary judgment as to the TTLA claim. The only claim Defendants may recover attorney fees on in this case is the TTLA claim. The other claims asserted bear varying levels of factual and legal similarity to the TTLA claim.[12] Plaintiffs contend some of the

---

[12] For example, the TUTSA claim, which preempted the TTLA claim, was premised on Defendants' alleged "misappropriat[ion]" of Plaintiffs' "proprietary member

work billed includes work completely unrelated to the TTLA claim.[13] Defendants did not submit detailed billing records, but rather multiple declarations from law firm Foley & Lardner LLP ("Foley") attorneys, fee invoices, and a "representative" sample of Foley billing record entries with the narrative redacted.[14] The only records submitted for work done by Blank Rome LLP ("Blank Rome") are billing invoices. Having reviewed the submissions related to the fee request, and based on the Court's experience with the case, it finds segregation of some of the attorneys' fees is appropriate. The Court further finds some of the legal work for the TTLA claim is intertwined with the legal work done in service of other claims. Accordingly, the Court finds the hours spent performing legal services to advance the TTLA claim must be segregated from the other hours.

      *b.*    *Reasonable and Necessary Fees*

---

information, internet search methods, and Google Analytics data." *Plaintiffs DHI Group, Inc. and Rigzone.com, Inc.'s First Amended Complaint*, Document No. 236 at 44–45. The TTLA claim was premised on the "appropriation" of Plaintiffs' member information and Google Analytics data. *Plaintiffs DHI Group, Inc. and Rigzone.com, Inc.'s First Amended Complaint*, Document No. 236 at 50. In contrast, the legal work for Defendants' violation of the Digital Millennium Copyright Act counterclaim likely overlapped little with the TTLA work.

[13] *Plaintiffs' Response to Defendants' Motion for Attorneys' Fees and Costs*, Document No. 393 at 12–13.

[14] *See Defendants' Rule 54 Motion for Fees and Costs*, Document No. 386, Exhibit A (*Declaration of Peter S. Vogel*) [hereinafter *Vogel Declaration*]; *Defendants' Rule 54 Motion for Fees and Costs*, Document No. 386, Exhibit B (*Declaration of James G. Munisteri*) [hereinafter *Munisteri Declaration*]; *Defendants' Supplemental Briefing on TTLA Fees*, Document No. 428, Exhibit 1 (*Supplemental Declaration of James G. Munisteri*) [hereinafter *Munisteri Supplemental Declaration*].

Defendants contend an award of $450,546.95 for attorneys' fees is reasonable and necessary, comprised of 15% of the fees incurred by Foley and 10% of the fees incurred by Blank Rome. Plaintiffs contend the requested fees are excessive and fail for lack of evidence.

Since the TTLA claim is premised on Texas law, the Court looks to Texas law for determining the appropriate fee award. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Texas courts, like federal courts, apply a factor-based test to determine what attorneys' fees are reasonable and necessary. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 493 (Tex. 2019). Under this approach, a court first multiplies the number of hours reasonably expended on the litigation by a reasonable hourly billing rate to calculate what is known as the lodestar amount. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). Once the lodestar figure is initially determined, a court may adjust the figure upward or downward as necessary in light of several enunciated factors. *Id.* The fee claimant bears the burden of establishing the rate charged and reasonableness of the hours expended. *Rohrmoos*, 578 S.W.3d at 498. At a minimum, the fee claimant should establish evidence of: (1) particular services performed; (2) who performed those services; (3) approximately when the services were performed; (4) the reasonable amount of time required to perform the services; and (5) the reasonable hourly rate for each person performing such services. *Id.* This base lodestar figure should approximate the reasonable value of the legal services provided in successfully

defending the prevailing party against a claim. *Id*. The Court addresses the reasonableness of the hourly rate and the number of hours in turn.

### I.      *Reasonable Hourly Rate*

To establish the reasonable hourly rate for the movant's attorney, the Court must consider the attorney's regular rate as well as the prevailing market rate, which is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id*. at 499 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 (1984)). Evidence of the reasonableness of a proposed hourly rate must include an affidavit of the attorney performing the work and information about rates billed and paid in similar lawsuits. *Id*; *Tollet v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The fee applicant bears the burden of establishing the appropriate hourly rate. *El Apple*, 370 S.W.3d at 761 (citing *Hensley*, 461 U.S. at 437). Additionally, a court may use their own expertise and judgment to make an independent determination of the value of an attorney's services. *Davis v. Bd. of Sch. Comm'rs of Mobile Cty.*, 526 F.2d 865, 868 (5th Cir. 1976).

Defendants produce declarations of two attorneys addressing the rates billed and their reasonableness as to several attorneys and paralegals at Foley and Blank Rome.[15] Defendants produce a range of fees as to Foley attorneys James Munisteri ("Munisteri"), Marla Poirot, Sara Brown, and Heidi Rasmussen, and Foley paralegal

---

[15] *See Vogel Declaration*, *supra* note 14; *Munisteri Declaration*, *supra* note 14.

Lauralee Hubbard.[16] Defendants produce specific fee schedules for Blank Rome attorneys Barry Abrams, Susan Bickley, Jack Higdon, Emery Richards, and Blank Rome paralegal Julie Seifert.[17] Plaintiffs do not dispute the reasonableness of the hourly rates laid out in Defendants' motion for attorneys' fees.

## II.   Reasonable Number of Hours

To establish the reasonable number of hours expended on the litigation by the movants' attorneys, "courts customarily require the [movants] to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for non-compensable hours." *Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 852 (S.D. Tex. 2017) (Hittner, J.) (citing *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990)). The base calculation should reflect hours "reasonably expended for services necessary to the litigation." *Rohrmoos*, 578 S.W.3d at 498. The evidence provided in support of a motion for fees should explain the time spent on specific tasks so as to provide the trial court with the ability to meaningfully review the fee request. *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014). "[B]ecause fee-shifting awards are to be reasonable and necessary for successfully prosecuting or defending against a claim, reasonableness and necessity are not dependent solely on the contractual fee

---

[16] *Vogel Declaration, supra* note 14, at 6.

[17] *Vogel Declaration, supra* note 14, at 7.

arrangement between the prevailing party and its attorney." *Rohrmoos*, 578 S.W.3d at 498. The fee award is compensatory in nature, and should make the prevailing party whole as to the reasonable and necessary fees for successfully defending the claim for which they are awarded. *See id* at 489; *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 819 (Tex. 1997). "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *El Apple I*, 370 S.W.3d at 762. Fee applications should include proof documenting the performance of specific tasks, the time required for those tasks, the person who performed the work, and his or her specific rate. *Id.* at 765.

Defendants seek almost half a million dollars of legal fees for successfully defending a claim dismissed in the summary judgment stage on purely legal (as opposed to factual) grounds, even though at trial the jury delivered Rigzone a verdict of over three million dollars on the claim which preempted the TTLA claim. Defendants asserted three arguments against the TTLA claim in their motion for summary judgment: (1) the TTLA claim was preempted by TUTSA; (2) the TTLA claim was barred by the statute of limitations; and (3) the act of stealing data could not be a TTLA violation because Plaintiffs were not deprived of the data's use. Ultimately, Defendants prevailed on their preemption argument. The Court notes all three of these arguments are primarily legal arguments, which would not require

much, if any, discovery to make. Defendants assert they incurred reasonable fees of $113,607.38 conducting discovery related to the TTLA claim, $133,356.89 preparing their own experts and deposing the other side's,[18] and over a hundred thousand dollars conducting twelve depositions.[19] Because the arguments on which Defendants prevailed as to the TTLA claim were primarily legal, not factual, in nature, the Court finds all fees associated with discovery, depositions, and experts are unreasonable in this case. The Court finds the time dedicated to legal research and writing of relevant motions and filings is reasonable as to defending the TTLA claim. The Court thus proceeds to determining the number of hours spent drafting the answer, Defendants' motion for summary judgment, and any related filings.[20]

Under the lodestar method, a fee award requires a fee movant to produce evidence to indicate the time expended on the specific tasks for which attorneys' fees may be recovered. *Long*, 442 S.W.3d at 256. Here, Defendants produce no evidence which would allow the Court to divide the recoverable fees from the

---

[18] This calculation takes the amount Defendants claim for their own expert preparation ($23,198.19) and adds it to the amount of time Defendants claim for deposing and moving to strike Plaintiffs' experts Johnson ($104,868.68) and Aslanyan ($5,290.02). *See Munisteri Supplemental Declaration, supra* note 14, at 6.

[19] *See Munisteri Supplemental Declaration, supra* note 14, at 6.

[20] The Court also notes Defendants request to recover fees for their time spent responding to Plaintiffs' partial motion for summary judgment. *See Munisteri Supplemental Declaration, supra* note 14, at 6. Plaintiffs did not mention their TTLA claim in their motion for partial summary judgment. The Court determines the time expended drafting the response was unrelated to the TTLA claim and thus is unreasonable under the lodestar analysis.

unrecoverable. The Court gave Defendant two chances, requesting supplemental briefing on the issue when the documentation supporting the initial motion proved insufficient.

Defendants instead produced: (1) the motion for attorneys' fees itself, which estimates the amount incurred by Foley and Blank Rome ($2,352,259.00 and $977,081.00, respectively), the proportion of the time spent on work not unrelated to the TTLA claim by each firm (15% and 10%, respectively), the resulting requested amounts per firm and in total ($352,838.85 for Foley, $97,708.10 for Blank Rome, and $450,546.95 in total); (2) the declaration of Peter Vogel ("Vogel"), Foley attorney, who provides a fee schedule for the Foley and Blank Rome attorneys and paralegals, a very brief description of the types of tasks performed by each attorney and paralegal, an hour break down of the total hours expended by Foley and Blank Rome (5,197.6 and 2,000.5, respectively, and 7,198.1 in total); (3) the declaration of Munisteri, another Foley attorney, which included no new numerical or descriptive information helpful in separating out the hours by task;[21] (4) Defendants supplemental brief, filed at the request of the Court, which contained further reassurances all fees were reasonable and necessary, as well as a breakdown of the

---

[21] The Court notes Munisteri did include thirty invoices from Foley and eight invoices from Blank Rome. These invoices included hours worked by each legal professional and their billing rate, but no information which would be helpful in determining whether the work was at all related to the TTLA claim. *See Munisteri Declaration, supra* note 14, at 11–88.

recoverable fees by task; and (5) Munisteri's supplemental declaration, which contained no new information besides roughly 630 "representative entries" from Foley's billing records in the relevant period with the work narratives redacted.

The Court simply cannot identify information sufficient to provide an estimate of reasonable hours worked to use in the lodestar calculation. The Court cannot use the representative billing entries from Munisteri's supplemental declaration because they are incomplete,[22] include time unrelated to the TTLA claim, include unapportioned time, and include attorneys and paralegals who have not made a showing sufficient to establish a reasonable rate.[23] The Court cannot calculate a reasonable hour number from the supplemental brief's table of "recoverable fees" because the table includes no count of the hours expended on each task, just dollar amounts. The Court cannot use the invoices attached to Munisteri's first declaration because, although the records separate out the timekeeper and hours worked, there is no way to determine what portion of the hours worked were related to the TTLA claim. Vogel's declaration includes fee schedules and vague statements of the types

---

[22] *See Munisteri Supplemental Declaration, supra* note 14, at 1 ("[W]e identified billing narratives for entries related to time that would have been incurred if the TTLA claim had been the only claim asserted herein. This limited the scope to roughly 630 representative entries, and additional review would have very likely identified additional fees in the entries that were not selected as representative entries."). The entries also have their narrative portion redacted.

[23] Peter Vogel, N. L. Stevens, Coleen McKnight, and Adrienne Courts have not established a reasonable rate. *See Munisteri Supplemental Declaration, supra* note 14, at 7.

tasks the attorneys and paralegals worked on, but there is no count of the hours expended by each attorney and paralegal. Defendants have not produced adequate evidence as to Blank Rome's fee request. Ultimately, the Court was unable to estimate the amount of time each attorney and paralegal reasonably spent working on the TTLA claim based on the evidence provided. "[T]he fee claimant bears the burden of providing sufficient evidence" of both reasonable hours and reasonable rates. *Rohrmoos*, 578 S.W.3d at 498. The Court thus finds Defendants have failed to meet their burden to produce evidence sufficient to perform the lodestar calculation. The Court thus has no presumptively reasonable figure to adjust upwards or downwards based on the *Arthur Andersen* factors. Accordingly, Defendants' motion for attorneys' fees as to the TTLA claim is denied.

### ii.    Costs Under the TTLA Claim

Defendants also move for costs as to their TTLA claim. As discussed above, a prevailing party for a TTLA claim is entitled to court costs as well as reasonable and necessary attorney's fees.[24] Although awarded under a state statute, federal procedural provisions govern the trial court's discretion to award costs. *See Carter v. Gen. Motors Corp.*, 983 F.2d 40, 43 (5th Cir. 1993). Accordingly, procedural provisions of the United States Code and the Federal Rules of Civil Procedure limit the costs a party may recover. The Court "may only award those costs articulated in

---

[24] *See* discussion *supra* Subsection II.B.2.

[28 U.S.C. §] 1920 absent explicit statutory or contractual authorization to the contrary." *Cook Children's Med. Ctr. v. The New England PPO Plan of Gen. Consol. Mgmt., Inc.*, 491 F.3d 266, 274 (5th Cir. 2007) (quoting *Mota v. Univ. of Tex. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001)); *see* 28 U.S.C. § 1920. A party seeking costs must attach an affidavit "made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case." 28 U.S.C. § 1924. Although Defendants attached two declarations to their motion, neither breaks down what costs are sought or attests to the correctness or necessity of the costs incurred. Defendants' motion does not even request a specific amount of costs or explain what the costs are for. Accordingly, Defendants' motion for costs is denied.[25]

## III. CONCLUSION

Based on the foregoing, the Court hereby

**ORDERS** that Defendants' Rule 54 Motion for Fees and Costs (Document No. 386) is **DENIED**. The Court further

**ORDERS** that Plaintiffs' Motion for an Award of Statutory Attorneys' Fees, Costs, and Pre-Judgment Interest and Post-Judgment Interest (Document No. 387)

---

[25] Defendants additionally request leave to move for fees incurred responding to the Court's request for supplemental briefing. As discussed previously, Defendants are only entitled to costs and fees for successfully defending the TTLA claim. The Court finds supplementing an inadequately briefed request for fees is unrelated to defending a TTLA claim. Defendants' motion for leave is accordingly denied.

is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to

**$44,711.88** in costs, **$721,551.61** in pre-judgment interest, and as to post-judgment

interest. The motion is denied as to Plaintiffs' request for attorneys' fees.

SIGNED at Houston, Texas, on this *23* day of August, 2021.

DAVID HITTNER
United States District Judge